**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GOVERNOR ANDREW M. CUOMO,

                Movant,

v.

OFFICE OF THE NEW YORK STATE
ATTORNEY GENERAL,

                Respondent.

Case No. 22 MISC 280

---

TROOPER 1,

                Plaintiff,

v.

NEW YORK STATE POLICE, ANDREW
CUOMO, MELISSA DEROSA, and
RICHARD AZZOPARDI,

                Defendants.

Pending In: Civil Action No. 22-cv-00893
(LDH) (TAM), United States District Court
for the Eastern District of New York

---

## MEMORANDUM OF LAW IN SUPPORT OF
## FORMER GOVERNOR OF NEW YORK STATE ANDREW M. CUOMO'S MOTION
## TO COMPEL THE OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL'S
## COMPLIANCE WITH SUBPOENA

**Glavin PLLC**
Rita M. Glavin
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

**SHER TREMONTE LLP**
Theresa Trzaskoma
Allegra Noonan
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

*Counsel for former Governor*
*Andrew M. Cuomo*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................. 3

    The OAG's Investigation ......................................................................................... 3

    The OAG Report & Related Materials .................................................................... 4

    Trooper 1's Amended Complaint and Its Reliance on the OAG Report ................. 6

    The Subpoena & the OAG's Noncompliance .......................................................... 8

ARGUMENT ................................................................................................................. 10

I.      THE INFORMATION SOUGHT IS UNQUESTIONABLY RELEVANT ......... 10

II.    THE INFORMATION SOUGHT IS NOT PROTECTED FROM DISCLOSURE .......... 12

    A.    The Attorney Client Privilege Does Not Protect the Requested Materials ........... 12

    B.    To The Extent Any Documents Were Protected by the Attorney-Client Privilege, The Privilege Was Waived .................................................................... 14

    C.    The Work Product Doctrine Does Not Protect the Requested Materials .............. 15

        1.    The Deliberative Process Privilege Does Not Protect the Documents Sought ..................................................................................... 18

        2.    The Deliberative Process Privilege Does Not Apply ................................ 18

        3.    If Any Documents Were Predecisional or Deliberative, They No Longer Are ................................................................................................. 20

        4.    Even If Any Documents Are Protected by the Deliberative Process Privilege, They Should Be Produced ........................................................ 21

    D.    The Public Interest Privilege Does Not Apply to The Requested Materials ........ 22

    E.    The Law Enforcement Privilege Does Not Protect the Documents Sought by Governor Cuomo .............................................................................................. 24

        1.    The Law Enforcement Privilege Does Not Apply .................................... 24

i

2.  Even if the Law Enforcement Privilege Did Apply, The
Requested Materials Should Still Be Disclosed........................................ 25

III.  THERE IS NO UNDUE BURDEN TO THE OAG IN RESPONDING TO
THE SUBPOENA............................................................................................. 26

IV.  CONFIDENTIALITY CONCERNS ARE NOT A PROPER BASIS TO
WITHHOLD THE REQUESTED MATERIALS ............................................ 27

A.  Civil Rights Law §50 Is Inapplicable .................................................... 27

B.  The OAG's Generalized Confidentiality Concerns Are Not Proper
Objections to Disclosure ......................................................................... 28

V.  THE OAG'S REMAINING OBJECTIONS SHOULD BE REJECTED............................ 29

CONCLUSION....................................................................................................... 30

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Civil Liberties Union v. Dep't of Def.*,
No. 15 CIV. 9317 (AKH), 2017 WL 4326524 (S.D.N.Y. Sept. 27, 2017) .................. 18, 19, 20

*Acorn v. County of Nassau*,
No. CV05-2301 JFB/WDW, 2008 WL 708551 (E.D.N.Y. Mar. 14, 2008) ............................ 22

*Agran v. City of New York*,
No. 895 CIV. 2170 JFK, 1997 WL 107452 (S.D.N.Y. Mar. 11, 1997).................................... 22

*Allen v. W. Point-Pepperell Inc.*,
848 F. Supp. 423 (S.D.N.Y. 1994) ...................................................................................... 14, 23

*Allied Irish Banks v. Bank of Am., N.A.*,
240 F.R.D. 96 (S.D.N.Y. 2007) ........................................................................................... 14, 16

*Allocco Recycling, Ltd. v. Doherty*,
220 F.R.D. 407 (S.D.N.Y. 2004) ................................................................................. 18, 19, 20

*Benn v. City of New York*,
No. 18CV722LGSOTW, 2019 WL 6717186 (S.D.N.Y. Dec. 10, 2019) ................................ 24

*Burbar v. Inc. Vill. of Garden City*,
303 F.R.D. 9 (E.D.N.Y. 2014) ............................................................................................. 21, 26

*Clarke v. Griffin*,
No. 13CIV4812NSRJCM, 2017 WL 11571793 (S.D.N.Y. May 11, 2017) ............................ 27

*Coventry Capital US LLC v. EEA Life Settlements Inc.*,
No. 17 Civ. 7417 (VM) (SLC), 2020 WL 7383940 (S.D.N.Y. Dec. 16, 2020) ...................... 28

*Coventry Capital US LLC v. EEA Life Settlements Inc.*,
No. 17 Civ. 7417 (VM), 2021 WL 961750 (S.D.N.Y. Mar. 15, 2021) ................................... 29

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001).................................................................................................................... 20

*Doe v. Good Samaritan Hosp.*,
65 Misc. 3d 987, 110 N.Y.S.3d 830 (N.Y. Sup. Ct. 2019) ...................................................... 27

*Doe v. MacFarland*,
66 Misc. 3d 604 (N.Y. Sup. Ct. 2019) .................................................................................... 27

iii

*Favors v. Cuomo*,
  285 F.R.D. 187 (E.D.N.Y. 2012) ...................................................................... 12, 15, 16

*Floyd v. City of New York*,
  739 F. Supp. 2d 376 (S.D.N.Y. 2010) ...................................................................... 25

*Goodloe v. City of New York*,
  136 F. Supp. 3d 283 (E.D.N.Y. 2015) ...................................................................... 24

*In re Kidder Peabody Sec. Litig.*,
  168 F.R.D. 459 (S.D.N.Y. 1996) ...................................................................... 14, 15, 16

*Kunstler v. City of New York*,
  Nos. 04 Civ. 1145, 04 Civ. 665 & 04 Civ. 2611, 2005 WL 2656117
  (S.D.N.Y. Oct. 18, 2005) ...................................................................... 24

*Lucidore v. New York State Div. of Parole*,
  209 F.3d 107 (2d Cir. 2000) ...................................................................... 28

*MacNamara v. City of New York*,
  249 F.R.D. 70 (S.D.N.Y. 2008) ...................................................................... 25, 26, 29

*MacNamara v. City of New York*,
  No. 04CIV.9612(KMK)(JCF), 2006 WL 3298911 (S.D.N.Y. Nov. 13, 2006) ...................... 26

*Murphy v. Warden of Attica Corr. Facility*,
  No. 20CIV3076PAEGWG, 2022 WL 1145050 (S.D.N.Y. Apr. 19, 2022) ........................... 28

*Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of New York*,
  194 F.R.D. 88 (S.D.N.Y. 2000) ...................................................................... 10

*Nat'l Council of La Raza v. Dep't of Justice*,
  411 F.3d 350 (2d Cir. 2005) ...................................................................... 20

*New York Times Co. v. United States Dep't of Justice*,
  939 F.3d 479 (2d Cir. 2019) ...................................................................... 17

*Norton v. Town of Islip*,
  No. CV 04-3079 PKC SIL, 2015 WL 5542543 (E.D.N.Y. Sept. 18, 2015) ....................... 14

*Playboy Enters., Inc. v. Dep't of Justice*,
  677 F.2d 931 (D.C. Cir. 1982) ...................................................................... 19

*Raba v. Suozzi*,
  No. CV061109DRHAKT, 2006 WL 8435604 (E.D.N.Y. Nov. 17, 2006) .......................... 22

*Rubie's Costume Co., Inc. v. Kangaroo Mfg., Inc.*,
  No. CV166517SJFAKT, 2018 WL 4864833 (E.D.N.Y. Sept. 28, 2018) ........................... 12

*Schiller v. New York*,
   252 F.R.D. 204 (S.D.N.Y. 2008) ........................................................................ 25, 26

*Tortorici v. Goord*,
   216 F.R.D. 256 (S.D.N.Y. 2003) ............................................................................. 18

*Walls v. City of New York*,
   502 F. Supp. 3d 686 (E.D.N.Y. 2020) .............................................................. 19, 24

*Woodard v. City of New York*,
   No. 99 CV 1123(ILG), 2000 WL 516890 (E.D.N.Y. Mar. 10, 2000) ...................... 23

Former Governor of New York State Andrew M. Cuomo ("Governor Cuomo") brings this motion to compel the Office of the New York State Attorney General (the "OAG") and Attorney General Letitia James ("AG James" or the "AG") to comply with a valid Rule 45 subpoena seeking documents material to a federal lawsuit alleging that Governor Cuomo engaged in sexual harassment (claims that Governor Cuomo denies). Although the underlying lawsuit contains dozens of allegations based upon the findings of an investigation and report issued by AG James concerning Governor Cuomo's conduct, and although the subpoena requests documents specifically related to these allegations, the OAG has refused to produce documents called for by the subpoena, including investigative materials specifically implicated in the underlying claims. For the reasons set forth below, AG James and her office should be compelled to produce the subpoenaed materials so that Governor Cuomo can properly defend himself.

## PRELIMINARY STATEMENT

Beginning in March 2021, attorneys deputized by AG James conducted an investigation into allegations that Governor Cuomo acted inappropriately. On August 3, 2021, AG James and the OAG released a lengthy written report (the "OAG Report" or "Report") concluding that Governor Cuomo had sexually harassed a number of women, including a New York State Trooper identified as "Trooper 1."[1] In that Report and during the accompanying press conference, AG James touted the "independence" of her investigators and the "thorough[ness]" of their investigation. Nevertheless, every district attorney who considered bringing charges based on the same underlying events declined to do so.

In February 2022, Trooper 1 filed a lawsuit against Governor Cuomo in the Eastern District of New York, captioned *Trooper 1 v. New York State Police, Andrew Cuomo, Melissa DeRosa,*

---

[1] Governor Cuomo did not oppose Trooper 1's motion to proceed anonymously in the underlying action.

*and Richard Azzopardi*, 22-CV-893 (LDH) (TAM) (the "Trooper 1 Action"). Seeking to bolster her own claims for discrimination and harassment, Trooper 1 includes in her Amended Complaint dozens of paragraphs of findings from the OAG's investigation and allegations regarding other women who Trooper 1 did not know and did not work with.

Governor Cuomo disputes the findings in the OAG Report and the allegations in Trooper 1's lawsuit. He has repeatedly raised detailed concerns regarding critical errors and omissions in the OAG's factfinding and flaws in the investigative process, including that AG James, who was contemplating a run for governor *during the investigative process*, was personally, professionally, and politically conflicted. Although AG James promised a transparent process, she has consistently sought to avoid any scrutiny of the investigation, selectively releasing only a small subset of materials from the investigation and steadfastly refusing to make public information that exculpates Governor Cuomo and/or undermines the credibility of certain witnesses.

Under the Federal Rules of Civil Procedure, as part of his defense against Trooper 1's claims, Governor Cuomo is broadly entitled to discover information, including information from third parties, that he needs to rebut the factual findings Trooper 1 relies on in her Amended Complaint and to demonstrate that the AG's investigation was neither independent nor "exhaustive," as Trooper 1 alleges.

On July 11, 2022, in connection with the Trooper 1 Action, Governor Cuomo served a Rule 45 subpoena on the OAG seeking documents related to the OAG's investigation and Report, including, among other things (i) subpoenas issued by OAG[2]; (ii) documents provided to the OAG from third parties and records of statements made to the OAG by third parties; (iii) OAG communications with third-party witnesses or their counsel; (iv) any periodic reports summarizing

---

[2] In the subpoena, "OAG" is defined as the "Office of the Attorney General and its employees and agents," including the individuals deputized by the Attorney General to conduct the investigation.

the investigation; and (v) communications between the OAG and other law enforcement. Although AG James has herself repeatedly stressed the importance of subpoena compliance, *e.g.* "[t]he Trumps must comply with our lawful subpoenas for documents and testimony because no one in this country can pick and choose if and how the law applies to them," she is now improperly obstructing Governor Cuomo's legitimate efforts to obtain materials that are clearly relevant to Trooper 1's lawsuit and are needed for him to properly defend against that lawsuit.

Indeed, the OAG refuses to produce most of the investigative materials that form the basis of the OAG Report, claiming incorrectly that these materials are beyond the scope of discovery—even though they clearly relate to Trooper 1's allegations—and improperly asserting blanket privileges that simply do not apply in these circumstances. What is more, even if any of claimed privileges were valid, the OAG waived any protection by issuing a lengthy public report broadly disclosing the nature and substance of the investigation, claiming (falsely) that all the underlying evidence would be disclosed while only releasing a small subset of the evidence, and repeatedly relying on the Report to make inflammatory public accusations against Governor Cuomo.

As set forth below, the Subpoena is valid and seeks relevant, nonprivileged materials from the OAG, including materials underlying the OAG's publicly-disclosed investigation. The OAG should be compelled to produce those documents.

## **BACKGROUND**

### *The OAG's Investigation*

In December 2020 and February 2021, two women who had previously worked in the New York State government accused Governor Cuomo of sexually harassing them. On March 1, 2021, Governor Cuomo issued a formal referral pursuant to New York Executive Law § 63(8) to AG James to create a special counsel with subpoena power to investigate the claims. *See* Declaration

of Theresa Trzaskoma (Trzaskoma Decl.), Ex. 8.[3] The OAG's press release formally announcing

the investigation, issued on March 8, 2021, stated that Attorney General James had appointed Joon

Kim and Anne Clark as co-leads of the "independent investigation." *See* Ex. 9. The press release

made clear that the investigation's purpose was to release a public report:

> This team is charged with conducting a thorough and independent
> investigation of, and the circumstances surrounding, allegations of sexual
> harassment against Governor Cuomo, including his administration's
> handling of such matters. This work will be comprised of — but not
> limited to — issuing subpoenas and related compliance; examination of
> relevant documents and records; interviews, including formal depositions;
> and analysis of data and information pertinent to the investigation. As
> required by the enabling statute, the team will report weekly on the
> investigation to the Office of the Attorney General throughout the duration
> of the investigation. Upon the conclusion of the investigation, the team
> will produce a written report which will include its findings. ***The report
> will be made available to the general public.***

*Id.* (emphasis added). The OAG press release noted that attorneys from Cleary Gottlieb Steen &

Hamilton LLP and Vladeck, Raskin & Clark, PC were deputized pursuant to § 63(8) "as Special

Deputies to the First Deputy Attorney General to conduct the investigation and issue the report."

*See* Ex. 11.

### *The OAG Report & Related Materials*

On August 3, 2021, the OAG released the Report, which opened with a conclusion accusing

Governor Cuomo of misconduct: "We, the investigators appointed to conduct an investigation into

allegations of sexual harassment by Governor Andrew M. Cuomo, conclude that the Governor

engaged in conduct constituting sexual harassment under federal and New York State law."[4] Ex.

10 at 1. The Report catalogues allegations by eleven women, including Trooper 1, that Governor

Cuomo engaged in harassing conduct. *Id.* According to the Report, investigators "issued over 70

---

[3] All cites to exhibits to the Trzaskoma Decl. are cited as "Ex. __."
[4] Governor Cuomo denies the validity of these findings and has raised numerous questions regarding the legitimacy of the investigation.

subpoenas for documents and other information, and received over 74,000 documents" and "interviewed 179 witnesses and took testimony under oath from 41 of them." *Id.* at 15. Although AG James promised at her August 3, 2021 press conference announcing the Report that she would release the evidence underlying the Report, *see* Ex. 12, the OAG disclosed only a tiny subset of those materials—111 exhibits—on the day the Report was released. *See* Ex. 11. No interview memos or transcripts were released at that time. And AG James subsequently backtracked, later stating that she would not release all the underlying evidence at the request of several district attorneys who were conducting investigations based on the Report. *See* Ex. 14; Ex. 16. On August 10, 2021, one week after the release of the OAG Report, Governor Cuomo announced his resignation effective August 24, 2021.

On November 10, 2021—less than two weeks after AG James declared her candidacy for governor—the OAG publicly released the transcribed sworn testimony of eleven witnesses and exhibits used in the testimony (albeit with numerous redactions). *See* Ex. 16.[5] In an accompanying press release, the OAG stated that because the Albany County District Attorney's Office had begun to provide Governor Cuomo with statutorily-mandated discovery materials in a misdemeanor case stemming from the Report (since dismissed on the merits), the OAG would "immediately begin releasing on a rolling basis, all transcripts and corresponding exhibits compiled during the investigation" in "an effort to provide full transparency to the people of New York." *Id.* Yet, as of the filing of this motion, the OAG has released only a small fraction of the 74,000 documents obtained from third parties and has not made available any interview memoranda or notes concerning the other 138 individuals interviewed.

---

[5] AG James announced her candidacy on October 29, 2021. *See* Katie Glueck, *Letitia James Declares Her Candidacy for N.Y. Governor*, N.Y. TIMES (Oct. 29, 2021), available at https://www.nytimes.com/2021/10/29/nyregion/letitia-james-governor.html.

The OAG's selective disclosure of underlying factual material is obvious: of 179 witnesses interviewed, the investigators transcribed sworn testimony from only 41 of them, and of those, only eleven were initially released in November of 2021. It was not until January 20, 2022 that the transcribed testimony of all 41 witnesses interviewed under oath was finally released. *See* Ex. 18. In the transcripts that AG James did release, redactions were applied to information that seemingly undermined the credibility of certain complainants.[6] Further, the OAG did not release memos or notes of interviews of the other 138 witnesses. Yet, the OAG cast aside legitimate questions about the reliability of the Report as "lies[] and conspiracy theories" (*see* Ex. 14) and claimed that the investigation was "exhaustive, thorough, and without outside influence, period." *Id.*

Beyond her press releases regarding the findings of the OAG Report, AG James has also displayed personal animus toward Governor Cuomo, calling him a "sick, pathetic man" and a "serial sexual harasser." *See* Ex. 19.

In late December 2021 and January 2022, all district attorney offices closed their investigations based on the OAG Report without bringing any charges against Governor Cuomo. The sole criminal complaint against Governor Cuomo (a misdemeanor groping allegation brought by Albany County Sheriff without consultation with the Albany District Attorney) was dismissed on January 7, 2022, after the Albany County District Attorney concluded that "after review of all the available evidence we have concluded that we cannot meet our burden at trial." *See* Ex. 17.

### *Trooper 1's Amended Complaint and Its Reliance on the OAG Report*

On February 17, 2022, Trooper 1 commenced the Trooper 1 Action against Governor Cuomo, the New York State Police ("NYSP"), and Melissa DeRosa ("DeRosa") in the United

---

[6] *See, e.g.*, Complaint by Former Governor Andrew M. Cuomo Against Attorney General Letitia Ann James, Joon Kim, Esq., and Anne Clark, Esq. (Sept. 13, 2022), available at https://int.nyt.com/data/documenttools/cuomo-james-ethics-complaint/495279a9c683329e/full.pdf (the "Ethics Complaint"), at 45-47.

States District Court for the Eastern District of New York. On February 18, 2022, Trooper 1 filed

her amended complaint (the "Amended Complaint"), adding Richard Azzopardi as a Defendant.

*See* Ex. 1. Trooper 1 asserts six causes of action against Governor Cuomo and others, alleging

discrimination and retaliation in violation of the Equal Protection Clause, the New York State

Human Rights Law, and the New York City Human Rights Law. *Id*. Trooper 1 alleges that during

her assignment to Governor Cuomo's personal security detail, Governor Cuomo "sexually

harassed" her and others. *Id*. ¶¶ 1, 3.

Trooper 1's Amended Complaint is replete with references to the OAG Report. The

Preliminary Statement not only refers to Trooper 1's individual allegations, but to the allegations

of all "11 women." *Id*. Trooper 1 specifically alleges:

> An exhaustive investigation by independent attorneys appointed by the
> New York State Attorney General concluded that "the Governor sexually
> harassed a number of current and former New York State employees by,
> among other things, engaging in unwelcome and nonconsensual touching,
> as well as making numerous offensive comments of a suggestive and
> sexual nature that created a hostile work environment for women." The
> investigation further concluded that "the Executive Chamber's culture –
> one filled with fear and intimidation, while at the same time normalizing
> the Governor's frequent flirtations and gender-based comments
> contributed to the conditions that allowed the sexual harassment to occur
> and persist."

*Id*. ¶ 4. Trooper 1 devotes more than ten pages of her Amended Complaint to "The Governor's

Harassment of Other Women." *Id*. ¶ 76-143. This section chronicles the allegations made against

Governor Cuomo by Brittany Commisso (¶¶ 76-91), Charlotte Bennett (¶¶ 92-102), Lindsay

Boylan (¶¶ 103-116), Alyssa McGrath (¶¶ 117-123), Ana Liss (¶¶ 124-130), "Kaitlin" (¶¶ 131-

139), and "Other Victims" (¶¶ 140-143). In doing so, the Amended Complaint parrots the OAG

Report and relies almost exclusively upon the Report's findings for the allegations involving those

other women.

On July 15, 2022 Governor Cuomo moved to dismiss Trooper 1's retaliation claims from the Amended Complaint but did not move against the harassment claims, and the fully briefed motion was filed on the docket on September 2, 2022. *See* Ex. 2. Although that motion to dismiss is pending, discovery in the Trooper 1 Action, is underway pursuant to a June 6, 2022 scheduling order. *Id*.

### *The Subpoena & the OAG's Noncompliance*

On July 11, 2022, counsel for Governor Cuomo served a valid subpoena pursuant to Federal Rule of Civil Procedure 45 on the OAG (the "Subpoena"). Ex.3. At a high level, the Subpoena demands materials related to the OAG's investigation and Report (the "Requested Materials"), including the following:

- Subpoenas served by the OAG;
- Documents provided to the OAG from third parties, records of statements made to the OAG by witnesses or their counsel, and communications with witnesses or their counsel;
- Periodic reports prepared by the investigators summarizing the investigation and drafts of the OAG Report; and
- Communications within and between the OAG and other law enforcement.

On July 25, 2022, fourteen days after service of the Subpoena, the OAG sent counsel for Governor Cuomo its "Initial Response and Objections to Nonparty Subpoena," which broadly asserted that the Subpoena was "premature," "unwarranted," and objectionable." *See* Ex. 4. The OAG further objected to the Subpoena "to the extent it calls for the production of documents beyond the scope of FRCP 26(B)(1) and/or protected from disclosure under privilege or otherwise confidential information," and objected on the basis that it was "overbroad and unduly burdensome." *Id*. That same day, counsel for Governor Cuomo responded and requested that the OAG provide formal responses and objections to the Subpoena. *See* Ex. 5.

Ultimately, counsel met and conferred on August 4, 2022. *See* Trzaskoma Decl., ¶ 10. During that call, Governor Cuomo's counsel disabused the OAG of its contention that the Subpoena was premature, including by pointing out that discovery was underway pursuant to the court-ordered schedule and that while motions to dismiss had been filed, they were limited to the retaliation claims, not the harassment claims. *Id*. Governor Cuomo's counsel also made clear that he disagreed generally with any claim of privilege. The OAG agreed to serve formal responses and objections and to continue discussions regarding the Subpoena. *Id.* On August 12 and 15, 2022, respectively, the OAG served its responses and objections (the "Responses and Objections") and an accompanying "privilege log" (the "Privilege Log"). *See* Ex. 6; Ex. 7. A chart summarizing the Subpoena demands and the OAG's responses and objections is attached hereto in the Appendix.

In the Responses and Objections, the OAG broadly objected to the Subpoena, agreeing to produce only (i) subpoenas, but only those "issued to witnesses or custodians who provided testimony relevant to Trooper 1 or provided documents relevant to Trooper 1"; and (ii) documents the OAG collected that "reference Trooper 1 by name." Ex. 6. And the Privilege Log, rather than providing a log of documents and privilege descriptions applying to each, lists only general categories of documents and marks "X" next to which privileges apply to each category. *See* Ex. 7.

On August 15, 2022, the OAG and counsel for Governor Cuomo met and conferred once more. During this call, the OAG did not change its position as to any of its specific objections or blanket privilege assertions. Rather, the OAG maintained its positions that any documents not specifically related to Trooper 1 are not relevant, that the  law enforcement privilege applies broadly to the Requested Materials, that the communications are protected by attorney-client

privilege and the attorney work product protection, that the Requested Materials contained internal and predecisional documents protected by the deliberative process privilege, and that the public interest privilege applied because the OAG should be able to investigate independently and thoroughly without disclosure to the public.  Trzaskoma Decl., ¶ 11.

Because these issues could not be resolved during this good faith meet and confer process, and the OAG has not made any production in response to the Subpoena, Governor Cuomo now moves to compel.

## ARGUMENT

## I.    THE INFORMATION SOUGHT IS UNQUESTIONABLY RELEVANT

The OAG objects to each demand in the Subpoena on the basis that each demand calls for documents and information "beyond the scope of civil discovery under Rule 26(b)(1)." According to the OAG, only documents specifically related to Trooper 1 are relevant. The OAG's relevance objection is directly contrary to the express terms of Federal Rule of Civil Procedure 26.

Relevance is the touchstone of discoverability and Rule 26 dictates that a party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Rule 26 is to be interpreted broadly and it explicitly provides that evidence need not be admissible to be discoverable. *See Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000) ("In federal actions, discovery should be broad, and all relevant materials which are reasonably calculated to lead to the discovery of admissible evidence should be [discoverable].").

A simple review of the Amended Complaint confirms the relevance of the subpoenaed materials. Trooper 1 devotes roughly ten pages of her Amended Complaint to a section titled "The Governor's Harassment of Other Women," in which she details allegations made by other women that are derived directly from the OAG's Report. Ex. 1 ¶¶ 76-143. In making these allegations,

Trooper 1 relies heavily on the findings from the OAG Report and its "independent" and "exhaustive" nature. Indeed, Trooper 1 alleges: "An exhaustive investigation by independent attorneys appointed by the New York State Attorney General concluded that 'the Governor sexually harassed a number of current and former New York State employees by, among other things, engaging in unwelcome and nonconsensual touching, as well as making numerous offensive comments of a suggestive and sexual nature that created a hostile work environment for women.'" *Id.* ¶ 4. Under these circumstances and under the liberal discovery standards, Governor Cuomo, therefore, is entitled to challenge the independent and exhaustive nature of the OAG Report. Further, Governor Cuomo has reason to believe that evidentiary materials collected during the OAG's investigation and not publicly released support his claims that he did not sexually harass anyone and undermine credibility of certain complainants included in, and relied upon in, the Amended Complaint. *Supra* note 6.

During the meet and confer process, the OAG has taken the position that any information not related to Trooper 1 is not relevant to Trooper 1's own claims, suggesting that non-Trooper 1 allegations should be stricken. But no party has made such a motion, no court has made such a ruling, and a nonparty witness, like the OAG, is not entitled to rewrite a party's pleading to avoid having to comply with a valid subpoena.[7]

For these reasons, the information Governor Cuomo seeks is plainly within the scope of Rule 26 discovery.

---

[7] It may well be that Governor Cuomo ultimately will seek to preclude evidence concerning some or all of the other complaining witnesses or will make arguments against their relevance during summary judgment or at trial. But such evidentiary issues are not a proper basis for a relevance objection, and it is particularly inappropriate for the OAG to presume the court's ruling on such evidentiary issues.

## II.       THE INFORMATION SOUGHT IS NOT PROTECTED FROM DISCLOSURE

### A.       The Attorney Client Privilege Does Not Protect the Requested Materials

The OAG raises an attorney-client privilege objection to producing documents provided to the OAG by third parties; records of statements made by third parties or their counsel to OAG (such as interview memos); communications between the OAG and third parties; communications within the OAG, and with other law enforcement; and any draft reports (including weekly reports to the OAG as mandated by Executive Law § 63(8)). To substantiate a claim of attorney-client privilege, the proponent must establish three elements: (1) communication between client and counsel that (2) was intended to be and was in fact kept confidential and (3) was made for the purpose of obtaining or providing legal advice. *Favors v. Cuomo*, 285 F.R.D. 187, 198 (E.D.N.Y. 2012); *Rubie's Costume Co., Inc. v. Kangaroo Mfg., Inc.*, No. CV166517SJFAKT, 2018 WL 4864833, at *5 (E.D.N.Y. Sept. 28, 2018). Because the OAG cannot meet the required showing on any element, the objections rooted in the attorney-client privilege must fail.

First, the Requested Materials do not contain communications between a client and their counsel. This is true with respect to communications between the OAG and third-party witnesses, communications between the OAG and witness counsel, documents received from third parties, and documents memorializing interviews with and statements made by third parties. It is also true with respect to communications between the OAG and the investigators. Contrary to the OAG's assertion, the investigators were not acting as outside counsel to the OAG. Instead, as multiple press releases and the text of the Report confirm, the investigators were deputized by the OAG pursuant to Executive Law § 63(8) to investigate the allegations made regarding Governor Cuomo's conduct. And § 63(8) makes clear that the any deputy appointed by the New York Attorney General ***stands in the shoes of the Attorney General***, including by referring to the powers and duties of the Attorney General or deputies appointed by the Attorney General as

interchangeable. Executive Law § 63(8). The press release issued when the Report was made public referred to the fact that Kim and Clark had been appointed by the New York Attorney General to conduct the investigation and confirmed that the appointments were made as a result of the Executive Chamber's referral pursuant to § 63(8) for Attorney General James to select independent lawyers to investigate the allegations. Ex. 11. Further, the Report's Summary of Investigative Procedure noted that the OAG appointed the investigative team "pursuant to the [§ 63(8)] Referral" and that lawyers from both firms were deputized as "Special Deputies to the First Deputy Attorney General." Ex. 10 at 14. In other words, the investigators and the OAG are one and the same, not attorney and client. Indeed, the cover page of the Report bears the name of AG James and AG James has repeatedly referred to the OAG Report as her Report. *See, e.g.*, Ex. 15 (AG James noting that, from the referral onwards, "*we* proceeded" to investigate the allegations and that subsequent criminal charts "validate[d] the findings in *our* report") (emphasis added).

Second, the information gathered, analyzed, and released as part of the OAG investigation was not intended to be kept confidential. From the outset, the OAG clearly stated that the singular purpose of the investigation was to release a public report regarding the allegations against Governor Cuomo. Indeed, when AG James announced the investigation on March 8, 2021, she stated that "[u]pon the conclusion of the investigation, the team will produce a written report which will include its findings. ***The report will be made available to the general public***." Ex. 9 at 1. Under these circumstances, there was no reasonable expectation that information received and generated as part of the OAG investigation would stay confidential. To the contrary, AG James promised that it would be released "to the general public." Indeed, in announcing the release of the Report on August 3, 2021, AG James promised to make the underlying evidence publicly available as well. *See* Ex. 12 at 11.

13

Third, the Requested Materials were not compiled or created for the purpose of providing legal advice, but instead were made for the purpose of generating a public report. Where the predominant purpose of communications, including draft reports and interview memoranda, is to generate a report, rather than provide legal advice, those communications are not protected by the attorney-client privilege. *See Allied Irish Banks v. Bank of Am.*, *N.A*., 240 F.R.D. 96, 104 (S.D.N.Y. 2007) (draft reports and interview memoranda created as part of an investigation with the ultimate task of a report were not privileged because the predominant purpose of communications was to create a report, not to provide legal advice).

Moreover, even if some attorney-client relationship existed between AG James and her investigators, the information should still be disclosed because purely factual information is not protected by the attorney-client privilege. On the contrary, "the privilege does not protect facts which an attorney obtains from independent sources and then conveys to his client." *Allen v. W. Point-Pepperell Inc.*, 848 F. Supp. 423, 427–28 (S.D.N.Y. 1994).

For the foregoing reasons, the OAG cannot claim attorney-client privilege over any of the documents and information sought here.

### B.   To The Extent Any Documents Were Protected by the Attorney-Client Privilege, The Privilege Was Waived

To the extent the attorney-client privilege ever applied to any of Requested Materials, that privilege was waived when the OAG released the Report to the public. *See In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 469-470 (S.D.N.Y. 1996); *see also Norton v. Town of Islip,* No. CV 04-3079 PKC SIL, 2015 WL 5542543, at *4 (E.D.N.Y. Sept. 18, 2015), *adhered to on denial of reconsideration*, No. CV043079PKCSIL, 2015 WL 13738587 (E.D.N.Y. Dec. 11, 2015). In an analogous case, a company hired a law firm to perform an investigation into trading activity by one of its prominent traders. *See In re Kidder Peabody Sec. Litig.*, 168 F.R.D. at 461–62. The firm

conducted an investigation including 120 interviews of 65 employees and authored an 85-page report summarizing in detail the facts uncovered in the investigation. *Id*. at 462. Ultimately, that report was released publicly. *Id*. at 464. The court in *Kidder* concluded that the issuance of the report and "waiver by publication" required "disclosure of those portions of interview documents that are specifically alluded to in the [] report." *Id*. at 469-470. The court also concluded that because the report had been injected into the subject of the litigation, that the balance of factual portions of interview documents had to be disclosed. *Id*.

The same reasoning applies with equal, if not greater, force here. All of the Requested Materials are alluded to in the Report, which is 165 pages long, contains 1,371 footnotes, and specifically references or alludes to all of the documents and testimony the investigators collected. *See* Ex. 10. The Report not only contains detailed allegations made by eleven complainants, but also refers to testimony and documents from numerous other witnesses.

All of the underlying documents, statements, and information containing the facts relied upon in the OAG Report must be produced, as any attorney-client privilege over those statements has been waived.

### C.    The Work Product Doctrine Does Not Protect the Requested Materials

The OAG raises work product protection as an objection to producing documents, statements and communications from third parties or witnesses, communications within the OAG and its deputies or other law enforcement, and draft and weekly reports prepared by the investigators. The proponent of the work product protection bears the "heavy burden" to establish its existence. *Favors*, 285 F.R.D. at 199–200. A document is entitled to work product protection only if it is prepared in anticipation of litigation, meaning "if in light of the nature of the document and the factual situation of the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id*. (internal quotations omitted). In

order to successfully invoke the work product protection, the proponent has the added burden of demonstrating a "real" rather than "speculative" concern that the work product will reveal counsel's thought processes in relation to pending or anticipated litigation. *Id*. (internal quotations omitted). The OAG has no claim to work product protection under the circumstances because the Requested Materials were not prepared in connection with any pending or anticipated litigation. Instead, all of the materials were created in connection with an investigation under § 63(8), where the entire plan was to release a public report.

Courts routinely reject the applicability of work product protection to investigative materials such as those at issue here. In *Allied Irish Banks v. Bank of Am., N.A.*, for example, the plaintiff bank hired an independent banking expert and law firm to investigate rogue trading by an employee, after which the plaintiff publicly issued a report containing the findings of that investigation. 240 F.R.D. at 100-102. In that case, the court noted that the report contained no suggestion that "it was engendered by any concern about litigation" and reasoned that instead, the purpose of the report was to advise the board of directors and to "provide an appropriate public response" to the misconduct at issue. *Id*. at 108. As a result, the work product protection did not apply to the documents underlying the report. The court in *Kidder* came to a similar conclusion with respect to the public report prepared by a law firm for a company regarding trading activity by one employee. In *Kidder*, the court considered that the company issued several press releases about the investigation and concluded that because litigation was not the "principal" or "dominant" motivator, notes and memoranda of interviews were created "as much for their use in serving [the company's] business needs as for their utility in preparing for litigation." 168 F.R.D. at 466. As a result, the court concluded that the company did not sustain its burden for the work product protection.

In any event, even if work product protection ever applied, it would have been waived through the release of the Report, a disclosure that is wholly inconsistent with the purpose of work product protection. *See New York Times Co. v. United States Dep't of Justice*, 939 F.3d 479, 494-496 (2d Cir. 2019). In *New York Times Co.*, the work product at issue was a memorandum of United States Attorney John Durham to then-Attorney General Eric Holder, containing recommendations regarding detainees overseas following the September 11, 2001 attacks. *Id.* Attorney General Holder subsequently issued press releases regarding Durham's recommendations. In one of those press releases, Attorney General Holder stated "Mr. Durham examined any possible CIA involvement with the interrogation of 101 detainees who were in United States custody subsequent to the terrorist attacks of September 11, 2001, a number of whom were determined by Mr. Durham to have never been in CIA custody." *Id.* at 486. The Second Circuit found those statements "sufficiently specific that they are tantamount to public disclosure of the parts of the relevant memoranda that relate to this finding" and held that the government waived the privilege over the sections of the memoranda and exhibits relating to the conclusion that a number of the detainees investigated were not in CIA custody. *Id.* at 496.

Here, not only did the OAG issue a press release including sweeping conclusions regarding the allegations and the result of the investigation, but the OAG made public the 165-page report that described in detail the investigators' findings and directly quoted documents and communications received during the course of its investigation and relayed the contents of informal witness interviews. *See* Ex. 10; Ex. 11. There is no doubt that the OAG Report is "sufficiently specific" to waive attorney work product protection over any documents underlying the OAG Report and the OAG's investigation.

1.      **The Deliberative Process Privilege Does Not Protect the Documents Sought**

The OAG objects to two categories of documents sought in Governor Cuomo's subpoena on the basis of deliberative process privilege: (i) communications within the OAG and with other Government or law enforcement entities, and (ii) any draft reports or weekly reports by the investigators. Because the deliberative process privilege does not apply to either group of documents, this objection has no merit. Even if the deliberative process privilege did apply, the information should still be disclosed.

2.      **The Deliberative Process Privilege Does Not Apply**

In order for a document to be protected by deliberative process privilege, it must be predecisional and deliberative. *Am. Civil Liberties Union v. Dep't of Def.*, No. 15 CIV. 9317 (AKH), 2017 WL 4326524, at *5 (S.D.N.Y. Sept. 27, 2017). The OAG, however, did not and cannot demonstrate that the Requested Materials are predecisional or deliberative.

A document is predecisional when it is prepared in order to assist an agency decisionmaker in arriving at his or her decision. *Id.*; *Allocco Recycling, Ltd. v. Doherty*, 220 F.R.D. 407, 411 (S.D.N.Y. 2004). More specifically, a document is predecisional if the agency can (i) pinpoint the specific agency decision to which the document correlates, and (ii) verify that the document precedes, in temporal sequence, the decision to which it relates. *Am. Civil Liberties Union*, 2017 WL 4326524, at *5. A document is not predecisional, however, if it simply analyzes compliance with current law. *Tortorici v. Goord*, 216 F.R.D. 256, 258 (S.D.N.Y. 2003). In this case, there is no agency decision to which any of the requested documents correlate. The documents generated during the investigation were not part of any agency decision-making process. Instead, the documents were prepared for the express purpose of conducting a fact investigation to assess the validity of the allegations against Governor Cuomo. *See* Ex. 9; Ex. 10.

18

A document is "deliberative" if it is actually related to the process by which policies are formulated. *Am. Civil Liberties Union*, 2017 WL 4326524, at *6 (internal quotations omitted); *see also Allocco Recycling*, 220 F.R.D. at 411–12. Protection is provided only for those documents that actually reflect "advisory opinions, recommendations, and deliberations." *Allocco Recycling*, 220 F.R.D. at 413. The documents at issue here are not "deliberative." There was no policy being formulated. Instead, the investigators were tasked with collecting factual information regarding the allegations made against Governor Cuomo and to determine whether they constituted a violation of the law.

Indeed, even if the investigators' fact gathering were related in some way to some OAG policy decision or legislative mandate, documents that simply reflect the investigators' factfinding are not protected. *See id.*, at 411–12; *see also Am. Civil Liberties Union*, 2017 WL 4326524, at *7 ("Memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government.") (internal quotations omitted); *see also Walls v. City of New York*, 502 F. Supp. 3d 686, 698 (E.D.N.Y. 2020) (declining to apply the privilege and finding defendants asserting the deliberative process privilege failed to show how the summaries by investigative bodies contained anything beyond factual recitations of misconduct complaints); *see also Playboy Enters., Inc. v. Dep't of Justice*, 677 F.2d 931, 935 (D.C. Cir. 1982) (factual report not within privilege because compilers' mission was simply "to investigate the facts" and because the report was not "intertwined with the policy-making process").

In *Allocco Recycling*, for example, an organization was commissioned by the Department of Sanitation to prepare a survey form, gather factual information, enter and reconcile the results, and create a preliminary report to summarize its findings. 220 F.R.D. at 412-413. The court

19

concluded that because the entity's role was to "obtain, record, and analyze factual material," the privilege did not apply to such factual material. *Id*. at 412. This was so even for draft documents and other "internal documents" because it is "of no consequence that documents may 'assist,' 'lead to,' or 'form the basis for' some governmental policy"—the protection is provided "only for those documents that actually 'reflect[] advisory opinions, recommendations, and deliberations.'" *Id*. at 413 (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).

Moreover, to the extent the communications or draft reports sought in the Subpoena contain some portions properly protected by the deliberative process privilege, the OAG would be required to turn over those portions of any document that are not privileged, including the factual material. *Am. Civil Liberties Union*, 2017 WL 4326524, at *6–7.

Because the OAG did not, and cannot, offer any basis for why any of the documents sought are predecisional or deliberative, the deliberative process privilege does not apply.

### 3.     If Any Documents Were Predecisional or Deliberative, They No Longer Are

The OAG should be required to disclose its communications regarding the investigation and the draft and weekly reports because to the extent any of the documents were predecisional or deliberative, they no longer are, rendering the privilege unavailing. An agency can be required to disclose a document otherwise entitled to protection under the deliberative process privilege if the agency has chosen to expressly adopt or incorporate by reference the documents in its final opinion. *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356–60 (2d Cir. 2005) (finding that because the Department of Justice embraced the Office of Legal Counsel's reasoning as its own, that the underlying memorandum prepared by the OLC could no longer be protected by the deliberative process privilege).

That result is warranted here. The OAG Report and the statements by the OAG make clear that the investigators' analysis, reasoning, and conclusion in any predecisional or deliberative materials has been adopted through the release of the final Report as well as OAG's public statements regarding that Report. Therefore, to the extent any documents were properly protected by this privilege before, they are no longer protected from disclosure.

**4.     Even If Any Documents Are Protected by the Deliberative Process Privilege, They Should Be Produced**

The deliberative process privilege is a qualified privilege. *Burbar v. Inc. Vill. of Garden City*, 303 F.R.D. 9, 13 (E.D.N.Y. 2014). In determining whether the privilege protects against disclosure, the court must weigh the party's need for disclosure against the governmental interest in confidentiality. *Id*. In determining whether to apply the qualified privilege, courts weigh the following five factors: (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *Id*. In the instant case, these factors weigh in favor of disclosure.

The Requested Materials are relevant to this litigation, as Trooper 1 has put the full contents of the OAG Report and the investigation at issue in this litigation. *Supra* Background at 7-8. The Requested Materials are not available from any other source, as the only possible source for the information gathered and relied upon by the OAG is the OAG itself. This litigation is obviously serious. Trooper 1 is alleging that Governor Cuomo sexually harassed her during his tenure as Governor. Although the government itself is not yet a party to the litigation, the OAG Report is at

the heart of this litigation.[8] Finally, there should be no concern about the possibility of timidity by government employees or witnesses, as the OAG Report was made public and the allegations made by Governor Cuomo's accusers were provided to the general public in great detail. There is therefore no reason to believe that any secrets would be revealed that have not already been published in the report.

For the foregoing reasons, the deliberative process privilege does not warrant the withholding of any of the documents for which the OAG asserts it.

### D.     The Public Interest Privilege Does Not Apply to The Requested Materials

The OAG raises the public interest privilege as an objection to every demand in Governor Cuomo's subpoena. This is not a valid basis to refuse to comply with the Subpoena.

First, multiple federal courts have expressed skepticism as to whether New York's public interest privilege even applies in federal proceedings. *See Acorn v. County of Nassau,* No. CV05-2301 JFB/WDW, 2008 WL 708551, at *2 (E.D.N.Y. Mar. 14, 2008); *Agran v. City of New York,* No. 895 CIV. 2170 JFK, 1997 WL 107452, at *2 (S.D.N.Y. Mar. 11, 1997); *Raba v. Suozzi,* No. CV061109DRHAKT, 2006 WL 8435604, at *19 (E.D.N.Y. Nov. 17, 2006).

Second, a governmental agency seeking to assert the privilege must "come forward and show that the public interest would indeed be jeopardized by a disclosure of the information." *Acorn*, 2008 WL 708551, at *2. Application of the privilege may be denied where the asserting party fails to make a particularized showing of the privacy issues at stake. *Id.* (declining to find the public interest privilege applied to the disclosure of documents because the "generalized statement" by Nassau County that there would be a "chilling effect" on the thought processes of

---

[8] Moreover, Trooper 1 filed a corresponding complaint with the EEOC against Governor Cuomo, the New York State Police, and New York State. And Trooper 1 has advised the court that she intends to amend her complaint again once she receives a right-to-sue letter from the EEOC.

officials was insufficient to assert the privilege); *see also Woodard v. City of New York*, No. 99 CV 1123(ILG), 2000 WL 516890, at *5 (E.D.N.Y. Mar. 10, 2000) (concluding that the District Attorney's office failed to offer "specific support" for its claim of public interest privilege asserted with respect to documents sought through the plaintiff's subpoena).

In this case, where AG James has already made public numerous sensitive details concerning the allegations against Governor Cuomo and selectively released certain evidence underlying the Report, where AG James has publicly accused him of sexually harassing numerous women (including calling him a "sick pathetic man" and a "serial sexual harasser"), *see* Ex. 19, and where a plaintiff has filed a federal lawsuit accusing him of wrongdoing, it is difficult to fathom what public interest is at stake in avoiding a full disclosure of the record underlying the Report.[9] This is particularly so given that there will be a protective order entered in the underlying litigation. Further, to the extent the OAG would argue that disclosure of information could have a chilling effect on witnesses in future investigations, this argument has been flatly rejected where the information has already been made public. *See Agran*, 1997 WL 107452, at *1–2 (rejecting that disclosure of witness's address would have chilling effect on witnesses in future investigations where the Bronx DA failed to offer support for why the witness's address, already announced in open court in a criminal proceeding, would be protected from disclosure by the public interest privilege).

---

[9] A protective order in place would also obviate the need for the OAG to pick and choose what information to disclose or redact – a luxury it should not have given that many of the redactions in the publicly released documents appeared to be strategic rather than necessary. While some of the redactions appear to pertain to purely personal issues, other redactions appear designed to mask information that either exculpates Governor Cuomo or casts doubt on the credibility of certain witnesses. *See* Ethics Complaint, *supra* note 6, at 45-47.

Finally, even if there were some conceivable harm that might be caused by the disclosure of this information, Governor Cuomo's need for the information clearly outweighs any potential harm. *Supra* Section I.

### E.   The Law Enforcement Privilege Does Not Protect the Documents Sought by Governor Cuomo

The OAG broadly raises the law enforcement privilege as an objection to every demand in the Governor's Subpoena and every category of document sought. The law enforcement privilege does not, however, protect from disclosure any of the Requested Materials.

### 1.   The Law Enforcement Privilege Does Not Apply

A party asserting the law enforcement privilege bears the burden of showing that the privilege applies. *See Benn v. City of New York*, No. 18CV722LGSOTW, 2019 WL 6717186, at *1 (S.D.N.Y. Dec. 10, 2019); *Goodloe v. City of New York*, 136 F. Supp. 3d 283, 293–94 (E.D.N.Y. 2015). The purpose of the law enforcement privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation. *See, e.g.*, *Kunstler v. City of New York*, Nos. 04 Civ. 1145, 04 Civ. 665 & 04 Civ. 2611, 2005 WL 2656117, at *1 (S.D.N.Y. Oct. 18, 2005). Parties asserting the law enforcement privilege must first "make a clear and specific showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted, and they may not rely simply on generalized reiterations of the policies underlying the privilege." *Id*. Where the proponent of the law enforcement privilege fails to show the harm of disclosure, the application of the law enforcement privilege should be rejected. *Walls*, 502 F. Supp. 3d at 698–99; *Benn*, 2019 WL 6717186, at *2.

The OAG cannot establish that the law enforcement privilege applies to the Requested Materials. There is no concern that disclosure will interfere with a current investigation, as all law enforcement investigations have concluded. There is no concern regarding the protection of witnesses, as many have already been identified or are easily found. *See Schiller v. New York*, 252 F.R.D. 204, 208 (S.D.N.Y. 2008) (considering that media reports publicizing undercover NYPD intelligence were widely circulated, thereby reducing any harm caused by reports that revealed NYPD officers or informants attended meetings of activist groups); *see also Floyd v. City of New York*, 739 F. Supp. 2d 376, 386–87 (S.D.N.Y. 2010) (considering that officers under investigation by the IAB likely already knew they were being investigated, further diminishing any possibility that disclosure would negatively impact the investigations at issue). And there is no concern over protecting law enforcement techniques here, as a public report was issued detailing the process undertaken by the OAG.

    **2.**    **Even if the Law Enforcement Privilege Did Apply, The Requested Materials Should Still Be Disclosed**

To the extent the OAG can make a threshold showing that the law enforcement privilege attaches, the court must then balance the public interest in nondisclosure against the need of the particular litigant for the privileged information. *See, e.g.*, *Floyd*, 739 F. Supp. 2d at 384. Governor Cuomo has a compelling need for the information and the information is largely unavailable from other sources. The information sought by Governor Cuomo's subpoena is highly relevant to this case, as Trooper 1 relies heavily on the OAG Report and its conclusions in her Amended Complaint and these files are likely to be the sole source of information regarding the investigation and the facts underlying the OAG Report. These factors militate towards disclosure of the material sought. *See id.*; *MacNamara v. City of New York*, 249 F.R.D. 70, 94 (S.D.N.Y. 2008).

Finally, there are reasonable options to mitigate any harm in the disclosure of these materials. The parties in the Trooper 1 Action intend to agree to a protective order that would allow for the designation of documents as confidential as necessary. To the extent the court determines that is insufficient, courts have approved the use of an attorney's eyes only designations for highly sensitive materials. *See, e.g.*, *MacNamara*, 249 F.R.D. at 80.

## III.   THERE IS NO UNDUE BURDEN TO THE OAG IN RESPONDING TO THE SUBPOENA

The OAG objects to every demand in Governor Cuomo's subpoena as unduly burdensome. There is, however, no undue burden to the OAG in responding to the Governor's subpoena. As an initial matter, the OAG bears the burden of showing that the subpoena is unduly burdensome. *See MacNamara v. City of New York*, No. 04CIV.9612(KMK)(JCF), 2006 WL 3298911, at *15–16 (S.D.N.Y. Nov. 13, 2006). An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. Whether a subpoena imposes an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id*. Just because a large number of documents are sought, it does not follow that there is an undue burden. Indeed, in *MacNamara*, the court reasoned that although there was a large number of documents requested from the DA, the DA was used to responding to "hundreds of requests from civil litigants each year" and noted that the subpoena requested a specific set of documents from a specific time period, for which the DA was the only source. *Id*. at 16.

The same logic applies here. Although the subpoena may technically call for a high volume of documents, it should not be a burden for the OAG to produce them. Indeed, it appears they are well-organized based on the citations in the Report, which reflect that the documents are bates

stamped and contained in a universe related to this specific investigation and Report. *See* Ex. 10. Moreover, presumably documents the OAG received from third parties were sent to them in an easily packaged format, which the OAG could easily recreate. Additionally, the OAG and AJC apparently shared information from their investigations, suggesting that this is indeed a very possible task. *See* Ex. 13. Given the emphasis on the thorough and exhaustive nature of the OAG Report, it strains credulity that the OAG would somehow be unable to find and send the materials relied upon in generating that Report.

## IV. CONFIDENTIALITY CONCERNS ARE NOT A PROPER BASIS TO WITHHOLD THE REQUESTED MATERIALS

The OAG objects to producing two categories of documents based on the notion that the responsive documents would contain information protected from disclosure by New York Civil Rights Law § 50 or otherwise "confidential" or "private" information. Those objections, however, must fail.

### A. Civil Rights Law §50 Is Inapplicable

The OAG objects to multiple requests on the grounds that the information sought is protected by New York Civil Rights Law §50-b. But NYCRL §50-b has no application in this context. NYCRL §50-b is inapplicable "to actions in which there has been no criminal proceeding commenced." *See Doe v. MacFarland*, 66 Misc. 3d 604, 633 (N.Y. Sup. Ct. 2019) (citing *Doe v. Good Samaritan Hosp.*, 65 Misc. 3d 987, 110 N.Y.S.3d 830 (N.Y. Sup. Ct. 2019)). There is no criminal action at issue in this case or with respect to any of the materials sought by the OAG Subpoena. This matter is a civil, not criminal, proceeding. The documents sought by the Subpoena that relate to the OAG Report likewise do not implicate any commenced criminal proceeding.

Second, NYCRL §50-b "grants victims of sex offenses a right to privacy that protects against disclosure of their identities in publicly available documents." *Clarke v. Griffin,* No.

13CIV4812NSRJCM, 2017 WL 11571793, at *1 n. 2 (S.D.N.Y. May 11, 2017), *report and recommendation adopted*, No. 13CV4812NSRJCM, 2020 WL 6365971 (S.D.N.Y. Oct. 28, 2020). No documents produced by OAG in this case are at risk of being "publicly available," unless the OAG or the court permitted them to be. As discussed above, there will be a protective order in this case allowing the OAG to designate documents "confidential," and to the extent any identifying information would be made public in court filings or proceedings, courts in this District regularly anonymize references to any individual protected under §50-b. *See, e.g., Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 109 n. 4 (2d Cir. 2000) ("In light of New York Civil Rights Law § 50–b, which provides that the identities of the victims of sex offenses be kept confidential by the State, we refer to the victim of Lucidore's crime as 'MT.'"); *Murphy v. Warden of Attica Corr. Facility*, No. 20CIV3076PAEGWG, 2022 WL 1145050, at *2 n. 3 (S.D.N.Y. Apr. 19, 2022). Indeed, while not pursuant to NYCRL §50-b, the Plaintiff in this matter is proceeding pseudonymously as "Trooper 1," without any objection from Defendants. *Supra* note 1.

For these reasons, the OAG has not, and cannot, claim that the production of relevant documents in response to Governor Cuomo's Subpoena puts the identities of victims of criminal sex offenses at risk of being publicly disclosed.

### B.  The OAG's Generalized Confidentiality Concerns Are Not Proper Objections to Disclosure

In addition to its objections related to Civil Rights Law § 50, the OAG objects to the same Requested Materials based on concerns that the materials include "private or otherwise confidential" information. This objection is inappropriate and must fail.

There will be a protective order in place specifically envisioned to protect information that producing parties consider to be (and can be designated as) "confidential." *See Coventry Capital US LLC v. EEA Life Settlements Inc.*, No. 17 Civ. 7417 (VM) (SLC), 2020 WL 7383940, at *9

(S.D.N.Y. Dec. 16, 2020) (compelling defendant to produce unredacted documents because it identified "no persuasive grounds to depart from the general rule prohibiting relevance redactions" and because any "confidential or highly sensitive documents" could be "designated as confidential"), *objections overruled*, No. 17 Civ. 7417 (VM), 2021 WL 961750 (S.D.N.Y. Mar. 15, 2021). This protective order can undoubtedly provide the necessary protection to any private or confidential information produced by the OAG, including materials over which it has asserted any qualified privilege discussed above. *MacNamara*, 249 F.R.D. at 94.

## V.      THE OAG'S REMAINING OBJECTIONS SHOULD BE REJECTED

The OAG also objects to certain document demands on the basis that they are "vague and ambiguous" or seek "information already publicly available." These objections do not amount to a proper basis to withhold documents from production. Not only were the demands in the subpoena sufficiently clear to identify the documents sought, but according to the OAG, they were sufficiently clear as to warrant the OAG's assertion of multiple privileges that would require a detailed understanding of the documents at issue. With respect to the objection regarding "publicly available" documents, while the OAG may be correct that certain materials sought are publicly available, the OAG is well-aware that the majority of the Requested Materials are not publicly available, as made obvious by the OAG's numerous privilege and confidentiality objections.

## **CONCLUSION**

For the foregoing reasons, Governor Cuomo respectfully requests that the Court compel

the production of the materials sought in his subpoena to the OAG.

Dated: New York, New York
       October 5, 2022

Respectfully submitted,

   */s/ Theresa Trzaskoma*

Theresa Trzaskoma
Allegra Noonan
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

Glavin PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

*Counsel for former Governor*
*Andrew M. Cuomo*

**APPENDIX**

| # | Subpoena Document Request |
|---|---|
| 1 | All documents concerning any efforts to investigate sexual harassment allegations against Governor Cuomo prior to February 28, 2021. |
| | **RESPONSE***: The OAG objects to Request No. 1 on the ground the request is vague and ambiguous, overly broad, unduly burdensome, not proportional to the needs of the case, and calls for information beyond the scope of Rule 26(b)(1). The OAG further objects on the ground that such request calls for documents and information protected by the privileges applicable to attorney-client communications, attorney work product, law enforcement, deliberative process and public interest. Finally, the OAG also objects to this request to the extent it calls for copies of documents readily obtainable from the OAG's publicly available website. Subject to and without waiving all objections, the OAG responds that it does not possess any non-privileged documents concerning any efforts to investigate sexual harassment allegations against Governor Cuomo prior to February 28, 2021. |
| 2 | All subpoenas or other information requests or demands issued by the OAG in connection with the Investigation. |
| | **RESPONSE**: The OAG objects on the grounds that such request is overly broad, unduly burdensome, not proportional to the needs of the case, and calls for documents and information beyond the scope of civil discovery under Rule 26(b)(1). The OAG further objects on the ground that such request calls for documents and information protected by the privileges applicable to law enforcement and the public interest. The OAG further objects to such request to the extent it calls for copies of documents or information readily obtainable by Defendant Cuomo from the OAG's website, including subpoenas issued to witnesses whose materials are available on the website. Subject to and without waiving all objections, and subject to the entry of a so-ordered stipulated confidentiality agreement and protective order, the OAG will produce in response to Request No. 2 the following documents concerning the Investigation that are potentially relevant to the claims and defenses raised by Plaintiff in the Amended Complaint: copies of subpoenas not published on the website that were issued to witnesses or custodians who provided testimony relevant to Trooper 1 or provided documents relevant to Trooper 1. |
| 3 | All evidence gathered in connection with the Investigation, including but not limited to: <br> a. All documents produced or provided to the OAG by third parties in connection with the Investigation. <br> b. All documents concerning or reflecting witness statements made in connection with the Investigation, including but not limited to any summaries or notes of witness interviews. <br> c. All videos and transcripts of testimony taken by OAG as part of the Investigation in unredacted form. |

| # | Subpoena Document Request |
|---|---|
| | **RESPONSE**: The OAG objects on the grounds that such request is overly broad, unduly burdensome, not proportional to the needs of the case, and calls for documents and information beyond the scope of civil discovery under Rule 26(b)(1). The OAG further objects on the ground that such request calls for documents and information protected by the privileges applicable to attorney-client communications, attorney work product, law enforcement and the public interest. The OAG further objects to the extent this request calls for information or documents prohibited from disclosure by New York Civil Rights Law § 50-b or contain private or otherwise confidential information. Subject to and without waiving all objections, and subject to the entry of a so-ordered stipulated confidentiality agreement and protective order, the OAG will produce the following documents concerning the Investigation that are potentially relevant to the claims and defenses raised by Plaintiff in the Amended Complaint: documents collected in the course of the Investigation which are not available on the OAG's public website that reference Trooper 1 by name. |
| 4 | All documents reflecting or concerning communications:<br>a. Between the OAG and any witness in the Investigation, including individuals or entities providing documents, statements, or testimony to the OAG.<br>b. Between the OAG and any attorney for a witness or entity in connection with the Investigation, including but not limited to any agreements or understandings concerning witness testimony, interviews, attorney proffers, and/or production of documents in response to information requests or subpoenas.<br>c. Between OAG and any district attorney's office relating to evidence collected in the Investigation.<br>d. Between OAG and the U.S. Department of Justice relating to evidence collected in the Investigation. |
| | **RESPONSE**: The OAG objects on the grounds that such request is overly broad, unduly burdensome, not proportional to the needs of the case, and calls for documents and information beyond the scope of civil discovery under Rule 26(b)(1). The OAG further objects on the ground that such request calls for documents and information protected by the privileges applicable to attorney-client communications, attorney work product, law enforcement, public interest, and deliberative process. The OAG further objects to the extent this request calls for information or documents prohibited from disclosure by New York Civil Rights Law § 50-b or contain private or otherwise confidential information.  Subject to and without waiving all objections, the OAG refers to its response to Request No. 3. |
| 5 | All drafts of the OAG Report. |
| | **RESPONSE**: The OAG objects on the grounds that such request is overly broad, unduly burdensome, not proportional to the needs of the case, and calls for documents and information beyond the scope of civil discovery under Rule 26(b)(1). The OAG further objects on the ground that such request calls for documents and information protected by the privileges applicable to attorney-client communications, attorney work product, law enforcement, deliberative process and the public interest. |

| # | Subpoena Document Request |
|---|---|
| 6 | Reports by the OAG Special Deputies to the Attorney General or First Deputy Attorney General on the Investigation. |
| | **RESPONSE**: The OAG objects on the grounds that such request is overly broad, unduly burdensome, not proportional to the needs of the case, and calls for documents and information beyond the scope of civil discovery under Rule 26(b)(1). The OAG further objects on the ground that such request calls for documents and information protected by the privileges applicable to attorney-client communications, attorney work product, deliberative process and law enforcement. |