UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

ANDREW M. CUOMO,                           :
                                           :
                        Movant,            :    1:22-mc-03044 (LDH)(TAM)
                                           :
        - against -                        :
                                           :
OFFICE OF THE NEW YORK STATE               :
ATTORNEY GENERAL,                          :
                                           :
                        Defendant.         :

---------------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION TO
QUASH AND IN OPPOSITION TO MOVANT'S MOTION TO COMPEL**

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

Attorney for Defendant

Andrew Amer
Serena Longley
Michael Jaffe
Tamikka Pate

    of Counsel

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND .................................................................................................... 4

    A.  The Referral and OAG Investigation Report ................................................. 4

    B.  Movant's Relentless Campaign to Attack OAG's Investigation ................................. 5

    C.  Trooper 1's AC and Cuomo's Subpoena to OAG ....................................... 7

STANDARD OF REVIEW ..................................................................................... 9

ARGUMENT ....................................................................................................... 10

I.   THE COURT HAS NO SUBJECT MATTER JURISDICTION BASED ON OAG'S
    BROAD STATE SOVEREIGN IMMUNITY ....................................................... 10

II.  THE SUBPOENA SHOULD BE QUASHED BECAUSE THE DISPUTED
    MATERIAL IS IRRELEVANT AND NOT PORPORTIONAL TO THE NEEDS OF
    THE TROOPER 1 ACTION ............................................................................... 14

    A.  The Disputed Material Has No Relevance to Trooper 1's Causes of Action ............. 15

    B.  Movant's Subpoena Is Not Proportional To The Needs Of The Case........................ 17

        1.  Movant's Subpoena Imposes an Undue Burden on Non-Party OAG............. 18

        2.  The Subpoena Demands are not Proportional to the Needs of the Case ........ 21

III. THE DISPUTED MATERIAL IS PROTECTED FROM DISCLOSURE BASED ON
    SEVERAL APPLICABLE PRIVILEGES ........................................................... 22

    A.  Disputed Material Is Protected By The Attorney/Client Privilege And Work
        Product Doctrine ......................................................................................... 22

    B.  Disputed Material Is Protected By the Law Enforcement Privilege........................ 26

    C.  Disputed Material Is Protected From Disclosure Under the Deliberative
        Process Privilege ......................................................................................... 29

CONCLUSION ..................................................................................................... 30

TABLE OF AUTHORITIES

**Cases**

*Abdou v. Gurrieri*, No. 05-cv-3946, 2006 WL 2729247 (E.D.N.Y. Sept. 25, 2006) .................. 13

*Alden v. Maine*, 527 U.S. 706 (1999) ....................................................................... 12

*Allied Irish Banks v. Bank of Am., N.A.,* 240 F.R.D. 96 (S.D.N.Y. 2007)..................................... 30

*Alltel Comm'ns, LLC v. DeJordy*, 675 F.3d 1100 (8th Cir. 2012)........................................... 14, 15

*Beaulieu v. Vermont*, 807 F.3d 478 (2d Cir. 2015)....................................................... 12

*Belvin v. Electchester Mgmt., LLC*, No. 17 CV 6303, 2022 WL 10586743
    (E.D.N.Y. Oct. 18, 2022)........................................................................... 18

*Bhatt v. Lalit Patel Phusician P.C.*, No. 18-cv-2063, 2020 WL 13048694 (E.D.N.Y.
    2020) ................................................................................................. 24

*Blue Angel Films, Ltd. v. First Look Studios, Inc.*, No.   08-cv-6469, 2011 WL 830624
    (S.D.N.Y. March 9, 2011) ......................................................................... 20

*Bonnet v. Harvest (U.S.) Holdings, Inc.,* 741 F.3d 1155 (10th Cir. 2014) ................................. 14

*Catskill Dev't, LLC v. Park Place Entertainment Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002).......... 15

*Chen-Oster v. Goldman Sachs & Co.,* 293 F.R.D. 557 (S.D.N.Y. 2013).................................... 19

*Cirale v. 80 Pine Street Corp*, 35 N.Y.2d 113 (1974) ................................................. 35

*Citizens Union of City of N.Y. v. Attorney General of N.Y.*, 269 F. Supp. 3d 124
    (S.D.N.Y. 2017)...................................................................................... 10

*City of New York v. Blue Rage Inc.*, No. 17-cv-3480, 2018 WL 2709203 (E.D.N.Y. June
    5, 2018 ............................................................................................... 24

*Corbett v. eHome Credit Corp.*, No. 10-cv-0026, 2010 WL 3023870 (E.D.N.Y
    August 2, 2010)................................................................................. 10, 24

Curtis v. Citibank, N.A., 70 Fed.Appx. 20 (2d Cir.2003)............................................... 18

*Dorsett v. County of Nassau*, 762 F.Supp.2d 500 (E.D.N.Y. January 14, 2011).................. 32, 34

*Dugan v. Rank*, 372 U.S. 609 (1963) ............................................................... 14, 16, 17

*Ebbert v. Nassau County*, No. 05-cv-5445, 2007 WL 674725 (E.D.N.Y. March 5, 2007) .................................................................................................................. 11, 21

*Ex parte Ayers*, 123 U.S. 443 (1887) ........................................................................ 17

*Garrett v. Metro. Life Ins. Co.,* No. 95-cv-2406, 1996 WL 325725 (S.D.N.Y. June 12, 1996) .......................................................................................................................... 31

*Hans v. Louisiana*, 134 U.S. 1 (1890) ...................................................................... 11

*Hickman v. Taylor*, 329 U.S. 495 (1947) ................................................................. 27

*In re 650 Fifth Avenue and Related Properties*, No. 08-cv-10934, 2013 WL 12335763 (S.D.N.Y. August 29, 2013) ....................................................................................... 22

*In re County of Erie*, 473 F.3d 413 (2nd Cir. 2007) ................................................. 30

*In re Fitch Inc.*, 330 F.3d 104 (2d Cir. 2003) ........................................................... 10

*In re Franklin Nat. Bank Securities Litigation*, 471 F. Supp. 577 (E.D.N.Y. Aug. 3, 1979) ............................................................................................................................ 36

*In re General Motors LLC Ignition Switch Litigation*, 80 F.Supp.3d 521 (S.D.N.Y. January 15, 2015)........................................................................................... 28, 29, 30

*In re Grand Jury Subpoena*, 341 F.3d 331 (4th Cir. 2003). ...................................... 29

*In re Horowitz*, 482 F.2d 72 (2d Cir. 1975) ............................................................. 11

*In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459 (S.D.N.Y. 1996) ......................... 31

*In re Missouri Dept. of Natural Res.*, 105 F.3d 434 (8th Cir. 1997) .................... 14, 35

*In re S.E.C. ex rel. Glotzer*, 374 F.3d 184 (2d Cir.2004)......................................... 13

*In re The City of New York*, 607 F.3d 923 (2d Cir. 2010) .................................... 32, 34

*Kelly v. City of New York*, No. 01-cv-8906, 2003 WL 548400 (S.D.N.Y. Feb. 24, 2003) ............................................................................................................................ 34

*Lake County Estates v. Tahoe Regional Planning Agency*, 440 U.S. 391 (1979) ....... 13

*Land v. Dollar*, 330 U.S. 731 (1947) ........................................................................ 16

*Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682 (1949)........................ 16, 17

*Leibovitz v. New York City Transit Auth.*, 252 F.3d 179 (2d Cir. 2001)........................................ 19

*Lora v. Board of Ed. Of City of New York*, 74 F.R.D. 565 (E.D.N.Y. May 12, 1977) ................ 35

*MacNamara v. City of New York*, 249 F.R.D. 70, 94 (S.D.N.Y. 2008)........................................ 35

*Malibu Media, LLC v. Doe,* No. 15-cv-3147, 2016 WL 5478433 (S.D.N.Y. 2016) ................... 10

*New Falls Corporation v. Soni*, No. 16-cv-6805, 2020 WL 2836787 (E.D.N.Y. May 29, 2020)............................................................................................................... 22, 25

*New York Times Co. v. United States Dep't of Justice,* 939 F.3d 479 (2d Cir. 2019) ................................................................................................................................... 31

*NRLB V. Sears, Roebuck & Co.,* 421, U.S. 132 (1975) .................................................... 36

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)................................................... 20, 21

*Papasan v. Allain*, 478 U.S. 265 (1986) ................................................................................ 11

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)................................................ 12

*Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425 (1997) ............................................................ 12

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168 (1975) ............................... 36

*Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426 (2d Cir.1999) ........................ 12

*Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022) ........................................................................ 15, 16

*Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978)................................................................. 15

*Sasikumar. Brooklyn Hosp. Center*, No. 09-cv-5632, 2011 WL 1642585 (E.D.N.Y. May 2, 2011) ............................................................................................ 18

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996)........................................................... 12, 17

*Sibley v. Choice Hotels International*, No. 14- cv-634, 2015 WL 9413101 (E.D.N.Y. December 22, 2015)............................................................................................ 21, 22

*Sinni v. Forest Hills Hosp.,* No. 09-cv-4572, 2011 WL 1004817 (E.D.N.Y. March 18, 2011) ....................................................................................................................... 18

*Thompson v. Lynbrook Police Dep't,* 172 F.R.D. 23 (E.D.N.Y. 1997) ........................................ 37

*U.S. EPA v. General Elec. Co.*, 197 F.3d 592 (2d Cir. 1999), *amended on reh'g*,
212 F.3d 689 (2d Cir. 2000) ................................................................ 13, 14, 17

*U.S. v. Sanders*, 211 F.3d 711 (2d Cir. 2000) ............................................. 10

*United State v. Adlman*, 134 F.3d 1194 (2d Cir.1988) ........................... 27, 31

*United States v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97 (S.D.N.Y. 1979) .......... 21

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ................................. 4, 27

*Vaigasi v. Solow Management Corp.*, No. 11-cv-5088, 2016 WL 616386 (S.D.N.Y.
February 16, 2016) .................................................................................. 22

*Woodard v. City of New York*, No. 99-cv-1123, 2000 WL 516890 (E.D.N.Y. March 10,
2020) ........................................................................................................ 35

## Statutes

Administrative Procedures Act, 5 U.S.C. § 702 ...................................... 12

Executive Law § 63(8) ........................................................................ 4, 29

Fed. R. Civ. P. Rule 26 ............................................................ 10, 18, 19, 22

Fed. R. Civ. P. Rule 45 ............................................................... 9, 17

Defendant The Office of the New York Attorney General ("OAG") respectfully submits this memorandum of law, along with the accompanying Declaration of Serena Longley, dated November 8, 2022 ("Longley Decl.") with exhibits, and Declaration of Ye Eun Charlotte Chun, dated November 8, 2022 ("Chun Decl."), in support of OAG's cross-motion to quash ("Cross-Motion") and in opposition to Movant's motion to compel (ECF No. 1) ("Motion").

## PRELIMINARY STATEMENT

In a report published on August 3, 2021 ("Report"), OAG investigators concluded that Movant had sexually harassed several women who were current and former state employees, including a state trooper assigned to his security detail ("Trooper 1"), based on his unwelcome and nonconsensual touching and sexually suggestive comments. Following the issuance of the Report, and in the midst of an open impeachment investigation, Movant announced he would resign as governor of New York on August 24, 2021.

Starting months before OAG issued its Report and continuing to this day, Movant has pursued a relentless campaign to undermine the Report and rehabilitate his reputation. The nonparty subpoena Movant served on OAG at issue in this action ("Subpoena") is just part of this strategy. It has nothing to do with any legitimate effort to obtain documents and information necessary for Movant to defend himself against the harassment and retaliation claims asserted by Trooper 1; indeed, OAG has already agreed to provide Movant with the few documents collected during the investigation that reference Trooper 1 and are not already published on OAG's website. Those are the only documents that could have any bearing on Trooper 1's lawsuit against Movant. The rest are being sought simply to continue Movant's misguided and baseless attempts to attack OAG and its investigation. For this reason and others, Cuomo's Motion should be denied and the Subpoena should be quashed.

As a threshold matter, this miscellaneous action to enforce the Subpoena against OAG is a judicial proceeding that triggers OAG's broad state sovereign immunity and is therefore barred. But even if the Court were to reach the merits (which it should not do), the Subpoena should be quashed because Movant is seeking material not for any legitimate purpose but solely to advance his personal crusade to challenge OAG's investigation and attack the Attorney General and OAG investigators. Litigants have no entitlement to use nonparty discovery to advance their agendas on matters unrelated to the defense of the underlying claims asserted against them.

Here, the materials Movant seeks from OAG's investigation are irrelevant to the claims asserted by Trooper 1 in her amended complaint ("AC"). Although Movant asserts that the AC includes "dozens of paragraphs of findings from the OAG's investigation and allegations regarding other women who Trooper 1 did not know and did not work with," and "relies almost exclusively upon the [Report's] findings for the allegations involving those other women," that is not the case. Memorandum of Law in Support of Movant's Motion (ECF No. 2) ("Movant MOL") at pgs. 2, 7. The AC refers to the conclusions and findings of the Report in just a single paragraph (¶4). Not surprisingly, Trooper 1's claims of being sexually harassed by Movant rest on her own personal experiences being harassed by him – not on an investigation conducted months and years after the alleged harassment. The foundation upon which the Motion rests – that the claims asserted by Trooper 1 in her AC inexorably rely on the findings and conclusions in the Report, thereby making discovery of every piece of paper related to the investigation essential to Movant's ability to mount a defense in the Trooper 1 Action – is plainly flawed.  The OAG investigation did not impact – and as a practical matter could not have impacted – the alleged sexual harassment that occurred prior to the OAG investigation.

Nothing about the conduct of the OAG investigation or its investigative materials have any

relevance to the allegations against which Movant must defend in Trooper 1's action. That the AC includes sworn testimony and excerpts from exhibits received during the investigation from other witnesses does not make OAG's investigation any more relevant, particularly where Trooper 1 has not brought claims alleging an agency-wide pattern or practice of discrimination, but instead alleges specific instances of sexual harassment and retaliation against her. Movant already has the sworn testimony and exhibits quoted in the AC and OAG has agreed to provide Movant with the handful of documents collected during the investigation referencing Trooper 1. The remaining documents collected or generated during the investigation that do not relate to Trooper 1 ("Disputed Material") are simply irrelevant.

In any event, even if the Court were to conclude that some of the Disputed Material could have some possible relevance to Trooper 1's claims, the demand for such material is not proportional to the needs of the case, especially considering the undue burden that producing the material would impose on OAG (at significant taxpayer expense). Contrary to Movant's assertion that production would be a simple task because the material is "well-organized" in an "easily packaged format" (Movant MOL at 26-27), any production would require a time-consuming review and redaction process to protect highly sensitive information, including sensitive details about witnesses – such as medical information, sexual histories, details about their family, addresses and other personally identifying information, and their confidential employment information – as well as security protocols, floorplans, and security footage. This is why the investigative materials OAG previously released to the public took months to roll out.

Finally, apart from the lack of relevance and proportionality, the Disputed Material is largely protected from disclosure under a number of applicable privileges. First, the investigative materials shared between the investigation team and OAG are protected from disclosure by the

attorney-client privilege under *Upjohn Co. v. United States*, 449 U.S. 383 (1981), and internal memos generated by the investigation team are work product. Second, most of the Disputed Material contains information pertaining to law enforcement techniques as well as private and sensitive information about witnesses that would, if disclosed, impair the ability of OAG to conduct future investigations, and is therefore protected from disclosure under the law enforcement privilege. Third, much of the Disputed Material, including internal communications among the investigation team members and weekly status reports, reflects opinions, recommendations, and deliberations relating to the findings and conclusions incorporated into the Report, and is therefore protected from disclosure under the deliberative process and public interest privileges.

## BACKGROUND

### A.    The Referral and OAG Investigation Report

By letter dated March 1, 2021, Movant, as Governor, referred allegations of sexual harassment against himself to OAG for investigation pursuant to New York Executive Law § 63(8) ("§ 63(8)") (the "Referral Letter"). Longley Decl., Ex. 1. In the Referral Letter, Movant directed OAG to select an independent law firm to conduct the § 63(8) inquiry ("Investigation"), while acknowledging "that nothing in this letter is intended to constrain or limit the powers inherent in § 63(8)," which grants OAG discretion to appoint and determine the duties of non-governmental "deputies" for the purpose of inquiring into referred matters. *Id*. While § 63(8) provides for weekly reports to OAG from appointees, if any, to be in a form approved by the governor and to be provided in duplicate to the governor, the Referral Letter waived Movant's approval or receipt of the weekly reports because Movant was the subject of the Investigation. Longley Decl. ¶¶ 7-8.

Beginning on March, 8, 2021, OAG began appointing an "Investigative Team," led by private attorneys, Joon Kim of Cleary Gottlieb Steen & Hamilton LLP and Anne Clark of Vladeck, Raskin & Clark, P.C., and empowered them to issue subpoenas to investigate and report on

4

allegations of sexual harassment by Cuomo and surrounding circumstances. *Id*. ¶ 12 , Ex. 4. On March 8, 2021, the Investigative Team began an independent investigation, which closed on August 3, 2021 with the release of the Report and 111 supporting exhibits concluding that Movant sexually harassed several women. *Id*. ¶¶ 15-16. The Investigative Team interviewed 179 individuals, taking testimony under oath from 41 of them, and collected over 74,000 documents. *Id*. ¶¶ 15-16; Chun Decl. ¶ 3.

Given the public significance and interest in the Report, OAG decided to make nonprivileged materials from the Investigation, specifically on-the-record testimony and approximately 1000 exhibits to that testimony, available to the public in redacted form to protect witness confidentiality and privacy. Longley Decl. ¶ 22. The review and redaction process for public release of on-the-record testimony and just over 1000 of the 74,000 collected documents took the Investigative Team approximately 3,600 hours to complete due to the highly sensitive and confidential nature of the information contained in the materials. Chun Decl. ¶¶ 8-10. Due to both the amount of time that review and redaction consumed and requests from several law enforcement offices to delay releasing material because of their own ongoing investigations, OAG publicly released these documents on a rolling basis between November 2021 and January 2022. Longley Decl. ¶¶ 23, 27-32. Without waiving any privileges, OAG has cooperated with several other governmental agencies conducting their own investigations into overlapping allegations against Movant, including an impeachment investigation conducted by the New York Assembly Judiciary Committee ("Impeachment Investigation"). Longley Decl. ¶¶ 21, 24-26

### B.    Movant's Relentless Campaign to Attack OAG's Investigation

Facing multiple allegations of sexual harassment in March 2021, Movant announced he would not resign, instead asking the public to reserve judgement on the allegations of sexual

harassment against him until OAG's Investigation concluded. Longley Decl. ¶¶ 9-11, Exs. 2, 3. Yet within days of the § 63(8) appointments of Kim and Clark, OAG learned that members of Movant's inner circle were more privately seeking out negative information about Kim and Clark to prepare in the event the outcome of the Investigation was not favorable. Longley Decl. ¶ 18; Chun Decl. ¶ 4. Throughout the Investigation, the Investigative Team learned of multiple efforts by Movant's advisors to obtain negative information about the Investigative Team and women who had accused the governor of misconduct. *Id*. The day after the Report was issued, counsel to the Executive Chamber (part of the office of the Governor) wrote to OAG attacking the unfavorable Report, largely based on purportedly negative information about and attacks on Kim and Clark and also complaining about their client's lack of access to underlying materials from the Investigation. Longley Decl. ¶¶ 41-43, Ex. 9.

Independent of the subpoena he served on OAG in the Trooper 1 Action, Movant has called for access to materials from the Investigation on more than a dozen occasions. Longley Decl. ¶ 43, Ex. 9. Movant's attempts to obtain materials from OAG beyond what has been made publicly available on OAG's website have been uniformly unsuccessful. *Id*. ¶ 44. During and immediately after the Investigation, Movant, through counsel (including counsel who is representing Movant in the Trooper 1 Action and this related subpoena enforcement action), requested access to his testimony on multiple occasions, despite being previously notified that the legal provisions pursuant to which testimony was taken (§ 63(8) and N.Y. Civil Rights Law § 73) do not entitle witnesses to access their testimony and that it is not OAG's practice to provide witnesses access to their testimony apart from access granted to the public, if any. Longley Decl. ¶ 19; Chun Decl. ¶ 4. Unsuccessful, Movant intensified his efforts by serving the Subpoena seeking every shred of paper collected or created in the Investigation and subsequently, in September 2022, filing a 48-

page letter with the Attorney Grievance Committee of the First Judicial Department attacking the Investigation and calling for the underlying investigative materials, which he styled as an attorney ethics complaint against the Attorney General, Kim and Clark (something his counsel had announced his intention to do back in February, 2022). Longley Decl. ¶¶ 43, 45, 48-49, 51, Ex. 10.

### C.      Trooper 1's AC and Cuomo's Subpoena to OAG

In her AC, Trooper 1 asserts three causes of action for discrimination against Movant based on her own personal account that during the period 2018 through 2021 Movant sexually harassed her by making sexually suggestive comments and jokes and initiating inappropriate physical contact, including running his fingers down her back and across her stomach. Longley Decl. ¶ 33, Ex. 6. Trooper 1 further asserts three causes of action for retaliation against Movant based on a press statement he made asserting that he would seek criminal charges against victims, including Trooper 1. *Id*. Ex. 6, ¶¶ 151-53, 155-59. These causes of action, and the underlying allegations that support them, are based on Trooper 1's personal knowledge of what Movant said and did to her, not any subsequent investigation of her allegations or the Report. *Id*. Ex. 6, ¶¶ 31-61, 68-74, 151-53, 155-59. Indeed, the AC refers to the Report in a single background paragraph contained in the "Preliminary Statement"; the Report is not incorporated into the "Factual Allegations" upon which Trooper 1 bases her legal claims. *Id*. Ex. 6, ¶ 4.

The AC contains extensive, unsourced quotations, which appear to be based on Trooper 1's personal knowledge or largely taken from testimony and exhibits from the Investigation that are publicly available on OAG's website. Longley Decl. ¶ 33, Ex. 7. All parties to the Trooper 1 Action have equal access to these materials and can use them to develop their claims and defenses in the case. *Id*. ¶ 38. In addition, virtually all of Trooper 1's allegations of sexual harassment against Movant concern conduct that occurred well before before Movant referred the matter to

7

OAG for investigation. Movant's defense in the Trooper 1 Action depends on what Movant did or did not do to Trooper 1, not on what happened during the Investigation or the findings of the Report. As much as Movant would like it to be, the OAG Investigation is not on trial in the Trooper 1 Action. That suit is solely about what Movant did or did not do to Trooper 1.

On July 11, 2011, Movant served the Subpoena. Longley Decl. ¶ 45. OAG timely objected to the Subpoena and, after meeting and conferring, served additional responses and objections on August 12, 2022 and a categorical privilege log on August 15, 2022. *Id*. ¶¶ 46-47, Ex. 8, 10-12. The Subpoena seeks expansive discovery into virtually every record created or collected in connection with the Investigation. *Id*. ¶¶ 48-49, 51, Ex. 10. For example, Cuomo's counsel confirmed that the broad language of the Subpoena was intended to call for internal communications between members of the Investigative Team concerning witness testimony, interviews, and documents collected in the Investigation, a category that would cover nearly all of the internal work product and communications of the Investigative Team. *Id*. The Subpoena also calls for internal OAG communications predating the Referral as well as draft documents and reports from the Investigative Team to OAG. *Id.,* Ex. 10. None of these broad requests is limited in any way to Trooper 1, who was but one of 179 witnesses in the Investigation and but one of eleven women whose allegations were substantiated in the Report.[1] *Id*. ¶¶ 16, 48-49, 51

In an attempt to resolve the Subpoena amicably, OAG offered to voluntarily provide Movant with documents collected in the Investigation that mention Trooper 1 by name, which are not already publicly available on OAG's website. *Id*. ¶ 50, Ex. 8. Movant then determined the parties had reached an impasse based on (1) his view that he was entitled to materials concerning

---

[1] Notably, Trooper 1 does not allege that she was aware of allegations of harassment against Movant by any of the other 10 women at the time Movant sexually harassed her.

all 179 witnesses and all 74,000 documents collected regardless of whether they were connected to Trooper 1 and (2) his view that no materials connected to the Investigation, including internal OAG emails, internal notes and communications amongst members of the Investigative Team, and drafts of the Report were protected by any privileges. *Id*. ¶ 51. Thus, the dispute in this litigation is one between Movant's position that he is entitled to virtually everything possessed by OAG, including the Investigative Team, concerning the Investigation and OAG's position that the only nonprivileged OAG materials that are not already publicly available or available from a party to the Trooper 1 Action and which are arguably relevant to the Trooper 1 Action are documents collected by the Investigative Team that mention Trooper 1 by name, documents which OAG remains willing to provide to Movant under a protective order.

## STANDARD OF REVIEW

Rule 45 of the Federal Rules of Civil Procedure ("Rule 45") mandates that the party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. Rule 45(d)(1). Subsection 45(d)(3)(A) *requires* a court to quash or modify a subpoena served on a nonparty when, "upon timely motion," the Court determines that such subpoena: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. Rule 45(d)(3)(A).

Motions to quash a subpoena under Rule 45 are left to the "sound discretion of the district court." *In re Fitch Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (*quoting U.S. v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)). The material sought by such subpoena must comply with the limitations on discovery imposed by Rule 26 of the Federal Rules of Civil Procedure ("Rule 26"), *see Citizens*

*Union of City of N.Y. v. Attorney General of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) (citing *Malibu Media, LLC v. Doe,* No. 15-cv-3147, 2016 WL 5478433, at \*2 (S.D.N.Y. 2016)), principally that the information sought "is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. Rule 26(b)(1). "A subpoena that pursues material with little apparent or likely relevance to the subject matter ... is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." *Corbett v. eHome Credit Corp.*, No. 10-cv-0026, 2010 WL 3023870, at \*3 (E.D.N.Y August 2, 2010).

When considering whether a subpoena imposes an "undue burden" under Rule 45, courts should "accord special weight to the burden on non-parties of producing documents for others involved in litigation." *Ebbert v. Nassau County*, No. 05-cv-5445, 2007 WL 674725, at \*4 (E.D.N.Y. March 5, 2007). A nonparty seeking to quash a subpoena on the basis of privilege has the burden of establishing all essential elements of such privilege. *See In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1975) ("as with all privileges, the person claiming the attorney client privilege has the burden of establishing all essential elements…").

**ARGUMENT**

**I.     THE COURT HAS NO SUBJECT MATTER JURISDICTION BASED ON OAG'S BROAD STATE SOVEREIGN IMMUNITY**

As discussed more fully in Point II below, OAG has already voluntarily agreed to produce the only arguably relevant material – the handful of documents gathered during the Investigation referencing Trooper 1; the voluminous remaining Disputed Material is irrelevant and not proportional to the needs of the case given the enormous burden producing such material would impose on OAG. But the Court has no need to delve into these issues because, as a threshold matter, this miscellaneous action to enforce the Subpoena is barred by OAG's sovereign immunity.

The Eleventh Amendment "bars suits against a State by citizens of that same State" in

10

addition to citizens of other states. *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). The Eleventh Amendment is but one "species" of sovereign immunity. *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)). States also enjoy a broader species of sovereign immunity, independent of the Eleventh Amendment, that applies against all private suits, whether in state or federal court. *Alden v. Maine*, 527 U.S. 706, 713, 721 (1999) (noting state immunity from suit is a fundamental aspect of sovereignty that existed before ratification of the Constitution and that such immunity "neither derives from, nor is limited by, the terms of the Eleventh Amendment"); *Beaulieu*, 807 F.3d at 483 (citing *Alden*). Sovereign immunity applies not only to a state but also to a state agency acting as an arm of the state, such as OAG. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) (recognizing sovereign immunity extends beyond states to state agencies); *Lake County Estates v. Tahoe Regional Planning Agency*, 440 U.S. 391, 400–01 (1979) (same).

Although the Second Circuit has yet to address the issue in the specific context of *state* sovereign immunity, the court has held that enforcement of a nonparty subpoena is a "judicial proceeding" triggering *federal* sovereign immunity. *U.S. EPA v. General Elec. Co.*, 197 F.3d 592 (2d Cir. 1999), *amended on reh'g on other grounds*, 212 F.3d 689 (2d Cir. 2000) (cited by *In re S.E.C. ex rel. Glotzer*, 374 F.3d 184, 190 (2d Cir.2004)); *see also Abdou v. Gurrieri*, No. 05-cv-3946, 2006 WL 2729247, at *3 (E.D.N.Y. Sept. 25, 2006) (citing *EPA* and *Glotzer*). In *EPA*, the parties cross-moved to compel and quash a nonparty subpoena served on the EPA by GE in the

Southern District of New York after the EPA refused to comply with GE's subpoena for documents in connection with a pending action in the District of New Jersey. 197 F.3d at 594-95. On appeal, the Second Circuit affirmed the district court's holding that enforcement of the subpoena was a "judicial proceeding" brought "against the sovereign" for purposes of triggering federal sovereign immunity because "the result could serve 'to restrain the Government from acting, or to compel it to act.'" *Id.* at 597 (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)). Finding that enforcement of GE's subpoena "would compel the EPA to act," the Second Circuit held the subpoena was "barred by sovereign immunity in the absence of a waiver." *Id.*[2]

Applying this same rationale, both the Eighth and Tenth Circuits have held that enforcement of a third-party subpoena is a judicial proceeding for purposes of triggering *tribal* sovereign immunity. *See Alltel Comm'ns, LLC v. DeJordy*, 675 F.3d 1100, 1103 (8th Cir. 2012) (holding effort to compel compliance with a third-party subpoena triggered tribal sovereign immunity because it was an effort to "command a government unit to appear in federal court and obey whatever judicial discovery commands may be forthcoming" and therefore the "potential for severe interference with government functions is apparent")[3]; *Bonnet v. Harvest (U.S.) Holdings,*

---

[2] The court went on to hold that the EPA's federal sovereign immunity was waived by the federal Administrative Procedures Act, 5 U.S.C. § 702, *see EPA,* 197 F.3d at 599, a statute that has no application here. The court also expressly disagreed with, and declined to follow, the decision by the Ninth Circuit in *Exxon Shipping Co., v. United States Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994), which held that the federal rules of discovery permitted litigants to seek documents from federal agencies through enforcement of nonparty subpoenas. *Id.* at 598. To the extent Movant seeks to rely on *Exxon* and other sister circuit court decisions holding the federal rules of discovery overcome sovereign immunity, those cases conflict with Second Circuit precedent and should not be followed by this Court.

[3] Fifteen years earlier, the Eighth Circuit rejected a nonparty state agency's claim of immunity from discovery subpoenas based on the Eleventh Amendment, *see In re Missouri Dept. of Natural Res.*, 105 F.3d 434, 436 (8th Cir. 1997), but the court cast doubt on this ruling in *Alltel*, declining to extend the holding to tribes, especially where a state invokes broad sovereign immunity. 675 F.3d at 1104-05 ("[G]iven the public policy underlying sovereign immunity . . ., we are unwilling to predict how the Supreme Court would decide a case in which disruptive third-party subpoenas that would clearly be barred in a State's own courts are served on a state agency in private federal court civil litigation. . . . [T]he Court might well conclude that the Eleventh Amendment applies, *or it might apply a broader form of state sovereign immunity as a matter of comity*, which would likewise apply to claims of tribal immunity.")

*Inc.,* 741 F.3d 1155, 1159-60 (10th Cir. 2014) (holding enforcement of a nonparty subpoena served on tribes was a suit for purposes of triggering tribal sovereign immunity because it seeks to restrain the government from acting, or to compel it to act). Within the Second Circuit, Judge McMahon applied the rationale of *EPA* to similarly hold that a proceeding to enforce a third-party subpoena triggered tribal sovereign immunity. *See Catskill Dev't, LLC v. Park Place Entertainment Corp.*, 206 F.R.D. 78, 87 (S.D.N.Y. 2002) (holding the rule in *EPA* "should apply here, since 'Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers'") (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)).

As the Fifth Circuit recently held in a thorough and well-reasoned opinion, the rationale of these circuit court opinions "applying both federal and tribal immunity to third-party subpoenas further reinforce . . . that *state sovereign immunity* is no less effective." *Russell v. Jones*, 49 F.4th 507, 519 (5th Cir. 2022) (emphasis added). In *Russell*, the plaintiffs sued Harris County and its sheriff in federal court to enjoin enforcement of the county's felony-bail system, and in aid of their case issued nonparty subpoenas to state court judges seeking information about their role in creating and enforcing the bail schedule. *Id.* at 510. After concluding that the judges were acting in their official capacities "such that the subpoenas were really served against the state," the Fifth Circuit turned to the question of whether the subpoenas are "suits" to which state sovereign immunity attaches – the precise question raised here. *Id.* at 513.

Applying the general rule that a suit is against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act,"

---

(emphasis added); *see also Russell v. Jones*, 49 F.4th 507, 518 n.12 (5th Cir. 2022) (noting that the Eighth Circuit's decision in *Alltel* "casts considerable doubt" on its earlier decision in *In re Missouri DNR)*.

the court held that sovereign immunity applies to state officials as recipients of third-party subpoenas, not just as defendants. *Id*. at 514 (internal quotations omitted) (citing *Dugan*, 372 U.S. at 620, *Land v. Dollar*, 330 U.S. 731, 738 (1947), and *Larson v. Domestic & Foreign Com. Corp*., 337 U.S. 682, 704 (1949)). Rejecting any distinction for sovereign immunity purposes between officials sued as defendants and officials served with a third-party subpoena, the court reasoned:

> [Sovereign immunity] aims to "prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties." These interests – the sovereign's dignity and authority over its prerogatives – are no less interesting when a sovereign is served with a *subpoena duces tecum* instead of a complaint.
>
> \* \* \*
>
> *Subpoenas duces tecum* are a coercive judicial process. They issue under the court's authority and are enforced by court order. By compelling a state to produce its papers, a *subpoena duces tecum* subjects a sovereign to the "coercive process of judicial tribunals at the instance of private parties."

*Id*. at 515 (emphasis in original, internal citations omitted) (quoting first *Ex parte Ayers*, 123 U.S. 443, 505 (1887), and then *Seminole Tribe of Fla.* 517 U.S. at 58 (1996)).

Because Movant's miscellaneous action to enforce the Subpoena "could serve 'to restrain the Government from acting, or to compel it to act,'" *EPA*, 197 F.3d at 597 (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)), the action is barred by OAG's broad sovereign immunity.

## II.   THE SUBPOENA SHOULD BE QUASHED BECAUSE THE DISPUTED MATERIAL IS IRRELEVANT AND NOT PORPORTIONAL TO THE NEEDS OF THE TROOPER 1 ACTION

OAG has agreed to provide Movant with the handful of documents collected during the investigation referencing Trooper 1. The remaining Disputed Material – an enormous volume of documents and testimony generated and collected during the Investigation – is simply irrelevant to Movant's defense in the Trooper 1 Action as it has nothing to do with Trooper 1, nor is it proportional to the needs of the case. Movant has utterly failed to satisfy *his burden* of demonstrating relevance and proportionality for any category of documents in the Disputed Material. Movant's real

14

motive for seeking the Disputed Material is to further his illegitimate purpose of attacking the Report and the investigators.

## A.  The Disputed Material Has No Relevance to Trooper 1's Causes of Action

Nonparty complaints of harassment experienced by other employees have been found relevant only to hostile work environment claims, provided the evidence is otherwise admissible, because one of the critical inquiries with respect to a hostile environment claim is the nature of the environment itself. *See Belvin v. Electchester Mgmt., LLC*, No. 17-cv-6303, 2022 WL 10586743, at *6 (E.D.N.Y. Oct. 18, 2022) (internal citations omitted). Moreover, even in such cases, courts "have frequently narrowed broad discovery requests for past complaints to those made by employees in a particular department or division." *Sasikumar v. Brooklyn Hosp. Center*, No. 09-cv-5632, 2011 WL 1642585, at *4 (E.D.N.Y. May 2, 2011) (citing *Curtis v. Citibank, N.A.,* 70 Fed.Appx. 20, 24 (2d Cir.2003)). But in cases where an individual plaintiff does not base a hostile work environment claim on a pattern or practice of discrimination, or where the causes of action focus on a particular action limited to that plaintiff's unit, courts limit discovery to exclude evidence of other complaints. *See Sinni v. Forest Hills Hosp.,* No. 09-cv-4572, 2011 WL 1004817, at *2-3 (E.D.N.Y. March 18, 2011) (limiting discovery because plaintiff alleged specific instance of retaliation and not pattern or practice of discrimination).

Here, Trooper 1 alleges in the AC specific instances of sexual harassment and retaliation of her by Movant, not a hostile work environment based on a pattern or practice of discrimination. *See, supra*, at pg. 7. Significantly, Trooper 1 does not allege she was aware of Movant's alleged harassment of other women at the time she experienced harassment by him; she does not allege that there was a generally sexually harassing work environment that colored her interpretation of Movant's conduct as sexual or unwelcome. *See* Longley Decl., Ex. 6. Accordingly, Movant has

15

failed to establish that the Disputed Material is relevant to the claims asserted in the AC. *See Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 190 (2d Cir. 2001) (holding nonparty "who was not herself a target of the alleged harassment, was not present when the harassment supposedly occurred, and did not even know of the harassment while it was ongoing—failed to prove that an environment existed at work that was hostile to her because of her sex"); *Chen-Oster v. Goldman Sachs & Co.,* 293 F.R.D. 557, 567 (S.D.N.Y. 2013) (nonparties' internal complaints not discoverable where plaintiffs failed to show relevance to claims).

Movant asserts that the AC includes "dozens of paragraphs of findings from OAG's investigation and allegations regarding other women who Trooper 1 did not know and did not work with," and "relies almost exclusively upon the [OAG's report's] findings for the allegations involving those other women." Movant MOL at pgs. 2, 7. That is simply not the case. The AC references the Report, which details complaints of sexual harassment by others, merely as background information in only a single paragraph. *See* Longley Decl., Ex. 6, ¶ 4. Movant attempts to support his erroneous assertion by citing to paragraphs in the AC that quote "Other Women" who allege they were harassed by Movant, *see* Movant MOL at 7 (referencing ¶¶ 76-143 of the AC). But none of those paragraphs cite to the OAG Report as the source of the quotes; indeed, no sources are cited for the quotes at all. As Movant is well aware, OAG has published the transcripts of the sworn testimony provided by these "Other Women" and the quotes Movant references from the AC appear to be almost entirely from those transcripts. *See* Longley Decl. ¶ 33, Ex. 7. Movant's attempt to manufacture a nexus between Trooper 1's claims and the Disputed Material from the OAG Investigation is without any factual basis.

Rather, Movant's real purpose in pursuing the Disputed Material is to continue his attack on the Report and the Investigative Team as part of his ongoing campaign to try to restore his

reputation and resuscitate his political future. *See* Longley Decl. ¶¶ at 41-51. However, "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied." *Blue Angel Films, Ltd. v. First Look Studios, Inc*., No. 08-cv-6469, 2011 WL 830624, at *1 (S.D.N.Y. March 9, 2011) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n. 17 (1978)). "Indeed, when Rule 26(b)(1) was amended in 2000 to limit discovery to that which is 'relevant to any party's claim or defense,' the Rules Advisory Committee specifically noted that the rule change signals . . . to parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *Blue Angel Films,* 2011 WL 830624, at *1–2 (quoting Advisory Committee's note).

Accordingly, in the event the Court does not quash the Subpoena for lack of subject matter jurisdiction, the Court should deny Movant's Motion and grant OAG's motion to quash the Subpoena because the Disputed Material because has no relevance to the claims asserted in the Trooper 1 Action. *See Oppenheimer Fund,* 437 U.S. at 352 n. 17.

### B.  Movant's Subpoena Is Not Proportional To The Needs Of The Case

Rule 45(d)(3)(A)(iv) *requires* a court to quash a subpoena if it imposes an "undue burden" on the subpoena recipient. Fed. R. Civ. P. Rule 45(d)(3)(A). In determining if a subpoena is unduly burdensome, the reviewing court should look at a number of factors, including "relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Ebbert,* 2007 WL 674725, at *4 (*citing United States v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)). Courts should "accord special weight" to the burden of production on nonparties." *Id*. Here, each of these factors clearly weighs in favor of denying the Motion.

Rule 26(b)(1) imposes further limitations on nonparty discovery, requiring the discovery

17

sought to be "proportional to the needs of the case" in addition to being relevant. Fed. R. Civ. P. Rule 26 (b)(1); *Sibley v. Choice Hotels International*, No. 14-cv-634, 2015 WL 9413101, at *2 (E.D.N.Y. December 22, 2015).[4] "Proportionality, which 'focuses on the marginal utility of the discovery sought,' goes hand-in-hand with relevance, such that 'the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate.'" *New Falls Corporation v. Soni*, No. 16-cv-6805, 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020) (quoting *Vaigasi v. Solow Management Corp.*, No. 11-cv-5088, 2016 WL 616386 (S.D.N.Y. February 16, 2016)). In analyzing the burden on nonparties to provide discovery under Rule 26, "courts have held nonparty status to be a 'significant' factor in determining whether discovery is unduly burdensome." *In re 650 Fifth Avenue and Related Properties*, No. 08-cv-10934, 2013 WL 12335763, at *2 (S.D.N.Y. August 29, 2013). Just as with the undue burden factors relevant to Rule 45, Rule 26's proportionality factors weigh strongly in favor of quashing Movant's Subpoena.

### 1.  *Movant's Subpoena Imposes an Undue Burden on Non-Party OAG*

As discussed more fully above, the Disputed Material is wholly irrelevant or, at most, of extremely marginal relevance to the Trooper 1 Action. *See, supra*, pgs. 15-17. Movant has failed to justify why any materials related to the formation of the Report might be relevant or why he would need materials related to the 179 witnesses interviewed other than Trooper 1. Crucially, Movant has failed to identify how the Report itself might be relevant to an action in which Trooper 1 will need to prove her case through first-hand testimony about Movant's inappropriate conduct

---

[4] Incorporated directly into the text of Rule 26 (b)(1) in 2015, a court should assess "proportionality factors… when considering the scope of discovery," including: (i) "The importance of the issues at stake in the litigation;" (ii) "The amount in controversy;" (iii) "The parties relative access to relevant information;" (iv) "The parties' resources;" (v) "The importance of discovery in resolving issues;" and (vi) "Whether the burden or expense of the discovery is outweighed by the benefit." Fed. R. Civ. P. Rule 26(b)(1); *see also Sibley*, 2015 WL 9413101, at *2.

toward her. The Report is not direct evidence of anything in the Trooper 1 Action and thus the potential relevance, if any, is of extremely limited value to Movant in defending against the claims asserted against him by Trooper 1. Moreover, a significant portion of the material gathered during the Investigation was already made publicly available by OAG, and OAG has already agreed to voluntarily provide the handful of documents from the Investigation that reference Trooper 1 by name and that are not already publicly available. Longley Decl. ¶¶ 30, 40; Chun Decl. ¶¶ 9, 13. Apart from investigative material related to Trooper 1, all of which is privileged, *see infra,* at Pt. III, the remaining Disputed Material is either related to the drafting of the Report or other extrinsic witnesses whose testimony has no bearing on the causes of action asserted by Trooper 1. Movant has the same access to information about the witnesses referred to in the AC as Trooper 1 does and can seek to obtain their testimony if he so chooses (*see* Longley Decl. ¶ 38), which would at least not be hearsay like the statements of OAG investigators contained in their notes. *See generally*, Fed. R. Civ. P. Rule 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"); *see City of New York v. Blue Rage Inc.*, No. 17-cv-3480, 2018 WL 2709203 at *2 (E.D.N.Y. June 5, 2018) ("a court must limit a party's discovery if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive…"). Because the materials sought are of no relevance or, at most, of extremely marginal relevance to the Trooper 1 Action, any burden imposed by the Subpoena compels granting OAG's motion to quash. *See Corbett*, 2010 WL 3023870, at *3 (holding subpoena seeking information with "little apparent or likely relevance" should be quashed even where burden is not onerous).

Moreover, Movant's Subpoena is plainly overbroad, as his requests are not tailored in any

fashion to seek only relevant materials and he makes no attempt to describe the documents he believes would be relevant. Movant seeks every single document related to the Report, a plainly impermissible effort to gather relevant information. *Bhatt v. Lalit Patel Phusician P.C.*, No. 18-cv-2063, 2020 WL 13048694, at *2 (E.D.N.Y. 2020) ("[A] request for "all documents" is inconsistent with federal discovery rules."). Despite knowing that the Investigative Team collected 74,000 documents, Movant made no attempt to describe the documents he sought with any particularity, made no attempt to distinguish between materials relevant to Trooper 1's allegations and unrelated events, and demanded hugely broad categories of materials, including "[a]ll documents" (Subpoena request 1, 3 a-b, 4), "[a]ll subpoenas or other information requests…in connection with the investigation" (Subpoena request 2), "[a]ll evidence" (Subpoena request 3), and "[r]eports…on the investigation." Longley Decl. ¶¶ 48, 51, Ex. 10.

The burden on OAG to review and redact the Disputed Material in response to these overbroad requests would be immense. There are approximately 73,000 documents collected by the Investigative Team that have not already been reviewed for necessary redactions. Chun Decl. ¶ 10. The Investigative Team spent over 3,600 hours reviewing just 1,000 documents when preparing the materials that OAG publicly released to redact sensitive information. *Id*. These redactions were absolutely necessary for OAG to protect vital interests, including the protection of witnesses' confidential information as well as the integrity of OAG's investigative techniques and protocols. Longley Decl. ¶¶ 22-23, 34-37. Given Movant's failure to show the relevance of the documents he seeks to the *claims* asserted in the Trooper 1 Action, the extraordinarily heavy burden production would impose on OAG in the form of both monetary cost and attorney hours to review and redact the Disputed Material, and the Movant's lack of any attempt to limit the scope of his Subpoena or to identify smaller categories of material he believes would be relevant, this

20

Court should quash Movant's Subpoena in its entirety.

### 2. The Subpoena Demands are not Proportional to the Needs of the Case

Several factors relevant to whether the materials sought in a nonparty subpoena impose an undue burden on the producing party under Rule 45 are equally relevant to the analysis of whether the demands are within the scope of permissible discovery under Rule 26. As noted in *New Falls Corporation*, when assessing the scope of discovery under Rule 26, relevance is the most important factor in determining whether a subpoena request is proportional to the needs of the case such that the less relevant material is, the more disproportionate a request will be considered.  2020 WL 2836787, at *2. For the same reasons that the materials sought in the Subpoena pose an undue burden on the OAG based on their lack of any relevance to the Trooper 1 Action, they are also disproportionate to the needs of the case. *See, supra*, at pgs. 18-21. Likewise, the analysis of the burden that production of this material would impose on the OAG is equally relevant to the Rule 45 analysis and the Rule 26 analysis. As discussed above, the burden on OAG would be extreme and thus this factor weighs heavily in favor of quashing the Subpoena. *Id*.

A review of the remaining proportionality factors weigh against compelling OAG to comply with Movant's Subpoena. The parties in the Trooper 1 Action have equal access to the evidence relied on in the Report on OAG's website and OAG is willing to provide the additional documents that reference Trooper 1. Longley Decl. ¶¶ 38, 40. Furthermore, while the allegations in the Trooper 1 Action are serious and the amount in controversy is not negligible, those factors must be weighed against the fact that the requested materials are irrelevant and thus will not advance discovery. Furthermore, OAG has a "serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations." *Solomon v. Nassau County*, 274 F.R.D. 455, 460

21

(E.D.N.Y. May 24, 2011). Movant's Subpoena should be quashed in its entirety as its demands

are entirely beyond the scope of discovery permissible under Rule 26.

### III.   THE DISPUTED MATERIAL IS PROTECTED FROM DISCLOSURE BASED ON SEVERAL APPLICABLE PRIVILEGES

#### A.   Disputed Material Is Protected By The Attorney/Client Privilege And Work Product Doctrine

Movant requests attorney notes and memoranda and communications among Investigative

Team attorneys and between OAG and the Investigative Team that are unquestionably protected

by the attorney-client privilege and work-product doctrine.

The attorney-client privilege extends to attorney notes and memoranda "to encourage full

and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449

U.S. 383, 389 (1981) (holding the privilege protects interview notes and memoranda prepared by

a corporation's in-house counsel during an internal investigation of illegal activity by employees).

In the context of the OAG investigation, "the privilege [] protect[s] not only the giving of

professional advice to [OAG to] act on it but also the giving of information to the [Investigative

Team] to enable [them] to give sound and informed advice." *Id.* at 390-91. The interview memos

are also attorney work-product. *See Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)

(acknowledging that attorney work-product is reflected in interviews, statements, memoranda,

correspondence, briefs, mental impressions, personal beliefs, and countless other ways). Rule

26(b)(3) codified *Hickman* and provides qualified protection for materials prepared by or at the

behest of counsel in anticipation of litigation or for trial. Fed. R. Civ.P. 26(b)(3); *see also United*

*State v. Adlman*, 134 F.3d 1194, 1198-99 (2d Cir.1988) ("[n]othing in Rule 26(b)(3) states or

suggests that documents prepared 'in anticipation of litigation' with the purpose of assisting in

the making of a business decision do not fall within its scope.")

Notwithstanding the obvious privileged nature of the attorney notes and communications

between the Investigative team and OAG, Movant claims the materials are not privileged for five reasons. All of Movant's arguments are without merit. First, he claims that the communications are not between attorney and client. Movant MOL at 12. Movant provides no authority for his claim that private attorneys deputized as OAG special deputies are not "attorneys" providing legal advice to the State or that OAG should not be considered the "client" where, as here, the Executive Chamber does not, and cannot, play that role due to the obvious conflict. Under Executive Law § 63(8), the special deputies functioned as attorneys within OAG despite being employed by private firms. Longley Decl. ¶¶ 13-14. And logically and contractually the attorneys within OAG who received communications from the Investigative Team about the team's independent work were functioning as the "client," standing in the shoes of the Executive Chamber due to the conflict arising from the fact that the governor was the subject of the Investigation, and many witnesses were Executive Chamber employees. *Id*. ¶¶ 8, 13-14. The alternative proposition put forth by Movant, that there simply was no "client," is nonsensical. Given the obvious roles played by the Investigative Team and OAG staff receiving and responding to the team's communications, there can be no serious doubt that the communications between the Investigative Team and OAG are covered by the attorney-client privilege. *Id*. ¶¶ 17-18.

Second, Movant asserts that the documents collected and created by the Investigative Team were not intended to be kept confidential because OAG announced that it would (and did) release a report; the Investigative Team intended their notes and communications with OAG to be confidential notwithstanding that the Report was always intended to be made public. *See* Longley Decl. ¶¶ 13-14, Ex. 4; Chun Decl. ¶ 12; *see In re General Motors LLC Ignition Switch Litigation*, 80 F. Supp. 3d 521, 528-529 (S.D.N.Y. January 15, 2015) (rejecting a claim that interview materials were not intended to be kept confidential because of a promise (and act) to disclose facts

in a report). The "touchstone analysis is not whether [the holder of the privilege] intended to keep confidential the results of its investigation, but rather whether it intended to keep confidential the communications reflected in the interview materials" and "[t]he fact that certain *information* in [otherwise protected] documents might ultimately be disclosed [] does not, by itself, create the factual inference that the *communications* were not intended to be confidential at the time they were made." *Id* at 529, citing *In re Grand Jury Subpoena,* 341 F.3d 331, 336 (4th Cir. 2003).

The Investigative Team created memoranda concerning all of their interviews, which OAG has not shared with the public or the witnesses themselves. Longley Decl. ¶¶ 22, 38. The memos reflect the opinions of the Investigative Team as to the merits and veracity of concerning witness statements and were used by the Investigative Team to provide advice to OAG on investigative next steps. Chun Decl. ¶ 12. OAG deliberately published only non-privileged documents and has taken deliberate steps to preserve privilege over certain categories of documents. Longley Decl. ¶ 22. For example, to the extent any interview memos were shared with other entities conducting overlapping investigations, they were provided pursuant to shared law enforcement objectives and subject to strict confidentiality terms to preserve OAG's privileges. *Id.* ¶¶ 21, 25-26, 39. OAG intended to keep non-published material confidential and the disclosure of facts and findings in the OAG Report does not remove the protection afforded to those confidential communications.

Third, Movant maintains that the Disputed Material was created and collected for the purpose of a report, not to provide legal advice, relying on *Allied Irish Banks v. Bank of Am., N.A.,* 240 F.R.D. 96, 104 (S.D.N.Y. 2007). Movant MOL at 14. Movant's reliance on *Allied* is misplaced. The court in *General Motors* rejected this argument, distinguishing *Allied* for reasons applicable here. *In re General Motors,* 80 F.Supp.3d 521. In *Allied*, the court held the attorney-client privilege did not apply to investigative materials underlying a report prepared following an

24

internal investigation where the company hired a non-lawyer consultant to produce a report that was released publicly, the consultant's engagement was limited to business-related matters, there was no evidence that a law firm engaged by the consultant provided legal advice to the company, and the final report indisputably did not provide legal advice. *Allied Irish Bank*, 240 F.R.D. 96. On these facts, the *Allied* court found the purpose of the investigative material was limited to business-related matters. *Id*. As in *General Motors*, the facts here are distinguishable from *Allied* because the Investigation was conducted by lawyers, the engagement involved providing legal advice on whether the Movant's conduct was unlawful, and the Report concluded "that the Governor, on multiple occasions, engaged in conduct and conversations that were offensive and sexual in nature that constituted sex-based harassment." Longley Decl. ¶16. Here, the circumstances giving right to the Referral and the nature of services performed make clear that OAG engaged and deputized the Investigative Team attorneys to provide legal advice to OAG. *See Id.* ¶¶ 13-14, Ex. 4-5; *In re County of Erie*, 473 F.3d 413, 421 (2nd Cir. 2007) ("[t]he predominant purpose of a particular document – legal advice, or not – may also be informed by the overall needs and objectives that animate the client's request for advice.").

Fourth, Movant contends there was "subject-matter" waiver because OAG published the Report and exhibits, relying on *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459 (S.D.N.Y. 1996). Movant MOL at pgs. 14-16. But *Kidder* is inapt because it found waiver over materials underlying a law firm's report because the *client* placed the report "at-issue" in lawsuits, arbitrations, and federal investigations. *Kidder*, 168 F.R.D. at 469-73. Unlike the client in *Kidder*, OAG (not to mention Trooper 1) have not placed the Report at issue in any proceeding. Movant's reliance on *New York Times Co. v. United States Dep't of Justice*, 939 F.3d 479 (2d Cir. 2019), is equally unavailing as the court there rejected the claim that public statements about an attorney's

memoranda constituted a broad "at issue" waiver. *Id*. at 497-498.

Fifth, Movant's argument that the Disputed Material was not prepared in connection with pending or anticipated litigation does not square with the Second Circuit's interpretation of the "in anticipation of litigation" requirement, which asks whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1198-99 (2d Cir.1988) (internal quotations and citation omitted). A party invoking the work-product doctrine need not have anticipated the specific litigation in which the protection is actually invoked. *See Garrett v. Metro. Life Ins. Co.,* No. 95-cv-2406, 1996 WL 325725, at *4 (S.D.N.Y. June 12, 1996). Movant's argument is without merit because OAG anticipated litigation upon receiving the Referral and discussed with the Investigative Team the potentiality of multiple types of "litigation," including a possible impeachment proceeding, litigation from the victims (as came to pass), and also litigation by Movant himself (which his counsel has acknowledged considering, and which also came to pass with Movant's filing of an Ethics Complaint). Longley Decl. ¶¶ 18, 21, 41-43; Chun Decl. ¶ 4.

### B. Disputed Material Is Protected By the Law Enforcement Privilege

Material that could jeopardize law enforcement investigations and safety is protected from disclosure by the law enforcement privilege upon a showing that the requested documents contain: (1) information pertaining to law enforcement techniques and procedures; (2) information that would undermine the confidentiality of sources; (3) information that would endanger witnesses and law enforcement personnel; (4) information that would undermine the privacy of individuals involved in an investigation; or (5) information that would seriously impair the ability of a law enforcement agency to conduct future investigations. *See In re The City of New York*, 607 F.3d 923, 940 (2d Cir. 2010); *see also Dorsett v. County of Nassau*, 762 F.Supp.2d 500, 520 (E.D.N.Y.

January 14, 2011) (identifying categories of information covered by law enforcement privilege and holding that there is a "strong presumption" against piercing the privilege). The privilege applies to investigative materials even when the investigation is no longer ongoing. *City of New York*, 607 F.3d at 944 (holding investigation need not be ongoing because disclosure may still seriously impair the ability of a law enforcement agency to conduct future investigations).

The law enforcement privilege protects most of the Disputed Material from disclosure; it contains voluminous materials replete with sensitive, confidential, and private information falling into six categories: (1) subpoenas; (2) investigation documents and testimony; (3) attorney notes, draft documents and memoranda; (4) correspondence between the Investigative Team and witnesses and/or their counsel; (5) correspondence and document productions between OAG and other governmental entities conducting overlapping investigations; and (6) internal correspondence, including the § 63(8) weekly reports. Longley Decl. ¶ 20; Chun Decl. ¶ 8. The Investigation Team carefully guarded the confidentiality of these documents to encourage witness cooperation as witnesses tend to be reluctant to share information with investigators if not assured of confidentiality out of fear that private information about them will become public or will be shared with the subject of the investigation, resulting in negative consequences for them or their family, including retaliation. Chun Decl. ¶ 11; Longley Decl. ¶¶ 34-38.

The Investigative Team communicated with over 100 witnesses whose identities are not otherwise known to the public as well as a number of on-the-record witnesses, many of whom expressed credible fears of retaliation and were hesitant to cooperate with the investigation for fear of having their identities disclosed. Chun Decl ¶ 11. Many cooperating witnesses requested that their identity and cooperation be protected, and they might not have cooperated as fully had they believed the substance of their information would be provided to Movant and his counsel. *Id.*

Disclosing the Disputed Material, including subpoenas, witness testimony, attorney notes, correspondence between the Investigation Team and witnesses and/or their counsel, and internal law firm correspondence would expose the identities of nonparty confidential witnesses involved in the Investigation and invade their privacy. Moreover, disclosure is against OAG protocol, and to make such material public, or provide to Movant, the subject of the Investigation, would undermine OAG's investigative efforts to collect accurate and sensitive information in future investigations. Longley Decl. ¶¶ 34-37. Likewise, OAG has provided certain non-public investigative materials to other law enforcement entities and is aware of one or more ongoing investigations that may be impaired if certain information was disclosed. *Id.* ¶ *39.*

To defeat the assertion of the law enforcement privilege, the party seeking disclosure must show that: (1) the suit is non-frivolous and brought in good faith; (2) the information sought is not available through other discovery or from other sources; and (3) there is a compelling need for the privileged information. See *City of New York*, 607 F.3d at 948 "In addition, the privacy interests of third parties carry great weight in the balancing of interests." *Dorsett*, 762 F.Supp.2d at 521; *Kelly v. City of New York*, No. 01-cv-8906, 2003 WL 548400, at *5 (S.D.N.Y. Feb. 24, 2003) (holding sensitive investigation records of nonparty individuals should be "guarded against disclosure that has the potential to invade their privacy and impair their personal reputations").

Movant's showing is insufficient to overcome the law enforcement privilege. Movant's claim that information about other witnesses is relevant because the AC relies heavily on the Report and its conclusions and that the files are likely to be the sole source of information underlying the Report (Movant MOL at pg. 25) is without support in the AC itself. *See, supra*, at pgs. 15-17.  Because the Disputed Material lacks relevance and the publicly available materials permit Movant to seek discovery directly from sources of the information, he cannot demonstrate

28

a compelling need for the Disputed Material from OAG.

Movant relies on *MacNamara v. City of New York,* 249 F.R.D. 70, 94 (S.D.N.Y. 2008) to argue there are reasonable options to mitigate any harm in disclosing privileged and confidential information because the parties to the Trooper 1 Action intend to put in place a protective order that would allow OAG to designate the documents as confidential/for "attorney eyes only." Movant MOL at pg. 26. But there are no adequate protective measures because the harm arises from disclosure to Movant. *See* Longley Decl. ¶¶ 41-43. For the same reasons the Disputed Material is protected under the law enforcement privilege, it is also protected from disclosure by the public interest privilege.[5]

### C.  Disputed Material Is Protected From Disclosure Under the Deliberative Process Privilege

The deliberative process privilege is a subspecies of work-product that covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NRLB V. Sears, Roebuck & Co.,* 421, U.S. 132, 150 (1975). The privilege extends to material "prepared in order to assist an agency decision maker in arriving at [their] decision" and related to the agency's decision-making process

---

[5] The public interest privilege attaches to "'confidential communications between public officers, and to public officers, in the performance of their duties, where the public interest requires that such confidential communications or the sources should not be divulged ... [because] the public interest would be harmed if the material were to lose its cloak of confidentiality.'" *Woodard v. City of New York,* No. 99-cv-1123, 2000 WL 516890 at *4 (E.D.N.Y. March 10, 2020) (*quoting Cirale v. 80 Pine Street Corp,* 35 N.Y.2d 113, 117-118 (1974)).  To assert the public interest privilege in a federal action, a governmental entity must make a particularized showing of the public interest and privacy concerns at stake in disclosure.  *See Woodward* 2000 WL 516890, at *5; *see also Lora v. Board of Ed. Of City of New York,* 74 F.R.D. 565, 576 (E.D.N.Y. May 12, 1977) ( "[A] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy."). The protection of witnesses who cooperated with OAG's Investigation and the shielding of OAG's investigative techniques clearly fall within the scope of this privilege. Executive Law § 63(8), in making it a criminal offense to disclose information obtained in an investigation, without authorization of the Governor or Attorney General, clearly demonstrates the intent of the Legislature to shield investigative materials from disclosure. Exec. Law § 63(8).

and policies. *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 184 (1975).

In assessing the deliberative process privilege, courts consider: (1) the relevance of the material sought; (2) the availability of other evidence; (3) the seriousness of the litigation and issues involved; (4) the government's role in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *See In re Franklin Nat. Bank Securities Litigation*, 471 F. Supp. 577, 583 (E.D.N.Y. Aug. 3, 1979) (indicating courts must balance competing interests). Here, Internal Correspondence (communications internal to OAG employees and communications between the firms and OAG employees, including the weekly reports) reflect investigative steps taken, the legal opinions, and non-final deliberations with OAG. Longley Decl. ¶¶ 17-18, 20; Chun Decl. ¶ 3, 12.

Movant relies on a string of cases to argue this material is not covered by the deliberative process privilege because it was prepared for the purpose of a fact-finding investigation and simply contains facts, (Movant MOL at pg. 19), but those cases are unlike the facts here where the materials were prepared by attorneys conducting an investigation and contain more than mere factual compilations. *See Thompson v. Lynbrook Police Dep't,* 172 F.R.D. 23, 26 (E.D.N.Y. 1997) (holding deliberative process privilege applied to memoranda produced by assistant DAs that referred to "steps taken by the assistant district attorneys in completing their investigation, their professional opinions on the merits of the plaintiff's complaint, and their recommendations to the file and high-ranking officials within the office on what, if any, action should be taken").

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court grant Defendant's Cross-Motion and deny Movant's Motion, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 8, 2022

Respectfully submitted,

LETITIA JAMES
Attorney General of the State of New York

By:   /s/  Andrew Amer
Andrew Amer
Serena Longley
Michael Jaffe
Tamikka Pate

28 Liberty Street
New York, NY 10005
Phone: (212) 416-6127
andrew.amer@ag.ny.gov

Attorney for Defendant