**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOVERNOR ANDREW M. CUOMO, | **ORAL ARGUMENT REQUESTED** |
| Movant, | |
| v. | Case No. 22-MC-03044 (LDH) (TAM) |
| OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL, | |
| Respondent. | |
| TROOPER 1, | |
| Plaintiff, | Pending In: Civil Action No. 22-cv-00893 (LDH) (TAM), United States District Court for the Eastern District of New York |
| v. | |
| NEW YORK STATE POLICE, ANDREW CUOMO, MELISSA DEROSA, and RICHARD AZZOPARDI, | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO THE**
**OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL'S**
**MOTION TO QUASH GOVERNOR CUOMO'S SUBPOENA AND**
**REPLY IN FURTHER SUPPORT OF GOVERNOR CUOMO'S MOTION TO COMPEL**

**Glavin PLLC**
Rita M. Glavin
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

**SHER TREMONTE LLP**
Theresa Trzaskoma
Allegra A. Noonan
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

*Counsel for former Governor*
*Andrew M. Cuomo*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

I.   STATE SOVEREIGN IMMUNITY DOES NOT ALLOW THE OAG TO
     REFUSE TO COMPLY WITH THE SUBPOENA ......................................................... 2

     A.   State Sovereign Immunity Does Not Exist Here ................................................... 2

     B.   The OAG Waived Any Claim to State Sovereign Immunity ................................ 5

II.  THE REQUESTED MATERIALS ARE RELEVANT AND PROPORTIONAL
     TO THE NEEDS OF THE TROOPER 1 ACTION .......................................................... 8

     A.   The Requested Materials Are Relevant to the Trooper 1 Action........................... 8

     B.   The Requested Materials Are Proportional to the Needs of the Case and
          Requiring Their Production Would Not Impose an Undue Burden .................... 10

III. THE REQUESTED MATERIALS ARE NOT PROTECTED FROM
     DISCLOSURE BY ANY APPLICABLE PRIVILEGE.................................................. 13

     A.   The Attorney-Client Privilege Does Not Apply ................................................. 13

     B.   The Work Product Doctrine Does Not Apply...................................................... 19

     C.   The Law Enforcement Privilege Does Not Apply ............................................... 22

     D.   The Deliberative Process Privilege Does Not Apply........................................... 23

CONCLUSION........................................................................................................................ 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.I.A. Holdings S.A. v. Lehman Bros.,*
  No. 97Civ.4978(LMM)(HBP), 2000 WL 763848 (S.D.N.Y. June 12, 2000) ........................... 8

*Acorn v. County of Nassau,*
  No. CV 05-2301 (JFB)(WDW), 2008 WL 708551 (E.D.N.Y. Mar. 14, 2008) ...................... 23

*Ali v. Carnegie Inst. of Washington,*
  306 F.R.D. 20 (D.D.C. 2014) ............................................................................................... 4

*Allied Irish Banks v. Bank of Am., N.A.,*
  240 F.R.D. 96 (S.D.N.Y. 2007) ..................................................................................... 17, 20

*Am. Civil Liberties Union v. Dep't of Def., No.* 15 CIV. 9317 (AKH),
  2017 WL 4326524 (S.D.N.Y. Sept. 27, 2017) ................................................................... 24

*Barnes v. Black,*
  544 F.3d 807 (7th Cir. 2008) ............................................................................................... 3

*Bhatt v. Lalit Patel Physician P.C.,* No. 18-CV-2063-ILG-SJB,
  2020 WL 13048694 (E.D.N.Y. Oct. 19, 2020) .................................................................. 11

*Bd. of Regents of Univ. of Wisconsin Sys. v. Phoenix Int'l Software, Inc.,*
  653 F.3d 448 (7th Cir. 2011) ............................................................................................... 7

*Blue Angel Films, Ltd. v. First Look Studios, Inc.,* No.08 Civ. 6469(DAB)(JCF),
  2011 WL 830624 (S.D.N.Y. Mar. 9, 2011) .................................................................... 9, 10

*Bowne of New York City, Inc. v. AmBase Corp.,*
  150 F.R.D. 465 (S.D.N.Y. 1993) ....................................................................................... 19

*Coleco Indus., Inc. v. Universal City Studios,*
  110 F.R.D. 688 (S.D.N.Y. 1986) ....................................................................................... 21

*Cuno, Inc. v. Pall Corp.,*
  121 F.R.D. 198 (E.D.N.Y. 1988) ....................................................................................... 13

*Doerbecker v. Cnty. of Nassau,*
  No. CV 12-2204 (LDW) (ARL), 2013 WL 2237574 (E.D.N.Y. May 21, 2013) ...................... 3

*Favors v. Cuomo,*
  285 F.R.D. 187 (E.D.N.Y. 2012) ....................................................................................... 19

*Fountain v. City of New York*,
　No. 03 Civ. 4526 (RWS), 2004 WL 941242 (S.D.N.Y. May 3, 2004) ................................... 23

*Freeman v. Rochester Psychiatric Ctr.*,
　No. 16-CV-6668T, 2018 WL 4275984 (W.D.N.Y. Sept. 7, 2018) ............................................ 3

*Garrett v. Metro. Life Ins. Co.*,
　No. 95 CIV. 2406 (PKL), 1996 WL 325725 (S.D.N.Y. June 12, 1996) ................................ 20

*Gunter v. Atl. Coast Line R. Co.*,
　200 U.S. 273 (1906)............................................................................................................... 7

*Haus v. City of New York*,
　No. 03 Civ.4915 RWS MHD, 2004 WL 3019762 (S.D.N.Y. Dec. 29, 2004).................. 22, 23

*In re 995 Fifth Ave Assocs., L.P.*,
　963 F.2d 503 (2d Cir. 1992) ................................................................................................... 5

*In re Charter Oak Assocs.*,
　361 F.3d 760 (2d Cir. 2004) ................................................................................................... 5

*In re Cnty. of Erie*,
　473 F.3d 413 (2d Cir. 2007) ................................................................................................. 14

*In re Deposit Ins. Agency*,
　482 F.3d 612 (2d Cir. 2007) ................................................................................................... 5

*In re DG Acquisition Corp.*,
　151 F.3d 75 (2d Cir. 1998) ..................................................................................................... 7

*In re General Motors LLC Ignition Switch Litig.*,
　80 F. Supp. 3d 521 (S.D.N.Y. 2015) ................................................................................ 14, 15

*In re Kidder Peabody Sec. Litig.*,
　168 F.R.D. 459 (S.D.N.Y. 1996) ................................................................................. 18, 19, 21

*In re Missouri Dep't of Natural Res.*,
　105 F.3d 434 (8th Cir. 1997) .................................................................................................. 3

*Jackson v. AFSCME Local 196*,
　No. 3:07CV0471 (JCH), 2008 WL 1848900 (D. Conn. Apr. 25, 2008) ................................... 4

*Jett v. Penner*, No. Civ S-02-2036,
　2007 WL 127790 (E.D.Cal. Jan. 12, 2007) ............................................................................ 6

*Koumoulis v. Indep. Fin. Mktg. Group, Inc.*,
　295 F.R.D. 28 (E.D.N.Y. 2013) ....................................................................... 13, 14, 17, 18

*Kunstler v. City of New York*,
   No. 04CIV1145 (RWS)(MHD), 2005 WL 2656117 (S.D.N.Y. Oct. 18, 2005)................ 22, 23

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*,
   535 U.S. 613 (2002).................................................................................................... 7

*MacNamara v. City of New York*,
   249 F.R.D. 70 (S.D.N.Y. 2008) .................................................................................. 22

*MacNamara v. City of New York*, No. 04CIV.9612 (KMK)(JCF),
   2006 WL 3298911 (S.D.N.Y. Nov. 13, 2006)............................................... 3, 10, 12

*New York Times Co. v. United States Dep't of Just.*,
   *939* F.3d 479 (2d Cir. 2019) ...................................................................................... 21

*Pierce v. Demmon*,
   No. 9:14-CV-1028 (GTS/DEP), 2015 WL 7077227 (N.D.N.Y. Nov. 12, 2015) ...................... 3

*Solomon v. Nassau Cnty.*,
   274 F.R.D. 455 (E.D.N.Y. 2011) ................................................................................ 12

*Russell v. Jones*,
   49 F.4th 507 (5th Cir. 2022) ........................................................................................ 4

*Taylor Precision Prods., Inc. v. Larimer Group, Inc.*,
   No. 15-CV-4428 (ALC) (KNF), 2017 WL 10221320 (S.D.N.Y. Feb. 27, 2017) ............... 8, 12

*Thompson v. Lynbrook Police Dep't*,
   *172* F.R.D. 23 (E.D.N.Y. 1997) .................................................................................. 25

*Top Jet Enters., Ltd. v. Kulowiec*,
   No. 21-MC-789 (RA) (KHP), 2022 WL 280459 (S.D.N.Y. Jan. 31, 2022).............................. 7

*Tortorici v. Goord*,
   216 F.R.D. 256 (S.D.N.Y. 2003) .......................................................................... 24, 25

*United States Envtl. Prot. Agency v. Gen. Elec. Co.*,
   197 F.3d 592 (2d Cir. 1999) .................................................................................... 4, 6

*United States v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998) .................................................................................... 20

*United States v. James*,
   980 F.2d 1314 (9th Cir. 1992) ..................................................................................... 6

*Vessalico v. Costco Wholesale Warehouse*,
   No. 15-CV-1292 (LDW)(SIL), 2016 WL 3892403 (E.D.N.Y. July 14, 2016) ...................... 18

*Wertheim Schroder & Co. Inc. v. Avon Prods., Inc.*,
    No. 91 CIV. 2287 (PKL), 1995 WL 6259 (S.D.N.Y. Jan. 9, 1995) ........................................ 11

*Women's InterArt Center, Inc. v. N.Y.C. Econ. Dev.*,
    223 F.R.D. 156 (S.D.N.Y. 2004) ...................................................................................... 18

*Woodard v. City of New York*,
    No. 99 CV 1123(ILG), 2000 WL 516890 (E.D.N.Y. Mar. 10, 2000) .................................... 23

**Rules**

Fed. R. Civ. P. 26(b)(1) ........................................................................................................ 8

**Other Authorities**

15 Bus. & Com. Litig. Fed. Cts. § 162:57 (5th ed.) ........................................................... 3

Governor Cuomo[1] respectfully submits this memorandum in opposition to the OAG's cross-motion to quash and in further support of his motion to compel the OAG to comply with his Subpoena. This Court should direct the OAG to produce the Requested Materials so that Governor Cuomo can properly defend himself against Trooper 1's claims.

## PRELIMINARY STATEMENT

The OAG conducted an investigation of Governor Cuomo with the clear intent of issuing a public report, which ultimately detailed—selectively and unfairly—the OAG's factual findings and conclusions, including that Governor Cuomo sexually harassed Trooper 1 and other complainants. The OAG then released only certain materials upon which it relied in its Report, leaving the public, and Governor Cuomo, in the dark as to the majority of the materials reviewed and relied upon by the OAG.

Now, the OAG asserts for the first time that it should not have to produce documents in this litigation on the basis of state sovereign immunity. The OAG's position is extraordinary and suggests that neither it nor any other state agency can ever be compelled to produce documents in any federal litigation, including in § 1983 actions like the Trooper 1 Action. The OAG's extreme view would mean that state agencies can decide when and whether to make state records available to litigants. No case in this Circuit supports the OAG's argument. Moreover, even if any state sovereign immunity did shield the OAG, the OAG waived that immunity by agreeing to produce documents in response to the Subpoena.

---

[1] All terms defined previously in Governor Cuomo's opening memorandum of law (ECF No. 2) are used consistently herein. All previously filed documents in this action are referred to herein as "ECF No. __." For ease of reference, Governor Cuomo's opening memorandum of law is ECF No. 2, the October 5, 2022 Declaration of Theresa Trzaskoma is ECF No. 3, and the cross-motion and opposition filed by the OAG is ECF No. 18.

Further, although the OAG concedes that Trooper 1's Amended Complaint relies on the Investigation, borrows liberally from the OAG Report, and quotes extensively from the few publicly released investigative materials, the OAG nevertheless asserts that the Requested Materials—all related to the OAG Investigation and Report—are irrelevant. This argument is patently frivolous. Likewise, there is no merit to the OAG's contention that producing the Requested Materials would cause an undue burden, particularly given that the OAG has already catalogued and organized those materials as part of preparing its Report. Nor is there any merit to the OAG's suggestion that it would be preferable for Governor Cuomo to separately subpoena and gather the information from dozens and dozens of other nonparties. This argument is directly at odds with Rule 26's efficiency goals.

Finally, the OAG asserts various inapplicable privileges to support blanket objections to the Subpoena. None of those privileges apply. If they ever did, the OAG waived them, and even if not waived, Governor Cuomo's need for the information greatly outweighs any purpose that might be served by protecting the information from disclosure. The Requested Materials should be produced.

## <u>ARGUMENT</u>

### I.   STATE SOVEREIGN IMMUNITY DOES NOT ALLOW THE OAG TO REFUSE TO COMPLY WITH THE SUBPOENA

#### A.   State Sovereign Immunity Does Not Exist Here

The OAG wants this Court to hold that a state agency could never be subpoenaed in a federal litigation, even in a § 1983 action brought by a state employee alleging that a state actor violated her constitutional rights. The OAG's position would rewrite years of case law in this Circuit enforcing subpoenas served on state agencies and would preclude all litigants in such

actions, both plaintiffs and defendants, from obtaining the necessary discovery to litigate their claims and defenses. Not only is the position nonsensical, it is unsupported.[2]

Courts within the Second Circuit have routinely enforced nonparty subpoenas served on state agencies. *See e.g. Doerbecker v. Cnty. of Nassau*, No. CV 12-2204 (LDW) (ARL), 2013 WL 2237574, at *3 (E.D.N.Y. May 21, 2013) (granting motion to compel district attorney's office to comply with subpoena); *MacNamara v. City of New York*, No. 04CIV.9612 (KMK)(JCF), 2006 WL 3298911, at *16 (S.D.N.Y. Nov. 13, 2006) (compelling compliance with subpoena served on district attorney's office); *Pierce v. Demmon*, No. 9:14-CV-1028 (GTS/DEP), 2015 WL 7077227, at *2 (N.D.N.Y. Nov. 12, 2015) (granting motion to compel compliance with subpoena served on New York State Department of Corrections and Community Supervision); *Freeman v. Rochester Psychiatric Ctr.*, No. 16-CV-6668T, 2018 WL 4275984, at *4 (W.D.N.Y. Sept. 7, 2018), *report and recommendation adopted*, No. 6:16-CV-06668(MAT)(MWP), 2018 WL 4562078 (W.D.N.Y. Sept. 24, 2018) (granting plaintiff's motion to compel compliance with subpoena by New York Department of Labor).

On the other hand, there is not a single case in this Circuit or District that supports the OAG's assertion that state sovereign immunity protects the OAG from having to comply with civil discovery subpoenas. To the contrary, the OAG's argument is at odds with decisions from numerous federal courts that "have found that states cannot quash third-party discovery on that ground." 15 Bus. & Com. Litig. Fed. Cts. § 162:57 (5th ed.) (collecting cases); *see also Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008); *In re Missouri Dep't of Natural Res.*, 105 F.3d 434, 436

---

[2] This outcome would create an unparalleled opportunity for gamesmanship. Followed to its natural conclusion, the OAG's position would mean, for example, that if an official within the OAG (or any other state agency) was accused of sexual harassment or some other civil rights violation and was sued pursuant to § 1983, the OAG would be able to decide unilaterally whether to produce any documents in that litigation.

(8th Cir. 1997); *Ali v. Carnegie Inst. of Washington*, 306 F.R.D. 20, 30 n.8 (D.D.C. 2014). In making its argument, the OAG relies primarily on two decisions, neither of which are dipositive in this proceeding. *See* ECF No. 18 at 12–13 (discussing *United States Envtl. Prot. Agency v. Gen. Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999) and *Russell v. Jones*, 49 F.4th 507, 510 (5th Cir. 2022)).

*General Electric* does not, as the OAG argues, control. That case, which involves federal sovereign immunity, has not been extended by this District or the Second Circuit to state agencies. Indeed, at least one district court in this Circuit has expressly declined to apply the principles of *General Electric* to state entities. *See Jackson v. AFSCME Local 196*, No. 3:07CV0471 (JCH), 2008 WL 1848900, at *2–3 (D. Conn. Apr. 25, 2008). And *Jones*, a Fifth Circuit outlier, is not at all persuasive nor is it controlling.[3] There, the Fifth Circuit invalidated a raft of subpoenas served on county judges who had originally been named as defendants in the action but were voluntarily dismissed because they were immune from suit. 49 F.4th at 510. Unlike in *Jones*, the Subpoena to the OAG is not being used as a workaround to affirmatively litigate against a state actor that is protected by immunity. *Cf. id.* at 515 ("Plaintiffs may not obtain by third-party subpoena what they could not obtain from the Felony Judges as defendants."). Instead, Governor Cuomo properly served a nonparty subpoena on the OAG to obtain information critical to his defense of Trooper 1's claims.

The OAG's arguments in favor of applying state sovereign immunity to a Rule 45 subpoena are thus entirely without merit.

---

[3] As the Fifth Circuit expressly acknowledged, the conclusion that state actors are absolutely immune from federal discovery subpoenas is "controversial" and inconsistent with the law in other circuits. *Jones*, 49 F.4th at 517.

**B.     The OAG Waived Any Claim to State Sovereign Immunity**

Even if there were any merit to the OAG's extraordinary position on state sovereign immunity related to Rule 45 subpoenas, the OAG has clearly and unequivocally waived any right it may have had to assert sovereign immunity.

It is well understood that "[s]tate sovereign immunity is not absolute" such that a state may "waive its Eleventh Amendment immunity" by its conduct in the proceeding. *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007); *see also In re 995 Fifth Ave Assocs., L.P.*, 963 F.2d 503, 507 (2d Cir. 1992) ("Waiver of Eleventh Amendment immunity . . . is triggered by some affirmative activity of the state, such as . . . a state's participation in litigation in federal court."). Conduct waivers, as opposed to general statutory consent waivers, should not be narrowly construed. *See In re Charter Oak Assocs.*, 361 F.3d 760, 770 (2d Cir. 2004). Here, the OAG waived any state sovereign immunity in several respects.

*First*, as the OAG acknowledges—and indeed, repeatedly emphasizes—it has "already voluntarily agreed to produce" some documents in response to the Subpoena. *See* ECF No. 18 at 1, 3, 10, 14, 19. Indeed, in every written response to the Subpoena and during each meet and confer, the OAG indicated its willingness to produce documents.[4] By doing so, including by

---

[4] In its initial response to the Subpoena, for example, the OAG agreed to produce "[a]t the appropriate time, . . . any relevant non-privileged materials . . . that are reasonable in scope and not unduly burdensome given the OAG's nonparty status; privileged materials will be logged, where appropriate, consistent with the Local Rules." ECF No. 3-4 at 1. Later, in its more formal written Responses and Objections, the OAG again agreed to produce documents. Specifically, the OAG said that it would "produce in response to Request No. 2 the following documents concerning the Investigation that are potentially relevant to the claims and defenses raised by Plaintiff in the Amended Complaint: copies of subpoenas not published on the website that were issued to witnesses or custodians who provided testimony relevant to Trooper 1 or provided documents relevant to Trooper 1." ECF No. 3-6 at 6. The OAG also confirmed that it would "produce [certain] documents concerning the Investigation that are potentially relevant to the claims and defenses raised by Plaintiff in the Amended Complaint: documents collected in the course of the Investigation which are not available on the OAG's public website that reference Trooper 1 by name." *Id.* at 7. And during the August 4, 2022 meet and confer with Governor Cuomo's counsel, the OAG again agreed to produce documents that the OAG deemed to be specific to the Trooper 1 litigation, including materials that Governor

agreeing voluntarily to produce documents that reference Trooper 1 by name, the OAG expressly waived its immunity and cannot now "hide behind a claim of sovereign immunity." *United States v. James*, 980 F.2d 1314, 1320 (9th Cir. 1992) (holding that the voluntary production of documents in response to a federal subpoena waives sovereign immunity). A state cannot selectively claim immunity. *See Jett v. Penner*, No. Civ S-02-2036, 2007 WL 127790, at \*2 (E.D. Cal. Jan. 12, 2007). In other words, this judicial proceeding will not "compel the [OAG] to act"—the OAG will act regardless. *Gen. Elec. Co.*, 197 F.3d at 597. The OAG's selective assertion of immunity is particularly improper under the circumstances here. The OAG should not be able to broadcast to the public that it is complying with the Subpoena by producing what it claims are the only "relevant" documents while strategically relying on sovereign immunity to withhold critical documents. This is particularly true since the missing documents will, in all likelihood, cast doubt on the Investigation.

*Second*, the OAG waived any claim to immunity by producing documents to other parties. The OAG acknowledges, for instance, that it previously provided certain Requested Materials to unnamed "law enforcement entities"—in addition to the five District Attorneys, the Albany County Sheriff's Office, and the New York State Assembly Judiciary Committee—"in connection with additional government investigations." ECF No. 19 ¶ 39. It is reasonable to assume that at least some of these unidentified "law enforcement entities" and "government investigations" are federal, and the OAG's production of responsive documents to such entities and in connection with such investigations further evidences its express waiver of sovereign immunity. Among other things, it is highly likely that the OAG, or the State through some other agency, provided some or

---

Cuomo's counsel did not already have in their possession. Declaration of Rita Glavin ("Glavin Decl.") at ¶ 4. Likewise, during the subsequent August 15, 2022 meet and confer with Governor Cuomo's counsel, the OAG reiterated that it would produce documents "relevant" to Trooper 1. *Id*. at ¶ 5.

all of the Requested Materials to the U.S. Equal Employment Opportunity Commission ("EEOC") in connection with Trooper 1's EEOC complaint.

*Third*, the Supreme Court has made clear that where, as here, "a [s]tate *voluntarily* becomes party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 619 (2002) (quoting *Gunter v. Atl. Coast Line R. Co.*, 200 U.S. 273, 284 (1906)). During the August 15, 2022 meet and confer, the OAG agreed to a briefing schedule on Governor Cuomo's motion, deliberately inviting this Court's intervention in adjudicating its objections to the Subpoena. *See* Glavin Decl. ¶ 5. In doing so, and moving this Court to quash the Subpoena, *see* ECF No. 17, the OAG made a "voluntary, active decision by the state to entrust a matter to federal court" in a manner inconsistent with the assertion of sovereign immunity. *Bd. of Regents of Univ. of Wisconsin Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 463 (7th Cir. 2011).

*Lastly*, the OAG also waived any claim of state sovereign immunity by failing to raise it in a timely manner. The OAG failed to raise any state sovereign immunity objection in its July 25 Initial Responses and Objections, its August 12 Responses and Objections, its Privilege Log, or during the meet and confer process. *See* ECF Nos. 3-4 (Initial Response Letter), 3-6 (Responses and Objections), 3-7 (Privilege Log). "Rule 45 contemplates the assertion of all objections to document production within 14 days." *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998); *see also Top Jet Enters., Ltd. v. Kulowiec*, No. 21-MC-789 (RA) (KHP), 2022 WL 280459, at *4 (S.D.N.Y. Jan. 31, 2022) ("The Second Circuit has held that objections to a subpoena for production and inspection must set forth all of its grounds for objection, including privilege grounds, within fourteen days of service of the subpoena so that discovery does not become a

game.").  Having failed to raise this claim to immunity in a timely manner, the OAG cannot assert it now. *See Taylor Precision Prods., Inc. v. Larimer Group, Inc.,* No. 15-CV-4428 (ALC) (KNF), 2017 WL 10221320, at *5 (S.D.N.Y. Feb. 27, 2017) (objections made for first time in opposition to motion to compel held to be waived).

## II.  THE REQUESTED MATERIALS ARE RELEVANT AND PROPORTIONAL TO THE NEEDS OF THE TROOPER 1 ACTION

### A.  The Requested Materials Are Relevant to the Trooper 1 Action

Governor Cuomo is entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and such requested information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Once "'any possibility' of relevance [] sufficient to warrant discovery" is shown, the burden shifts to the party opposing discovery to show why the discovery should not be had. *A.I.A. Holdings S.A. v. Lehman Bros.*, No. 97Civ.4978(LMM)(HBP), 2000 WL 763848, at *3 (S.D.N.Y. June 12, 2000). The OAG has not come close to meeting its burden.

*First*, the OAG asserts that the Requested Materials are irrelevant because Trooper 1 has not alleged a hostile work environment based on a pattern or practice of discrimination. *See* ECF No. 18 at 15–16. But the Amended Complaint unambiguously makes allegations relating to Governor Cuomo's alleged harassment of other women—this renders those allegations relevant at this stage of the proceeding.[5] Regardless of its status as a nonparty to the action, the OAG has no basis to unilaterally narrow the allegations in Trooper 1's Amended Complaint. The OAG also has no basis to unilaterally make evidentiary rulings. The parties are currently in early stages of

---

[5] Governor Cuomo reserves the right to seek to preclude some or all of this evidence as irrelevant or otherwise unduly prejudicial during other stages of the Trooper 1 Action.

discovery. There has been no ruling by this Court—or even a request for a ruling from any party to this action—regarding whether certain information is or is not relevant as an evidentiary matter.

*Second*, the OAG asserts that the Requested Materials are irrelevant because the Amended Complaint focuses on Trooper 1's claims against Governor Cuomo and references the OAG Report and instances of sexual harassment of others described therein merely as background information. *See* ECF No. 18 at 16. Though the OAG admits that the facts relating to other women in the Amended Complaint are recited "almost entirely from [] transcripts" of the sworn testimony underlying the OAG Report, it argues that the actual sources of the quotes are the transcripts themselves, not the OAG Report. ECF No. 18 at 16; *see also* ECF No. 19 ¶ 33; ECF No. 19-7. This is absurd. Trooper 1 was able to rely on those transcripts because the OAG released them publicly. As the OAG admits, only a marginal portion of the evidence underlying the OAG Report has been made public. *See* ECF No. 18 at 20 (describing "73,000 documents" that have not been made public), 27 (noting that investigators "communicated with over 100 witnesses whose identities are not otherwise known to the public"). Governor Cuomo is entitled to discover the *unreleased* investigative materials. Without *all* documents underlying the OAG Report, Governor Cuomo will not have a full and fair opportunity to defend himself against Trooper 1's allegations.

*Third*, the OAG relies on *Blue Angel Films, Ltd. v. First Look Studios, Inc.* to argue that the Subpoena improperly seeks to gather information for use in proceedings other than the pending suit. No. 08 Civ. 6469(DAB)(JCF), 2011 WL 830624, at *1 (S.D.N.Y. Mar. 9, 2011); *see* ECF No. 18 at 17. *Blue Angel Films* is inapposite. There, the Court granted the motion to quash the nonparty subpoena where "the only remaining issue in th[e] case [was] calculation of the plaintiffs' damages" and the plaintiffs had not suggested how the requested documents might shed light on that question. *Blue Angel Films*, 2011 WL 830624, at *1. Rather, the plaintiffs in that case

advanced the argument that they intended to implead the third party whose information was requested as a defendant and argued that the information requested would be relevant to those claims. *See id.* As such, the court found that the discovery requested was improper, given that it was "intended to gather information for use in proceedings other than the pending suit." *Id.* This is plainly not the case here, where the Requested Materials relate directly to allegations in the Amended Complaint that remain at issue in the proceeding and thus the requested discovery is properly confined to the claims and defenses identified in the pleadings.

### B.      The Requested Materials Are Proportional to the Needs of the Case and Requiring Their Production Would Not Impose an Undue Burden

The OAG also argues that the Requested Materials are not proportional to the needs of the case and are unduly burdensome. ECF No. 18 at 17–22. These contentions are unavailing. The OAG bears the burden of showing that compliance with the Subpoena would impose an undue burden. *See MacNamara*, 2006 WL 3298911, at \*15. While the OAG admits that the "allegations in the Trooper 1 Action are serious and the amount in controversy is not negligible," ECF No. 18 at 21, the OAG makes a number of arguments as to why the Rule 26(b)(1) factors favor nondisclosure. None of the OAG's arguments come close to establishing that the Requested Materials are disproportionate or unduly burdensome.

*First*, the OAG argues that Governor Cuomo has "the same access to information" as the OAG and can seek to obtain it directly from the witnesses referenced in the OAG Report. ECF No. 18 at 19. This argument is without merit. The OAG is the sole custodian of the vast majority of the Requested Materials and is undoubtedly the most convenient and least burdensome source. The contention that Governor Cuomo should be required to issue over 100 individual subpoenas to access the information that the OAG has already gathered and has in its possession is directly at odds with both Rule 26's efficiency goals and considerations of judicial economy. It makes no

sense to force Governor Cuomo to issue dozens (if not more) of subpoenas to obtain documents that all have been collected, organized, and Bates stamped by the OAG, or provided to the OAG in such a format. Nor does it make sense to force Governor Cuomo to take dozens of depositions to identify which witnesses potentially have relevant evidence when the OAG's prior interview memos can make that process much more efficient and less burdensome on everyone, including the nonparties. Apart from being inefficient, serving so many nonparty subpoenas would likely result in even more discovery disputes before this Court. Moreover, while the status of the OAG as a nonparty to the litigation is relevant, "[c]ertainly, discovery should not simply be denied on the ground that the person or entity from whom it is sought is not a party to the action." *Wertheim Schroder & Co. Inc. v. Avon Prods., Inc.*, No. 91 CIV 2287 (PKL), 1995 WL 6259, at *6 (S.D.N.Y. Jan. 9, 1995) (denying motion to quash nonparty discovery where gaps in relevant information could best be filled by nonparty, stating: "The outcome of litigation should not hinge on the fortuity that relevant information is possessed by a nonlitigant rather than by a party.").

*Second*, the OAG mischaracterizes the Requested Materials as "not tailored" or described with reasonable particularity. ECF No. 18 at 19–20. Yet the Subpoena is inherently narrow and limited in scope, time period, custodians, and subject matter given that it only seeks documents referenced in and underlying the OAG Report. *See* ECF No. 3-3. It does not seek any documents apart from those connected to the OAG Report (which, again, is the basis for Trooper 1's allegations) and is not a wild fishing expedition. *Bhatt v. Lalit Patel Physician P.C.*, which involved much broader requests, is thus inapplicable. No. 18-CV-2063-ILG-SJB, 2020 WL 13048694, at *2 (E.D.N.Y. Oct. 19, 2020) (request seeking "complete employee files for every employee" of employer held inconsistent with federal discovery rules where defendants failed to

identify why information about employees other than plaintiff was relevant or proportional to defend against plaintiff's wage-and-hour claims).

*Third*, the OAG argues that it would be required to expend significant resources to "review and redact the Disputed Material." ECF No. 18 at 20. As an initial matter, that the Investigative Team purportedly billed "over 3,600 hours reviewing just 1,000 documents" to prepare materials for public release is of no relevance, particularly where the OAG would not be required to redact sensitive material in the same manner as it would for public disclosure. *Id.* Any need for redactions can and should be addressed by producing the material pursuant to a protective order. There is also no reason to believe that the OAG would have to re-review documents it already reviewed, organized, and relied upon in the Report, particularly as we know that these materials have already been reviewed, Bates stamped, and cited throughout the OAG Report. *See* ECF No. 3-10. A subpoenaed party cannot claim burden simply by citing to a large volume of documents. *See MacNamara*, 2006 WL 3298911, at *16.[6] What is more, the OAG acknowledges it shared at least some of these documents with other parties, including at least five District Attorneys, the New York State Assembly Judiciary Committee, the Albany County Sheriff's Office, and other unnamed law enforcement entities. *See* ECF No. 19 ¶ 39.

Under these circumstances, the OAG plainly has the means to readily locate and produce responsive materials such that complying with the Subpoena should impose minimal burden. *See Taylor Precision Prods.*, 2017 WL 10221320, at *5 (because nonparty acknowledged that it had

---

[6] The case the OAG cites in support of its argument is unpersuasive, as it involves the analysis of undue burden in the context of compelled testimony of federal government officials. *See Solomon v. Nassau Cnty.*, 274 F.R.D. 455, 460 (E.D.N.Y. 2011) (finding undue burden where plaintiff in civil case served Rule 45 subpoenas on employees of the Department of Veterans Affairs who provided medical care to plaintiff, where plaintiff made improper Touhy request and failed to otherwise comply with requirements for requesting testimony of federal employees).

already produced certain documents responsive to the defendants' subpoena, "complying with the subpoena would not appear to be unduly burdensome" because nonparty "already possesse[d] the relevant search terms enabling it to locate relevant information that was not produced previously").

### III. THE REQUESTED MATERIALS ARE NOT PROTECTED FROM DISCLOSURE BY ANY APPLICABLE PRIVILEGE

#### A. The Attorney-Client Privilege Does Not Apply

The OAG has not met its burden of establishing that the attorney-client privilege applies, as the OAG does not show that the Requested Materials contain communications (1) made between a client and counsel, (2) that were intended to be, and in fact have been, kept confidential, and (3) that were made for the purpose of obtaining or providing legal assistance. *Koumoulis v. Indep. Fin. Mktg. Group, Inc.*, 295 F.R.D. 28, 36–38 (E.D.N.Y. 2013). Here, the OAG objects to all but one of the Subpoena's requests on the basis of attorney-client privilege, *see* ECF Nos. 3-6, 3-7, and argues that the privilege extends to all "attorney notes and memoranda and communications among Investigative Team attorneys and between OAG and the Investigative Team," *see* ECF No. 18 at 22. These types of blanket assertions of privilege do not suffice to demonstrate that the Requested Materials fall within the privilege and are immune from discovery, as the privilege must be "confined within its narrowest possible limits." *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 200 (E.D.N.Y. 1988) (collecting cases); *see also Koumoulis*, 295 at 43 (vague privilege log descriptions held insufficient to support invocation of attorney-client privilege). None of the arguments presented by the OAG warrant a different result.

*First*, the OAG argues that the communications between the OAG and the investigators constitute communications between a client and its counsel. To support its contention that the private attorneys deputized by the OAG pursuant to Executive Law § 63(8) to investigate the allegations regarding Governor Cuomo "functioned as attorneys within the OAG despite being

employed by private law firms," and the attorneys within the OAG who received communications from these investigators were "functioning as the 'client,'" ECF No. 18 at 23, the OAG cites to nothing but the engagement letters between the OAG and the outside law firms. *See id.* (citing ECF No. 19 at ¶¶ 13–14). But the fact that the OAG engaged outside attorneys does not itself render those communications privileged. *See, e.g. In re Cnty. of Erie*, 473 F.3d 413, 421 (2d Cir. 2007) ("When an attorney is consulted in a capacity other than as a lawyer . . . that consultation is not privileged."). Moreover, the engagement letters make clear that the "predominant purpose" of the OAG's retention of outside counsel—and thus its subsequent communications therewith—was not for the purpose of obtaining of legal advice, but rather expressly for "investigating and reporting on allegations of, and circumstances surrounding, sexual harassment by Governor Andrew Cuomo" to ultimately "produce a public report with their findings and conclusions." ECF No. 19-5 at 2, 5 (describing "Scope of Services"); *see also Koumoulis*, 295 F.R.D. at 37 ("Obtaining or providing [] legal advice must be the 'predominant purpose' of a privileged communication."). Accordingly, even if the OAG could demonstrate the existence of an attorney-client relationship, it has not shown (and arguably cannot show) that any—much less most or all— of the Requested Materials were confidential communications made for the purpose of obtaining or providing legal assistance.

*Second*, the OAG relies on *In re General Motors LLC Ignition Switch Litig.* to argue that the investigators intended their notes and communications with the OAG to be confidential, notwithstanding that the OAG always intended the contents of its Investigation to be made public. 80 F. Supp. 3d 521, 528–529 (S.D.N.Y. 2015); ECF No. 18 at 23–24. But *General Motors* is distinguishable. In *General Motors*, "the internal investigation and accompanying interviews were conducted 'as part of the company's request for legal advice'"; the only witnesses were General

Motors employees; the attorneys gave *Upjohn* warnings to the employees at the outset of each interview and told them that the matters discussed should be kept confidential; and the interview materials were "never shared with any government agency or third party." 80 F. Supp. 3d at 527–529. In contrast, the investigators here were not conducting confidential employee interviews as part of a request for legal advice from the OAG; instead, they were tasked with investigating the allegations against Governor Cuomo and producing a public report regarding the same. While some of the interview subjects were state employees, many were not. Nor was there any effort by the OAG to keep the contents of its Investigation confidential—indeed, numerous witnesses made public statements about the Investigation and spoke with the media, as did AG James herself.

Moreover, the OAG admits it has shared interview memos with other law enforcement entities. *See* ECF No. 18 at 24. The court in *General Motors* explicitly noted that, though the company's CEO "may have promised transparency in matters relating to safety . . . she did not promise to disclose the communications reflected" in the interview materials themselves such that those materials were not intended to be kept confidential. 80 F. Supp. 3d at 529. AG James, conversely, expressly promised to make the evidence underlying the OAG Report available to the public. *See* ECF No. 3-12 at 3 ("The investigators independently corroborated and substantiated these facts through interviews and evidence, ***including contemporaneous notes and communications***. ***This evidence will be made available to the public***, along with the report." (emphasis added)). At that same press conference, one of the investigators confirmed that the evidence would be available to other law enforcement agencies: "all the information is fully documented in the report and any prosecutors or police departments can look at the evidence and determine if they want to take further action." *Id.* at 8. AG James subsequently acknowledged that certain underlying documents would be released to the Albany County District Attorney's Office.

ECF No. 3-16.[7] Ultimately, the OAG provided additional materials to the Albany County District Attorney's Office, with the understanding that those materials—including approximately 28 witness interview memoranda—were to be (and in fact were) provided to Governor Cuomo's counsel to satisfy discovery obligations in the then-pending (since dismissed) misdemeanor case. These materials were provided to Governor Cuomo without any protective order in place. Accordingly, the OAG cannot now claim that it intended to keep the Requested Materials confidential such that they are immune from disclosure under the attorney-client privilege.

*Third*, the OAG argues that the predominant purpose of the Requested Materials was not the publishing of a public report but rather the rendering of legal advice. This is contrary to the clear public record. *See, e.g.*, ECF No. 3-9 at 1 ("This team is charged with conducting a thorough and independent investigation of, and the circumstances surrounding, allegations of sexual harassment against Governor Cuomo . . . Upon the conclusion of the investigation, the team will produce a written report which will include its findings. The report will be made available to the general public."); ECF No. 3-11 at 2 (noting outside attorneys "were all deputized . . . as Special Deputies to the First Deputy Attorney General to conduct the investigation and issue this [public] report"); ECF No. 3-12 at 3 (confirming that the "evidence [underlying the Report] will be made available to the public, along with the report."); ECF No. 19-5 at 2, 5 ("[A]t the conclusion of the investigation, [the firm will] produce a public report with their findings and conclusions").

---

[7] Specifically, the OAG's press release stated: "[F]ollowing the filing of a criminal complaint against Cuomo on October 28, 2021 in Albany County, the Albany County District Attorney's Office informed the OAG that it would begin releasing evidence to Cuomo to comply with New York state's discovery laws . . . As these materials are now being released by the Albany County District Attorney's office—and in an effort to provide full transparency to the people of New York—the OAG has informed local district attorneys that it will immediately begin releasing . . . all transcripts and corresponding exhibits compiled during the investigation . . ."

In making this argument, the OAG mischaracterizes the facts of *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 104 (S.D.N.Y. 2007); *see also* ECF No. 2 at 14; ECF No. 18 at 24–25. That case did not involve an investigation conducted only by non-lawyer consultants, nor was the investigation at issue limited to business-related matters. Rather, a law firm was "retained to provide legal advice to [the company], and to assist [the consultant's] investigation" into a rogue trading scheme. *Allied Irish Banks*, 240 F.R.D. at 101. Despite the law firm's involvement in conducting witness interviews and authoring the report, the court found that the attorneys' draft reports, memoranda of investigation interviews, and reports of attorney communications with the company's Board of Directors were not protected by the attorney-client privilege. *Id.* at 104. The privilege failed to attach because these materials were not shown to have been prepared "primarily" or "predominantly" for the "purpose of providing legal advice"; "[r]ather, they were prepared for the purpose of generating the Report." *Id.*

Given the nature of the OAG's Investigation and its ultimate goal of producing a public report, the attorney-client privilege is likely inapplicable to all, or at least most, of the claimed communications. The Requested Materials here are analogous to the documents at issue in *Koumoulis*, 295 F.R.D. at 44–46. In that case, the court held that communications regarding a joint investigation of discrimination and retaliation complaints between human resources and outside counsel were not immune from disclosure given that the predominant purpose concerned business, rather than legal, advice. *Id.* Those non-privileged communications included: a detailed summary of the investigation; instructions from counsel on what actions should be taken; reports to counsel concerning actions taken and proposed next steps; draft letters prepared by counsel to be sent to the complaining employee and related communications; and communications with counsel regarding what questions to ask during investigative interviews. *See id.* Consistent with

*Koumoulis*, the Requested Materials over which the OAG claims privilege do not involve the rendering of legal advice. *See* ECF No. 18 at 24 (describing the Investigative Team's creation of "memoranda concerning all of their interviews" and "advice to OAG on investigative next steps"); *see also Vessalico v. Costco Wholesale Warehouse*, No. 15-CV-1292 (LDW)(SIL), 2016 WL 3892403, at *2 (E.D.N.Y. July 14, 2016) ( "[A]n investigative report does not become privileged merely because it was sent to an attorney . . . the Accident Report is essentially a factual account . . . [it] is not primarily or predominantly of a legal character." (internal quotations omitted)); *Women's InterArt Center, Inc. v. N.Y.C. Econ. Dev.*, 223 F.R.D. 156, 160 (S.D.N.Y. 2004) (status reports with handwritten notes not protected by attorney-client privilege since they contained "largely factual information").

*Fourth*, the OAG argues that it has not waived any attorney-client privilege that may have applied to the Requested Materials. In so doing, it attempts to distinguish *In re Kidder Peabody Sec. Litig.* by arguing that, "[u]nlike the client in *Kidder*" the OAG has "not placed the [OAG] Report at issue in any proceeding." *See* ECF No. 18 at 25; *see also In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 473 (S.D.N.Y. 1996). But the OAG has explicitly relied on the OAG Report in an Article 78 proceeding concerning Governor Cuomo's entitlement to legal fees. *See* Glavin Decl. ¶¶ 10-11, Exhibit 1. In defending against Governor Cuomo's Petition, a Deputy Attorney General represented that she relied upon the OAG Report in determining that Governor Cuomo would not be entitled to a state-funded defense pursuant to Public Officers Law § 17. *See id*. In so doing, the OAG "proffer[ed] the underlying facts on which the [OAG Report] is assertedly based, including particularly the statements made to the investigators by the witnesses whom they interviewed." *Kidder*, 168 F.R.D. at 472. Having made representations to the court in an adversarial proceeding against Governor Cuomo as to the substance of materials underlying the

OAG Report, the OAG cannot now invoke privilege to prevent the disclosure of this information. *See id.* at 472–473 ("In effect it would use the substance of the documents as a sword while at the same time invoking the privilege as a shield to prevent disclosure of the very materials that it has repeatedly invited the courts to rely upon. This it cannot do."). Moreover, the OAG's affirmative use of the purportedly privileged communications in litigation satisfies the conditions required to apply a broad "subject-matter waiver" of the privilege. *See id.* at 473.[8]

### B.      The Work Product Doctrine Does Not Apply

The OAG's argument that the Requested Materials were prepared in connection with pending or anticipated litigation is equally wrong-headed. *See* ECF No. 18 at 26. Though a proponent of the work product protection "bears the 'heavy burden' to establish its existence," the OAG proffers nothing more than the conclusory statement that it "anticipated litigation upon receiving the Referral," including speculative impeachment proceedings, litigation from the complainants, and litigation from Governor Cuomo.[9] *Favors v. Cuomo*, 285 F.R.D. 187, 199 (E.D.N.Y. 2012); *see* ECF No. 18 at 26. As the OAG acknowledges, however, a document can be deemed prepared in anticipation of litigation only if it "can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis in original; collecting cases). This "because of" formulation "withholds

---

[8] Moreover, as discussed above, the OAG has already produced, through discovery exchanged in the since-dismissed Albany County misdemeanor case, approximately 28 interview memoranda, waiving any claim to attorney-client privilege over those materials. To the extent that the OAG produced documents to other entities only pursuant to protective orders, this would not protect the materials from waiver. *See Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 480 (S.D.N.Y. 1993) (a confidentiality "agreement does not prevent the disclosure from constituting a waiver of the privilege; it merely obligates the recipient to comply with the terms of any confidentiality agreement").

[9] Inexplicably, the OAG relies on Governor Cuomo's conduct *after* the OAG Report's publication to support its claim that it conducted its Investigation and prepared the Report in anticipation of litigation by the Governor himself. *See* ECF No. 18 at 26 (citing ECF No. 19 ¶ 43). Moreover, even assuming legislative impeachment is potential "litigation," the OAG does not explain how it would have been involved in that proceeding.

protection from documents . . . that would have been created in essentially similar form irrespective of the litigation." *Id.* ("Even if such documents might also help in preparation for litigation, they do not qualify for protection because it could not fairly be said that they were created 'because of' actual or impending litigation."). And it is well-established that a "mere possibility of future litigation" does not rise to the level of "anticipation of litigation;" rather, "[t]he party asserting the privilege must demonstrate that a 'substantial probability' of litigation existed at the time the material was created." *Garrett v. Metro. Life Ins. Co.*, No. 95 CIV. 2406 (PKL), 1996 WL 325725, at *3 (S.D.N.Y. June 12, 1996).

Here, the OAG expressly retained counsel for "investigating and reporting on allegations of, and circumstances surrounding, sexual harassment by Governor Andrew Cuomo" to ultimately "produce a public report with their findings and conclusions." ECF No. 19-5 at 2, 5 (describing "Scope of Services"). There is "nothing about litigation" in either engagement letter. *See Allied Irish Banks*, 240 F.R.D. at 107–108. Nor does anything in the OAG Report suggest that "it was engendered by any concern about litigation." *Id.* at 108. Moreover, given the purportedly "full, fair, and independent" nature of the Investigation and related public Report, *see* ECF No. 3-10 at 14, the OAG cannot in good faith argue that the documents underlying the OAG Report would have been created in a different form depending on whether litigation was or was not anticipated. *See Allied Irish Banks*, 240 F.R.D. at 108 ("[T]he use to which the Report was ultimately put provides further evidence of why it would have been generated in the same manner irrespective of the potential for litigation . . . [the company's Board] intended the Report to be used to address culpability, accountability, control systems and organizational issues." (internal quotations and alterations omitted)); *see also Kidder*, 168 F.R.D. at 466 (declining to extend work product protection to public report released following internal investigation where reporting of findings

20

was more dominant motivator than potential litigation and the circumstances "made it urgent that the internal investigation be well publicized and viewed as the inquiry of an 'independent' and incorruptible outsider"). Accordingly, the OAG has not established a basis upon which it can assert work product protection over the Requested Materials.

Even if the OAG had met its burden, the work product protection has been waived. As described above, *see supra* III.A., the OAG has put the OAG Report and the documents underlying the same at issue in an adversarial proceeding against Governor Cuomo. *See, e.g.*, *Coleco Indus., Inc. v. Universal City Studios*, 110 F.R.D. 688, 691 (S.D.N.Y. 1986) (disclosure of work product as defense in action and during litigation in separate action constituted waiver of all work product relevant to the same issue as "the privilege impedes a fair adversarial presentation of the facts when it is invoked to avoid disclosure of anything other than a necessarily biased presentation of the relevant facts"). The Second Circuit's decision in *New York Times Co. v. United States Dep't of Just.* further confirms that result. 939 F.3d 479, 496 (2d Cir. 2019) (sufficiently specific disclosure in a public statement is tantamount to disclosure of the underlying information, resulting in waiver of work product protection). That the Second Circuit did not apply a broad at-issue waiver in that case is of no import here, as the Court need not apply a broad at-issue waiver to the OAG Report to find that the information underlying the Report must be disclosed. Instead, it need only point to the specifics disclosed in the Report, including citations in over 1,370 footnotes and paraphrased witness statements, to find that any work product protection has been waived. *See* ECF No. 3-10.[10]

---

[10] As discussed above, work product protection was independently waived when materials including interview memoranda were disclosed to Governor Cuomo as part of a since-dismissed misdemeanor action out of Albany County.

### C.     The Law Enforcement Privilege Does Not Apply

The OAG asserts law enforcement privilege over a broad swath of documents, including "subpoenas," "investigation documents and testimony," "attorney notes, draft documents and memoranda," "internal correspondence," and correspondence between the Investigative Team and witnesses or between the OAG and other governmental entities. ECF No. 18 at 27. It then proceeds to identify vague and generalized harms associated with the production of these materials, namely: (i) the exposure of witness identities, (ii) the undermining of OAG's future investigative efforts to collect sensitive information in hypothetical investigations, and (iii) undescribed impairment of "ongoing investigations" by other unnamed law enforcement entities. ECF No. 18 at 28. "This collection of generalizations plainly fails to justify invocation of the privilege in light of the type of information actually withheld." *Haus v. City of New York*, No. 03 Civ.4915 RWS MHD, 2004 WL 3019762, at *4 (S.D.N.Y. Dec. 29, 2004).[11]

To invoke the law enforcement privilege, the OAG "must make a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted." *Kunstler v. City of New York*, No. 04CIV1145 (RWS)(MHD), 2005 WL 2656117, at *1 (S.D.N.Y. Oct. 18, 2005). It may not, as the OAG has done here, "rely simply on generalized iterations of the policies underlying the privilege." *Id.*; *see also MacNamara v. City of New York*, 249 F.R.D. 70, 86 (S.D.N.Y. 2008) (internal quotations omitted). *First*, the assertion that disclosure would undermine future investigative efforts by the OAG, without more, is "entirely conclusory and unspecific"—rendering it exactly the type of harm that courts are quick to reject. *See Kunstler*, 2005 WL 2656117, at *3; *Haus*, 2004 WL 3019762, at *4. *Second*, it is not enough to purport that disclosure would impair "ongoing investigations;" rather, the OAG must

---

[11] Indeed, the OAG provides no information on what these purported "ongoing investigations" are.

"specify *what* investigations may be impaired by disclosure of information assertedly covered by the privilege." *Haus*, at 2004 WL 3019762, *4 (emphasis added; *citing Fountain v. City of New York*, No. 03 Civ. 4526 (RWS), 2004 WL 941242, at *4 (S.D.N.Y. May 3, 2004)). *Third*, courts have rejected arguments like those made by the OAG which focus on harms stemming from "public" disclosure given the obvious availability of a protective order to obviate such fears. [12] *See, e.g.*, *Kunstler*, 2005 WL 2656117, at *3; *Haus*, 2004 WL 3019762, at *5.[13]

Even if a law enforcement privilege did apply, Governor Cuomo's need for the information outweighs the public interest in nondisclosure. The relevance of the OAG Report and documents underlying the same to the Trooper 1 Action is clear. *See supra* § II.A. And it is nonsensical for the OAG to simultaneously argue that "publicly available materials permit [Governor Cuomo] to seek discovery directly from sources of the information," while in the same breath claiming it cannot disclose documents underlying the OAG Report given that it "communicated with over 100 witnesses whose identities are not otherwise known to the public." ECF No. 18 at 27–28.

## D.   The Deliberative Process Privilege Does Not Apply

Invoking the deliberative process privilege, the OAG argues, without more, that "Internal Correspondence (communications internal to OAG employees and communications between the

---

[12] The OAG claims there is "no adequate protective measure" because the harm arises from disclosure to Governor Cuomo without further explanation. Given the nature of the public allegations, it is difficult to fathom what intrinsic harm would result if Governor Cuomo were to learn of additional information. But even if the OAG could identify such harm with respect to certain information, provisions in a protective order could address the OAG's confidentiality concerns.

[13] The OAG's failure to make a particularized showing of the public interest and privacy concerns that would be jeopardized by disclosure of the Requested Materials similarly invalidates its claim of public interest privilege, particularly where it disclosed some of these materials publicly. *See* ECF No. 18 at 29 (identifying "the protection of witnesses" and the "shielding of OAG's investigative techniques" as harms sufficient to justify the privilege); *cf. Acorn v. County of Nassau*, No. CV 05-2301 (JFB)(WDW), 2008 WL 708551, at *2 (E.D.N.Y. Mar. 14, 2008) ("generalized statement" regarding "chilling effect" of disclosure insufficient to assert public interest privilege); *Woodard v. City of New York*, No. 99 CV 1123(ILG), 2000 WL 516890, at *5 (E.D.N.Y. Mar. 10, 2000) (finding District Attorney's office failed to offer "specific support" for its claim of public interest privilege); *see also* ECF No. 2 at 22–24.

firms and OAG employees, including the weekly reports)" should be shielded because these documents "reflect investigative steps taken, the legal opinions, and non-final deliberations with OAG." ECF No. 18 at 30. But the privilege does not extend where, as here, the OAG has identified nothing to show that the Requested Materials comprised "part of a process by which governmental decisions and policies are formulated." *Tortorici v. Goord*, 216 F.R.D. 256, 258 (S.D.N.Y. 2003) (internal citations omitted). Indeed, the OAG has not identified *any* governmental decision or policy to which the Requested Materials relate. Nor has the OAG met its burden of demonstrating that the Requested Materials are both "predecisional" and "deliberative." *See* ECF No. 2 at 18–20. Regarding the former, the OAG has not identified how the Requested Materials were "prepared in order to assist an agency decisionmaker in arriving at" her decision; it cannot "pinpoint the specific agency decision to which the document correlates," nor can it "verify that the document precedes" the decision to which it purportedly relates. *Am. Civil Liberties Union v. Dep't of Def.*, No. 15 CIV. 9317 (AKH), 2017 WL 4326524, at *5 (S.D.N.Y. Sept. 27, 2017). As the OAG Report itself acknowledges, the materials were prepared not as part of a government decision-making or policy formulating process, but rather were expressly created for the sole purpose of "investigat[ing] 'the allegations of and circumstances surrounding sexual harassment claims made against the Governor.'" ECF No. 3-10 at 14. Though the OAG Report offers a "Conclusion," it does not make policy recommendations or evaluate potential agency action. ECF No. 3-10 at 165. This ends the inquiry. [14] *See Tortorici*, 216 F.R.D. at 258.

---

[14] Even if the Court were to find the deliberate process privilege applied, the OAG does not address Governor Cuomo's argument that disclosure is warranted given the OAG's adoption of the investigators' analysis, reasoning and conclusions via the publication of the OAG Report. *See* ECF No. 2 at 20–21. Moreover, the deliberate process privileged is a qualified privilege and the factors weigh in favor of disclosure. *See id.* at 21–22.

That this factfinding investigation was conducted by attorneys does not render the documents protected by the deliberate process privilege. The OAG's reliance on *Thompson v. Lynbrook Police Dep't* for this argument is misguided. 172 F.R.D. 23 (E.D.N.Y. 1997). There, the deliberate process privilege was extended to materials prepared by the District Attorney's Special Investigations Bureau, which was charged with investigating a complaint made against a police officer. The purpose of the investigation was to provide "recommendations to . . . higher-ranking officials . . . on what, if any action should be taken" with respect to the plaintiff and the officer. *Id.* at 27. And the District Attorney did eventually make the final policy decision not to bring charges against the officer and to dismiss criminal charges against the plaintiff. *Id.* at 25. The same cannot be said here, where the OAG has identified no policy or final agency action pursuant to which the Report and Investigation was conducted. Accordingly, the Requested Materials do not constitute part of any deliberative process.

## **CONCLUSION**

For the foregoing reasons, Governor Cuomo respectfully requests that the Court compel the production of the Requested Materials and deny the OAG's motion to quash.

Dated: New York, New York
   November 22, 2022

Respectfully submitted,

*/s Theresa Trzaskoma*

Theresa Trzaskoma
Allegra A. Noonan
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

Rita M. Glavin
Glavin PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

*Counsel for former Governor*
*Andrew M. Cuomo*