UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ANDREW M. CUOMO,                                :
                                                :
                       Movant,                  :   1:22-mc-03044 (LDH)(TAM)
                                                :
       - against -                              :
                                                :
OFFICE OF THE NEW YORK STATE                    :
ATTORNEY GENERAL,                               :
                                                :
                       Defendant.               :
---------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S CROSS-MOTION TO QUASH

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

Attorney for Defendant

Andrew Amer
Serena Longley
Michael Jaffe
Tamikka Pate

    of Counsel

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT .................................................................................................................... 1

    I.    SOVEREIGN IMMUNITY APPLIES TO BAR MOVANT'S SUBPOENA ..............1

    II.   THE DISPUTED MATERIALS ARE IRRELEVANT AND NOT
        PROPORTIONAL TO THE NEEDS OF THE CASE ..................................................5

    III.  THE DISPUTED MATERIALS ARE PRIVILEGED ................................................7

CONCLUSION ................................................................................................................ 10

TABLE OF AUTHORITIES

**Cases**

*A.I.A. Holdings S.A. v. Lehman Bros.*, No. 97-cv-4978, 2000 WL 763848
  (S.D.N.Y. June 12, 2000) .................................................................................. 7, 8

*Alden v. Maine*, 527 U.S. 706 (1999) ................................................................................ 5

*Coleco Indus., Inc. v. Universal City Studios,* 110 F.R.D. 688 (S.D.N.Y. 1986) ....................... 11

*Coniff v. Vermont*, No. 2:10-cv-32, 2013 WL 5429428 (D. Vt. Sept. 30, 2013),
  aff'd sub nom., *Beaulieu v. Vermont*, 807 F.3d 478 (2d Cir. 2015) ..................................... 5, 6

*Doerbecker v. Cnty. of Nassau*, No. 12-cv-2204, 2013 WL 2237574 (E.D.N.Y.
  May 21, 2013) .................................................................................................... 4

*Dugan v. Rank*, 372 U.S. 609 (1963) .................................................................................. 2

*Ebbert v. Nassau County*, No. 05-cv-5445, 2007 WL 674725 (E.D.N.Y. March
  5, 2007) ............................................................................................................. 8

*Fifth Ave. Assocs., L.P. v. N.Y. State Dep't of Taxation & Fin.*, 963 F.2d 503 (2d
  Cir. 1992) .......................................................................................................... 6

*Freeman v. Rochester Psychiatric Center*, No. 16-cv-6668T, 2018 WL 4275984
  (W.D.N.Y. Sept. 7, 2018) ...................................................................................... 4

*In re Cnty. of Erie*, 473 F.3d 413 (2d Cir. 2007) ................................................................. 10

*Jackson v. AFSCME Local 196*, No. 3:07-cv-0471, 2008 WL 1848900 (D.
  Conn. April 25, 2008) ......................................................................................... 3

*Koumoulis v. Indep. Fin. Mktg. Group, Inc.*, 295 F.R.D. 28 (E.D.N.Y. 2013) .......................... 10

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002) ................................. 5

*MacNamara v. City of N.Y.*, No. 04-cv-9612, 2006 WL 3298911 (S.D.N.Y.
  Nov. 13, 2006) ................................................................................................... 4

*Milord-Francois v. New York State Off. of Medicaid Inspector Gen.*, No. 19-cv-
  00179, 2022 WL 10653757 (S.D.N.Y. Oct. 18, 2022) .............................................. 5, 6

*Morrison v. Budget Rent A Car Sys.*, 657 N.Y.S.2d 721 (2d Dep't 1997) ................................. 5

*N. Ins. Co. of N.Y. v. Chatham Cnty., Ga.*, 547 U.S. 189 (2006) .................................................. 4

*Pierce v. Demmon*, No. 9:14-cv-1028, 2015 WL 7077227 (N.D.N.Y. Nov. 12, 2015) ............................................................................................................................... 4

*Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022) ......................................................................... 2, 3

*S.E.C. ex rel. Glotzer*, 374 F.3d 184 (2d Cir.2004) ..................................................................... 2

*Sibley v. Choice Hotels International,* No. 14-cv-634, 2015 WL 9413101 (E.D.N.Y. December 22, 2015) ........................................................................................ 7

*Sky Medical Supply Inc. v. SCS Support Claim Services, Inc.*, No. 12-cv-6383, 2017 WL 1133349 (E.D.N.Y. March 24, 2017) ......................................................... 7

*Thompson v. Spota*, No. 14-cv-2473, 2018 WL 6163301 (E.D.N.Y. August 23, 2018) ............................................................................................................................... 4

*U.S. EPA v. General Elec. Co.*, 197 F.3d 592 (2d Cir. 1999), *amended on reh'g on other grounds*, 212 F.3d 689 (2d Cir. 2000) ............................................. 2, 3, 6, 7

*Ying Jing Gan v. City of N.Y.*, 996 F.2d 522 (2d Cir. 1993) ......................................................... 4

**Statutes**

12 N.Y.C.R.R. § 461.4 ................................................................................................................. 3

N.Y. Labor Law § 537 ................................................................................................................. 3

N.Y. Public Officers Law §§ 84-90 ............................................................................................. 1

# PRELIMINARY STATEMENT[1]

Second Circuit precedent holds that a subpoena is barred by sovereign immunity unless waived because it would, if enforced, compel the government to act. Under that precedent, Movant's subpoena is unenforceable. Movant's contention that applying sovereign immunity here means no state agency can ever be compelled to produce documents in any federal action is overblown. Apart from discovery that is available where a state official is properly named as a defendant in an action seeking prospective injunctive relief, New York provides access to non-party state agency records under the Freedom of Information Law ("FOIL"), N.Y. Public Officers Law ("POL") §§ 84-90. Movant cannot override OAG's sovereign immunity by opting out of the FOIL process that New York affords all members of the public because he favors a federal subpoena. Moreover, Movant's subpoena is otherwise improper because it seeks investigative material for his personal political purposes, in service of his years-long effort to smear OAG's Investigation. In doing so, Movant fails to establish the relevance of the Disputed Materials, their proportionality to the needs of the case, and bases to overcome the protections under numerous well-established privileges. The subpoena should be quashed.

# ARGUMENT

## I. SOVEREIGN IMMUNITY APPLIES TO BAR MOVANT'S SUBPOENA

Contrary to Movant's contention, there is nothing "extreme," "nonsensical," or "unsupported" about applying state sovereign immunity to bar enforcement of a non-party subpoena that, like the non-party subpoenas at issue in the Second and Fifth Circuit cases OAG cited in its moving brief, could serve to "compel [the state] to act," *Dugan v. Rank*, 372 U.S. 609, 620 (1963). *See U.S. EPA v. General Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999), *amended on*

---

[1] This reply brief uses the same defined terms as OAG's moving brief.

*reh'g on other grounds*, 212 F.3d 689 (2d Cir. 2000); *In re S.E.C. ex rel. Glotzer*, 374 F.3d 184, 190 (2d Cir. 2004); *Russell v. Jones*, 49 F.4th 507, 519 (5th Cir. 2022).

Movant ignores *Glotzer* entirely and attempts to sweep *EPA* under the rug by noting that it involves federal sovereign immunity rather than state sovereign immunity, a distinction without a difference. In both cases, the Second Circuit held sovereign immunity applied to a non-party subpoena because "the result could serve 'to restrain the Government from acting, or to compel it to act,'" relying on the Supreme Court's standard in *Dugan*. *Id*. at 597 (quoting *Dugan*, 372 U.S. at 620). Nothing about the court's reasoning depended on the subpoena being issued to a federal agency as opposed to a state agency; the critical point was that enforcement of the subpoena could compel the government agency to act, as it would here. This is exactly what persuaded the Fifth Circuit in *Russell* to hold that state sovereign immunity barred enforcement of subpoenas against state officials. *Russell*, 49 F.4th at 519 (holding the rationale of *EPA* and other circuit decisions applying federal and tribal sovereign immunity to non-party subpoenas reinforces that "state sovereign immunity is no less effective" against non-party subpoenas served on state officials).

With respect to *Russell*, Movant attempts to distinguish the case based on the irrelevant fact that the state officials in *Russell* had previously been dismissed as party defendants on sovereign immunity grounds. Movant's Memorandum of Law in Opposition (Dkt. No. 21) ("Movant's Opp.") at 4. But the state officials' prior status as party defendants did not matter to the court's holding; rather, the court determined discovery of state officials was barred by sovereign immunity whether sought by document requests or non-party subpoenas. *Russell*, 49 F.4th at 515 (holding "sovereign immunity is not so fickle" as to allow the plaintiffs to "obtain by third-party subpoena what they could not obtain from the [state officials] as defendants."). And *Russell* is by no means an "outlier"; as the court's comprehensive review confirms, the holding in

*Russell* is "reinforce[d]" by the "virtual unanimous agreement" among the circuits "that federal sovereign immunity applies to third-party subpoenas," *id*. at 516 (discussing cases from the Second, Fourth, Seventh, and Ninth Circuits), and decisions from two circuits holding tribal sovereign immunity applies to third-party subpoenas, *id*. at 517-18 (discussing cases from the Eighth and Tenth Circuits).[2]

Finally, Movant's reliance on four cases within the Second Circuit that have "enforced nonparty subpoenas served on state agencies," Movant Opp. at 3, is plainly misplaced. Critically, none of the subpoena recipients in those cases raised a sovereign immunity defense, so the issue was never addressed. But apart from that, the cases are easily distinguishable on their facts because either sovereign immunity did not apply in the first instance or involved circumstances that rendered the assertion of sovereign immunity without any practical effect.[3]

---

[2] Similarly misguided is Movant's contention that the District of Connecticut "expressly declined" to apply the sovereign immunity holding in *EPA* to state agencies in *Jackson v. AFSCME Local 196*, No. 3:07-cv-0471, 2008 WL 1848900 (D. Conn. April 25, 2008). In *Jackson*, the court concluded that the subpoena recipients were not protected by sovereign immunity because "the persons proceeded against are not the state, but rather private actors, and any judgment would not be paid out of the state's treasury." *Id*. Here, OAG is "the state," and enforcing the subpoena would compel the government to act, triggering OAG's sovereign immunity. *EPA*, 197 F.3d at 597.

[3] *Doerbecker v. Cnty. of Nassau*, No. 12-cv-2204, 2013 WL 2237574 (E.D.N.Y. May 21, 2013), and *MacNamara v. City of N.Y.*, No. 04-cv-9612, 2006 WL 3298911 (S.D.N.Y. Nov. 13, 2006), involve subpoenas served on district attorney offices. A district attorney is "an official of the municipality to which he is assigned" as to administrative matters such as acting as a custodian of records. *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 536 (2d Cir. 1993); *see also Thompson v. Spota*, No. 14-cv-2473, 2018 WL 6163301, at *18 (E.D.N.Y. August 23, 2018). Unlike state officials, municipal officials do not enjoy sovereign immunity. *N. Ins. Co. of N.Y. v. Chatham Cnty., Ga.*, 547 U.S. 189, 193 (2006); *Thompson*, 2018 WL 6163301, at * 18. In *Pierce v. Demmon*, No. 9:14-cv-1028, 2015 WL 7077227 (N.D.N.Y. Nov. 12, 2015), in addition to serving a non-party subpoena on the New York State Department of Corrections and Community Supervision ("DOCCS"), plaintiffs named as defendants a number of DOCCS officials. The court's single sentence addressing plaintiffs' motion to compel compliance with the subpoena strongly suggests that the requested documents were in the custody, possession, or control of the defendants in addition to DOCCS because the court held as the basis for granting the motion that "*defendants* have failed to sustain their burden of demonstrating a basis to find undue burden," without any mention of DOCCS. 2015 WL 7077227, at *1 (emphasis added). And in *Freeman v. Rochester Psychiatric Center*, No. 16-cv-6668T, 2018 WL 4275984, at *4 (W.D.N.Y. Sept. 7, 2018), the plaintiff served a subpoena on the New York State Department of Labor ("DOL") to obtain a copy of *his own unemployment records*; DOL received from the plaintiff a signed authorization for the release of the records and did not oppose the subpoena, consistent with applicable laws and regulations allowing DOL to provide any person their unemployment records. *See* N.Y. Labor Law § 537(1)(c)(i) and 12 N.Y.C.R.R. § 461.4(h). Indeed, the court noted it was "unclear" whether DOL had already voluntarily produced the subpoenaed records before granting plaintiff's motion to compel. 2018 WL 4275984, at *4.

Movant's assertion that OAG has waived any sovereign immunity defense is also wrong. First, by conflating Eleventh Amendment immunity with broader state sovereign immunity, Movant erroneously presumes that OAG's immunity defense is waivable, which it is not. Unlike waiver of Eleventh Amendment immunity, waiver of a state's broader general sovereign immunity (applicable here) is governed by state law. *See Alden v. Maine*, 527 U.S. 706, 757–58 (1999) (referring to state law to determine waiver of general sovereign immunity); *Coniff v. Vermont*, No. 2:10-cv-32, 2013 WL 5429428, at *4 (D. Vt. Sept. 30, 2013) ("[W]aivers of general sovereign immunity are determined by reference to state law."), *aff'd sub nom., Beaulieu v. Vermont*, 807 F.3d 478 (2d Cir. 2015). "Under New York law, sovereign immunity is considered to be an issue of subject matter jurisdiction that may not be waived." *Milord-Francois v. New York State Off. of Medicaid Inspector Gen.*, No. 19-cv-00179, 2022 WL 10653757, at *6 (S.D.N.Y. Oct. 18, 2022) (citing *Morrison v. Budget Rent A Car Sys.*, 657 N.Y.S.2d 721, 726–27 (2d Dep't 1997)). Accordingly, there can be no waiver.

Second, even if OAG's sovereign immunity was waivable, the facts here cannot support waiver. Addressing waiver of Eleventh Amendment immunity, courts have found waiver by litigation conduct only where a state voluntarily and affirmatively invoked a federal court's jurisdiction to resolve a claim presented by the state. *See, e.g., Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 619 (2002); *Fifth Ave. Assocs., L.P. v. N.Y. State Dep't of Taxation & Fin.*, 963 F.2d 503, 506 (2d Cir. 1992). Here, OAG's formal responses and objections to Movant's subpoena included an objection "to the extent the Subpoena attempts to impose obligations on the OAG beyond the FRCP, Local Rules, *and other applicable laws*," Exhibit 6 to Declaration of Theresa Trzaskoma (Dkt. No. 3-6) at 3 (General Objection No. 1) (emphasis added), and OAG timely raised its sovereign immunity defense in its cross-motion to quash – its first

4

substantive filing with the Court. Nor is there any "duplicitous conduct" by OAG or "serious unfairness" to Movant that are required to find waiver. *Beaulieu*, 807 F.3d at 490-91; *Milord-Francois*, 2022 WL 10653757, at *7.

Third, with respect to Movant's argument of "selective waiver" of sovereign immunity, Movant's Opp. at 5-6, he fails to cite any Second Circuit case. Indeed, the facts of *EPA* establish that sovereign immunity cannot be "selectively waived" in this circuit based on a partial production of material sought by a subpoena. As noted by the court in *EPA*, after receiving the subpoena, the EPA treated the subpoena "as a request under FOIA in accordance with EPA regulations" and decided to release several documents in response, which the court assumed were produced. *EPA*, 197 F.3d at 594. The court nevertheless concluded that federal sovereign immunity applied to the subpoena notwithstanding this partial production of several documents. *Id.* at 597.

## II. THE DISPUTED MATERIALS ARE IRRELEVANT AND NOT PROPORTIONAL TO THE NEEDS OF THE CASE

Movant has failed to meet his burden of demonstrating that the Disputed Materials are relevant to the Trooper 1 Action. Movant incorrectly relies on *A.I.A. Holdings S.A. v. Lehman Bros.*, No. 97-cv-4978, 2000 WL 763848, at *3 (S.D.N.Y. June 12, 2000), for the proposition that he must only demonstrate "any possibility of relevance [] sufficient to warrant discovery" to meet his initial burden. *See* Movant's Opp. at 8. *A.I.A. Holdings* was decided prior to the 2015 amendment to Rule 26, which now defines the scope of discovery to consist of information that is relevant to the parties' "claims and defenses" and also proportional to the needs of the case. *Sibley v. Choice Hotels International,* No. 14-cv-634, 2015 WL 9413101 at *2 (E.D.N.Y. December 22, 2015); *see also Sky Medical Supply Inc. v. SCS Support Claim Services, Inc.*, No. 12-cv-6383, 2017 WL 1133349 at *3 (E.D.N.Y. March 24, 2017). In addition to misstating the relevance standard, Movant's reliance on *A.I.A. Holdings* is further misplaced because that case involved

enforcement of discovery demands on another party. 2000 WL 763848, at *1. Movant ignores the higher burden he has in seeking discovery against a non-party. *See Ebbert v. Nassau County*, No. 05-cv-5445, 2007 WL 674725, at *4 (E.D.N.Y. March 5, 2007) (Courts should "accord special weight to the burden on non-parties of producing documents for others involved in litigation.").

Movant illogically asserts that OAG's entire investigatory file underlying the Report should be discoverable merely because Trooper 1's Amended Complaint contains summaries of allegations made by other complainants that were detailed in the Report. *See* Movant's Opp. at 8-9. Movant has not and cannot affirmatively show that the other complainants are relevant to any particular cause of action asserted by Trooper 1 or any of his defenses; indeed, Movant is likely to seek an evidentiary ruling at a future date that such information is in fact irrelevant. *See* Movant's Opp. at 8 fn. 5 ("Governor Cuomo reserves the right to seek to preclude some or all of this evidence as irrelevant or prejudicial during other stages of the Trooper 1 Action."). Movant cannot justify nonparty discovery against OAG given that he has the names of the other complainants and can seek first-hand evidence directly from them. Movant's attempt to manipulate discovery in the Trooper 1 Action to obtain materials for his personal political pursuits should fail here as it has in numerous other forums (Longley Decl. at ¶ 43).

As for the undue burden on OAG, Movant argues that OAG is the most convenient source for the Disputed Materials. Movant's Opp. at 10. But that is simply because the Disputed Materials are OAG's investigative files. Movant still has not explained why these files are relevant or why they are the only source of information on the subjects on which he seeks to take discovery. The materials underlying the Report are not the only source of information about the additional complaints made against Movant by other women.[4] OAG MOL at 16.

---

[4] Movant's contention that he is prejudiced by lack of access to the Disputed Materials misses the point. Movant's Opp. at 10. Movant and Trooper 1 have the same lack of access to OAG's Disputed Materials, so there is no prejudice.

Movant again misses the mark in arguing that his requests for information are properly tailored because he does not seek any materials beyond what is "referenced in and underlying the report." Movant's Opp at 11. First of all, the materials that are "referenced in" the Report are already publicly available as exhibits on OAG's website. Second, it is untenable for Movant to argue that his request is narrowly tailored when it seeks every document "underlying the report" which addressed allegations by ten complainants other than Trooper 1, and the majority of the 179 witnesses and documents (including attorney communications, notes, and drafts) have no connection to Trooper 1 and where the entire investigation occurred long after the harassment Trooper 1 allegedly suffered. To the contrary, an appropriately tailored request would have sought only the handful of documents OAG has already agreed to provide. *See* OAG MOL at 14-15.

Movant's argument that OAG can avoid any need to screen the Disputed Materials for privilege or confidentiality by producing under a protective order, Movant's Opp. at 12, is also baseless. He cites no authority for the proposition that a protective order negates the waiver of privilege by production. Further, a protective order would not obviate the need to redact confidential information from material produced *to Movant* because the witnesses credibly feared retaliation *by him*. Chun Decl. at ¶ 8; Longley Decl. at ¶¶ 41-44. OAG's willingness to provide such documents to law enforcement agencies under an explicit agreement to preserve all appropriate confidentialities and privileges is not analogous to providing *the subject of the investigation* with those materials without rigorous tailoring, screening, and redaction. *Id* at ¶¶ 24-29. Doing so would irreparably harm OAG's ability to provide confidentiality assurances to future witnesses.

### III. THE DISPUTED MATERIALS ARE PRIVILEGED

Movant's argument that he is entitled to the internal notes and communications amongst

7

lawyers conducting and overseeing a mandate under Executive Law § 63(8) to investigate and render legal conclusions into allegations of sexual harassment by the governor falls flat.

First, Movant's reliance on *In re Cnty. of Erie*, 473 F.3d 413, 421 (2d Cir. 2007), for the proposition that when an attorney is consulted in a capacity other than as a lawyer that such consultation is not privileged (Movant Opp. at 14) overlooks the context in which OAG retained the Investigative Team and their respective law firms: to conduct a § 63(8) investigation that required interpreting, advising, and wielding OAG's legal authority as the top law enforcement office of the State in rendering legal conclusions. "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *In re Cnty. of Erie*, 473 F.3dat 419. That is exactly what the Investigative Team was appointed to do and what they in fact did. This is unlike *Koumoulis v. Indep. Fin. Mktg. Group, Inc.*, 295 F.R.D. 28, 36-38 (E.D.N.Y. 2013), relied on by Movant, where the court held communications between human resources and outside counsel were not protected by attorney-client privilege because outside counsel's advice concerned business, rather than legal, advice.

Second, OAG's announcement it would go beyond the referral's mandate to release a public report with evidence in no way rendered all underlying investigative materials nonprivileged. OAG did make the Report and material evidence public, but never intended or expressed a willingness to make public all of the investigatory materials. Quite the opposite, OAG imposed strict confidentiality requirements around the investigation and the Investigative Team provided assurances to witnesses that their personal information, including their identities, would be kept confidential. Longley Decl. ¶¶ 22-23; Chun Decl. ¶¶8, 11.

Similarly unavailing is Movant's argument that the work product of the Investigative Team lawyers is not privileged because they were engaged for, *inter alia*, legal services, rather

8

than *litigation* services. OAG MOL at 26. During the investigation the Investigative Team and OAG reasonably and correctly anticipated litigation by Movant, Trooper 1, and other complainants, in addition to impeachment proceedings. Longley Decl. ¶ 18; Chun Decl. ¶ 4.

Finally, Movant's various outlandish waiver arguments concerning attorney-client and attorney work product privileges are unpersuasive. OAG has never put the Disputed Materials at issue in litigation. The fact that OAG cited the Report, as part of the public record, in *defending* OAG's denial of a State-funded defense to Movant in the Trooper 1 litigation in an Article 78 proceeding initiated by Movant in no way supports Movant's far-fetched waiver claim over materials that are not currently public and which OAG is presently asking this Court to keep confidential. As such, Movant's reliance on *Coleco Indus., Inc. v. Universal City Studios,* 110 F.R.D. 688, 691 (S.D.N.Y. 1986), is misplaced because that case's exception to work product privilege was based on a party withholding (as a shield) in one action the very work product it affirmatively disclosed in another action (as a sword).

Additionally, Movant's legally unsupported argument that the routine sharing of information between government entities conducting related investigations somehow waived all applicable privileges would bring the proper functioning and collaboration among and between government agencies to a halt. Relatedly, Movant's argument that because he received 28 interview memos (which were redacted for attorney work product) through discovery in a criminal proceeding, OAG has somehow waived privilege on or beyond those 28 interview memos is unsupportable. Indeed, the fact that the Albany DA was careful to provide *in redacted form* only those materials relevant to the criminal case concerning another complainant, Brittany Commisso, and not all OAG investigative materials in the Albany DA's possession underscores the lengths that OAG's government partners went to preserve privilege and confidentiality to the

9

maximum extent permitted by law.

Movant has utterly failed to demonstrate that his purported need for the Disputed Materials outweighs the public interest in preserving the confidentiality of witnesses and information in OAG's investigative materials. Movant seeks to litigate the validity of the Report and the legality of the investigative process, but that is not relevant to the legal claims in the Trooper 1 Action, which concern Movant's direct interactions with Trooper 1 and alleged retaliation that post-dated the Report. To compel OAG to provide Movant with the identities and private information provided by confidential witnesses who are irrelevant to Trooper 1's claims – Trooper 1 does not even have access to this information – would undoubtably hinder OAG's ability to gain witnesses' cooperation in future investigations for fear OAG could be compelled as a nonparty to disclose their information in remote and irrelevant litigation by private litigants with ulterior motives.

Every step of the investigation constituted agency action. Unsurprisingly, members of the Investigative Team deliberated about their investigative strategy to develop and implement their investigative plan. Those deliberations, including those that were reported to OAG employees, fall squarely within the zone of deliberative process privilege protection. OAG MOL at 29-30. The notion that Movant needs access to the decision-making process of the investigation to defend against Trooper 1's allegations does not fly; Movant needs to defend against what he is alleged to have done, not dispute OAG's investigative decision-making, which has no plausible bearing on his ability to defend against Trooper 1's allegations.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court grant Defendant's Cross-Motion and deny Movant's Motion, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 6, 2022

                                    Respectfully submitted,

LETITIA JAMES
Attorney General of the State of New York

By: /s/ Andrew Amer
Andrew Amer
Serena Longley
Michael Jaffe
Tamikka Pate

28 Liberty Street
New York, NY 10005
Phone: (212) 416-6127
andrew.amer@ag.ny.gov

Attorney for Defendant