

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

EXECUTIVE DIVISION

By ECF

March 3, 2023

The Honorable Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE: Cuomo v. Office of the New York State Attorney General - Case No. 22-mc-03044

Dear Judge Merkl:

As the Court noted during the February 7, 2023 oral argument, OAG has no obligation to respond to any proposal Movant chooses to make to narrow the scope of his extraordinarily broad subpoena. However, because Movant's February 24, 2023 letter (ECF No. 28) ("Movant's Letter") goes beyond simply narrowing the scope of the subpoena to advance substantive legal arguments tantamount to a sur-reply, OAG respectfully submits this brief letter response.[1]

As an initial matter, Movant's proposed "narrowing" of the subpoena does nothing to address OAG's arguments based on sovereign immunity, lack of relevance, and numerous privilege assertions, and still would impose an undue burden on OAG that is nowhere near proportional to the needs of the case. Movant's proposed "narrowing" appears to drop only requests 4-6, which largely sought internal attorney communications and drafts, materials that are clearly privileged. (*See* OAG MOL at pgs. 22-30.) Movant continues to pursue all documents responsive to his remaining 5 requests seeking material relating to all 11 complainants rather than just Trooper 1, and so those requests continue to be overly broad and unduly burdensome on non-party OAG. Movant still seeks essentially all of the 73,000 non-public documents collected by the Investigative Team and all interview memos, which are attorney work product. (*See id.* at pg. 24.) The subject of OAG's investigation was allegations of sexual harassment by all 11 complainants against Movant and the surrounding circumstances. Unsurprisingly, by continuing to encompass material related to all 11 complainants, Movant's "narrowed" subpoena continues to sweep up virtually all of the materials collected and all of the interview memos prepared during the Investigation, and even if there are a few documents that could be weeded out as "unrelated" to the allegations of any of the 11 complainants, OAG would have to spend

---

[1] All terms defined previously in OAG's Cross-Motion to Quash Memorandum of Law (ECF No. 18) ("OAG MOL") are used consistently herein.

considerable resources (at tax-payer expense) carefully reviewing all of the investigative materials to make such a determination regardless. (*See* Chun Declaration, ECF No. 20, at ¶ 13.)

Movant has never adequately addressed the immense burden that reviewing and producing 73,000 documents would impose on OAG. Instead, Movant presumes that reviewing and redacting witness interview memos would impose only a minimal burden on OAG because the redactions to the memos should be limited in number. Movant misses the point because it is not the act of marking the memos for redaction that imposes the undue burden but rather the review that is necessary to determine what needs to be redacted in the first place; even if the resulting redactions would end up being limited in number (a supposition that has no basis), OAG would still need to review each memo carefully and in its entirety to determine what redactions need to be made, which is an enormously time-consuming task. (*See* Chun Decl. at ¶ 12.) Movant has repeatedly argued that the burden of defending this action without access to OAG's entire investigatory file would impose a hardship on him, but he has not explained why the burden should instead be shifted to OAG, a non-party to this action. Footnote 5 to Movant's Letter is particularly illuminating on this point. He complains that OAG is in possession of information relating to a Trooper trail car but does not explain why that information should come from non-party OAG rather than the New York State Police, a party to the Trooper 1 Action.

Beyond imposing a substantial burden on OAG that is not proportional to the needs of the case, Movant's "narrowed" subpoena seeking all 73,000 documents collected and interview memos prepared during the Investigation still notably lacks any relevance to Movant's defense of Trooper 1's allegations. In submitting a sampling of interview memos[2] for the (erroneous) proposition that redaction would impose "minimal burden," Movant misses the threshold point that those interview memos have no discernable relevance to Movant's ability to mount a defense of the Trooper 1 Action. (*See* OAG MOL at pgs. 15-17.) Indeed, Movant's repeated focus on his purported need to "recreate the

---

[2] Movant received those interview memos in the course of a criminal proceeding, where, as a criminal defendant he had certain constitutionally-based rights to disclosure. The redactions on the sample interview memos provided by Movant are reflective of criminal disclosure standards and not necessarily of the scope of OAG's privileges in this civil proceeding. *See People v. Rosario*, 9 N.Y.2d 286 (1961). The disclosure requirement under *Rosario* is extremely broad and applies whether or not a privilege would ordinarily attach and is not subject to the same analysis as material under Rules 26 and 45 of the Federal Rules of Civil Procedure, which require the Court to consider relevance, burden, and proportionality.

Notably, in the prior criminal proceeding, Movant was not entitled to all of OAG's investigative materials, but rather received a subset of materials, including only 24 interview memos, deemed criminally relevant by the Albany County District Attorney to one complainant's allegations. Yet, in Trooper 1's civil action, Movant takes the unsupportable position that he is entitled to *all* materials relating to the allegations of *all* 11 complainants, including all of the interview memos prepared during the Investigation.

OAG investigation" rather than on demonstrating a nexus between the discovery sought and his defense in the Trooper 1 Action (*see* Movant's Letter at pg. 2, 3, and fn. 5) confirms that the extremely broad discovery he seeks is improperly motivated by his independent yearslong campaign to discredit the Investigation and rehabilitate his political reputation. (*See* OAG MOL at pgs.5-7, 16-17; Longley Declaration, ECF No. 19, at ¶¶ 41-44.)

Finally, Movant's "narrowed" subpoena continues to seek unredacted versions of the voluminous transcripts and exhibits available in redacted form on OAG's website. Again, Movant improperly focuses on ways to purportedly make production easy (*e.g.*, designating materials for attorneys' eyes only – a proposal insufficient to protect OAG's privileges and witness confidentiality), rather than on the threshold question of whether the material is relevant to his defense in the Trooper 1 Action (it is not) and whether providing unredacted sensitive information would intrude on OAG's privileges and have a chilling effect on future witness cooperation (it would).[3] (*See* Longley Decl. ¶¶ 34-37; OAG MOL, pg. 28.)

Respectfully,

/s/ Andrew S. Amer
Andrew S. Amer
Special Counsel
Andrew.Amer@ag.ny.gov
(212) 416-6127

cc: Counsel of Record (via ECF)

---

[3] Movant's assertions that the examples provided by him as Exhibits A, I, and K show a contradiction with what OAG has represented about the confidentiality promised to certain witnesses is patently wrong. OAG's position has never been that witnesses were promised guaranteed confidentiality, but rather that OAG would take all reasonable steps to ensure confidentiality as "permitted by law." (Longley Decl. ¶ 34.)