# SHER TREMONTE LLP

July 7, 2023

**BY ECF**

Hon. Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>   Re:  *Trooper 1 v. NYSP et al.*, 22-cv-893 (LDH) (TAM)
>   *Cuomo v. Office of the N.Y. State Attorney General*, 22-mc-03044 (LDH) (TAM)
>   *Cuomo v. N.Y. State Assembly Judiciary Committee*, 22-mc-03027 (LDH) (TAM)

Dear Judge Merkl:

On behalf of our client former Governor Andrew Cuomo, we write regarding the motions to compel compliance with the Rule 45 subpoenas to the OAG and AJC, filed in the above-referenced miscellaneous actions. Those motions were briefed as of the end of 2022, argued on February 7, 2023, with supplemental letter briefs submitted at the end of that month and in early March. Particularly in light of developments in the Trooper 1 Action, as discussed below, we urge the Court to grant forthwith Governor Cuomo's motions to compel, at least to require the OAG and AJC to produce all interview memos reflecting witness statements, unredacted transcripts of all witness statements, and all documents produced by nonparties to the OAG or AJC. All of this evidence is highly relevant to Trooper 1's claims and Governor Cuomo's defenses, and it is information to which neither Governor Cuomo nor the public has ever had access.

After the February 7 argument, in response to arguments made by the OAG and AJC and comments by the Court that Governor Cuomo could and should seek discovery from nonparties individually, we began serving subpoenas on various witnesses, including the other complainants referenced in Trooper 1's Complaint. As of today, we have noticed fifteen Rule 45 subpoenas. As we anticipated, although we have endeavored to be efficient and streamline the discovery process, recreating and updating the original inquiries into these allegations through piecemeal nonparty discovery has been a time-consuming and resource intensive process, with several witnesses refusing – at least initially – even to produce the documents they previously produced to the OAG.

The challenge of discovering the relevant underlying facts is exacerbated by the refusal of certain witnesses to comply with basic nonparty discovery processes. Several discovery motions have already been filed, including a motion to compel Lindsey Boylan's compliance with the subpoena to her and three motions to quash with respect to subpoenas concerning Ms. Boylan and Charlotte Bennett, including a motion from Trooper 1 who has no personal interest in the documents at issue. We also continue to engage in time-

consuming meet-and-confer processes with several other subpoena recipients, who have asserted similar relevance and burden objections. Unless those disputes can be resolved through the meet-and-confer process, there may well be a need for more discovery motions.[1]

Despite those nonparty discovery disputes, the Parties have proceeded with several depositions noticed by Trooper 1. These depositions have confirmed the need for Governor Cuomo (and other defendants) to obtain, at a minimum, the OAG's and AJC's witness interview memos and unredacted interview transcripts. Apart from their obvious relevance, these materials reflect the then-existing accounts of witnesses, whose memories may well have diminished since they were interviewed in 2021 or whose accounts of events have shifted.

For example, the Parties recently took the deposition of James Boyle, a retired senior investigator with the NYSP who is a critical witness to certain of Trooper 1's allegations. The OAG interview memos of Mr. Boyle from June and July 2021, which were among the limited number of memos Governor Cuomo happened to receive in discovery from the dismissed criminal case, were critical to Governor Cuomo's ability to examine this witness because the OAG never took Mr. Boyle's testimony. During his deposition, Mr. Boyle confirmed that there are notable flaws and omissions in the OAG Report. Among other things, Mr. Boyle refuted the claim in the OAG Report – which is repeated in Trooper 1's Complaint – that Governor Cuomo "single[d] out" Trooper 1 and recruited her to the PSU so that he could be close to her and sexually harass her. *See* OAG Report at 35; *see also* Compl. ¶ 3.

Specifically, in direct contradiction to the OAG Report and Trooper 1's Complaint, Mr. Boyle confirmed that (i) he worked with Trooper 1 at a public event at the RFK Bridge in November 2017; (ii) he was impressed by Trooper 1's seriousness, attention to detail, and confidence; (iii) the PSU travel team at the time had only one female Trooper; (iv) both Governor Cuomo and the sole female PSU Trooper had expressed concern about this lack of diversity, particularly given the high-profile public nature of the role; and (v) Mr. Boyle recruited Trooper 1 and personally advocated for her assignment to the PSU, and he did so because Trooper 1 was impressive and talented. Mr. Boyle also confirmed that another female Trooper had been at the RFK Bridge for the same event. As public records readily establish, however, this other female Trooper had been a member of the NYSP for less than six months and was not even close to qualified for service on the PSU.[2] Mr. Boyle

---

[1] The Court recently extended the discovery deadline to October 16, 2023, but this continues to be an ambitious schedule due to the time-consuming nature of the discovery process.

[2] Governor Cuomo recalled asking about two female Troopers from the RFK Bridge Event, not just Trooper 1. OAG Report at 34-35. To further the false "singled out" narrative, the OAG Report asserts that Mr. Boyle's statements were "inconsistent" with Governor Cuomo inquiring about two female Troopers, including because Mr. Boyle did not recall the other female Trooper speaking with Governor Cuomo at the event. *Id.* 35. But any such inference is wrong because official photos

further verified, as have other witnesses, that once on the PSU, Trooper 1 was assigned to roles that *minimized*, not maximized, her exposure to Governor Cuomo. Mr. Boyle likewise confirmed that the posting for the PSU position, which included the two-year service requirement, was disseminated to *all* Troopers, not just Trooper 1.[3] In other words, the OAG Report and Trooper 1's Complaint are flat-out wrong with respect to the circumstances of Trooper 1's recruitment to the PSU.

Indeed, Mr. Boyle specifically expressed concern that the OAG had cherry-picked facts to include in the report and had omitted information that would have been exculpatory to Governor Cuomo and that would have undermined the false narrative that Governor Cuomo singled out Trooper 1 for an improper purpose. We were able to elicit this information from Mr. Boyle in large part because we had the benefit of the OAG's two non-public interview memos of Mr. Boyle.

Had Governor Cuomo not received the Boyle memos through other discovery processes, we would not have been able to refresh the witness's memory and examine him thoroughly, something that Governor Cuomo is clearly entitled to do. It is critical to Governor Cuomo's defense that the OAG and AJC produce similar interview memos for other witnesses, including the memos of prior statements made by Trooper 1, other complainants, and witnesses to any allegations in the Trooper 1 Complaint or OAG and AJC reports (such as current and former members of the PSU).[4] This information is not available through any other source, is already the subject of the publicly released OAG and AJC reports, and is highly relevant to Trooper 1's claims and Governor Cuomo's defenses. Production of these memos, even at this belated date, will help to streamline what has devolved into an unwieldy, time-consuming, and piecemeal discovery process.

In addition, with respect to redacted transcripts, we note that at least one nonparty complainant specifically authorized the OAG to turn over an unredacted transcript to us in connection with a Rule 45 subpoena. On June 16, 2023, the OAG notified us that "The

---

from the event clearly show Governor Cuomo greeting the second female Trooper and shaking her and other Troopers' hands. Moreover, consistent with Governor Cuomo's testimony to the OAG, Mr. Boyle was able to identify the second female Trooper at the event that day but explained that he did not attempt to recruit her to the PSU because he knew she was assigned to Manhattan only temporarily and had requested to return home to Buffalo.

[3] Discovery has confirmed that another Trooper – a black male who had been in Trooper 1's NYSP Academy class and who had the exact same time on the job as Trooper 1 (*i.e.*, just shy of three years) – also applied for the detail and was assigned to the PSU at the same as Trooper 1, consistent with Governor Cuomo's desire to diversify the PSU.

[4] Through the discovery process, we learned that, in addition to Trooper 1, OAG investigators informally interviewed other members of the NYSP, including Senior Investigator Fabricio Plaskocinski and Investigator Diane Parrotta (who has been identified as the "close friend" of Trooper 1 referred to on pages 37-38 of the OAG Report). Senior Investigator Plaskocinski has already been deposed and we have noticed Investigator Parrotta's deposition.

OAG declines to voluntarily produce this transcript and will await the court's rulings on the [motions to compel and quash]." Thus, even when a witness is willing to provide the information, Governor Cuomo still cannot obtain it. Such obstacles to discovery are neither fair nor consistent with due process of law. Likewise, delays in turning the information over could potentially result in our having to recall witnesses to testify about later-disclosed evidence.

      Governor Cuomo therefore respectfully requests that the Court grant his motions to compel compliance with the subpoenas issued to the OAG and AJC, including all interview memos, unredacted interview transcripts, and documents produced by witnesses to the OAG or AJC.

Respectfully submitted,

*/s/ Theresa Trzaskoma*

Theresa Trzaskoma