UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GOVERNOR ANDREW M. CUOMO,

    Movant,

v.

OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL,

    Respondent.

Case No. 22-mc-03044 (LDH) (TAM)

## MEMORANDUM OF LAW IN SUPPORT OF GOVERNOR CUOMO'S MOTION FOR RECONSIDERATION OF THE JULY 21 DISCOVERY ORDER

Governor Cuomo respectfully moves for reconsideration of this Court's July 21, 2023 Memorandum and Order denying Governor Cuomo's motion to compel the OAG's compliance with a subpoena in the Trooper 1 Action. ECF No. 37 (the "July 21 Discovery Order."). Under Local Rule 6.3, reconsideration is warranted if the Court overlooked factual matters or controlling law. Presentation of substantial new material is a "sufficient ground" for reconsideration. *Vaughn v. Consumer Home Mortg. Co. Inc.*, 470 F. Supp. 2d 248, 258 (E.D.N.Y. 2007).

Governor Cuomo seeks reconsideration in light of two legal issues and in light of new information: (1) the July 21 Discovery Order applied an evidentiary standard of relevance rather than the discovery standard; and (2) because at least some of the subpoenaed materials are highly relevant to Trooper 1's claims, the July 21 Discovery Order should have narrowed the OAG subpoena rather than quash it in its entirety.

***First***, despite acknowledging that the concept of relevance at the discovery stage is "is applied more liberally in discovery than it is at trial," ECF No. 37 at 28, the July 21 Discovery Order imposed an unduly stringent burden in concluding that the materials sought are not relevant

1

for discovery purposes because "[w]hether the [OAG and AJC] investigations were 'independent and exhaustive' is not a question that the Trooper 1 jury will need to decide." *Id.* at 30. Under controlling law, information is discoverable even if a jury will never see or consider it. *See* FRCP 26(b)(1). Even where "a jury would never [] be permitted to hear" a particular issue, "that is a question for another day." *Geoghegan v. Progressive Casualty Ins. Co.*, No. 17-CV-00008-JJM, 2018 WL 9781219, at *3 (W.D.N.Y. Jan. 5, 2018).

In this regard, the July 21 Discovery Order is a premature and advisory evidentiary ruling that directly contravenes Governor Cuomo's discovery rights but ultimately, and unfairly, does not bind Trooper 1. This deprives Governor Cuomo of discovery on an important issue that Trooper 1 intends to press. Trooper 1, who did not weigh in on OAG's relevance arguments, confirmed this week that she "reserve[s] the right to use the [OAG and AJC] reports" at trial. Ex. 1 at 1. <u>This is new information that warrants reconsideration</u>. If Trooper 1 is going to rely on the OAG and AJC Reports, Governor Cuomo must be able to test the facts underlying those Reports.[1]

Further, while Trooper 1 ultimately may not be permitted to introduce the Reports, the reliability of the Reports almost certainly *will* be at issue. Trooper 1 will tell a story at trial—that story, we know from her Complaint and recent statement, will include the OAG Investigation and Report. It is particularly difficult to imagine Trooper 1 presenting her retaliation claims without referring to events that flowed from the OAG Investigation and Report. Those allegations include specific reference to the OAG investigators, Compl. ¶ 150, and cite to Trooper 1's testimony to the OAG as the protected activity, *id.* ¶ 153. Moreover, assuming Trooper 1 is permitted to try the case in accordance with how she has pled it, and if the retaliation claims are not dismissed,

---

[1] *McGowan v. JPMorgan Chase Bank, N.A.*, 18 Civ. 8680 (PAC) (GWG), 2020 WL 1974109 (S.D.N.Y. Apr. 24, 2020), illustrates the point. In that case, the court determined that a particular affirmative defense was inapplicable—*i.e.*, that the jury would never consider it—but still granted discovery because the defendant "refused to disclaim reliance on it." 2020 WL 1974109, at *8.

Governor Cuomo will also rely on the Investigation and Report for his defense. As to Trooper 1's claim that she suffered "severe mental anguish," *id.* ¶ 163, for example, Governor Cuomo will argue that any suffering was caused by fallout from the highly public OAG Report, including the OAG's public release of her testimony without any warning to her, and subsequent treatment of her by the NYSP and her fellow PSU members.[2] The OAG Investigation and Report will be a constant, unescapable hum during trial, and any reference to the OAG gives the Investigation and Report an unwarranted and prejudicial imprimatur of trustworthiness. It would be manifestly unjust to allow Trooper 1 to tell the jury about the OAG Investigation and Report—including the conclusion that Governor Cuomo sexually harassed Trooper 1 and others—but not allow Governor Cuomo to obtain discovery about that OAG Investigation and Report, and also to provide context and demonstrate the Report's flaws in response to any arguments raised by Trooper 1.[3]

For these reasons, the Court should reconsider the July 21 Discovery Order to the extent it concludes that OAG investigative materials are not relevant to Trooper 1's claims.

***Second***, particularly in light of intervening events since the motions to compel were briefed and argued many months ago, we respectfully request that, at a minimum, the Court modify the OAG subpoena rather than quashing it outright.[4] Specifically, we request that the Court narrow

---

[2] Trooper 1 is anonymized in the OAG Report and this litigation, but discovery confirms that her identity was widely known within the NYSP. Ex. 2 at 165:11-20.

[3] Governor Cuomo's concerns about the OAG Report are not mere fancy. Ana Liss-Jackson, who is identified in the OAG report as a "victim" of Governor Cuomo, testified at her deposition that Governor Cuomo never harassed her and that ███████████████████████████. Ex. 3 at 18:2-3, 19:17-23, 88:15-19, 96:15-17, 220:18-221:7. She also backtracked on her prior claims that the Governor hired women to positions of power because he thought they were beautiful, *id.* at 142:21-143:1, that ███████████████████████, *id.* at 146:22-148:6, and that ███████████████████████, *id.* at 257:7-9. Ms. Liss-Jackson specifically acknowledged that ███████████████████████ was not based on personal knowledge but was instead rank speculation, unfounded assumption, or straight from the rumor mill. *See, e.g., id.* at 153:17-18, 156:19-20, 256:9-12, 311:16-22.

[4] "Courts generally prefer modifying subpoenas over outright quashing." *Donoghue v. Nostro*, No. 20-CV-6100-EAW-MJP, 2022 WL 4462867, at *4 (W.D.N.Y. Sept. 26, 2022); *see also Cook v. Howard*, 484 F. App'x 805,

the OAG subpoena to require production of prior statements (reflected in interview memos or in unredacted transcripts) by (i) Trooper 1 and other current or former members of the NYSP; (ii) other complainants whose memos and/or unredacted transcripts we do not have[5]; and (iii) witnesses to any events concerning allegations made by complainants. We believe this narrow subset consists of fewer than 25 witnesses and would impose limited burden on OAG.

Statements by NYSP witnesses plainly bear on Trooper 1's claims because they concern the exact events alleged in the Complaint. Indeed, it is difficult to conceive of material more relevant than Trooper 1's own prior statements (and the prior statements of complainants who she may call at trial to support her claims). Regardless of their implications for the reliability of the OAG Report's conclusions, these prior statements are relevant, full stop.[6] Recent deposition testimony, <u>also new information</u>, confirms this.[7] Retired NYSP senior investigator James Boyle testified, counter to Trooper 1's allegations, that he personally went out of his way to recruit Trooper 1 after meeting her at the RFK Bridge event and did so because she was an impressive candidate. Ex. 4 at 111:14-114:3, 136:12-137:12 ("I felt I recruited her."). Contrary to Trooper 1's narrative that she was singled out for improper purposes, Mr. Boyle testified that the other unrecruited female Trooper at the RFK Bridge had been a member of the NYSP for only six months and did not come close to meeting the PSU service requirements. *Id.* at 131:12-132:2.

---

827 (4th Cir. 2012) (Diaz, J., dissenting in part and concurring in part) (citing *Wiwa v. Royal Dutch Petroluem Co.*, 293 F.3d 812, 818-19 (5th Cir. 2004) and *Linder v. Nat'l Sec. Agency*, 94 F.3d 693, 698 (D.C. Cir. 1996) (both suggesting a court abuses its discretion by quashing a subpoena when it could be modified)).

[5] Namely, Alyssa McGrath, Ana Liss-Jackson, Kaitlin, State Entity Employee #2, Virginia Limmiatis, and Anna Ruch.

[6] Prior statements are also relevant for purposes of identifying NYSP witnesses. The OAG Report contains several vague references to Troopers who had information about Trooper 1's allegations, but we do not know who those witnesses are. *See, e.g.*, OAG Report at 36 n.249.

[7] These materials were raised in Governor Cuomo's letters to the Court filed on July 7, 2023 (ECF No. 32) and July 18, 2023 (ECF No. 35), which the Court declined to consider. *See* ECF No. 37 at 9 n.5.

Governor Cuomo elicited this testimony thoroughly and effectively because he had obtained the OAG's two non-public interview memos of Mr. Boyle through discovery from the Albany County District Attorney's Office; indeed, Governor Cuomo used those prior statements to refresh Mr. Boyle's memory. Another PSU witness, Investigator Diane Parrotta, is scheduled to be deposed on August 14, 2023. We learned during discovery that Ms. Parrotta was informally interviewed by the OAG and therefore believe an interview memo exists. Ms. Parrotta's prior statements in July 2021 about Trooper 1 are critically important because her recent, clandestine communications with Trooper 1 may have influenced her testimony in this proceeding.[8]

Prior statements by other complainants identified in Trooper 1's Complaint are likewise highly relevant, as borne out during the recent deposition of "complainant" Ana Liss-Jackson. Ms. Liss-Jackson ███████████████, [9] including ███████████████ .[10] Without the unredacted transcript—which the OAG refused to turn over even after Ms. Liss-Jackson consented to it—Governor Cuomo was unable to obtain this information. Again, the testimony of these deponents is <u>new information</u> that merits reconsideration.

For these reasons, to the extent the subpoena is overbroad, Governor Cuomo respectfully requests that the Court narrow it, rather than quash it entirely, and compel disclosure of memos, notes, and unredacted interview transcripts reflecting statements by these critical witnesses.

---

[8] Specifically, Ms. Parrotta and Trooper 1 communicated on phones belonging to Ms. Parrotta's husband and daughter, presumably in an effort to avoid detection. *See* Ex. 5.

[9] *See* Ex. 3 at 259:21-24 (████████████), *id.* at 260:12-14 ████████████. Through discovery, we have also learned that the OAG informally interviewed Ms. Liss-Jackson but has refused to produce her interview memo.

[10] *See* Ex. 3 at 258:18-260:14 ████████████.

Dated: New York, New York
      July 31, 2023

Respectfully submitted,

  */s/ Theresa Trzaskoma*

Theresa Trzaskoma
Allegra Noonan
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

Rita Glavin
GLAVIN PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

*Counsel for former Governor Andrew M. Cuomo*

## APPENDIX OF DEFINED TERMS

| TERM | DEFINITION |
|---|---|
| **AG James or AG** | Attorney General Leticia James |
| **AJC** | New York State Assembly Judiciary Committee |
| **AJC Investigation** | Impeachment investigation conducted by AJC into allegations of sexual harassment by Governor Cuomo |
| **AJC Report** | *Impeachment Investigation Report to Judiciary Committee Chair Charles Lavine and the New York State Assembly Judiciary Committee* (Nov. 22, 2021), available at https://nyassembly.gov/write/upload/postings/2021/pdfs/20211122_99809a.pdf |
| **Complaint or Compl.** | Second Amended Complaint in *Trooper 1 v. New York State Police, Andrew Cuomo, Melissa DeRosa, and Richard Azzopardi*, 22-CV-893 (LDH) (TAM) (E.D.N.Y.), ECF 71 |
| **Chamber or Executive Chamber** | New York State Executive Chamber |
| **EEOC** | United States Equal Employment Opportunity Commission |
| **ESD** | Empire State Development |
| **FRCP** | Federal Rule(s) of Civil Procedure |
| **FRE** | Federal Rule(s) of Evidence |
| **Governor Cuomo** | Former Governor of New York State Andrew M. Cuomo |

| **JCOPE** | New York State Joint Commission on Public Ethics |
|---|---|
| **NYSP** | New York State Police |
| **OAG** | Office of the New York State Attorney General |
| **OAG Investigation** | Investigation by OAG into allegations of sexual harassment by Governor Cuomo pursuant to New York Executive Law § 63(8) |
| **OAG Report** | *The OAG's Report of Investigation into Allegations of Sexual Harassment by Governor Cuomo* (Aug. 3, 2021), available at https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-_investigative_report.pdf |
| **Trooper 1 Action** | *Trooper 1 v. New York State Police, Andrew Cuomo, Melissa DeRosa, and Richard Azzopardi*, 22-CV-893 (LDH) (TAM) (E.D.N.Y.) |