UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GOVERNOR ANDREW M. CUOMO,

    Movant,

v.

OFFICE OF THE NEW YORK STATE
ATTORNEY GENERAL,

    Respondent.

Case No. 22-mc-03044 (LDH) (TAM)

# FORMER GOVERNOR ANDREW M. CUOMO'S REPLY
# IN FURTHER SUPPORT OF HIS MOTION FOR RECONSIDERATION
# OF THE COURT'S JULY 21 DISCOVERY ORDER

Information discovered after the July 21 Discovery Order—some discovered even after the motion for reconsideration—supports reconsideration. Contrary to the OAG's argument, Governor Cuomo <u>did</u> raise new facts or law supporting reconsideration, and he <u>did</u> provide a basis for modifying rather than quashing the subpoena. The July 21 Discovery Order's premise, at least in part, was that Governor Cuomo could obtain information by taking nonparty discovery. We now know that is incorrect. Memories have faded. Nonparties refuse to comply. And Trooper 1 objects to discovery into issues she put in her Complaint. Not only that, we need prior interview notes and memoranda to test the reliability of witness testimony. Indeed, we recently took the deposition of Diane Parrotta, a key witness who ███████████████████████████████████████. As explained below, Ms. Parrotta ███████████████████████████████████████ and testified unreliably. Not only are prior witness statements relevant, they are critical to our ability to test such recollections and cross-examine witnesses. Reconsideration is warranted.

*First*, the OAG contends incorrectly that Governor Cuomo "fails to raise any new issues of fact or law." OAG ECF No. 44 at 2. Specifically, the OAG asserts that Governor Cuomo already

1

made arguments concerning (i) Trooper 1's reliance on the OAG Report and (ii) the necessity of the underlying materials to thoroughly depose anticipated witnesses. OAG ECF No. 44 at 3.[1] But we seek reconsideration because the underlying *facts* supporting those arguments have changed significantly. It is one thing for Trooper 1 to allege facts about the OAG Investigation and Report. It is another thing for her to confirm, for the first time, that she will use the OAG Report at trial.[2] Nor is there any merit to the OAG's argument that "nothing in the record" supports this. OAG ECF No. 44 at 3. Trooper 1 expressly stated so on July 24, as the OAG well knows:

> From: Valdi Licul <vlicul@wigdorlaw.com>
> Sent: Monday, July 24, 2023 5:13 PM
> To: Theresa Trzaskoma; John S. Crain
> Cc: Rita Glavin; Allegra Noonan
> Subject: RE: July 22 Order
>
> Theresa – We reserve the right to use the reports as permitted by the Federal Rules of Evidence. Best,
>
> Valdi Licul
> Partner

***Second***, contrary to the OAG's assertions, OAG ECF No. 44 at 4-5, there is clear support for the argument that a court should not quash a subpoena entirely when it could have been reasonably modified. When courts "quash a subpoena" outright, they should "allow the issuing party to draft a new one."[3] But limiting rather than serving anew is far more efficient.

***Third***, recently discovered information also supports reconsideration. On August 14, for example, we took the deposition of former NYSP Investigator Diane Parrotta. Ms. Parrotta is an important witness because Trooper 1 identifies her as someone with knowledge of Trooper 1's own allegations. Yet Ms. Parrotta testified repeatedly that ████████████████

---

[1] Governor Cuomo requested leave to refile the motion for reconsideration and supporting declaration with leave of the Court. *See* OAG ECF No. 43.

[2] In addition, Trooper 1 deposed Richard Azzopardi on August 9, 2023. <u>Significant portions of that deposition concerned the reliability of the OAG Report</u>, which was a concern we raised in our opening brief. *See* OAG ECF No. 41 at 2-3.

[3] *See Donoghue v. Nostro*, No. 20-CV-6100-EAW-MJP, 2022 WL 4462867, at *4 (W.D.N.Y. Sept. 26, 2022); *see also Cooper v. Hill*, No. 12-CV-12227S, 2016 WL 7366976, at *2.

█████.[4] Ms. Parrotta also testified repeatedly that █████████████████████████████████ █████████████████████████████.[5] Obtaining Ms. Parrotta's prior statement to the OAG is of paramount importance. Without it, we cannot determine what Ms. Parrotta said in 2021[6] and whether her statement then is consistent with her testimony now, which goes directly to her credibility and/or motive to fabricate. Having access to Ms. Parrotta's prior statement is vital because we believe Ms. Parrotta testified untruthfully at her deposition about key events. Among other things, Ms. Parrotta's testimony was ████████████████████████ ███████████████████████████████████████████████████████.

Ms. Parrotta's deposition testimony is also ████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ █████. We do not know, however, if Mr. Plaskocinski's deposition testimony was consistent with his OAG statement in 2021 because we do not have that statement. Further, Ms. Parrotta—who Trooper 1 <u>does not</u> identify as a person with knowledge of the Belmont event and who the OAG did not identify as a corroborating witness to that incident—claimed during her deposition that █████████████████████████████████████████████████████

---

[4] Parrotta Rough Dep. Tr. 222:25-223:6 ██████████████████████████████; 224:10-15 ██████████████████████████████████████████████████████; 224:24-225:2 (████████████████████████).

[5] *Id.* at 211:11-12 (████████████████████████████); 212:8-11 (███████████████████████████████████████); 237:23-238:3 (███████████████████████████████; 390:3-11 (███████████████.

[6] We understand that Ms. Parrotta spoke to OAG investigators without her own counsel, so the OAG is the only source that can provide Ms. Parrotta's prior statements.

3

███████████████████████████████████████. Ms. Parrotta ██████

████████████████████████████████████████████████████. In addition, apparently having internalized Trooper 1's deliberately suggestive framing that the alleged stomach touch was in "the area between [her] chest and [her] privates," OAG ECF No. 3-10 at 40, Ms. Parrotta testified wildly about ████████████████████████

████████████████████████████. Parrotta Rough Dep. Tr. 261:21-263:25.

Not only that, Ms. Parrotta displayed a brazen disregard for the law. Ms. Parrotta acknowledged that ████████████████████████████████████████████████████

████████████████████████████████████████████████████. Specifically, Ms. Parrotta testified that ████████████████████████████. Ms. Parrotta's testimony that █████

████████████████████████ is contradicted by a May 5 text reflecting that Trooper 1 said her lawyer would reach out to Ms. Parrotta "about [Trooper 1's] support system at work."



Ms. Parrotta made further attempts to contact Trooper 1 to find out "what is going on." On May 27 at 5:36 am, Ms. Parrotta used her husband's phone to try to call Trooper 1. Ms. Parrotta immediately sent a text (again from her husband's phone) imploring Trooper 1: "<u>I need to know more what is going on first before I speak to anyone</u>." Ms. Parrotta demanded—"<u>You need to fill me in on what's going on first before I talk to anyone</u>"—and noted the shift in Trooper 1's refusal to get their stories straight—"<u>I get it u have been brainwashed</u>." Ms. Parrotta later texted from one

4

of her daughter's phones: "I will testify to everything I told June Bug [OAG investigator Joon Kim]. That should help you right?"[7] Ms. Parrotta was frustrated: "<u>You could have had a conversation with me about the details. I feel like everything is a big secret with you</u>." Ms. Parrotta ████████████████████████████████████████████████.

████████████████████████████████████████

Ms. Parrotta's prior statement to the OAG is necessary to confirm to what extent she and Trooper 1 similarly colluded prior to speaking with the OAG.

With respect to Trooper 1's OAG interview, Governor Cuomo has, as this Court suggested, made further efforts to obtain that information from a non-OAG source. Specifically, on August 2, 2023, Governor Cuomo served a subpoena on the law firm that represented Trooper 1 during the OAG Investigation seeking, among other things, notes from Trooper 1's OAG interview. The attorney who was present at the interview confirmed, in response to the subpoena, that she does not have any notes of the interview. Disclosure of interview notes and memos is particularly warranted to show whether PSU members who spoke to the OAG colluded, given that Ms. Parrotta also testified ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Parrotta Rough Dep. Tr. 210:18-211:5.

---

[7] Of course, what Ms. Parrotta did not know is that neither Trooper 1 nor Trooper 1's counsel could tell Ms. Parrotta what Ms. Parrotta had previously told the OAG.

5

| | |
|---|---|
| Dated: New York, New York<br>August 23, 2023 | Respectfully submitted,<br><br>　　*/s/ Theresa Trzaskoma*<br><br>Theresa Trzaskoma<br>Allegra Noonan<br>SHER TREMONTE LLP<br>90 Broad Street, 23rd Floor<br>New York, New York 10004<br>Tel.: (212) 202-2600<br>Fax: (212) 202-4156<br>ttrzaskoma@shertremonte.com<br><br>Rita Glavin<br>GLAVIN PLLC<br>156 West 56th Street, Ste. 2004<br>New York, NY 10019<br>Tel: (646) 693-5505<br>rglavin@glavinpllc.com<br><br>*Counsel for former Governor Andrew M. Cuomo* |