1

```
1                 UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - - - X
3
                                    :
4  GOVERNOR ANDREW M. CUOMO,        :22-MC-03044 (TAM) (LDH)
                                    :
5           Plaintiff,              :
                                    :
6                                   :United States Courthouse
        -against-                   :Brooklyn, New York
7                                   :
                                    :September 26, 2023
8                                   :12:00 p.m.
   OFFICE OF THE NEW YORK STATE     :
9  ATTORNEY GENERAL,                :
                                    :
10              Defendant.          :
                                    :
11
12 - - - - - - - - - - - - - - X
13       TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
              BEFORE THE HONORABLE TARYN A. MERKL
14             UNITED STATES MAGISTRATE JUDGE
15 A P P E A R A N C E S:
16  For the Plaintiff:     GLAVIN, PLLC
                           156 West 56th Street
17                         New York, New York 10019
                           BY:RITA GLAVIN, ESQ.
18                            LEO KORMAN, ESQ.
                              KATHERINE PETRINO, ESQ.
19
                           SHER TREMONTE, LLP
20                         90 Broad Street
                           New York, New York 10004
21                         BY:  THERESA TRZASKOMA, ESQ.
22  For the Defendant:     STATE OF NEW YORK
                           OFFICE OF THE ATTORNEY GENERAL
23                         LETTITIA JAMES
                           28 Liberty Street
24                         New York, New York 10005
                           BY:JAMES ANDREW AMER, ESQ.
25                            SERENA LONGLEY, ESQ.
```

MDL    RPR    CRR    CSR
225 Cadman Plaza East / Brooklyn, NY 11201
MLuccheseEDNY@gmail.com
Proceedings recorded by mechanical stenography; transcript produced by Computer-Aided Transcription.

Proceedings                                                2

1          THE COURTROOM DEPUTY:  This is civil cause for a

2    status conference, docket 22-MC-03044, Cuomo versus Office of

3    the New York State Attorney General.

4          Will the parties please state their appearances,

5    starting with the movant.

6          MS. TRZASKOMA:  Good morning, Your Honor.  Theresa

7    Trzaskoma from Sher Tremonte, LLP on behalf of Governor

8    Cuomo, and with me is my colleague Allegra Noonan and my

9    co-counsel.

10         MS. GLAVIN:  Rita Glavin of Glavin, PLLC, with my

11   colleagues Leo Korman and Katrina Petrino.

12         THE COURT:  Thank you.  New case.  New transcript,

13   theoretically.

14         MR. AMER:  Good morning, Your Honor.  Andrew Amer

15   with the Office of the Attorney General.  And I'm here with

16   my colleague.  I will let her introduce herself.

17         MS. LONGLEY:  Good morning, Your Honor.  Serena

18   Longley on behalf of the Office of the Attorney General.

19         THE COURT:  All right.  So we are here because, as

20   everyone knows, there were substantial litigation concerning

21   a motion to compel and a motion to quash on which I issued a

22   ruling back in July, July 21st of 2023.

23         Since that time Governor Cuomo has sought

24   reconsideration, seeking to file papers in support of

25   reconsideration of that opinion and there's several

Proceedings                                                    3

1    complicated issues that I think warrant discussion.

2            As the parties know, the order that I issued on the

3    docket in connection with the opinion specifically requested

4    that the Attorney General's Office consider disclosing

5    information to the extent that the witnesses agreed to it.

6    And the reason for that inclusion was quite clear to the

7    Court.  Whether it was clear to the parties, I don't know.

8    But my goal is to move this case forward.  It is not to spend

9    another two months writing an opinion on sovereign immunity.

10   That's not my goal.

11           I know you submitted recent authority that Judge

12   Locke had ruled to quash a subpoena under similar

13   circumstances.  I think the question is very complicated in a

14   case involving party actors who were in office at the time

15   where the State uniquely is the holder of documents that may

16   be relevant in connection with the investigation to that

17   person's conduct, as well other information.

18           I know that Governor Cuomo has issued a similar

19   subpoena to the executive -- I'm going to mess up the name --

20   the Governor's office, essentially, and if this type of case

21   is to be permitted to proceed in federal court and if the

22   federal courts are called upon, as they often are every ten

23   years in this state, to address the State legislatures

24   invariably to redistrict correctly and there are important

25   federal interests at stake in those kinds of cases, an

Proceedings                                                            4

1    important federal interest at stake in a case like this,

2    where an executive branch official and State employer are

3    accused of misconduct that is very serious.  There may be

4    times, in the Court's view, where the State has to provide

5    some of the documents in their possession.

6              So I have a lot of questions about Judge Locke's

7    ruling.  I have a lot of questions about the Fifth Circuit's

8    ruling on which he relied.  I have questions -- you know, as

9    we discussed at the prior conference and as I observed in the

10   opinion, this is a complex and novel question of

11   constitutional law, and I'm just not at all convinced that

12   the same immunity that federal agencies enjoy and that

13   tribal, you know, entities who assert sovereign immunity,

14   tribal immunity is necessary going to attent in the state

15   context.  So my goal was to encourage the Office of the

16   Attorney General to disclose what limited amounts of

17   information witnesses agreed to so that the Governor and the

18   other defendants could get the information they may need to

19   defend this case without having to reconstruct everything,

20   which they cannot do, because, as Ms. Glavin noted at the

21   argument back when we held it and in her subsequent filings,

22   memories fade, circumstance change, some of the information

23   may be relevant.  I'm not saying I have reached a decision on

24   the sovereign immunity issue because I haven't.  I would,

25   frankly, want further briefing by both sides.

Proceedings                                                    5

1           I would want to test the limits of what any

2    qualified state sovereign immunity privilege should look

3    like, and I want both sides to have the opportunity to weigh

4    in on that.  It's complicated.

5           I also question, this is more for the Governor, how

6    so many of these things are styled as motion for

7    reconsideration, what I just did in the July opinion was

8    denied your motion to compel.  That's it.  That's all I did.

9    There's no quashing your subpoena in that opinion.

10          So I'm just very unclear as to how your new

11   arguments really would merit reconsideration, which is a

12   completely different question than whether or not you're

13   entitled to get some stuff that the Attorney General's Office

14   has, and I don't know that you want to spend a whole ton of

15   time litigating the procedural niceties of versus getting the

16   info you want.  So I don't think we necessarily want to spend

17   our time on that, but because of the way it's frame, what's

18   currently before me is a motion for reconsideration, not a

19   motion to get exactly what you want after a meet and confer

20   or after witnesses have agreed to permit the Attorney

21   General's Office to turn over specific information.  Again,

22   you're using a blunderbuss where you should be using a

23   scalpel.

24          And I have concerns about how the reconsideration

25   briefing has come in.  I have concerns about whether or not

Proceedings                                6

1    it's even the appropriate vehicle . I question whether or not

2    that's an avenue we want to go down, whether it is a total

3    waste of time because reconsideration is a different standard

4    than the motion to compel.  So I'm not sure where to start.

5            Firstly, I'd like to hear from the Attorney

6    General's Office in response to your representation that the

7    Governor -- I'm sorry, the Attorney General's Office has

8    indicated to me that they have received no requests from the

9    Governor since I issued the order in July saying please

10   consider giving stuff, you know, that the witnesses have

11   agreed to give.

12           Is that still the case, Ms. Longley?  Have you

13   received any requests?

14           MS. LONGLEY:  Yes, Your Honor, that's still the

15   case; we have not received any requests.

16           THE COURT:  Why is that, Ms. Trzaskoma?

17           MS. TRZASKOMA:  Your Honor, to be clear, we did

18   make the request repeatedly and we understood that if the

19   Attorney General were going to accede to the Court's request.

20   We did not understand we had to make a separate request for

21   that.

22           THE COURT:  My order was pretty clear, that I had

23   asked them to consider disclosure of information as to which

24   witnesses agreed.  And if they didn't have those requests

25   formulated in that fashion, saying you were going to rely on

Proceedings                                                    7

1    your prior requests doesn't seem like a great strategy.

2         MS. TRZASKOMA:  I mean, Your Honor did us a favor

3    today by asking each of these nonparty witnesses whether they

4    would consent to the disclosure.  But to be clear, nobody had

5    agreed to that except for Ms. Liss-Jackson, which is the

6    request that we had made.

7         So, you know, obviously -- and I think you could

8    hear that we have not been in a position to obtain consent

9    from these -- from many nonparties who claim they shouldn't

10   have anything to do with this case at all.  So I think --

11        THE COURT:  Scorched earth doesn't work in civil

12   discovery.

13        MS. TRZASKOMA:  We have not been scorching the

14   earth.  And to be fair -

15        THE COURT:  College records from somebody who was

16   sexually assaulted in college is scorched earth in the

17   Court's view for a non-party.

18        MS. TRZASKOMA:  In that respect, Your Honor, we

19   were not seeking records concerning sexual assault; we were

20   seeking records of a false claim of sexual misconduct.  So we

21   were not seeking records of something that happened.  We were

22   seeking records of something that didn't happen.

23        THE COURT:  In your --

24        MS. TRZASKOMA:  I think the records will show that

25   and we will get those records in the Southern District

Proceedings                                                      8

1   litigation.  But to be clear, that is not what we are

2   seeking.

3               And right now, we been trying to use a scalpel.

4   I'm not sure -- the motion for reconsideration was very

5   targeted.  It was directed to a very particular part of Your

6   Honor's decision.  We did not blunderbuss it.  We did not

7   seek reconsideration of every ruling in that decision.

8   Rather, we sought reconsideration with respect to two issues.

9   First, whether the AG report is relevant.  And as you heard

10  from Mr. Licul earlier today, it is relevant.  He intends to

11  introduce that report at trial.  And, so, the allegations in

12  the Complaint --

13              THE COURT:  The sentence from my ruling, which was

14  very specific and precise, which remains true, is that the

15  jury is not going to be tasked with making a determination

16  about whether or not the Attorney General's investigation was

17  thorough or complete.  That is not a question before the

18  jury.  And to posit in the motion for reconsideration that

19  either the Court was some way employing the wrong evidentiary

20  standard because framing that issue in that manner is not the

21  same thing as narrowing what you're seeking and trying to

22  actually move the ball forward, Ms. Trzaskoma.

23              MS. TRZASKOMA:  But with all respect, Your Honor, I

24  understand the distinction that Your Honor is making, but it

25  was that ruling that a jury is never going to consider that

Proceedings                                           9

1   --

2           THE COURT:  I did not say that.  I never said in

3   that opinion that there was no possibility that the Attorney

4   General report was coming in.

5           What I said is that they would not be tasked with

6   making a determination about whether or not the report was

7   thorough and complete, which was your phrasing from your

8   briefing as to the evidentiary relevance of the full scope of

9   information that the Attorney General's office had sought.

10          So the issue here is total failure to narrow what

11  you're trying do and establish relevancy as to specific

12  categories of documents and that is the bulk of the

13  discussion.  So my question to you is not facetious and it's

14  not meant to attack in any way.  I'm genuinely sincere.  Do

15  you want to proceed on a motion for reconsideration that may

16  or may not be denied?  It will probably prolong things.  Or

17  do you actually want to try to seek documents that you want?

18          MS. TRZASKOMA:  Your Honor, we definitely want to

19  seek documents that we want.  We've been trying to do so

20  respectful of the Court's authority to decide the issues.

21  You know, we could have -- so in seeking reconsideration,

22  what we were asking was the scalpel, right.  So, yes, we had

23  a concern about that statement in the decision, but really we

24  had a concern that the Court did not grant the motion to

25  compel even in part.

Proceedings                                                            10

1          THE COURT:  The Court is under no obligation to

2   rewrite your discovery requests.

3          MS. TRZASKOMA:  Understood.

4          THE COURT:  I gave you an opportunity to narrow,

5   following the oral argument, at which I made it abundantly

6   clear that your requests were far, far, far too broad, and

7   what came back was facial modifications to the requests but

8   still ultimately seeking almost everything they had according

9   to their review of the records.  There is no tying things

10  back to Trooper 1.

11         They interviewed, as we observed previously, dozens

12  and dozens of people beyond the complainants.

13         It's not reasonable or realistic to expect you're

14  going to get all of the interview notes.  It's not reasonable

15  or realistic to expect you're going to get all of the

16  deposition transcripts.

17         At this juncture, before I grant you any of that, I

18  will need to reach a conclusion on the sovereign immunity

19  issue, which will require further briefing.  I will then need

20  to receive a detailed -- if I were to rule on against the

21  Attorney General on that issue, I would need to receive a

22  detailed privilege log, assuming they don't take an -- some

23  sort of appeal, which they may, deciding the immunity issue.

24         So my goal here is to try to work out a path

25  forward for the parties to cooperate as opposed to coming to

Proceedings                                11

1    the Court for legal rulings because the sovereign immunity is

2    significant and the privilege issues are significant.  So, if

3    you -- the delay built into the process to address both of

4    those things is not going to inure to your benefit.

5            MS. TRZASKOMA:  May I point Your Honor to our

6    February 24, 2023 supplemental letter?

7            THE COURT:  What was the ECF No. for that?

8            MS. TRZASKOMA:  28.

9            THE COURT:  Okay.

10            MS. TRZASKOMA:  And Your Honor -- after the

11   February 7th argument, Your Honor asked us to narrow and we

12   did so.

13            We requested memoranda of witness interviews by the

14   AG of the 11 complainants referred to, witnesses relating to

15   their allegations, the witness interview memoranda of

16   Trooper 1, Brittany Commisso, Lindsey McGrath, and Alyssa

17   McGrath that was for the Assembly, the documents that the 11

18   complainants provided to the Attorney General and records

19   produced by third-parties that relate to those allegations

20   and unredacted transcripts of the 41 witnesses.  We narrowed

21   it and --

22            THE COURT:  The only thing you cut out was

23   communications with counsel and calendar entries.

24            As the Attorney General's Office points out in

25   their response, the entirety of the investigation was focused

Proceedings                                    12

1   on the 11 witnesses.  So if you're seeking all documents

2   about them, provided by them, either by them or

3   third-parties, what else is left?

4           MS. TRZASKOMA:  I actually don't know who they

5   interviewed.  I don't have a list of 179 witnesses.  Perhaps

6   that would be a starting point.  But this is a little bit

7   like taking a stab in the dark.  If you're asking about

8   what's relevant to -- I mean, we would very much like not to

9   have to deal with 11 complainants.  It would be so much

10  easier if we were dealing with Trooper 1 because then we

11  could say it's, you know, all of the witnesses who testified

12  or gave information -- gave interviews who were, you know,

13  PSU or New York State Police witnesses, but we can't because

14  we have --

15          THE COURT:  But a moment ago you argued that the

16  issue that you were taking with the Court's ruling is my

17  failure to narrow.  I'm supposed to review those 73,000 pages

18  and decide what you get?  That's not going to happen and you

19  know that.  So to say that there is a reason to reconsider

20  for failing to narrow a subpoena as to which we don't even

21  have a document-by-document privilege log is impossible,

22  impossible.

23          So, again, I question whether or not

24  reconsideration is really the vehicle you seek or whether or

25  not a different vehicle could be more appropriate given that

Proceedings                                            13

1    I did not quash the subpoena, which I think is a

2    misapprehension in your papers because you did state in your

3    papers that I quashed the subpoena that was issued to the

4    AJC, not the OAG.

5            Ms. Longley, in response to the efforts to narrow,

6    do you have anything you would like to add?

7            It seems to me that the parties' positions with

8    regard to the universe of documents set forth in document 27,

9    which was the sealed version of 28 and 29, is that still your

10   view in terms of what exists in the AG's files?

11           MS. LONGLEY:  I'm sorry, are you asking are they

12   still requesting the vast majority of materials?

13           THE COURT:  Yes.

14           MS. LONGLEY:  Yes.  It's not a meaningful cutting

15   down of the material that is being called for.  It still

16   implicates the same privilege concerns, the burden concerns,

17   definitely sovereign immunity concerns.  It is not a

18   meaningful change.

19           THE COURT:  All right.  So, Mr. Amer, it looks like

20   you have something to add.

21           MR. AMER:  I just want to mention, in response to

22   Your Honor's order encouraging us to provide transcripts

23   where the witness has consented, I did want to give you a

24   broader perspective on that, because I think I heard Your

25   Honor refer to them as deposition transcripts, and I want to

1    make sure the Court appreciates that these are not deposition

2    transcripts.  A number of --

3            THE COURT:  If I did that, that's a slip of the

4    tongue because I do a lot of civil discovery cases, but go

5    ahead.

6            MR. AMER:  A number of affirmative bureaus in our

7    office conduct investigations as a precursor to some law

8    enforcement activity, whether it's the commencement of an

9    action or an assurance of discontinuance, whatever it may.

10   We also are tasked with investigating deaths in law

11   enforcement situations.  And I've been -- I've had an

12   opportunity to conduct a number of these investigative

13   interviews, and we always start off with the same statement

14   to the witness, which is you don't have a right to obtain the

15   transcript; in fact, you don't have a right to have counsel

16   present during the interview, although often we will agree to

17   allow counsel to be present.  But when we do, we instruct

18   counsel that they may not take detailed notes.  So there may

19   be circumstances that occur after the interview that lead the

20   office to provide a copy of the transcript to the witness.

21   But as a general matter, these interviews are very, very

22   different from depositions.  And they are done at the outset

23   with the understanding that the witness is not going to get a

24   copy of the of the unredacted transcript.  They don't do the

25   errata sheet that one does when you're a deponent.

Proceedings                                          15

1          With that in mind, whether or not the witness

2    consents to providing a transcript that they actually don't

3    have is not a meaningful question.

4          THE COURT:  How often do you publish them on your

5    website?

6          MR. AMER:  So we don't publish them unredacted.  In

7    this particular situation, we publish them in redacted form.

8    I think most of the time -- well, I shouldn't speak broadly,

9    but this was a unique situation where a determination was

10   made that they would be published, but, again, in unredacted

11   form.

12         The few counsel representations that I heard about

13   whether their clients consent, in response to Your Honor's

14   question, were certainly not unconditional consents.

15         THE COURT:  Agreed.

16         MR. AMER:  They were consents subject to the

17   lawyers reviewing the transcripts, which proves my point,

18   which is that they don't have them.  And their concerns are

19   privacy concerns for their clients, which is part of the

20   reason for why we redacted them before putting them up on the

21   website in the first place.  And they don't have our concern

22   of the privilege issues that we raised, law enforcement

23   privilege issues that we raised that is another basis for --

24         THE COURT:  Which you have largely waived by

25   posting them on the website.  I mean, that's the thing about

Proceedings                                          16

1    the website determination.  That's why I asked.

2           Look, if you conduct investigations -- and when I

3    was chief of civil rights, I used to collaborate with the

4    office that conducts the wrongful death investigation at the

5    hands of the police.  Alvin Bragg was my counterpart in my

6    office at the time.  Look, if you do an interview in

7    connection with those investigations and ultimately it

8    becomes a criminal matter and there are things that come

9    along with it, totally understand the law enforcement

10   privilege applicability and the various privileges that you

11   assert.  But the determination to publish these transcripts

12   on the website may have consequences.  And that's one of the

13   things that is complicated about this whole situation.  So

14   that's one of the reasons why I wanted to ask all of the

15   complainants if they had a concern about releasing those

16   unredacted transcripts because, as you know, that's something

17   that Cuomo's people have been seeking from the beginning, and

18   trying to find meaningful ways of trying to get the

19   information that they may need while also limiting the burden

20   on the Attorney General's Office as a nonparty are two of my

21   goals.

22          MR. AMER:  Just two comments on that, Your Honor.

23   I appreciate and I think we all recognize that Your Honor

24   didn't rule on any of the privilege questions because the

25   basis for your ruling was relevance and burden.  Those issues

Proceedings                                                    17

1    have not been ruled on in the Court's decision.

2            THE COURT:  They can't be because I don't have the

3    document-by-document privilege log and I haven't conducted a

4    privilege review.

5            MR. AMER:  I appreciate that.  And the second point

6    is simply that I think we are talking about two different

7    things.  I think what you just mentioned with publishing

8    unredacted transcripts on the site is a waiver question and I

9    don't think it's related to whether or not the witnesses who

10   don't have the right to get the transcript in the first

11   instance consent or not.  It seems to me that those are two

12   different issues.

13           THE COURT:  Those are totally different issues.

14           MR. AMER:  Yes.

15           THE COURT:  But in the interest of respecting the

16   survivors and complainants who came forward and in the

17   interest of advancing the law enforcement purposes that

18   undergird the law enforcement privilege in particular with

19   regard to chilling future investigations, I think witness

20   consent is important.  Don't you agree?

21           MS. LONGLEY:  Your Honor, can I just add to that?

22           I would agree in general, but some of the redacted

23   information in those transcripts speaks to anonymous

24   witnesses who are not the witnesses who are potentially

25   considering giving consent, but they may speak about the

Proceedings                                                    18

1    identity of other witnesses who are not publicly known, and

2    our office has a law enforcement interest in not publicly

3    releasing the names of those individuals or identifying

4    information about those individuals or personal and private

5    information about those individuals, and that is what is

6    contained there that triggers the privilege concerns that our

7    office has that are separate and apart from whether or not an

8    individual witness might consent to their private information

9    for their identity.

10         MR. AMER:  And we seem to be going down a road now

11   where, as part of this inquiry, we now have to disclose all

12   the unredacted transcripts to the witnesses who were

13   interviewed and their counsel, which is something that, as I

14   said, is not the ordinary practice for your office, you know,

15   in all instances.  That raises the waiver question.  I

16   appreciate it.  But I just want to point that out.

17         And it seemed to me from what counsel -- the

18   various counsels responses to Your Honor's question, the end

19   product is that their interest seem very much align with what

20   our interests were in redacting those transcripts in the

21   first place.  It's hard to see why we have to go through that

22   exercise to the extent that counsel have indicated that they

23   are concerned about disclosing private information.  Well,

24   that is what our redactions, at least in part, sought to

25   protect.

Proceedings                                        19

 1          THE COURT:  Ms. Trzaskoma, would you like to

 2   respond?

 3          MS. TRZASKOMA:  Yes, just briefly on the question

 4   this is a different exercise than posting transcripts on a

 5   website.  There is a protective order in this case, you know,

 6   witness identities, I mean, that's information we absolutely

 7   should have.  If someone who is being interviewed or who is

 8   on-the-record testimony is being taken identifies someone

 9   else who saw something, knew something, heard something,

10   that's information that we should have in connection with our

11   defense of our client in this case.

12          You know, on the question -- so I don't -- I know

13   we've talked about a need to review and redact, but that

14   need, I disagree that it exists here because there is a

15   protective order, so any personal information, I just don't

16   think that is appropriate.

17          On the question of procedure, I understand that

18   Your Honor thinks that our motion for reconsideration is not

19   the appropriate procedure, and I would ask whether it would

20   be -- so two things, first, on the sovereign immunity, we

21   have served, as Your Honor heard, subpoenas on the Cleary and

22   Vladeck firms for interview memos and transcripts, which we

23   think they have.  They're not the State.  There is no State

24   sovereign immunity implicated.  There may be other issues

25   with these other privileges, but we can cut around the State

Proceedings                                                            20

1   sovereign immunity issue by litigating those subpoenas, if

2   necessary.

3            THE COURT:  They are not going to give them to you.

4            MS. TRZASKOMA:  I understand, but we didn't serve

5   them previously because we did not want to go around this

6   process.  But if the issue is State sovereign immunity, that

7   is a way to kind of cut that particular issue out.

8            THE COURT:  It's your position that the

9   investigators working for the entities appointed under State

10  law don't enjoy that immunity.

11           MS. TRZASKOMA:  That is our position.  It doesn't

12  protect the information.  State sovereign immunity protects

13  the State entity from being compelled to act by this Court.

14  That's their theory.  The Cleary firm doesn't enjoy that

15  immunity.  So the information is not protected.  It's not

16  that the information is immune.

17           THE COURT:  But they have many arguments that the

18  information should not be disclosed too.

19           MS. TRZASKOMA:  Understood.  But if we can limit --

20  to Your Honor's point, that State sovereign immunity is a

21  naughty question --

22           THE COURT:  Which I will reach if I need to.  But I

23  am trying to look for some quasi efficient path forward and

24  we are not finding many.

25           MS. TRZASKOMA:  Well, I will say that we would like

Proceedings                                                21

1   an efficient path forward.

2          To be clear, you know, our goal right now is, as we

3   said in our motion for reconsideration and as reflected in

4   your subpoenas to the Cleary and Vladeck firms, our focus is

5   on getting the interview memos and the unredacted

6   transcripts.  But frankly --

7          THE COURT:  Of whom?  Everybody?

8          That's what your request, after the argument, said.

9          MS. TRZASKOMA:  Of the complainants and any New

10  York State Police witness.

11         THE COURT:  The document you were referring to

12  earlier requested the memoranda witness interviews of the 11

13  complainants and witnesses relating to the allegations by the

14  11 complainants, in addition to the witness memoranda by

15  Trooper 1, Brittany Commisso, Lindsey Boylan, Alyssa McGrath

16  prepared by the AJC, records provided to the OAG by the

17  complainants, and records produced by third-parties to the

18  OAG that relate to the allegations of the 11 complainants.

19  And based upon the Attorney General's representation, that

20  that encompassed basically everything since their

21  investigation was limited to those 11 complainants, that was

22  the scope of the request as I understood it when drafting my

23  opinion in July.

24         I don't really want to spend a lot of time

25  revisiting what happened in the past.  If you have a narrow

Proceedings                                                    22

1   request now, you need to meet and confer with the Attorney
2   General's Office and see if you can try to resolve it, see if
3   their witnesses agree.  They're never going to give you the
4   interview memos.  They've made that super clear.  That's
5   going to have to come to me on some sort of privilege review
6   and I may need to reach to the sovereign immunity question.
7   The onus is on the Governor to figure out what narrower set
8   of documents you want and figure out a way to establish
9   proportionality and relevance and/or convince the Attorney
10  General's and/or the witnesses who are implicated to give you
11  the materials.

12          MS. TRZASKOMA:  Your Honor, we did make -- in our
13  motion for reconsideration, we requested a narrowing of the
14  subpoena.

15          THE COURT:  That's not reconsideration.  That's a
16  new request, and that's my issue with your procedural
17  vehicle.

18          MS. TRZASKOMA:  I understand that, Your Honor.  I'm
19  just saying in terms of us trying to identify a narrow set of
20  information -- you know, one problem, as I indicated, we do
21  not know who the 179 witnesses were.  So if we could have, as
22  a starting point, a list of those witnesses, I am confident
23  that we could narrow it significantly.  But at a minimum, I
24  think, you know, what we would ask, and if we need to serve a
25  new subpoena so that that is the operative subpoena for --

Proceedings                                      23

1    that Your Honor will consider in this going-forward context,

2    we can do that.

3              But we know that the Attorney General interviewed a

4    number of current and former State Troopers.  We'd like to

5    focus on those and we'd like to focus on the complainants

6    interview memos, as well as witnesses to the events that they

7    have -- that the other complainants have alleged.

8              THE COURT:  Ms. Longley, would you like to be heard

9    in response to those comments regarding witness lists and

10   focusing on the complainants and the troopers?

11             MS. LONGLEY:  Sure.  Yes, please.  As far as a list

12   of witnesses, that goes right to the heart of our privilege

13   and law enforcement concerns.

14             A number of the witnesses are not publicly known

15   and have expressed credible fears of retaliation, many of

16   which have continued to bear out in the public realm.  We

17   would not be willing to provide a list of witnesses to

18   movant.

19             As far as which troopers provided testimony, that's

20   something that seems that movant could get from his

21   co-defendant, the troopers, who are aware of which troopers

22   were interviewed.

23             And we've never received such a narrow request such

24   as please identify all of the troopers who were interviewed.

25   That's a different request.  We haven't receive that kind of

Proceedings                                                    24

1    a request.  I think that would be available from a party to

2    this case and not from us.  That is a request that we could

3    perhaps consider.

4           I do want to also address this idea of subpoenaing

5    our attorneys as an end run around this Court's decision to

6    deny their motion to compel.  You know, they subpoenaed our

7    lawyers, which I -- I believe they were just served yesterday

8    and were not in a position here to fully respond to those.  I

9    think the firms will respond to those subpoenas in due

10   course.  But I do not think that subpoenaing them will get

11   around the sovereign immunity issue and it certainly won't

12   get around our privilege concerns on those materials and

13   those documents.

14          And the subpoenas, not only do they seek

15   information that was already the subject of Your Honor's

16   decision denying the motion to compel, they also are seeking

17   completely irrelevant, completely inappropriate materials

18   related to the billing, which, you know, the movant has

19   submitted some arguments to reopen the record on, which we

20   have responded to in writing and happy to address those if

21   that's helpful for the Court.  I wanted to preview that issue

22   as well.

23          THE COURT:  Ms. Trzaskoma, do you want to respond?

24          MS. TRZASKOMA:  I mean, look, I completely disagree

25   that there is some law enforcement concern in telling us or

Proceedings                                         25

1   any kind of concern in telling us who was interviewed:  I
2   don't think that reveals any big secret.  If we needed to do
3   it on an attorneys'-eyes-only basis, we can do it that way.
4   The State Police do not know who was interviewed.  We are
5   kind of picking it up piecemeal.
6           THE COURT:  How is that possible?
7           MS. TRZASKOMA:  Some of them are former, so they
8   just don't know everyone who was interviewed.
9           MS. GLAVIN:  On that point, Your Honor, we actually
10  have asked counsel for the State Police and there -- as we've
11  learned, some former State Police troopers were giving up
12  phone numbers, call this person, call that person.  So we
13  don't know that the State Police even know that they were
14  interviewed, but we have repeatedly asked counsel for the
15  State Police as to who was interviewed.  The problem is I
16  think there is an issue with them getting that information
17  because they were represented by their union.  We have asked.
18  We have tried to go down that road.
19          THE COURT:  Wait.  So the union would know.  I
20  don't understand the issue.
21          MS. TRZASKOMA:  But the union is not providing us
22  -- I mean.
23          THE COURT:  The union doesn't have a law
24  enforcement privilege or a sovereign immunity argument.
25          MS. TRZASKOMA:  Your Honor, point taken.  We can

Proceedings                                     26

1    try to -- we have -- believe me, we have been trying to

2    cobble this together as best we can.  It is not as obvious as

3    --

4           THE COURT:  I don't think it's obvious at all.  I

5    don't think it's obvious at all.  I think it's very

6    complicated.  But I also think protecting the integrity of

7    important investigations conducted by the Attorney General

8    and AJC into important issues of executive branch official

9    misconduct are very important principles as well.  The Court

10   will give significant weight, if ever called to do so, to the

11   balance of those interests if I were in need to make a

12   qualified privilege analysis or a privilege review analysis.

13   The idea that this is your fast path forward is not correct.

14   There are many, many hurdles on this path, many of which are

15   very, very difficult to overcome.

16          So my purpose, again, in issuing the ruling, as I

17   did, which was very narrow, simply saying that you haven't

18   established relevance and proportionality as to all 73,000 or

19   so documents that appear to be encompassed by even the

20   revised version of your requests was in an effort to get you

21   guys to meaningfully meet and confer and see if there is

22   anything whatsoever that can be produced without a need to be

23   further very contentious litigation on these topics.  It's

24   not going away.

25          And I agree with Ms. Longley, trying to subpoena

Proceedings                                                      27

1   the law firms, they are just going to come right back here

2   with their motion to quash and we are going to be back at

3   square one.

4           MS. TRZASKOMA:  Your Honor, those subpoenas were

5   not an end run around the privilege issues.  That was an

6   effort to really cut through the sovereign immunity issue,

7   which we can have a disagreement about whether that cuts it

8   out or not.  Let me give --

9           THE COURT:  Do you want to brief it?  You're short

10  on time and all of these steps are complicated legally.

11          MS. TRZASKOMA:  Let me give you an example of one

12  way.

13          THE COURT:  I'm not being facetious.  Do you want

14  to brief it?

15          MS. TRZASKOMA:  I would like to find a way to cut

16  through this.  As Your Honor can see from the binders in

17  front of me, we have briefed a lot.  I would really rather

18  not, but I'm willing to do it because it's very important

19  that we get interview memos.  For example, Diane Perrotta, a

20  former member of the PSU, a trooper, a former trooper whose

21  job it was to protect Governor Cuomo, we took her deposition

22  and she was not truthful, and she, I believe -- and it's a

23  very interesting thing, because Ms. Perrotta was interviewed

24  by the Attorney General's Office.  She was not put under

25  oath.  There is no transcript of her statements, and she's

Proceedings                                            28

1  not referenced in the Attorney General's report as someone

2  who corroborates Trooper 1's story.  But in her deposition

3  she said she's best friends with Trooper 1 and she said she

4  was a witness to everything Trooper 1 alleged, everything.  I

5  find it very difficult to believe that that is true given

6  that that's inconsistent with Trooper 1's own complaint,

7  Trooper 1's own disclosures.  And I'm very -- I believe that

8  Ms. Perrotta was not truthful with the Attorney General, and

9  I think her prior statements would expose her as an

10 untruthful person.

11          THE COURT:  And -- again, back to the question I

12 asked Mr. Licul, who is still here from this morning, why do

13 we care about Ms. Perrotta?  Is Mr. Licul calling her?

14          MS. TRZASKOMA:  She's listed as a witness in his

15 disclosures and she -- and Ms. -- and Trooper 1 identifies

16 her as a witness to certain of her allegations.

17          THE COURT:  So you have good cross-examination

18 fodder, it sounds like.

19          MS. TRZASKOMA:  Your Honor, we have -- believe me,

20 I think we can, but I believe that there are other issues

21 that would be helpful in terms of examining Trooper 1.

22          THE COURT:  But you don't get everything that's

23 helpful in the context of civil discovery.  There is a

24 relevance and proportionality limit.  This is not a criminal

25 case.

Proceedings                                    29

1        You guys are litigating this as if you're seeking

2   to get all of the *Brady* out of the State.  We talked about

3   this last time.  It's not how this works in a civil context,

4   particularly when dealing with third-party discovery.  There

5   is a proportionality limit that has to kick in at some point.

6        Seven rabbit holes down the road in terms of

7   so-and-so and so-and-so's credibility is starting to getting

8   really far afield.

9        MS. TRZASKOMA:  I don't think it's far afield to

10  ask for prior statements from a witness who Trooper 1 has

11  identified as one of her witnesses.  So call me crazy, but

12  that is actually highly relevant information that we are --

13       THE COURT:  The interview memos are particularly

14  problematic, though, as they may well have the law

15  enforcement privilege.

16       Did they publish any of the interview memos?

17       MS. TRZASKOMA:  The interview memos have been

18  provided to us and we provided some of them to Your Honor as

19  examples --

20       THE COURT:  In the Albany case, I recall.  But are

21  the interview memos otherwise publically available?

22       MS. TRZASKOMA:  They are not otherwise publically

23  available.  But, Your Honor, if you look at the interview

24  memos, there is no special law enforcement information there.

25       THE COURT:  We've gone over this.  We've gone over

Proceedings                                    30

1    this.

2          MS. TRZASKOMA:  I don't want to rethread ground

3    because I agree.  I would like to find a way to cut through

4    this.  I'm willing to meet and confer with the Attorney

5    General's Office.

6          THE COURT:  They are never going to give you the

7    interview memos.

8          Mr. Amer is raising his finger.

9          MR. AMER:  In the interest of trying to simplify

10   the proceedings, we are now looking at two new subpoenas on

11   two law firms.  We're going to have to brief cross motions to

12   compel and quash.  And I hear them say that the only reason

13   they served those subpoenas was because by doing so they

14   think they avoid the sovereign immunity defense.  We think it

15   is absolutely clear they don't accomplish that by serving law

16   firms that acted as our agent in connection with the

17   investigation.  We think it's absolutely clear that the law

18   firms, as our agent, can raise the same sovereign immunity

19   defense that the office raised in connection with the

20   subpoenas served on our office.

21          If that's the only issue for why those subpoenas

22   are outstanding, maybe it makes sense for the Court to

23   determine if those law enforcements enjoy the same sovereign

24   immunity defense without deciding the merits of that defense,

25   and then maybe they withdraw the subpoenas and we can avoid

Proceedings                                31

1  having to file a whole new round of motion practice, and, by

2  the way, you know, involve law firms that otherwise aren't

3  going to be involved in this case.  It just seems like we're

4  going to waste a lot of time because we think it's absolutely

5  clear that the defense is one that they can raise.

6           THE COURT:  In the legislative privilege context,

7  you know, the case law is a little more developed, that

8  persons acting on behalf of legislative entities enjoy all of

9  the same legislative privileges.  Why wouldn't that be true

10 of somebody working at the behest of State pursuant to an

11 authority delegated to them by State law?

12          MS. TRZASKOMA:  I think because what underlies 11th

13 Amendment, you know --

14          THE COURT:  I'm not relying on 11th Amendment.

15          MS. TRZASKOMA:  No, no.  I'm sorry.  What underlies

16 State sovereign immunity for these purposes is the order from

17 the federal court compelling action by the State agency.

18          THE COURT:  But it is an agent of the agency.

19          MS. TRZASKOMA:  I don't think --

20          THE COURT:  It's just traditional agency law.

21          MS. TRZASKOMA:  -- it is currently an agent and it

22 still possesses those documents.  It is no longer an agent.

23 Cleary is no longer --

24          THE COURT:  And that somehow waives the protections

25 the State might enjoy?

Proceedings                                                    32

1           MS. TRZASKOMA:  I'm happy to brief it, Your Honor.

2           THE COURT:  Really, though?  That's my question.

3    This is the way you want to be spending your time.

4           MS. TRZASKOMA:  Your Honor --

5           THE COURT:  There are also significant layers of

6    law enforcement privilege issues, even if you were to

7    succeed.

8           MS. TRZASKOMA:  Your Honor, what is extremely

9    frustrating is that the Attorney General told the public that

10   she was going to turn over -- she was going to make public

11   all of this information, and what she did is disclose --

12   cherry pick both which witnesses gave testimony and -- I

13   mean, it is a very serious manipulation of the public record,

14   because what happened is witnesses were called in for

15   interviews, then they were put on the record.  Oftentimes,

16   their on-the-record testimony is not the same, is either not

17   the same or is a subset of what their interviews were.  So

18   their interviews had all sorts of information.

19          I'll give you an example.  Vincent Straface, who

20   was the head of the PSU, was interviewed by the Attorney

21   General's Office.  According to him he was not asked a single

22   question about Trooper 1.  Instead, he was asked about

23   general environment around the Governor.  And one thing Mr.

24   Straface told AG investigators is that he had a very hard

25   time crediting Lindsey Boylan's statements and allegations.

Proceedings                                  33

1   And why is that?  Because shortly after she left the chamber,

2   or the ESD, Ms. Boylan sent Mr. Straface a personal message.

3   And in that personal message, Ms. Boylan told Mr. Straface

4   that the Governor had inspired her and been such an important

5   person in her life, and she missed him and please con --

6   please tell everyone I miss him.  That's what Mr. Straface

7   told the AG investigators in his interview.

8           Then, when he was put on the record, that -- they

9   did not ask him about that.  They didn't ask him a single

10  question about Ms. Boylan.  Instead, they asked him about

11  Trooper 1.  So there are two completely -- nor did the

12  Attorney General -- you know, he provided that text to the

13  Attorney General, but that doesn't appear in the report.

14  That doesn't appear in his transcript.  That wasn't an

15  exhibit that was publicly disclosed.  It's -- I'm not just

16  talking about -- we're not just talking about a typical

17  investigative situation where witnesses are interviewed and

18  then they're locked into their testimony on the record.

19  These two things often are very different.  So it's not just

20  like a luxury to get the interview memos.  It's really

21  important information.

22          On the question of the 73,000 documents or not, the

23  73,000 documents are the documents that they collected during

24  the investigation.  Again, I don't know what they have.  I

25  have a feeling a lot of them came from the executive chamber

Proceedings                                                   34

1    or the State Police or some other agency.  But we don't

2    exactly know what those are.  But those are different than

3    the interview memos.

4            And one question I have and that's raised in the

5    recent letter about the billing that Cleary did is whether

6    the Attorney General's Office, through Cleary, already

7    reviewed and redacted the interview memos anticipation of

8    having to turn them over, because what Ms. Longley -- what

9    the AG's submissions so far indicate is they haven't reviewed

10   and redacted the 73,000 pages.  But that's separate and apart

11   from the interview memos.  So if the AG's office has paid --

12   if the taxpayers of the State of New York have paid Cleary

13   millions of dollars to review and redact additional interview

14   memos and those are not being turned over, I would like to

15   know that.

16           THE COURT:  I'm sure you would, Ms. Longley.

17           MS. LONGLEY:  Your Honor, a few things.  We are

18   here on a motion to reconsider and these are the exact same

19   arguments that were made on a motion to compel, which is that

20   it would be really helpful and convenient and they might find

21   impeachment or exculpatory information if they had interview

22   memos or unredacted transcripts as they took depositions.

23   This is not a new argument.  It's the same argument they've

24   made.  They're just filling it with now that they have

25   actually taken some depositions and said, oh, look what we

Proceedings                                          35

1  said was going to happen has happened, so now we really want

2  those interview memos.  It's improper on a motion for

3  reconsideration and it should be denied.

4          As far as the questions about the fees and the

5  payments, we have -- we think they are completely irrelevant.

6  We have been clear with the Court that the burden would be

7  the same as presented in opposition to their motion to compel

8  and in support of our motion to quash.  We don't think we

9  should have to explain what Cleary has done.  We don't want

10  to waive attorney-client privilege in any way.  We can say

11  that since this litigation has begun they have not been

12  redacting documents in preparation of producing documents

13  with the exception of the few documents we voluntarily

14  produced that referenced Trooper 1 by name.

15          And as far as the -- I don't know if Your Honor

16  wants me to respond to the comment about the interview memos

17  and whether those have been redacted previously.

18          THE COURT:  Look, the way this is headed, I may

19  well need to review a subset of interview memos to evaluate

20  the assertion of the law enforcement privilege.

21          What is the current status of these interview

22  memos?

23          MS. LONGLEY:  One quick note, which is that it's

24  our position if the Court were to go in that direction, the

25  Court would first have to resolve sovereign immunity.

Proceedings                                    36

1        THE COURT:  I'm very aware.

2        MS. LONGLEY:  In the event the Court resolved

3   sovereign immunity and it's not in our favor and appeals are

4   exhausted, at that point we would look at the interview

5   memos.  What I can say is they have not been redacted for

6   potential production or review under the civil standards of

7   discovery.  They were redacted under the criminal standards

8   for production to fellow law enforcement.  There is a

9   difference of privileges.  There is a different standard even

10  for attorney work product on the civil and criminal side.  It

11  would be time intensive and burdensome to review those for

12  redaction.

13       THE COURT:  How many pages are the interview memos

14  of the complainants?  Do you know?

15       MS. LONGLEY:  I can't answer that off the top of

16  the my head.  What I can say is there are over 150 of them

17  and that --  you know, probably closer to 200 of them, and

18  that they probably range in pages, I'm guessing two pages to

19  ten pages each.  Maybe some are longer, but I don't have a

20  page count on that.

21       THE COURT:  Okay.  The number you mentioned 150 to

22  200, that's the total number of witnesses, right?

23       MS. LONGLEY:  Correct.

24       And what I would like to add is while they may not

25  be voluminous in pages, and I believe they are single spaced,

Proceedings                                              37

 1   but they do contain some very, very sensitive information

 2   about other nonparties, about individuals who are not

 3   publicly known and that have nothing do with the Trooper 1

 4   case and are really, really far afield from the Trooper 1

 5   case.  And the vast majority of the witnesses don't know

 6   Trooper 1, don't know her identity, didn't know her at the

 7   time, have never talked about her.  They were not asked about

 8   her.  It's really -- we are talking about highly sensitive,

 9   privileged information that goes to the heart of our offices

10   ability to conduct these kinds of investigations in the

11   future and that have no relevance to the Trooper 1 case.

12            MR. AMER:  I did want to quickly circle back to the

13   Cleary and Vladeck subpoenas.  We only have conducted

14   research, you know, for a day and we've already found a case

15   by Judge McMahon.  It is called *Catskill Development versus*

16   *Park Place*.  It is 206 Federal Rule decision 78, 2002

17   decision, involving a firm representing tribal, a tribe,

18   where she held that the law firms subpoenaed enjoyed tribal

19   sovereign immunity.  We just think it's crystal clear that

20   the subpoenas on the firms did not eliminate the sovereign

21   immunity defense and it would be, I think, in everybody's

22   interest if we could get those subpoenas withdrawn and not

23   have to have that separate battle, which it is going to

24   involve, as I said, at least two more parties, both law firms

25   and a whole new round of motions.

Proceedings                                        38

1          THE COURT:  Right.  Look, this is a really

2     intractable situation, as I see it.  Ms. Trzaskoma and

3     Governor Cuomo's team, since the beginning of the motion

4     practice have repeatedly asserted that they want the

5     interview memos and I get that.  I understand the reason that

6     you want the interview memos.  They have been -- it has been

7     argued at length both at the prior argument and more today

8     that the Attorney General's Office believes that they are not

9     required to respond to those requests due to the assertion of

10    common law sovereign immunity.  Whether or not that is the

11    case remains to be seen.

12          At least one of our judges in our court just

13    recently squashed a subpoena on those grounds.  Whether I

14    would follow that ruling remains to be seen.

15          Layered on that, you have the other private

16    assertions, which are complicated.  And then, Ms. Longley

17    also made the -- slipped it in there, but I definitely picked

18    up on it, the possibility of the Attorney General's Office

19    appealing if I were to rule against them on the sovereign

20    immunity question and reach the underlying substantive

21    issues.

22          We are talking about a multi-month process here, if

23    not a year for the case to go up and down to the Court of

24    Appeals.  And that was apparent to me when I issued my ruling

25    in July.  These are the steps and the road that what would

Proceedings                                          39

1   need to happen for these documents to land in Governor

2   Cuomo's corner if I were to even find that they were not

3   protected by the law enforcement privilege.

4           So the question of whether or not we go down the

5   road is something that really is in Governor Cuomo's court.

6   You have repeatedly insisted that this is what you want,

7   these are the documents you're seeking, and to the extent of

8   now subpoenaing their lawyers for them.

9           I question whether you have any contrary authority

10  to Ms. Amer's case.  Do you have any?

11          MS. TRZASKOMA:  I would have to look at that case

12  to see it.  But to be clear, we did not subpoena the firms as

13  like a -- to set the stage for a different dispute.

14          As I said, it was a way to try to eliminate at

15  least one aspect of the disputes.  And I'm happy to meet and

16  confer with counsel about that.

17          But, you know, when we were here in February, the

18  AG's office said we are immune from the subpoena, but there

19  are other ways you can get the information.  You can go FOIL,

20  serve a FOIL request.  AND I just want to make clear some of

21  the things we have done.  We did serve a FOIL request, and

22  the response THAT we got back was I can't do it before March

23  '24, I'm sorry, March 2024.

24          There is one FOIL officer who's all alone in that

25  office who is dealing apparently with multiple FOIL requests

Proceedings                                            40

1   every day, and she's just not going to be able to get to it,

2   and it's not clear what we'd get.

3           THE COURT:  You won't get most of it anyway if they

4   are asserting the law enforcement privilege.

5           MS. TRZASKOMA:  Maybe there is an Article 78

6   proceeding that we will commence that will try to tackle that

7   because I think their assertion of the privileges -- well,

8   you know what we think about them.  But in any event, I don't

9   think there is -- in any event, that may be an avenue that we

10  are pursuing.

11          I mean, but another way that we tried to get at

12  some of this information is we served a subpoena on

13  Trooper 1's counsel who represented Trooper 1 during her

14  interview with the AG's office asking for her notes of the

15  interview and she took no notes.  So the AG interview memo is

16  the only record of Trooper 1's prior statement.

17          THE COURT:  You have the transcript.  But, again,

18  so two things:  One, we know from Ms. Perrotta that all of

19  the troopers, including Trooper 1, were talking among each

20  other about the investigation while they were being

21  interviewed by the AG's office.  That unit in particular and

22  maybe the entire New York State Police is a hotbed of gossip

23  and rumor, you know.  You know, we haven't taken all that

24  many depositions of all those troopers.  But I will tell you

25  that each one of them has told us there's a lot of office

Proceedings                                                    41

1   rumor and they're all talking to each other.  I do have

2   questions about whether her on-the-record testimony is

3   consistent with what she told them in her interview.

4           I'm particularly interested in whether she suddenly

5   remembered more things that she went on the record with than

6   she had told AG's investigators at the outset.  But that's

7   just an example.  We can't get that information because her

8   lawyer didn't take notes.

9           THE COURT:  She's not represented by the same

10  attorney as she was before?

11          MS. TRZASKOMA:  No, she was represented by the

12  union lawyer in that.

13          THE COURT:  Has that attorney agreed to speak with

14  you?

15          MS. TRZASKOMA:  The attorney doesn't really

16  remember.  She didn't take notes.  She thought that the

17  interview memo -- that the on-the-record testimony was

18  similar, but more, more than the on-the-record testimony.  So

19  there was more --

20          THE COURT:  I understand what the word "more"

21  means.

22          MS. TRZASKOMA:  So we have been trying to do this.

23          And my concern about -- I hear Your Honor, these

24  are very difficult questions.

25          THE COURT:  No, you're not going to get the

Proceedings                                        42

1    information in the amount of time you need it.  That is my

2    concern and you don't seem to be acknowledging that this is

3    real.

4              The FOIL people are telling you March 2024.  Even

5    if we were to rule on sovereign immunity against the AG and

6    then they appeal it, that's going to take however long that

7    takes.  So you need to figure out a path forward that

8    actually is viable.

9              MS. TRZASKOMA:  But, Your Honor, basically what

10   you're telling us is we cannot get the information from the

11   Attorney General, because if there were a normal situation

12   where we could go meet and confer and they might be amenable

13   to giving us some interview memos of Trooper 1 and the

14   complainants and maybe a couple of other particular

15   witnesses, I would be all in for that.  But what I am hearing

16   from them and what we have heard from them is full stop

17   nothing.  We are not giving you anything, even with

18   witnesses --

19             THE COURT:  I haven't heard that, Ms. Trzaskoma.

20   I've been listening too.

21             Earlier today Ms. Longley said we've never heard

22   this narrow request before, we are willing to consider that.

23   You can get the transcript.  I'm sure it's there.  And Mr.

24   Amer said similar comments in our prior oral argument.  You

25   have not made any efforts to narrow what you have been asking

Proceedings                                      43

1    for despite my recommendation to do so at the prior oral

2    argument and despite my explicit order saying please talk to

3    them and figure out if there are certain documents that they

4    are willing to give to you that the witnesses might agree to.

5    I fully get that the Attorney General's Office has various

6    concerns about disclosing that information, but you have done

7    virtually nothing, in my point of view, to meaningfully meet

8    and confer and narrow these issues with the Attorney General.

9            I recall at the end of our oral argument telling

10   Mr. Amer I'm not ordering you to meet and confer because I

11   haven't ruled on the sovereign immunity question.  But the

12   Attorney General's Office, like any state agency, I would

13   trust, is likewise interested in reducing their litigation

14   burden and trying to streamline this as much as they possibly

15   can.

16           If there is any path forward, I suspect they will

17   try to work with you.  Because this is incredibly burdensome.

18   You're now subpoenaing their law firm -- you're making

19   allegations regarding the payments and accusing them --

20   almost akin to misconduct on the basis of seeing some oral

21   responses about billing records.  That briefing was totally

22   inappropriate.  I'm not getting the impression that the

23   Attorney General's Office has entirely slammed the door.

24           Is that correct, Ms. Longley?  Have you entirely

25   slammed the door?

Proceedings                              44

1          MS. LONGLEY:  Your Honor, we started off this

2    process by offering documents that we thought reasonably

3    could be potentially relevant and those documents were

4    documents that we collected this referenced Trooper 1 by

5    name.  That was our initial response to the subpoena.  We did

6    try to work it out.

7          And I know, Your Honor, from hearing you before,

8    you're not interested in rehashing all of the meet and

9    confers that we had.  But it was clear that the movant was

10   not willing to narrow the subpoena, and then we have been

11   going through this process.  We have been litigating it.

12   They have not attempted, you know, to narrow anything or meet

13   and confer with us since.

14          But I will say, we'll always take something under

15   consideration.  If there is a reasonable request made that

16   doesn't call for privilege information and does not implicate

17   sensitive information of cooperating witnesses who are afraid

18   of retaliation, you know, I think that -- and is it relevant.

19   I think that really is important for us.  Is it relevant to

20   the Trooper 1 case?  Are witnesses -- are potential future

21   witnesses for our potential future investigations, everyone

22   in the world is going to see that we are just willy-nilly

23   giving out people's information even if it is not tethered at

24   all to actual claims in a litigation.  I think if there's a

25   reasonable request, we will consider.

Proceedings                                        45

1          In the background, there is always the sovereign

2   immunity concern and our belief that we actually, you know,

3   can't be forced to provide the documents.  But that said, if

4   there are documents that would be available, for example,

5   under FOIL, which is something we raised with counsel from

6   the beginning.  Why don't we give you what you could

7   potentially get under FOIL?  They were not interested in

8   that.  They wanted all of our communications with counsel.

9   They wanted every note the attorneys ever took throughout the

10  investigation even if it had nothing to do with Trooper 1.

11          So, yes, we have not slammed the door.  That said,

12  you know, I think what they really want are interview memos.

13  What I am hearing again today is they want interview memos so

14  they can -- you know -- as impeachment evidence against the

15  investigation because it's not really for the Trooper 1 case.

16          The Trooper 1 case, they have prior sworn testimony

17  that's likely redacted online.  They can use that to try to

18  impeach the witnesses in the context of the Trooper 1

19  litigation.  What they really want is to compare the

20  interview notes from the investigation to the testimony of

21  the investigation so they can say the investigators got it

22  wrong, which is really not what the lawsuit is about.  That's

23  why they want that material.  This is unprecedented how much

24  material is available online.

25          THE COURT:  It is, which also raises issues as to

Proceedings                                                    46

1   whether or not your privileges still attach, and that's

2   another layer of complexity here, and that is a layer of

3   complexity that I think bears on all of the analyses.

4            If the legislature has only a qualified legislative

5   privilege, why is the executive branch's superior and what

6   portions of the executive branch enjoy that privilege?  All

7   agencies, you know, chartered by New York State have to

8   provide nothing in federal court strikes me as a stretch.  I

9   understand the Fifth Circuit's ruling.  I've read the

10  decision I've read Judge Locke's decision closely.  Other

11  courts thought this argument was so ridiculous, like the

12  Eight Circuit, they didn't even bother to analyze it.  This

13  has never been the law, to reply to the subpoena.

14           This is a serious, very serious issue with huge

15  implications all for all kinds of cases, the wrongful death

16  cases that Mr. Amer referenced earlier, every ten years

17  needing the redistricting processes to come to federal court.

18  If cannot be, in the Court view, this is a complete privilege

19  from participating in federal court litigation once New York

20  State decided to join the union.

21           MS. LONGLEY:  Your Honor --

22           THE COURT:  The common law that Mr. Amer described

23  that he was relying on in the prior argument is not the 11th

24  amendment sovereign immunity but the federal common law, and

25  common law evolves over time and joining the union and

Proceedings                                            47

1   becoming an increasingly active participant in the governance

2   of our State has ramifications for New York State agencies.

3   I don't think we are looking at pre-ratification case law and

4   pre-ratification governmental structures in deciding whether

5   or not sovereign immunity would attach in all instances and

6   in all circumstances, at all times.  And in this specific

7   case, where the Attorney General's Office has made an

8   affirmative decision to publish tons of materials online and

9   put a ton of information out there, I think that there are

10  questions similar to the legislative privilege balancing

11  analysis that would apply to the legislative branch.

12          So this is a really complicated inquiry and one

13  that neither party has had an opportunity to fully brief.  I

14  have not asked to fully brief the question of whether there's

15  a qualified privilege and what that would look like, and

16  that's where this would need to go next, unless Governor

17  Cuomo is willing to work on narrowing these requests in a

18  meaningful way and recognizing the timing and complexities of

19  the discovery process here.

20          Ms. Glavin is raising her hand literally.

21          MS. GLAVIN:  I want to get this.  I want to pose

22  this question to the Attorney General's Office, okay.

23          With respect to the interview memos, okay, for the

24  11 complainants, would you be willing to produce the

25  interview memos for those 11 complainants, plus interview

Proceedings                                          48

1   memos of people who were witnesses, alleged witnesses to

2   those allegations?  Would you be willing to produce those to

3   us?

4          MR. AMER:  So we are not going to respond like this

5   in open court.

6          MS. GLAVIN:  But would you consider it?

7          MR. AMER:  Let me finish.  Let me finish.  If you

8   want to make a narrowed request that withdraws the pending

9   subpoenas against the law firms, confirms that if your

10  request is, you know, going to withdraw your motion for

11  reconsideration, you're not going to object, and we're going

12  to resolve this, then make that request and we will consider

13  it.

14         I don't know the answer to it because, you know,

15  you're making it on the spot here and nobody's had a chance

16  to review it.

17         MS. GLAVIN:  I get it.

18         MR. AMER:  But don't make a request that's not with

19  prejudice to the larger subpoena that you have issued because

20  we are not going to do, you know, death by 1,000 cuts here.

21         MS. GLAVIN:  I get it.

22         THE COURT:  The challenge that we're facing, again,

23  relates back to the first question of the day to Mr. Licul,

24  who is still here, I'm smiling and looking at him; he is

25  smiling back, which is really the scope of the plaintiff's

Proceedings                                                    49

1   case here.

2         I believe you were here, Ms. Longley, for the

3   argument.

4         MS. LONGLEY:  Yes.

5         THE COURT:  I think I saw you in the back.

6         It is extremely broad as presently drafted in the

7   Complaint and as according to the Rule 26(a) disclosures.

8   Whether or not that's going to stay plaintiff's case, I don't

9   know.

10        I'm urging plaintiff's counsel to really think hard

11  about Rule 404(b), 403, how strong the similarities are

12  between these various instances of misconduct to see if those

13  other instances are likely to come in at trial.  I would also

14  urge the Governor Cuomo attorneys to really think hard about

15  whether there is sort of any ways that they can work with

16  plaintiff's counsel to narrow the scope of the allegations in

17  the case.

18        But -- the lay of the land in the Trooper 1 case,

19  with regard to your point earlier, Ms. Longley, with

20  reviewing relevance is it's a very broad set of allegations

21  that are presently in the case.

22        MR. AMER:  But as Your Honor cogently pointed out

23  both here and in your decision, it's not going to be for this

24  jury to decide whether our investigation was thorough and

25  proper.  So to the extent the material they seek goes to that

Proceedings                                                    50

1    question, that's not going to be something that our office is

2    going to consider as relevant.

3              THE COURT:  Understood.  But everybody knows that a

4    prior interview where somebody provided significantly less or

5    significantly more or slightly different information can be

6    effectively utilized for cross-examination and/or

7    understanding the evolution of that person's story.  It's not

8    exclusively for the purposes of attacking the investigation,

9    to be perfectly fair to their position.  It's not black and

10   white like that.  This is, as we've discussed now for almost

11   an hour and a half, super complex set of issues.

12             I'm directing the parties to go back to the drawing

13   board and meet and confer with regard to these recent

14   developments as to the subpoena, to the law firms for the

15   Attorney General's Office, and is it also the AJC?

16             MS. GLAVIN:  No.

17             THE COURT:  So please go back to the drawing board

18   and discuss these subpoenas to the law firms.  If there's

19   authority in support of the notion that they don't enjoy

20   sovereign immunity, maybe there's a good-faith basis to issue

21   those subpoenas to address that issue.  It certainly strikes

22   me as questionable in light of basic agency law that somebody

23   would suddenly lose that protection because they are still

24   employed.  I mean, I have a lot of issues, a lot of questions

25   legally as to that position, Ms. Trzaskoma.  And see if there

Proceedings                                                    51

 1    is any narrowed set of information that the parties may be

 2    able to agree upon.  I'm not optimistic.  But this isn't

 3    working.

 4              Litigating, as a matter of law, every single point

 5    of discovery in this case isn't going to work.  I think that

 6    the binders we were joking about earlier prove that.  This is

 7    why civil discovery is so, so challenging, right, because the

 8    Court doesn't know what information you have, what

 9    information you need, where the information might be, what

10    steps you have taken to find it, what that person's position

11    is.  And in order for me to issue a ruling as a matter of

12    law, I need concrete information as to all of those things.

13    And that's very, very hard to establish.

14              MS. TRZASKOMA:  You're not going to get any

15    argument from me about the absolutely vexing nature of

16    discovery in any civil case, but this case is like on

17    steroids.

18              THE COURT:  It's a unique case.

19              MS. TRZASKOMA:  It's unique, and the number of

20    nonparties that have relevant information who are not willing

21    to cooperate is remarkable.  That has been very frustrating.

22              If we cannot brief another motion, I don't think

23    that's possible given what we heard this morning, but I take

24    Your Honor's point.  We will, you know, be in touch with the

25    AG's office and meet and confer as you have directed.

Proceedings                                                52

1          THE COURT:  Thank you.

2          And can I ask the parties for a joint status update

3    in two weeks as to the plan forward, the path forward with

4    regard to the current motions for reconsideration and other

5    motions?

6          I think I said pretty strongly that this doesn't

7    strike me as a motion for reconsideration per se, although I

8    understand sometimes you can move for a motion for

9    reconsideration if there's new information, most of this is

10   new, what's included in subsequent papers.  The idea that the

11   reconsideration is the correct vehicle I think is a

12   questionable one.  But I would prefer, again, not to have to

13   litigate that issue.  I would prefer for the parties to find

14   some path forward to actually get some information flowing as

15   opposed to legal conclusions that don't actually advance the

16   discovery purposes at all.

17         MR. AMER:  Your Honor, would you consider staying

18   the deadline for the two firms to respond to the subpoena

19   pending an attempt to work this out?

20         THE COURT:  Yes.

21         MS. GLAVIN:  We're fine.  We won't enforce while we

22   go through this.

23         MR. AMER:  Thank you.

24         THE COURT:  Yes.  I will temporarily stay that

25   deadline until we figure out a path forward because this

Proceedings                                               53

1   isn't going to work as a practical matter.

2        All right.  I look forward to hopefully hearing

3   there is some sort of a path forward.  If not, we will have

4   to revisit the sovereign immunity issues.  There may be a

5   need for a very detailed privilege log.  It's going to be a

6   process and it's going to take a long time.  I'm not saying

7   that as any kind of threat or anything; it's just a fact.

8   And, you know, it is something you guys need to think hard

9   about in deciding what positions to be taking in regards to

10  your conversations with them and where to press on your

11  litigation strategies.

12       MS. TRZASKOMA:  Understood.  Thank you, Your Honor.

13       MS. GLAVIN:  So we will get a status letter with

14  OAG office within two weeks.

15       Can we, while plaintiff's counsel for Trooper 1 is

16  here, address the discovery deadline?  Because we think we

17  need a little extra time to respond to some briefs, but we

18  have the October 16th deadline.  So given the press of that

19  deadline, we'd like to propose something new at least for the

20  time being or a placeholder while we try to work through

21  these issues.

22       THE COURT:  Okay, Mr. Licul, do you mind coming

23  back up?  Do you have any objection to some extension of the

24  fact discovery deadline.

25       I don't really see that I have a choice given the

Proceedings                                  54

1   pending motions.

2          MR. LICUL:  I think that's right.  In principle, I

3   have an objection, but practically, I'm not going to object,

4   Your Honor, so long as we have a deadline that is not so far

5   out.  Like I said, we are prepared to finish our discovery.

6   I know that doesn't mean much for the Cuomo folks.

7   Nonetheless, we just need his deposition, I think one more.

8          THE COURT:  I will take a look at the dates.

9          How much time were you thinking of, Ms. Glavin?

10          MS. GLAVIN:  Your Honor, what Ms. Trzaskoma and I

11   were just thinking about is can the court adjourn the

12   discovery deadline and then let us have an opportunity to

13   confer with Trooper 1's counsel because I think some of this

14   is going to have to do with what documents we get, whether

15   this becomes narrowed and whether there is a way to do that,

16   and I'd like to be able to do that informed because it would

17   be great if we can narrow the scope of some of this.

18          I have some proposals for Trooper 1's counsel about

19   narrowing perhaps some of the complainants that are currently

20   in the Complaint.

21          THE COURT:  Mr. Licul, similar to my question of

22   the Attorney General's Office, are you willing to engage in a

23   very meaningful meet and confer and file a joint letter in

24   two weeks providing any clarification as to whether or not

25   any of these issues have been narrowed or resolved and

1  proposing a revised jointly proposed discovery schedule?

2      MR. LICUL:  I think we might need a little more

3  than two weeks on our end.  I know I have asked for less

4  time.

5      The scope of what we're going to be discussing is

6  pretty big.  I'm sure Ms. Glavin has some pretty good

7  requests from me.  We can hash it out.  Or, at least, Friday

8  to hash it out.

9      MS. GLAVIN:  Perhaps you can confer with some of

10  the nonparties.

11      THE COURT:  Perhaps.  And perhaps you guys can

12  decide it might make sense to take things out of order.  I

13  mean, I've been hearing since January that there may be an

14  interest in striking allegations, moving to preclude.  I'm

15  not inviting that motion practice as part of discovery, but

16  at the end of the -- as I noted during the main argument on

17  the Trooper 1 case, I'm very concerned about how the

18  discovery is proceeding vis-à-vis the victims.  And if there

19  are persons who are being dragged through this process and

20  potentially re-traumatized for the possibility that they

21  might have the opportunity to testify at trial, that is not a

22  good use of the civil discovery process and, frankly, very

23  problematic.

24      MR. LICUL:  Your Honor, I would just say all of the

25  lawyers obviously are very competent who represent each of

Proceedings                                    56

1    the witnesses, but what I did not hear was attorneys who said

2    we simply don't want to comply with these requests, we're not

3    giving you anything.  In fact, what I heard was a series of

4    lawyers who came up here and said we gave them this

5    information, we gave them that information.

6              THE COURT:  And they also said my client doesn't

7    know Trooper 1, never met Trooper 1, doesn't know who

8    Trooper 1, and has no idea why she's involved with this

9    lawsuit and she wants to be done with it.

10             MR. LICUL:  Well, also, Your Honor, that is not the

11   issue in the case.  The issue in the case is Governor Cuomo's

12   interactions with that --

13             THE COURT:  I'm fully aware of your theory of

14   relevance.  It doesn't make it admissible in every instance.

15   So I need you to look hard at the various allegations of each

16   of these complainants and seriously consider tailoring your

17   case, because at some point the Court may end up having to do

18   it for you.

19             MR. LICUL:  That's fine, Your Honor.  We absolutely

20   will do that and will consider that.  But I do think that

21   there is something amiss about a person, a woman not being

22   able to prove a hostile work environment claim under Second

23   Circuit precedent because her fellow victims are being

24   targeted with many subpoenas and tortured that way.

25             THE COURT:  That's not the issue.  The issue is

Proceedings                                      57

1  403, 404(b).  There are a lot of other issues at play.

2         MR. LICUL:  Well, again, Your Honor, but I don't

3  mean to get ahead of ourselves.  We certainly will consider

4  it.  I --

5         THE COURT:  I hear your theory of relevance.  I

6  truly do.  I question how far it extends.  Keep that in mind.

7         MR. LICUL:  Yes, Your Honor.

8         THE COURT:  Thank you all.  Very informative, as

9  usual.

10        Hopefully, the parties can make some progress and

11 the nonparties can make some progress in the next few weeks.

12        Then, Mr. Licul, you said you need a little more

13 time.  When can the parties meet and confer, hopefully narrow

14 and give me a status report update?

15        MR. LICUL:  Three weeks.

16        THE COURT:  Does that work for you, Ms. Glavin?

17        MR. LICUL:  At the end of three weeks.

18        THE COURTROOM DEPUTY:  October 17th is three weeks

19 out.

20        THE COURT:  Will that work for you?

21        MR. LICUL:  Yes.

22        THE COURT:  Ms. Glavin?

23        MS. GLAVIN:  Yes, Your Honor.

24        THE COURT:  Okay.  All right.  Thank you.

25        Just to be formal about it, the two weeks out for

Proceedings                                    58

1    the OAG.  And the Cuomo matter is, of course, October 10th.

2            Thank you all.  I look forward to receiving

3    follow-ups.  At a minimum, it may help clarify what I

4    actually have to rule on, in which case I will rule on more

5    things.

6            MS. TRZASKOMA:  Thank you, Your Honor.

7            MS. GLAVIN:  Thank you, Your Honor.  Nice to see

8    you.

9            THE COURT:  Nice to see you all too.

10           (Matter adjourned.)

11                    *    *    *    *    *    *

12   I certify that the foregoing is a correct transcript from the
     record of the proceedings in the above-entitled matter.
13

14   /s/ Michele Lucchese                September 29, 2023

15   _____            _____
     Michele Lucchese                    DATE

16

17

18

19

20

21

22

23

24

25

**'**

**'24** [1] - 39:23

**1**

**1** [31] - 10:10, 11:16, 12:10, 21:15, 28:3, 28:4, 28:15, 28:21, 29:10, 32:22, 33:11, 35:14, 37:3, 37:4, 37:6, 37:11, 40:13, 40:19, 42:13, 44:4, 44:20, 45:10, 45:15, 45:16, 45:18, 49:18, 53:15, 55:17, 56:7, 56:8
**1's** [7] - 28:2, 28:6, 28:7, 40:13, 40:16, 54:13, 54:18
**1,000** [1] - 48:20
**10004** [1] - 1:20
**10005** [1] - 1:24
**10019** [1] - 1:17
**10th** [1] - 58:1
**11** [10] - 11:14, 11:17, 12:1, 12:9, 21:12, 21:14, 21:18, 21:21, 47:24, 47:25
**11th** [3] - 31:12, 31:14, 46:23
**12:00** [1] - 1:8
**150** [2] - 36:16, 36:21
**156** [1] - 1:16
**16th** [1] - 53:18
**179** [2] - 12:5, 22:21
**17th** [1] - 57:18

**2**

**200** [2] - 36:17, 36:22
**2002** [1] - 37:16
**2023** [3] - 1:7, 2:22, 11:6
**2024** [2] - 39:23, 42:4
**206** [1] - 37:16
**21st** [1] - 2:22
**22-MC-03044** [2] - 1:4, 2:2
**24** [1] - 11:6
**26** [1] - 1:7
**26(a** [1] - 49:7
**27** [1] - 13:8
**28** [3] - 1:23, 11:8, 13:9
**29** [1] - 13:9

**4**

**403** [2] - 49:11, 57:1
**404(b** [1] - 49:11
**404(b)** [1] - 57:1
**41** [1] - 11:20

**5**

**56th** [1] - 1:16

**7**

**73,000** [5] - 12:17, 26:18, 33:22, 33:23, 34:10

**78** [2] - 37:16, 40:5
**7th** [1] - 11:11

**9**

**90** [1] - 1:20

**A**

**ability** [1] - 37:10
**able** [4] - 40:1, 51:2, 54:16, 56:22
**absolutely** [6] - 19:6, 30:15, 30:17, 31:4, 51:15, 56:19
**abundantly** [1] - 10:5
**accede** [1] - 6:19
**accomplish** [1] - 30:15
**according** [3] - 10:8, 32:21, 49:7
**accused** [1] - 4:3
**accusing** [1] - 43:19
**acknowledging** [1] - 42:2
**act** [1] - 20:13
**acted** [1] - 30:16
**acting** [1] - 31:8
**action** [2] - 14:9, 31:17
**active** [1] - 47:1
**activity** [1] - 14:8
**actors** [1] - 3:14
**actual** [1] - 44:24
**add** [4] - 13:6, 13:20, 17:21, 36:24
**addition** [1] - 21:14
**additional** [1] - 34:13
**address** [6] - 3:23, 11:3, 24:4, 24:20, 50:21, 53:16
**adjourn** [1] - 54:11
**adjourned** [1] - 58:10
**admissible** [1] - 56:14
**advance** [1] - 52:15
**advancing** [1] - 17:17
**afield** [3] - 29:8, 29:9, 37:4
**afraid** [1] - 44:17
**AG** [6] - 8:9, 11:14, 32:24, 33:7, 40:15, 42:5
**AG's** [8] - 13:10, 34:9, 34:11, 39:18, 40:14, 40:21, 41:6, 51:25
**agencies** [2] - 4:12, 46:7, 47:2
**agency** [6] - 31:17, 31:18, 31:20, 34:1, 43:12, 50:22
**agent** [5] - 30:16, 30:18, 31:18, 31:21, 31:22
**ago** [1] - 12:15
**agree** [8] - 14:16, 17:20, 17:22, 22:3, 26:25, 30:3, 43:4, 51:2
**agreed** [8] - 3:5, 4:17, 5:20, 6:11, 6:24, 7:5, 15:15, 41:13
**ahead** [2] - 14:5, 57:3
**AJC** [3] - 13:4, 21:16, 26:8, 50:15
**akin** [1] - 43:20
**Albany** [1] - 29:20
**align** [1] - 18:19
**allegations** [13] - 8:11, 11:15, 11:19,

21:13, 21:18, 28:16, 32:25, 43:19, 48:2, 49:16, 49:20, 55:14, 56:15
**alleged** [3] - 23:7, 28:4, 48:1
**Allegra** [1] - 2:8
**allow** [1] - 14:17
**almost** [3] - 10:8, 43:20, 50:10
**alone** [1] - 39:24
**Alvin** [1] - 16:5
**Alyssa** [2] - 11:16, 21:15
**amenable** [1] - 42:12
**amendment** [1] - 46:24
**Amendment** [2] - 31:13, 31:14
**amer** [2] - 13:19, 30:8
**AMER** [18] - 1:24, 2:14, 13:21, 14:6, 15:6, 15:16, 16:22, 17:5, 17:14, 18:10, 30:9, 37:12, 48:4, 48:7, 48:18, 49:22, 52:17, 52:23
**Amer** [5] - 2:14, 42:24, 43:10, 46:16, 46:22
**Amer's** [1] - 39:10
**amiss** [1] - 56:21
**amount** [1] - 42:1
**amounts** [1] - 4:16
**analyses** [1] - 46:3
**analysis** [3] - 26:12, 47:11
**analyze** [1] - 46:12
**AND** [1] - 39:20
**Andrew** [1] - 2:14
**ANDREW** [2] - 1:4, 1:24
**anonymous** [1] - 17:23
**answer** [2] - 36:15, 48:14
**anticipation** [1] - 34:7
**anyway** [1] - 40:3
**apart** [2] - 18:7, 34:10
**apparent** [1] - 38:24
**appeal** [2] - 10:23, 42:6
**appealing** [1] - 38:19
**appeals** [1] - 36:3
**Appeals** [1] - 38:24
**appear** [3] - 26:19, 33:13, 33:14
**appearances** [1] - 2:4
**applicability** [1] - 16:10
**apply** [1] - 47:11
**appointed** [1] - 20:9
**appreciate** [3] - 16:23, 17:5, 18:16
**appreciates** [1] - 14:1
**appropriate** [4] - 6:1, 12:25, 19:16, 19:19
**argued** [2] - 12:15, 38:7
**argument** [16] - 4:21, 10:5, 11:11, 21:8, 25:24, 34:23, 38:7, 42:24, 43:2, 43:9, 46:11, 46:23, 49:3, 51:15, 55:16
**arguments** [4] - 5:11, 20:17, 24:19, 34:19
**Article** [1] - 40:5
**aspect** [1] - 39:15
**assault** [1] - 7:19
**assaulted** [1] - 7:16
**Assembly** [1] - 11:17

assert [2] - 4:13, 16:11
asserted [1] - 38:4
asserting [1] - 40:4
assertion [3] - 35:20, 38:9, 40:7
assertions [1] - 38:16
assuming [1] - 10:22
assurance [1] - 14:9
attach [2] - 46:1, 47:5
attack [1] - 9:14
attacking [1] - 50:8
attempt [1] - 52:19
attempted [1] - 44:12
attent [1] - 4:14
ATTORNEY [2] - 1:9, 1:22
attorney [5] - 35:10, 36:10, 41:10, 41:13, 41:15
Attorney [42] - 2:3, 2:15, 2:18, 3:4, 4:16, 5:13, 5:20, 6:5, 6:7, 6:19, 8:16, 9:3, 9:9, 10:21, 11:18, 11:24, 16:20, 21:19, 22:1, 22:9, 23:3, 26:7, 27:24, 28:1, 28:8, 30:4, 32:9, 32:20, 33:12, 33:13, 34:6, 38:8, 38:18, 42:11, 43:5, 43:8, 43:12, 43:23, 47:7, 47:22, 50:15, 54:22
attorney-client [1] - 35:10
attorneys [4] - 24:5, 45:9, 49:14, 56:1
attorneys'-eyes-only [1] - 25:3
authority [5] - 3:11, 9:20, 31:11, 39:9, 50:19
available [5] - 24:1, 29:21, 29:23, 45:4, 45:24
avenue [2] - 6:2, 40:9
avoid [2] - 30:14, 30:25
aware [3] - 23:21, 36:1, 56:13

## B

background [1] - 45:1
balance [1] - 26:11
balancing [1] - 47:10
ball [1] - 8:22
based [1] - 21:19
basic [1] - 50:22
basis [5] - 15:23, 16:25, 25:3, 43:20, 50:20
battle [1] - 37:23
bear [1] - 23:16
bears [1] - 46:3
becomes [2] - 16:8, 54:15
becoming [1] - 47:1
BEFORE [1] - 1:13
beginning [3] - 16:17, 38:3, 45:6
begun [1] - 35:11
behalf [3] - 2:7, 2:18, 31:8
behest [1] - 31:10
belief [1] - 45:2
believes [1] - 38:8
benefit [1] - 11:4
best [2] - 26:2, 28:3

between [1] - 49:12
beyond [1] - 10:12
big [2] - 25:2, 55:6
billing [3] - 24:18, 34:5, 43:21
binders [2] - 27:16, 51:6
bit [1] - 12:6
black [1] - 50:9
blunderbuss [2] - 5:22, 8:6
board [2] - 50:13, 50:17
bother [1] - 46:12
Boylan [4] - 21:15, 33:2, 33:3, 33:10
Boylan's [1] - 32:25
Brady [1] - 29:2
Bragg [1] - 16:5
branch [4] - 4:2, 26:8, 46:6, 47:11
branch's [1] - 46:5
brief [7] - 27:9, 27:14, 30:11, 32:1, 47:13, 47:14, 51:22
briefed [1] - 27:17
briefing [5] - 4:25, 5:25, 9:8, 10:19, 43:21
briefly [1] - 19:3
briefs [1] - 53:17
Brittany [2] - 11:16, 21:15
Broad [1] - 1:20
broad [3] - 10:6, 49:6, 49:20
broader [1] - 13:24
broadly [1] - 15:8
Brooklyn [1] - 1:6
built [1] - 11:3
bulk [1] - 9:12
burden [5] - 13:16, 16:19, 16:25, 35:6, 43:14
burdensome [2] - 36:11, 43:17
bureaus [1] - 14:6
BY [3] - 1:17, 1:21, 1:24

## C

calendar [1] - 11:23
cannot [4] - 4:20, 42:10, 46:18, 51:22
care [1] - 28:13
case [43] - 2:12, 3:8, 3:14, 3:20, 4:1, 4:19, 6:12, 6:15, 7:10, 19:5, 19:11, 24:2, 28:25, 29:20, 31:3, 31:7, 37:4, 37:5, 37:11, 37:14, 38:11, 38:23, 39:10, 39:11, 44:20, 45:15, 45:16, 47:3, 47:7, 49:1, 49:8, 49:17, 49:18, 49:21, 51:5, 51:16, 51:18, 55:17, 56:11, 56:17, 58:4
cases [4] - 3:25, 14:4, 46:15, 46:16
categories [1] - 9:12
Catskill [1] - 37:15
CAUSE [1] - 1:13
certain [2] - 28:16, 43:3
certainly [4] - 15:14, 24:11, 50:21, 57:3
challenge [1] - 48:22
challenging [1] - 51:7
chamber [2] - 33:1, 33:25

chance [1] - 48:15
change [2] - 4:22, 13:18
chartered [1] - 46:7
cherry [1] - 32:12
chief [1] - 16:3
chilling [1] - 17:19
choice [1] - 53:25
circle [1] - 37:12
Circuit [2] - 46:12, 56:23
Circuit's [2] - 4:7, 46:9
circumstance [1] - 4:22
circumstances [3] - 3:13, 14:19, 47:6
civil [11] - 2:1, 7:11, 14:4, 16:3, 28:23, 29:3, 36:6, 36:10, 51:7, 51:16, 55:22
CIVIL [1] - 1:13
claim [3] - 7:9, 7:20, 56:22
claims [1] - 44:24
clarification [1] - 54:24
clarify [1] - 58:3
clear [18] - 3:6, 3:7, 6:17, 6:22, 7:4, 8:1, 10:6, 21:2, 22:4, 30:15, 30:17, 31:5, 35:6, 37:19, 39:12, 39:20, 40:2, 44:9
Cleary [9] - 19:21, 20:14, 21:4, 31:23, 34:5, 34:6, 34:12, 35:9, 37:13
client [3] - 19:11, 35:10, 56:6
clients [3] - 15:13, 15:19
closely [1] - 46:10
closer [1] - 36:17
co [2] - 2:9, 23:21
co-counsel [1] - 2:9
co-defendant [1] - 23:21
cobble [1] - 26:2
cogently [1] - 49:22
collaborate [1] - 16:3
colleague [2] - 2:8, 2:16
colleagues [1] - 2:11
collected [2] - 33:23, 44:4
college [2] - 7:15, 7:16
coming [3] - 9:4, 10:25, 53:22
commence [1] - 40:6
commencement [1] - 14:8
comment [1] - 35:16
comments [3] - 16:22, 23:9, 42:24
Commisso [2] - 11:16, 21:15
common [4] - 38:10, 46:22, 46:24, 46:25
communications [2] - 11:23, 45:8
compare [1] - 45:19
compel [9] - 2:21, 5:8, 6:4, 9:25, 24:6, 24:16, 30:12, 34:19, 35:7
compelled [1] - 20:13
compelling [1] - 31:17
competent [1] - 55:25
complainants [21] - 10:12, 11:14, 11:18, 12:9, 16:15, 17:16, 21:9, 21:13, 21:14, 21:17, 21:18, 21:21, 23:5, 23:7, 23:10, 36:14, 42:14, 47:24, 47:25, 54:19, 56:16
Complaint [3] - 8:12, 49:7, 54:20

**complaint** [1] - 28:6
**complete** [3] - 8:17, 9:7, 46:18
**completely** [6] - 5:12, 24:17, 24:24, 33:11, 35:5
**complex** [2] - 4:10, 50:11
**complexities** [1] - 47:18
**complexity** [2] - 46:2, 46:3
**complicated** [8] - 3:1, 3:13, 5:4, 16:13, 26:6, 27:10, 38:16, 47:12
**comply** [1] - 56:2
**con** [1] - 33:5
**concern** [9] - 9:23, 9:24, 15:21, 16:15, 24:25, 25:1, 41:23, 42:2, 45:2
**concerned** [2] - 18:23, 55:17
**concerning** [2] - 2:20, 7:19
**concerns** [11] - 5:24, 5:25, 13:16, 13:17, 15:18, 15:19, 18:6, 23:13, 24:12, 43:6
**conclusion** [1] - 10:18
**conclusions** [1] - 52:15
**concrete** [1] - 51:12
**conduct** [5] - 3:17, 14:7, 14:12, 16:2, 37:10
**conducted** [3] - 17:3, 26:7, 37:13
**conducts** [1] - 16:4
**confer** [15] - 5:19, 22:1, 26:21, 30:4, 39:16, 42:12, 43:8, 43:10, 44:13, 50:13, 51:25, 54:13, 54:23, 55:9, 57:13
**conference** [2] - 2:2, 4:9
**CONFERENCE** [1] - 1:13
**confers** [1] - 44:9
**confident** [1] - 22:22
**confirms** [1] - 48:9
**connection** [5] - 3:3, 3:16, 16:7, 19:10, 30:16, 30:19
**consent** [7] - 7:4, 7:8, 15:13, 17:11, 17:20, 17:25, 18:8
**consented** [1] - 13:23
**consents** [3] - 15:2, 15:14, 15:16
**consequences** [1] - 16:12
**consider** [15] - 3:4, 6:10, 6:23, 8:25, 23:1, 24:3, 42:22, 44:25, 48:6, 48:12, 50:2, 52:17, 56:16, 56:20, 57:3
**consideration** [1] - 44:15
**considering** [1] - 17:25
**consistent** [1] - 41:3
**constitutional** [1] - 4:11
**contain** [1] - 37:1
**contained** [1] - 18:6
**contentious** [1] - 26:23
**context** [6] - 4:15, 23:1, 28:23, 29:3, 31:6, 45:18
**continued** [1] - 23:16
**contrary** [1] - 39:9
**convenient** [1] - 34:20
**conversations** [1] - 53:10
**convince** [1] - 22:9
**convinced** [1] - 4:11
**cooperate** [2] - 10:25, 51:21

**cooperating** [1] - 44:17
**copy** [2] - 14:20, 14:24
**corner** [1] - 39:2
**correct** [4] - 26:13, 36:23, 43:24, 52:11
**correctly** [1] - 3:24
**corroborates** [1] - 28:2
**counsel** [20] - 2:9, 11:23, 14:15, 14:17, 14:18, 15:12, 18:13, 18:17, 18:22, 25:10, 25:14, 39:16, 40:13, 45:5, 45:8, 49:10, 49:16, 53:15, 54:13, 54:18
**counsels** [1] - 18:18
**count** [1] - 36:20
**counterpart** [1] - 16:5
**couple** [1] - 42:14
**course** [2] - 24:10, 58:1
**court** [9] - 3:21, 31:17, 38:12, 39:5, 46:8, 46:17, 46:19, 48:5, 54:11
**COURT** [92] - 1:1, 2:12, 2:19, 6:16, 6:22, 7:11, 7:15, 7:23, 8:13, 9:2, 10:1, 10:4, 11:7, 11:9, 11:22, 12:15, 13:13, 13:19, 14:3, 15:4, 15:15, 15:24, 17:2, 17:13, 17:15, 19:1, 20:3, 20:8, 20:17, 20:22, 21:7, 21:11, 22:15, 23:8, 24:23, 25:6, 25:19, 25:23, 26:4, 27:9, 27:13, 28:11, 28:17, 28:22, 29:13, 29:20, 29:25, 30:6, 31:6, 31:14, 31:18, 31:20, 31:24, 32:2, 32:5, 34:16, 35:18, 36:1, 36:13, 36:21, 38:1, 40:3, 40:17, 41:9, 41:13, 41:20, 41:25, 42:19, 45:25, 46:22, 48:22, 49:5, 50:3, 50:17, 51:18, 52:1, 52:20, 52:24, 53:22, 54:8, 54:21, 55:11, 56:6, 56:13, 56:25, 57:5, 57:8, 57:16, 57:20, 57:22, 57:24, 58:9
**Court** [18] - 3:7, 8:19, 9:24, 10:1, 11:1, 14:1, 20:13, 24:21, 26:9, 30:22, 35:6, 35:24, 35:25, 36:2, 38:23, 46:18, 51:8, 56:17
**Court's** [7] - 4:4, 6:19, 7:17, 9:20, 12:16, 17:1, 24:5
**Courthouse** [1] - 1:6
**COURTROOM** [2] - 2:1, 57:18
**courts** [1] - 3:22, 46:11
**crazy** [1] - 29:11
**credibility** [1] - 29:7
**credible** [1] - 23:15
**crediting** [1] - 32:25
**criminal** [4] - 16:8, 28:24, 36:7, 36:10
**cross** [3] - 28:17, 30:11, 50:6
**cross-examination** [2] - 28:17, 50:6
**crystal** [1] - 37:19
**CUOMO** [1] - 1:4
**Cuomo** [9] - 2:2, 2:8, 2:23, 3:18, 27:21, 47:17, 49:14, 54:6, 58:1
**Cuomo's** [5] - 16:17, 38:3, 39:2, 39:5, 56:11
**current** [1] - 23:4, 35:21, 52:4
**cut** [6] - 11:22, 19:25, 20:7, 27:6, 27:15, 30:3
**cuts** [2] - 27:7, 48:20
**cutting** [1] - 13:14

## D

**dark** [1] - 12:7
**dates** [1] - 54:8
**deadline** [8] - 52:18, 52:25, 53:16, 53:18, 53:19, 53:24, 54:4, 54:12
**deal** [1] - 12:9
**dealing** [3] - 12:10, 29:4, 39:25
**death** [3] - 16:4, 46:15, 48:20
**deaths** [1] - 14:10
**decide** [4] - 9:20, 12:18, 49:24, 55:12
**decided** [1] - 46:20
**deciding** [4] - 10:23, 30:24, 47:4, 53:9
**decision** [13] - 4:23, 8:6, 8:7, 9:23, 17:1, 24:5, 24:16, 37:16, 37:17, 46:10, 47:8, 49:23
**defend** [1] - 4:19
**defendant** [1] - 23:21
**Defendant** [2] - 1:10, 1:22
**defendants** [1] - 4:18
**defense** [7] - 19:11, 30:14, 30:19, 30:24, 31:5, 37:21
**definitely** [3] - 9:18, 13:17, 38:17
**delay** [1] - 11:3
**delegated** [1] - 31:11
**denied** [3] - 5:8, 9:16, 35:3
**deny** [1] - 24:6
**denying** [1] - 24:16
**deponent** [1] - 14:25
**deposition** [6] - 10:16, 13:25, 14:1, 27:21, 28:2, 54:7
**depositions** [4] - 14:22, 34:22, 34:25, 40:24
**DEPUTY** [2] - 2:1, 57:18
**described** [1] - 46:22
**despite** [2] - 43:1, 43:2
**detailed** [4] - 10:20, 10:22, 14:18, 53:5
**determination** [5] - 8:15, 9:6, 15:9, 16:1, 16:11
**determine** [1] - 30:23
**developed** [1] - 31:7
**Development** [1] - 37:15
**developments** [1] - 50:14
**Diane** [1] - 27:19
**difference** [1] - 36:9
**different** [14] - 5:12, 6:3, 12:25, 14:22, 17:6, 17:12, 17:13, 19:4, 23:25, 33:19, 34:2, 36:9, 39:13, 50:5
**difficult** [3] - 26:15, 28:5, 41:24
**directed** [2] - 8:5, 51:25
**directing** [1] - 50:12
**direction** [1] - 35:24
**disagree** [2] - 19:14, 24:24
**disagreement** [1] - 27:7
**disclose** [3] - 4:16, 18:11, 32:11
**disclosed** [2] - 20:18, 33:15
**disclosing** [3] - 3:4, 18:23, 43:6
**disclosure** [2] - 6:23, 7:4
**disclosures** [3] - 28:7, 28:15, 49:7

**discontinuance** [1] - 14:9
**discovery** [19] - 7:12, 10:2, 14:4, 28:23, 29:4, 36:7, 47:19, 51:5, 51:7, 51:16, 52:16, 53:16, 53:24, 54:5, 54:12, 55:1, 55:15, 55:18, 55:22
**discuss** [1] - 50:18
**discussed** [2] - 4:9, 50:10
**discussing** [1] - 55:5
**discussion** [2] - 3:1, 9:13
**dispute** [1] - 39:13
**disputes** [1] - 39:15
**distinction** [1] - 8:24
**DISTRICT** [2] - 1:1, 1:1
**District** [1] - 7:25
**docket** [2] - 2:2, 3:3
**document** [6] - 12:21, 13:8, 17:3, 21:11
**document-by-document** [2] - 12:21, 17:3
**documents** [27] - 3:15, 4:5, 9:12, 9:17, 9:19, 11:17, 12:1, 13:8, 22:8, 24:13, 26:19, 31:22, 33:22, 33:23, 35:12, 35:13, 39:1, 39:7, 43:3, 44:2, 44:3, 44:4, 45:3, 45:4, 54:14
**dollars** [1] - 34:13
**done** [5] - 14:22, 35:9, 39:21, 43:6, 56:9
**door** [3] - 43:23, 43:25, 45:11
**down** [7] - 6:2, 13:15, 18:10, 25:18, 29:6, 38:23, 39:4
**dozens** [2] - 10:11, 10:12
**drafted** [1] - 49:6
**drafting** [1] - 21:22
**dragged** [1] - 55:19
**drawing** [2] - 50:12, 50:17
**due** [2] - 24:9, 38:9
**during** [4] - 14:16, 33:23, 40:13, 55:16

## E

**earth** [3] - 7:11, 7:14, 7:16
**easier** [1] - 12:10
**EASTERN** [1] - 1:1
**ECF** [1] - 11:7
**effectively** [1] - 50:6
**efficient** [2] - 20:23, 21:1
**effort** [2] - 26:20, 27:6
**efforts** [2] - 13:5, 42:25
**Eight** [1] - 46:12
**either** [3] - 8:19, 12:2, 32:16
**eliminate** [2] - 37:20, 39:14
**employed** [1] - 50:24
**employer** [1] - 4:2
**employing** [1] - 8:19
**encompassed** [2] - 21:20, 26:19
**encourage** [1] - 4:15
**encouraging** [1] - 13:22
**end** [8] - 18:18, 24:5, 27:5, 43:9, 55:3, 55:16, 56:17, 57:17
**enforce** [1] - 52:21
**enforcement** [17] - 14:8, 14:11, 15:22,

16:9, 17:17, 17:18, 18:2, 23:13, 24:25, 25:24, 29:15, 29:24, 32:6, 35:20, 36:8, 39:3, 40:4
**enforcements** [1] - 30:23
**engage** [1] - 54:22
**enjoy** [8] - 4:12, 20:10, 20:14, 30:23, 31:8, 31:25, 46:6, 50:19
**enjoyed** [1] - 37:18
**entire** [1] - 40:22
**entirely** [2] - 43:23, 43:24
**entirety** [1] - 11:25
**entities** [3] - 4:13, 20:9, 31:8
**entitled** [1] - 5:13
**entity** [1] - 20:13
**entries** [1] - 11:23
**environment** [2] - 32:23, 56:22
**errata** [1] - 14:25
**ESD** [1] - 33:2
**ESQ** [6] - 1:17, 1:18, 1:18, 1:21, 1:24, 1:25
**essentially** [1] - 3:20
**establish** [3] - 9:11, 22:8, 51:13
**established** [1] - 26:18
**evaluate** [1] - 35:19
**event** [3] - 36:2, 40:8, 40:9
**events** [1] - 23:6
**evidence** [1] - 45:14
**evidentiary** [2] - 8:19, 9:8
**evolution** [1] - 50:7
**evolves** [1] - 46:25
**exact** [1] - 34:18
**exactly** [2] - 5:19, 34:2
**examination** [2] - 28:17, 50:6
**examining** [1] - 28:21
**example** [5] - 27:11, 27:19, 32:19, 41:7, 45:4
**examples** [1] - 29:19
**except** [1] - 7:5
**exception** [1] - 35:13
**exclusively** [1] - 50:8
**exculpatory** [1] - 34:21
**executive** [6] - 3:19, 4:2, 26:8, 33:25, 46:5, 46:6
**exercise** [2] - 18:22, 19:4
**exhausted** [1] - 36:4
**exhibit** [1] - 33:15
**exists** [2] - 13:10, 19:14
**expect** [2] - 10:13, 10:15
**explain** [1] - 35:9
**explicit** [1] - 43:2
**expose** [1] - 28:9
**expressed** [1] - 23:15
**extends** [1] - 57:6
**extension** [1] - 53:23
**extent** [4] - 3:5, 18:22, 39:7, 49:25
**extra** [1] - 53:17
**extremely** [2] - 32:8, 49:6

## F

**facetious** [2] - 9:13, 27:13
**facial** [1] - 10:7
**facing** [1] - 48:22
**fact** [4] - 14:15, 53:7, 53:24, 56:3
**fade** [1] - 4:22
**failing** [1] - 12:20
**failure** [2] - 9:10, 12:17
**fair** [2] - 7:14, 50:9
**faith** [1] - 50:20
**false** [1] - 7:20
**far** [13] - 10:6, 23:11, 23:19, 29:8, 29:9, 34:9, 35:4, 35:15, 37:4, 54:4, 57:6
**fashion** [1] - 6:25
**fast** [1] - 26:13
**favor** [2] - 7:2, 36:3
**fears** [1] - 23:15
**February** [3] - 11:6, 11:11, 39:17
**Federal** [1] - 37:16
**federal** [10] - 3:21, 3:22, 3:25, 4:1, 4:12, 31:17, 46:8, 46:17, 46:19, 46:24
**fees** [1] - 35:4
**fellow** [2] - 36:8, 56:23
**few** [4] - 15:12, 34:17, 35:13, 57:11
**Fifth** [2] - 4:7, 46:9
**figure** [5] - 22:7, 22:8, 42:7, 43:3, 52:25
**file** [3] - 2:24, 31:1, 54:23
**files** [1] - 13:10
**filings** [1] - 4:21
**filling** [1] - 34:24
**fine** [2] - 52:21, 56:19
**finger** [1] - 30:8
**finish** [3] - 48:7, 54:5
**firm** [3] - 20:14, 37:17, 43:18
**firms** [19] - 19:22, 21:4, 24:9, 27:1, 30:11, 30:16, 30:18, 31:2, 37:18, 37:20, 37:24, 39:12, 48:9, 50:14, 50:18, 52:18
**first** [7] - 8:9, 15:21, 17:10, 18:21, 19:20, 35:25, 48:23
**firstly** [1] - 6:5
**flowing** [1] - 52:14
**focus** [3] - 21:4, 23:5
**focused** [1] - 11:25
**focusing** [1] - 23:10
**fodder** [1] - 28:18
**FOIL** [8] - 39:19, 39:20, 39:21, 39:24, 39:25, 42:4, 45:5, 45:7
**folks** [1] - 54:6
**follow** [2] - 38:14, 58:3
**follow-ups** [1] - 58:3
**following** [1] - 10:5
**FOR** [1] - 1:13
**forced** [1] - 45:3
**form** [2] - 15:7, 15:11
**formal** [1] - 57:25
**former** [5] - 23:4, 25:7, 25:11, 27:20
**formulated** [1] - 6:25

forth [1] - 13:8
forward [17] - 3:8, 8:22, 10:25, 17:16, 20:23, 21:1, 23:1, 26:13, 42:7, 43:16, 52:3, 52:14, 52:25, 53:2, 53:3, 58:2
frame [1] - 5:17
framing [1] - 8:20
frankly [4] - 4:25, 21:6, 55:22
Friday [1] - 55:7
friends [1] - 28:3
front [1] - 27:17
frustrating [2] - 32:9, 51:21
full [2] - 9:8, 42:16
fully [5] - 24:8, 43:5, 47:13, 47:14, 56:13
future [4] - 17:19, 37:11, 44:20, 44:21

## G

general [3] - 14:21, 17:22, 32:23
GENERAL [2] - 1:9, 1:22
General [16] - 2:3, 2:15, 2:18, 4:16, 6:19, 9:4, 10:21, 11:18, 23:3, 26:7, 28:8, 32:9, 33:12, 33:13, 42:11, 43:8
General's [26] - 3:4, 5:13, 5:21, 6:6, 6:7, 8:16, 9:9, 11:24, 16:20, 21:19, 22:2, 22:10, 27:24, 28:1, 30:5, 32:21, 34:6, 38:8, 38:18, 43:5, 43:12, 43:23, 47:7, 47:22, 50:15, 54:22
genuinely [1] - 9:14
given [5] - 12:25, 28:5, 51:23, 53:18, 53:25
Glavin [8] - 2:10, 4:20, 47:20, 54:9, 55:6, 57:16, 57:22
GLAVIN [15] - 1:16, 1:17, 2:10, 25:9, 47:21, 48:6, 48:17, 48:21, 50:16, 52:21, 53:13, 54:10, 55:9, 57:23, 58:7
goal [5] - 3:8, 3:10, 4:15, 10:24, 21:2
goals [1] - 16:21
going-forward [1] - 23:1
good-faith [1] - 50:20
gossip [1] - 40:22
governance [1] - 47:1
governmental [1] - 47:4
GOVERNOR [1] - 1:4
Governor [17] - 2:7, 2:23, 3:18, 4:17, 5:5, 6:7, 6:9, 22:7, 27:21, 32:23, 33:4, 38:3, 39:1, 39:5, 47:16, 49:14, 56:11
Governor's [1] - 3:20
grant [2] - 9:24, 10:17
great [2] - 7:1, 54:17
ground [1] - 30:2
grounds [1] - 38:13
guessing [1] - 36:18
guys [4] - 26:21, 29:1, 53:8, 55:11

## H

half [1] - 50:11
hand [1] - 47:20
hands [1] - 16:5
happy [3] - 24:20, 32:1, 39:15

hard [7] - 18:21, 32:24, 49:10, 49:14, 51:13, 53:8, 56:15
hash [2] - 55:7, 55:8
head [2] - 32:20, 36:16
headed [1] - 35:18
hear [6] - 6:5, 7:8, 30:12, 41:23, 56:1, 57:5
heard [11] - 8:9, 13:24, 15:12, 19:9, 19:21, 23:8, 42:16, 42:19, 42:21, 51:23, 56:3
hearing [5] - 42:15, 44:7, 45:13, 53:2, 55:13
heart [2] - 23:12, 37:9
held [2] - 4:21, 37:18
help [1] - 58:3
helpful [4] - 24:21, 28:21, 28:23, 34:20
herself [1] - 2:16
highly [2] - 29:12, 37:8
holder [1] - 3:15
holes [1] - 29:6
Honor [52] - 2:6, 2:14, 2:17, 6:14, 6:17, 7:2, 7:18, 8:23, 8:24, 9:18, 11:5, 11:10, 11:11, 13:25, 16:22, 16:23, 17:21, 19:18, 19:21, 22:12, 22:18, 23:1, 25:9, 25:25, 27:4, 27:16, 28:19, 29:18, 29:23, 32:1, 32:4, 32:8, 34:17, 35:15, 41:23, 42:9, 44:1, 44:7, 46:21, 49:22, 52:17, 53:12, 54:4, 54:10, 55:24, 56:10, 56:19, 57:2, 57:7, 57:23, 58:6, 58:7
Honor's [7] - 8:6, 13:22, 15:13, 18:18, 20:20, 24:15, 51:24
HONORABLE [1] - 1:13
hopefully [3] - 53:2, 57:10, 57:13
hostile [1] - 56:22
hotbed [1] - 40:22
hour [1] - 50:11
huge [1] - 46:14
hurdles [1] - 26:14

## I

idea [4] - 24:4, 26:13, 52:10, 56:8
identified [1] - 29:11
identifies [2] - 19:8, 28:15
identify [2] - 22:19, 23:24
identifying [1] - 18:3
identities [1] - 19:6
identity [3] - 18:1, 18:9, 37:6
immune [2] - 20:16, 39:18
immunity [39] - 3:9, 4:12, 4:13, 4:14, 4:24, 5:2, 10:18, 10:23, 11:1, 13:17, 19:20, 19:24, 20:1, 20:6, 20:10, 20:12, 20:15, 20:20, 22:6, 24:11, 25:24, 27:6, 30:14, 30:18, 30:24, 31:16, 35:25, 36:3, 37:19, 37:21, 38:10, 38:20, 42:5, 43:11, 45:2, 46:24, 47:5, 50:20, 53:4
impeach [1] - 45:18
impeachment [2] - 34:21, 45:14
implicate [1] - 44:16

implicated [2] - 19:24, 22:10
implicates [1] - 13:16
implications [1] - 46:15
important [10] - 3:24, 4:1, 17:20, 26:7, 26:8, 26:9, 27:18, 33:4, 33:21, 44:19
impossible [2] - 12:21, 12:22
impression [1] - 43:22
improper [1] - 35:2
inappropriate [2] - 24:17, 43:22
included [1] - 52:10
including [1] - 40:19
inclusion [1] - 3:6
inconsistent [1] - 28:6
increasingly [1] - 47:1
incredibly [1] - 43:17
indicate [1] - 34:9
indicated [3] - 6:8, 18:22, 22:20
individual [1] - 18:8
individuals [4] - 18:3, 18:4, 18:5, 37:2
info [1] - 5:16
information [54] - 3:5, 3:17, 4:17, 4:18, 4:22, 5:21, 6:23, 9:9, 12:12, 16:19, 17:23, 18:4, 18:5, 18:8, 18:23, 19:6, 19:10, 19:15, 20:12, 20:15, 20:16, 20:18, 22:20, 24:15, 25:16, 29:12, 29:24, 32:11, 32:18, 33:21, 34:21, 37:1, 37:9, 39:19, 40:12, 41:7, 42:1, 42:10, 43:6, 44:16, 44:17, 44:23, 47:9, 50:5, 51:1, 51:8, 51:9, 51:12, 51:20, 52:9, 52:14, 56:5
informative [1] - 57:8
informed [1] - 54:16
initial [1] - 44:5
inquiry [2] - 18:11, 47:12
insisted [1] - 39:6
inspired [1] - 33:4
instance [2] - 17:11, 56:14
instances [4] - 18:15, 47:5, 49:12, 49:13
instead [2] - 32:22, 33:10
instruct [1] - 14:17
integrity [1] - 26:6
intends [1] - 8:10
intensive [1] - 36:11
interactions [1] - 56:12
interest [8] - 4:1, 17:15, 17:17, 18:2, 18:19, 30:9, 37:22, 55:14
interested [4] - 41:4, 43:13, 44:8, 45:7
interesting [1] - 27:23
interests [3] - 3:25, 18:20, 26:11
interview [44] - 10:14, 11:15, 14:16, 14:19, 16:6, 19:22, 21:5, 22:4, 23:6, 27:19, 29:13, 29:16, 29:17, 29:21, 29:23, 30:7, 33:7, 33:20, 34:3, 34:7, 34:11, 34:13, 34:21, 35:2, 35:16, 35:19, 35:21, 36:4, 36:13, 38:5, 38:6, 40:14, 40:15, 41:3, 41:17, 42:13, 45:12, 45:13, 45:20, 47:23, 47:25, 50:4
interviewed [16] - 10:11, 12:5, 18:13, 19:7, 23:3, 23:22, 23:24, 25:1, 25:4,

25:8, 25:14, 25:15, 27:23, 32:20, 33:17, 40:21
**interviews** [8] - 11:13, 12:12, 14:13, 14:21, 21:12, 32:15, 32:17, 32:18
**intractable** [1] - 38:2
**introduce** [2] - 2:16, 8:11
**inure** [1] - 11:4
**invariably** [1] - 3:24
**investigating** [1] - 14:10
**investigation** [14] - 3:16, 8:16, 11:25, 16:4, 21:21, 30:17, 33:24, 40:20, 45:10, 45:15, 45:20, 45:21, 49:24, 50:8
**investigations** [7] - 14:7, 16:2, 16:7, 17:19, 26:7, 37:10, 44:21
**investigative** [2] - 14:12, 33:17
**investigators** [5] - 20:9, 32:24, 33:7, 41:6, 45:21
**inviting** [1] - 55:15
**involve** [2] - 31:2, 37:24
**involved** [2] - 31:3, 56:8
**involving** [2] - 3:14, 37:17
**irrelevant** [2] - 24:17, 35:5
**issue** [26] - 4:24, 8:20, 9:10, 10:19, 10:21, 10:23, 12:16, 20:1, 20:6, 20:7, 22:16, 24:11, 24:21, 25:16, 25:20, 27:6, 30:21, 46:14, 50:20, 50:21, 51:11, 52:13, 56:11, 56:25
**issued** [7] - 2:21, 3:2, 3:18, 6:9, 13:3, 38:24, 48:19
**issues** [23] - 3:1, 8:8, 9:20, 11:2, 15:22, 15:23, 16:25, 17:12, 17:13, 19:24, 26:8, 27:5, 28:20, 32:6, 38:21, 43:8, 45:25, 50:11, 50:24, 53:4, 53:21, 54:25, 57:1
**issuing** [1] - 26:16

## J

**Jackson** [1] - 7:5
**JAMES** [2] - 1:23, 1:24
**January** [1] - 55:13
**job** [1] - 27:21
**join** [1] - 46:20
**joining** [1] - 46:25
**joint** [2] - 52:2, 54:23
**jointly** [1] - 55:1
**joking** [1] - 51:6
**Judge** [4] - 3:11, 4:6, 37:15, 46:10
**JUDGE** [1] - 1:14
**judges** [1] - 38:12
**July** [6] - 2:22, 5:7, 6:9, 21:23, 38:25
**juncture** [1] - 10:17
**jury** [4] - 8:15, 8:18, 8:25, 49:24

## K

**KATHERINE** [1] - 1:18
**Katrina** [1] - 2:11
**keep** [1] - 57:6

**kick** [1] - 29:5
**kind** [5] - 20:7, 23:25, 25:1, 25:5, 53:7
**kinds** [3] - 3:25, 37:10, 46:15
**known** [3] - 18:1, 23:14, 37:3
**knows** [2] - 2:20, 50:3
**KORMAN** [1] - 1:18
**Korman** [1] - 2:11

## L

**land** [2] - 39:1, 49:18
**largely** [1] - 15:24
**larger** [1] - 48:19
**last** [1] - 29:3
**law** [43] - 4:11, 14:7, 14:10, 15:22, 16:9, 17:17, 17:18, 18:2, 20:10, 23:13, 24:25, 25:23, 27:1, 29:14, 29:24, 30:11, 30:15, 30:17, 30:23, 31:2, 31:7, 31:11, 31:20, 32:6, 35:20, 36:8, 37:18, 37:24, 38:10, 39:3, 40:4, 43:18, 46:13, 46:22, 46:24, 46:25, 47:3, 48:9, 50:14, 50:18, 50:22, 51:4, 51:12
**lawsuit** [2] - 45:22, 56:9
**lawyer** [2] - 41:8, 41:12
**lawyers** [5] - 15:17, 24:7, 39:8, 55:25, 56:4
**lay** [1] - 49:18
**layer** [1] - 46:2
**layered** [1] - 38:15
**layers** [1] - 32:5
**LDH** [1] - 1:4
**lead** [1] - 14:19
**learned** [1] - 25:11
**least** [6] - 18:24, 37:24, 38:12, 39:15, 53:19, 55:7
**left** [2] - 12:3, 33:1
**legal** [2] - 11:1, 52:15
**legally** [2] - 27:10, 50:25
**legislative** [6] - 31:6, 31:8, 31:9, 46:4, 47:10, 47:11
**legislature** [1] - 46:4
**legislatures** [1] - 3:23
**length** [1] - 38:7
**Leo** [1] - 2:11
**LEO** [1] - 1:18
**less** [2] - 50:4, 55:3
**letter** [4] - 11:6, 34:5, 53:13, 54:23
**LETTITIA** [1] - 1:23
**Liberty** [1] - 1:23
**LICUL** [10] - 54:2, 55:2, 55:24, 56:10, 56:19, 57:2, 57:7, 57:15, 57:17, 57:21
**Licul** [4] - 8:10, 28:12, 28:13, 48:23, 53:22, 54:21, 57:12
**life** [1] - 33:5
**light** [1] - 50:22
**likely** [2] - 45:17, 49:13
**likewise** [1] - 43:13
**limit** [3] - 20:19, 28:24, 29:5
**limited** [2] - 4:16, 21:21

**limiting** [1] - 16:19
**limits** [1] - 5:1
**Lindsey** [3] - 11:16, 21:15, 32:25
**Liss** [1] - 7:5
**Liss-Jackson** [1] - 7:5
**list** [4] - 12:5, 22:22, 23:11, 23:17
**listed** [1] - 28:14
**listening** [1] - 42:20
**lists** [1] - 23:9
**literally** [1] - 47:20
**litigate** [1] - 52:13
**litigating** [5] - 5:15, 20:1, 29:1, 44:11, 51:4
**litigation** [9] - 2:20, 8:1, 26:23, 35:11, 43:13, 44:24, 45:19, 46:19, 53:11
**LLP** [1] - 1:9, 2:7
**Locke** [1] - 3:12
**Locke's** [2] - 4:6, 46:10
**locked** [1] - 33:18
**log** [4] - 10:22, 12:21, 17:3, 53:5
**LONGLEY** [15] - 1:25, 2:17, 6:14, 13:11, 13:14, 17:21, 23:11, 34:17, 35:23, 36:2, 36:15, 36:23, 44:1, 46:21, 49:4
**Longley** [12] - 2:18, 6:12, 13:5, 23:8, 26:25, 34:8, 34:16, 38:16, 42:21, 43:24, 49:2, 49:19
**look** [16] - 5:2, 16:2, 16:6, 20:23, 24:24, 29:23, 34:25, 35:18, 36:4, 38:1, 39:11, 47:15, 53:2, 54:8, 56:15, 58:2
**looking** [3] - 30:10, 47:3, 48:24
**looks** [1] - 13:19
**lose** [1] - 50:23
**luxury** [1] - 33:20

## M

**MAGISTRATE** [1] - 1:14
**main** [1] - 55:16
**majority** [2] - 13:12, 37:5
**manipulation** [1] - 32:13
**manner** [1] - 8:20
**March** [3] - 39:22, 39:23, 42:4
**material** [4] - 13:15, 45:23, 45:24, 49:25
**materials** [5] - 13:12, 22:11, 24:12, 24:17, 47:8
**matter** [7] - 14:21, 16:8, 51:4, 51:11, 53:1, 58:1, 58:10
**McGrath** [3] - 11:16, 11:17, 21:15
**McMahon** [1] - 37:15
**mean** [12] - 7:2, 12:8, 15:25, 19:6, 24:24, 25:22, 32:13, 40:11, 50:24, 54:6, 55:13, 57:3
**meaningful** [6] - 13:14, 13:18, 15:3, 16:18, 47:18, 54:23
**meaningfully** [2] - 26:21, 43:7
**means** [1] - 41:21
**meant** [1] - 9:14
**meet** [14] - 5:19, 22:1, 26:21, 30:4, 39:15, 42:12, 43:7, 43:10, 44:8, 44:12, 50:13, 51:25, 54:23, 57:13

**member** [1] - 27:20
**memo** [2] - 40:15, 41:17
**memoranda** [4] - 11:13, 11:15, 21:12, 21:14
**memories** [1] - 4:22
**memos** [31] - 19:22, 21:5, 22:4, 23:6, 27:19, 29:13, 29:16, 29:17, 29:21, 29:24, 30:7, 33:20, 34:3, 34:7, 34:11, 34:14, 34:22, 35:2, 35:16, 35:19, 35:22, 36:5, 36:13, 38:5, 38:6, 42:13, 45:12, 45:13, 47:23, 47:25, 48:1
**mention** [1] - 13:21
**mentioned** [2] - 17:7, 36:21
**merit** [1] - 5:11
**merits** [1] - 30:24
**MERKL** [1] - 1:13
**mess** [1] - 3:19
**message** [2] - 33:2, 33:3
**met** [1] - 56:7
**might** [9] - 18:8, 31:25, 34:20, 42:12, 43:4, 51:9, 55:2, 55:12, 55:21
**millions** [1] - 34:13
**mind** [3] - 15:1, 53:22, 57:6
**minimum** [2] - 22:23, 58:3
**misapprehension** [1] - 13:2
**misconduct** [5] - 4:3, 7:20, 26:9, 43:20, 49:12
**miss** [1] - 33:6
**missed** [1] - 33:5
**modifications** [1] - 10:7
**moment** [1] - 12:15
**month** [1] - 38:22
**months** [1] - 3:9
**morning** [5] - 2:6, 2:14, 2:17, 28:12, 51:23
**most** [3] - 15:8, 40:3, 52:9
**motion** [29] - 2:21, 5:6, 5:8, 5:18, 5:19, 6:4, 8:4, 8:18, 9:15, 9:24, 19:18, 21:3, 22:13, 24:6, 24:16, 27:2, 31:1, 34:18, 34:19, 35:2, 35:7, 35:8, 38:3, 48:10, 51:22, 52:7, 52:8, 55:3
**motions** [5] - 30:11, 37:25, 52:4, 52:5, 54:1
**movant** [5] - 2:5, 23:18, 23:20, 24:18, 44:9
**move** [3] - 3:8, 8:22, 52:8
**moving** [1] - 55:14
**MR** [27] - 2:14, 13:21, 14:6, 15:6, 15:16, 16:22, 17:5, 17:14, 18:10, 30:9, 37:12, 48:4, 48:7, 48:18, 49:22, 52:17, 52:23, 54:2, 55:2, 55:24, 56:10, 56:19, 57:2, 57:7, 57:15, 57:17, 57:21
**MS** [78] - 2:6, 2:10, 2:17, 6:14, 6:17, 7:2, 7:13, 7:18, 7:24, 8:23, 9:18, 10:3, 11:5, 11:8, 11:10, 12:4, 13:11, 13:14, 17:21, 19:3, 20:4, 20:11, 20:19, 20:25, 21:9, 22:12, 22:18, 23:11, 24:24, 25:7, 25:9, 25:21, 25:25, 27:4, 27:11, 27:15, 28:14, 28:19, 29:9, 29:17, 29:22, 30:2, 31:12, 31:15, 31:19, 31:21, 32:1, 32:4,

32:8, 34:17, 35:23, 36:2, 36:15, 36:23, 39:11, 40:5, 41:11, 41:15, 41:22, 42:9, 44:1, 46:21, 47:21, 48:6, 48:17, 48:21, 49:4, 50:16, 51:14, 51:19, 52:21, 53:12, 53:13, 54:10, 55:9, 57:23, 58:6, 58:7
**multi** [1] - 38:22
**multi-month** [1] - 38:22
**multiple** [1] - 39:25

## N

**name** [3] - 3:19, 35:14, 44:5
**names** [1] - 18:3
**narrow** [19] - 9:10, 10:4, 11:11, 12:17, 12:20, 13:5, 21:25, 22:19, 22:23, 23:23, 26:17, 42:22, 42:25, 43:8, 44:10, 44:12, 49:16, 54:17, 57:13
**narrowed** [5] - 11:20, 48:8, 51:1, 54:15, 54:25
**narrower** [1] - 22:7
**narrowing** [4] - 8:21, 22:13, 47:17, 54:19
**nature** [1] - 51:15
**naughty** [1] - 20:21
**necessarily** [1] - 5:16
**necessary** [2] - 4:14, 20:2
**need** [27] - 4:18, 10:18, 10:19, 10:21, 16:19, 19:13, 19:14, 20:22, 22:1, 22:6, 22:24, 26:11, 26:22, 35:19, 39:1, 42:1, 42:7, 47:16, 51:9, 51:12, 53:5, 53:8, 53:17, 54:7, 55:2, 56:15, 57:12
**needed** [1] - 25:2
**needing** [1] - 46:17
**never** [9] - 8:25, 9:2, 22:3, 23:23, 30:6, 37:7, 42:21, 46:13, 56:7
**new** [12] - 2:12, 5:10, 22:16, 22:25, 30:10, 31:1, 34:23, 37:25, 52:9, 52:10, 53:19
**NEW** [3] - 1:1, 1:8, 1:22
**New** [15] - 1:6, 1:17, 1:20, 1:24, 2:3, 12:13, 21:9, 34:12, 40:22, 46:7, 46:19, 47:2
**next** [2] - 47:16, 57:11
**nice** [2] - 58:7, 58:9
**niceties** [1] - 5:15
**nilly** [1] - 44:22
**nobody** [1] - 7:4
**nobody's** [1] - 48:15
**non** [1] - 7:17
**non-party** [1] - 7:17
**nonetheless** [1] - 54:7
**nonparties** [5] - 7:9, 37:2, 51:20, 55:10, 57:11
**nonparty** [2] - 7:3, 16:20
**Noonan** [1] - 2:8
**normal** [1] - 42:11
**note** [2] - 35:23, 45:9
**noted** [2] - 4:20, 55:16
**notes** [7] - 10:14, 14:18, 40:14, 40:15,

41:8, 41:16, 45:20
**nothing** [5] - 37:3, 42:17, 43:7, 45:10, 46:8
**notion** [1] - 50:19
**novel** [1] - 4:10
**number** [8] - 14:2, 14:6, 14:12, 23:4, 23:14, 36:21, 36:22, 51:19
**numbers** [1] - 25:12

## O

**OAG** [5] - 13:4, 21:16, 21:18, 53:14, 58:1
**oath** [1] - 27:25
**object** [2] - 48:11, 54:3
**objection** [2] - 53:23, 54:3
**obligation** [1] - 10:1
**observed** [2] - 4:9, 10:11
**obtain** [2] - 7:8, 14:14
**obvious** [3] - 26:2, 26:4, 26:5
**obviously** [2] - 7:7, 55:25
**occur** [1] - 14:19
**October** [3] - 53:18, 57:18, 58:1
**OF** [5] - 1:1, 1:8, 1:13, 1:22, 1:22
**offering** [1] - 44:2
**Office** [25] - 2:2, 2:15, 2:18, 3:4, 4:15, 5:13, 5:21, 6:6, 6:7, 11:24, 16:20, 22:2, 27:24, 30:5, 32:21, 34:6, 38:8, 38:18, 43:5, 43:12, 43:23, 47:7, 47:22, 50:15, 54:22
**OFFICE** [2] - 1:8, 1:22
**office** [21] - 3:14, 3:20, 9:9, 14:7, 14:20, 16:4, 16:6, 18:2, 18:7, 18:14, 30:19, 30:20, 34:11, 39:18, 39:25, 40:14, 40:21, 40:25, 50:1, 51:25, 53:14
**officer** [1] - 39:24
**offices** [1] - 37:9
**official** [2] - 4:2, 26:8
**often** [4] - 3:22, 14:16, 15:4, 33:19
**oftentimes** [1] - 32:15
**on-the-record** [5] - 19:8, 32:16, 41:2, 41:17, 41:18
**once** [1] - 46:19
**one** [19] - 14:25, 16:12, 16:14, 22:20, 27:3, 27:11, 29:11, 31:5, 32:23, 34:4, 35:23, 38:12, 39:15, 39:24, 40:18, 40:25, 47:12, 52:12, 54:7
**online** [3] - 45:17, 45:24, 47:8
**onus** [1] - 22:7
**open** [1] - 48:5
**operative** [1] - 22:25
**opinion** [8] - 2:25, 3:3, 3:9, 4:10, 5:7, 5:9, 9:3, 21:23
**opportunity** [5] - 5:3, 10:4, 14:12, 47:13, 54:12, 55:21
**opposed** [2] - 10:25, 52:15
**opposition** [1] - 35:7
**optimistic** [1] - 51:2
**oral** [5] - 10:5, 42:24, 43:1, 43:9, 43:20
**order** [10] - 3:2, 6:9, 6:22, 13:22, 19:5,

19:15, 31:16, 43:2, 51:11, 55:12
**ordering** [1] - 43:10
**ordinary** [1] - 18:14
**otherwise** [3] - 29:21, 29:22, 31:2
**ourselves** [1] - 57:3
**outset** [2] - 14:22, 41:6
**outstanding** [1] - 30:22
**overcome** [1] - 26:15
**own** [2] - 28:6, 28:7

## P

**p.m** [1] - 1:8
**page** [1] - 36:20
**pages** [7] - 12:17, 34:10, 36:13, 36:18, 36:19, 36:25
**paid** [2] - 34:11, 34:12
**papers** [4] - 2:24, 13:2, 13:3, 52:10
**Park** [1] - 37:16
**part** [6] - 8:5, 9:25, 15:19, 18:11, 18:24, 55:15
**participant** [1] - 47:1
**participating** [1] - 46:19
**particular** [6] - 8:5, 15:7, 17:18, 20:7, 40:21, 42:14
**particularly** [3] - 29:4, 29:13, 41:4
**parties** [14] - 2:4, 3:2, 3:7, 10:25, 11:19, 12:3, 21:17, 37:24, 50:12, 51:1, 52:2, 52:13, 57:10, 57:13
**parties'** [1] - 13:7
**party** [5] - 3:14, 7:17, 24:1, 29:4, 47:13
**past** [1] - 21:25
**path** [11] - 10:24, 20:23, 21:1, 26:13, 26:14, 42:7, 43:16, 52:3, 52:14, 52:25, 53:3
**payments** [2] - 35:5, 43:19
**pending** [3] - 48:8, 52:19, 54:1
**people** [4] - 10:12, 16:17, 42:4, 48:1
**people's** [1] - 44:23
**per** [1] - 52:7
**perfectly** [1] - 50:9
**perhaps** [6] - 12:5, 24:3, 54:19, 55:9, 55:11
**permit** [1] - 5:20
**permitted** [1] - 3:21
**Perrotta** [5] - 27:19, 27:23, 28:8, 28:13, 40:18
**person** [5] - 25:12, 28:10, 33:5, 56:21
**person's** [3] - 3:17, 50:7, 51:10
**personal** [4] - 18:4, 19:15, 33:2, 33:3
**persons** [2] - 31:8, 55:19
**perspective** [1] - 13:24
**Petrino** [1] - 2:11
**PETRINO** [1] - 1:18
**phone** [1] - 25:12
**phrasing** [1] - 9:7
**pick** [1] - 32:12
**picked** [1] - 38:17
**picking** [1] - 25:5

**piecemeal** [1] - 25:5
**place** [2] - 15:21, 18:21
**Place** [1] - 37:16
**placeholder** [1] - 53:20
**Plaintiff** [2] - 1:5, 1:16
**plaintiff's** [5] - 48:25, 49:8, 49:10, 49:16, 53:15
**plan** [1] - 52:3
**play** [1] - 57:1
**PLLC** [2] - 1:16, 2:10
**plus** [1] - 47:25
**point** [16] - 11:5, 12:6, 15:17, 17:5, 18:16, 20:20, 22:22, 25:9, 25:25, 29:5, 36:4, 43:7, 49:19, 51:4, 51:24, 56:17
**pointed** [1] - 49:22
**points** [1] - 11:24
**police** [1] - 16:5
**Police** [9] - 12:13, 21:10, 25:4, 25:10, 25:11, 25:13, 25:15, 34:1, 40:22
**portions** [1] - 46:6
**pose** [1] - 47:21
**posit** [1] - 8:18
**position** [8] - 7:8, 20:8, 20:11, 24:8, 35:24, 50:9, 50:25, 51:10
**positions** [2] - 13:7, 53:9
**possesses** [1] - 31:22
**possession** [1] - 4:5
**possibility** [3] - 9:3, 38:18, 55:20
**possible** [2] - 25:6, 51:23
**possibly** [1] - 43:14
**posting** [2] - 15:25, 19:4
**potential** [3] - 36:6, 44:20, 44:21
**potentially** [4] - 17:24, 44:3, 45:7, 55:20
**practical** [1] - 53:1
**practically** [1] - 54:3
**practice** [4] - 18:14, 31:1, 38:4, 55:15
**pre** [2] - 47:3, 47:4
**pre-ratification** [2] - 47:3, 47:4
**precedent** [1] - 56:23
**precise** [1] - 8:14
**preclude** [1] - 55:14
**precursor** [1] - 14:7
**prefer** [2] - 52:12, 52:13
**prejudice** [1] - 48:19
**preparation** [1] - 35:12
**prepared** [2] - 21:16, 54:5
**present** [2] - 14:16, 14:17
**presented** [1] - 35:7
**presently** [2] - 49:6, 49:21
**press** [2] - 53:10, 53:18
**pretty** [4] - 6:22, 52:6, 55:6
**preview** [1] - 24:21
**previously** [3] - 10:11, 20:5, 35:17
**principle** [1] - 54:2
**principles** [1] - 26:9
**privacy** [1] - 15:19
**private** [4] - 18:4, 18:8, 18:23, 38:15
**privilege** [34] - 5:2, 10:22, 11:2, 12:21, 13:16, 15:22, 15:23, 16:10, 16:24,

17:3, 17:4, 17:18, 18:6, 22:5, 23:12, 24:12, 25:24, 26:12, 27:5, 29:15, 31:6, 32:6, 35:10, 35:20, 39:3, 40:4, 44:16, 46:5, 46:6, 46:18, 47:10, 47:15, 53:5
**privileged** [1] - 37:9
**privileges** [6] - 16:10, 19:25, 31:9, 36:9, 40:7, 46:1
**problem** [2] - 22:20, 25:15
**problematic** [2] - 29:14, 55:23
**procedural** [2] - 5:15, 22:16
**procedure** [2] - 19:17, 19:19
**proceed** [2] - 3:21, 9:15
**proceeding** [2] - 40:6, 55:18
**proceedings** [1] - 30:10
**process** [9] - 11:3, 20:6, 38:22, 44:2, 44:11, 47:19, 53:6, 55:19, 55:22
**processes** [1] - 46:17
**produce** [2] - 47:24, 48:2
**produced** [4] - 11:19, 21:17, 26:22, 35:14
**producing** [1] - 35:12
**product** [2] - 18:19, 36:10
**production** [2] - 36:6, 36:8
**progress** [2] - 57:10, 57:11
**prolong** [1] - 9:16
**proper** [1] - 49:25
**proportionality** [4] - 22:9, 26:18, 28:24, 29:5
**proposals** [1] - 54:18
**propose** [1] - 53:19
**proposed** [1] - 55:1
**proposing** [1] - 55:1
**protect** [3] - 18:25, 20:12, 27:21
**protected** [2] - 20:15, 39:3
**protecting** [1] - 26:6
**protection** [1] - 50:23
**protections** [1] - 31:24
**protective** [2] - 19:5, 19:15
**protects** [1] - 20:12
**prove** [2] - 51:6, 56:22
**proves** [1] - 15:17
**provide** [6] - 4:4, 13:22, 14:20, 23:17, 45:3, 46:8
**provided** [8] - 11:18, 12:2, 21:16, 23:19, 29:18, 33:12, 50:4
**providing** [3] - 15:2, 25:21, 54:24
**PSU** [3] - 12:13, 27:20, 32:20
**public** [4] - 23:16, 32:9, 32:10, 32:13
**publically** [2] - 29:21, 29:22
**publicly** [5] - 18:1, 18:2, 23:14, 33:15, 37:3
**publish** [6] - 15:4, 15:6, 15:7, 16:11, 29:16, 47:8
**published** [1] - 15:10
**publishing** [1] - 17:7
**purpose** [1] - 26:16
**purposes** [4] - 17:17, 31:16, 50:8, 52:16
**pursuant** [1] - 31:10
**pursuing** [1] - 40:10

**put** [4] - 27:24, 32:15, 33:8, 47:9
**putting** [1] - 15:20

## Q

**qualified** [4] - 5:2, 26:12, 46:4, 47:15
**quash** [6] - 2:21, 3:12, 13:1, 27:2, 30:12, 35:8
**quashed** [1] - 13:3
**quashing** [1] - 5:9
**quasi** [1] - 20:23
**questionable** [2] - 50:22, 52:12
**questions** [9] - 4:6, 4:7, 4:8, 16:24, 35:4, 41:2, 41:24, 47:10, 50:24
**quick** [1] - 35:23
**quickly** [1] - 37:12
**quite** [1] - 3:6

## R

**rabbit** [1] - 29:6
**raise** [2] - 30:18, 31:5
**raised** [5] - 15:22, 15:23, 30:19, 34:4, 45:5
**raises** [2] - 18:15, 45:25
**raising** [2] - 30:8, 47:20
**ramifications** [1] - 47:2
**range** [1] - 36:18
**rather** [2] - 8:8, 27:17
**ratification** [2] - 47:3, 47:4
**re** [1] - 55:20
**re-traumatized** [1] - 55:20
**reach** [4] - 10:18, 20:22, 22:6, 38:20
**reached** [1] - 4:23
**read** [2] - 46:9, 46:10
**real** [1] - 42:3
**realistic** [2] - 10:13, 10:15
**really** [27] - 5:11, 9:23, 12:24, 21:24, 27:6, 27:17, 29:8, 32:2, 33:20, 34:20, 35:1, 37:4, 37:8, 38:1, 39:5, 41:15, 44:19, 45:12, 45:15, 45:19, 45:22, 47:12, 48:25, 49:10, 49:14, 53:25
**realm** [1] - 23:16
**reason** [5] - 3:6, 12:19, 15:20, 30:12, 38:5
**reasonable** [4] - 10:13, 10:14, 44:15, 44:25
**reasonably** [1] - 44:2
**reasons** [1] - 16:14
**receive** [3] - 10:20, 10:21, 23:25
**received** [4] - 6:8, 6:13, 6:15, 23:23
**receiving** [1] - 58:2
**recent** [3] - 3:11, 34:5, 50:13
**recently** [1] - 38:13
**recognize** [1] - 16:23
**recognizing** [1] - 47:18
**recommendation** [1] - 43:1
**reconsider** [2] - 12:19, 34:18
**reconsideration** [24] - 2:24, 2:25, 5:7, 5:11, 5:18, 5:24, 6:3, 8:4, 8:7, 8:8,

8:18, 9:15, 9:21, 12:24, 19:18, 21:3, 22:13, 22:15, 35:3, 48:11, 52:4, 52:7, 52:9, 52:11
**reconstruct** [1] - 4:19
**record** [12] - 19:8, 24:19, 32:13, 32:15, 32:16, 33:8, 33:18, 40:16, 41:2, 41:5, 41:17, 41:18
**records** [12] - 7:15, 7:19, 7:20, 7:21, 7:22, 7:24, 7:25, 10:9, 11:18, 21:16, 21:17, 43:21
**redact** [2] - 19:13, 34:13
**redacted** [9] - 15:7, 15:20, 17:22, 34:7, 34:10, 35:17, 36:5, 36:7, 45:17
**redacting** [1] - 18:20, 35:12
**redaction** [1] - 36:12
**redactions** [1] - 18:24
**redistrict** [1] - 3:24
**redistricting** [1] - 46:17
**reducing** [1] - 43:13
**refer** [1] - 13:25
**referenced** [4] - 28:1, 35:14, 44:4, 46:16
**referred** [1] - 11:14
**referring** [1] - 21:11
**reflected** [1] - 21:3
**regard** [5] - 13:8, 17:19, 49:19, 50:13, 52:4
**regarding** [2] - 23:9, 43:19
**regards** [1] - 53:9
**rehashing** [1] - 44:8
**relate** [2] - 11:19, 21:18
**related** [2] - 17:9, 24:18
**relates** [1] - 48:23
**relating** [2] - 11:14, 21:13
**releasing** [2] - 16:15, 18:3
**relevance** [9] - 9:8, 16:25, 22:9, 26:18, 28:24, 37:11, 49:20, 56:14, 57:5
**relevancy** [1] - 9:11
**relevant** [11] - 3:16, 4:23, 8:9, 8:10, 12:8, 29:12, 44:3, 44:18, 44:19, 50:2, 51:20
**relied** [1] - 4:8
**rely** [1] - 6:25
**relying** [2] - 31:14, 46:23
**remains** [3] - 8:14, 38:11, 38:14
**remarkable** [1] - 51:21
**remember** [1] - 41:16
**remembered** [1] - 41:5
**reopen** [1] - 24:19
**repeatedly** [4] - 6:18, 25:14, 38:4, 39:6
**reply** [1] - 46:13
**report** [7] - 8:9, 8:11, 9:4, 9:6, 28:1, 33:13, 57:14
**represent** [1] - 55:25
**representation** [2] - 6:6, 21:19
**representations** [1] - 15:12
**represented** [4] - 25:17, 40:13, 41:9, 41:11
**representing** [1] - 37:17
**request** [21] - 6:18, 6:19, 6:20, 7:6, 21:8,

21:22, 22:1, 22:16, 23:23, 23:25, 24:1, 24:2, 39:20, 39:21, 42:22, 44:15, 44:25, 48:8, 48:10, 48:12, 48:18
**requested** [4] - 3:3, 11:13, 21:12, 22:13
**requesting** [1] - 13:12
**requests** [14] - 6:8, 6:13, 6:15, 6:24, 7:1, 10:2, 10:6, 10:7, 26:20, 38:9, 39:25, 47:17, 55:7, 56:2
**require** [1] - 10:19
**required** [1] - 38:9
**research** [1] - 37:14
**resolve** [3] - 22:2, 35:25, 48:12
**resolved** [2] - 36:2, 54:25
**respect** [4] - 7:18, 8:8, 8:23, 47:23
**respectful** [1] - 9:20
**respecting** [1] - 17:15
**respond** [9] - 19:2, 24:8, 24:9, 24:23, 35:16, 38:9, 48:4, 52:18, 53:17
**responded** [1] - 24:20
**response** [8] - 6:6, 11:25, 13:5, 13:21, 15:13, 23:9, 39:22, 44:5
**responses** [2] - 18:18, 43:21
**retaliation** [2] - 23:15, 44:18
**rethread** [1] - 30:2
**reveals** [1] - 25:2
**review** [11] - 10:9, 12:17, 17:4, 19:13, 22:5, 26:12, 34:13, 35:19, 36:6, 36:11, 48:16
**reviewed** [2] - 34:7, 34:9
**reviewing** [2] - 15:17, 49:20
**revised** [2] - 26:20, 55:1
**revisit** [1] - 53:4
**revisiting** [1] - 21:25
**rewrite** [1] - 10:2
**ridiculous** [1] - 46:11
**rights** [1] - 16:3
**RITA** [1] - 1:17
**Rita** [1] - 2:10
**road** [5] - 18:10, 25:18, 29:6, 38:25, 39:5
**round** [2] - 31:1, 37:25
**Rule** [3] - 37:16, 49:7, 49:11
**rule** [6] - 10:20, 16:24, 38:19, 42:5, 58:4
**ruled** [3] - 3:12, 17:1, 43:11
**ruling** [13] - 2:22, 4:7, 4:8, 8:7, 8:13, 8:25, 12:16, 16:25, 26:16, 38:14, 38:24, 46:9, 51:11
**rulings** [1] - 11:1
**rumor** [2] - 40:23, 41:1
**run** [2] - 24:5, 27:5

## S

**saw** [2] - 19:9, 49:5
**scalpel** [3] - 5:23, 8:3, 9:22
**schedule** [1] - 55:1
**scope** [6] - 9:8, 21:22, 48:25, 49:16, 54:17, 55:5
**scorched** [2] - 7:11, 7:16

scorching [1] - 7:13
se [1] - 52:7
sealed [1] - 13:9
Second [1] - 56:22
second [1] - 17:5
secret [1] - 25:2
see [13] - 18:21, 22:2, 26:21, 27:16, 38:2, 39:12, 44:22, 49:12, 50:25, 53:25, 58:7, 58:9
seeing [1] - 43:20
seek [6] - 8:7, 9:17, 9:19, 12:24, 24:14, 49:25
seeking [14] - 2:24, 7:19, 7:20, 7:21, 7:22, 8:2, 8:21, 9:21, 10:8, 12:1, 16:17, 24:16, 29:1, 39:7
seem [4] - 7:1, 18:10, 18:19, 42:2
sense [2] - 30:22, 55:12
sensitive [3] - 37:1, 37:8, 44:17
sent [1] - 33:2
sentence [1] - 8:13
separate [4] - 6:20, 18:7, 34:10, 37:23
September [1] - 1:7
SERENA [1] - 1:25
Serena [1] - 2:17
series [1] - 56:3
serious [4] - 4:3, 32:13, 46:14
seriously [1] - 56:16
serve [4] - 20:4, 22:24, 39:20, 39:21
served [5] - 19:21, 24:7, 30:13, 30:20, 40:12
serving [1] - 30:15
set [7] - 13:8, 22:7, 22:19, 39:13, 49:20, 50:11, 51:1
seven [1] - 29:6
several [1] - 2:25
sexual [2] - 7:19, 7:20
sexually [1] - 7:16
sheet [1] - 14:25
SHER [1] - 1:19
Sher [1] - 2:7
short [1] - 27:9
shortly [1] - 33:1
show [1] - 7:24
side [1] - 36:10
sides [2] - 4:25, 5:3
significant [4] - 11:2, 26:10, 32:5
significantly [3] - 22:23, 50:4, 50:5
similar [6] - 3:12, 3:18, 41:18, 42:24, 47:10, 54:21
similarities [1] - 49:11
simplify [1] - 30:9
simply [3] - 17:6, 26:17, 56:2
sincere [1] - 9:14
single [4] - 32:21, 33:9, 36:25, 51:4
site [1] - 17:8
situation [6] - 15:7, 15:9, 16:13, 33:17, 38:2, 42:11
situations [1] - 14:11
slammed [3] - 43:23, 43:25, 45:11

slightly [1] - 50:5
slip [1] - 14:3
slipped [1] - 38:17
smiling [2] - 48:24, 48:25
so's [1] - 29:7
so-and-so [1] - 29:7
so-and-so's [1] - 29:7
someone [3] - 19:7, 19:8, 28:1
sometimes [1] - 52:8
sorry [4] - 6:7, 13:11, 31:15, 39:23
sort [4] - 10:23, 22:5, 49:15, 53:3
sorts [1] - 32:18
sought [4] - 2:23, 8:8, 9:9, 18:24
sounds [1] - 28:18
Southern [1] - 7:25
sovereign [34] - 3:9, 4:13, 4:24, 5:2, 10:18, 11:1, 13:17, 19:20, 19:24, 20:1, 20:6, 20:12, 20:20, 22:6, 24:11, 25:24, 27:6, 30:14, 30:18, 30:23, 31:16, 35:25, 36:3, 37:19, 37:20, 38:10, 38:19, 42:5, 43:11, 45:1, 46:24, 47:5, 50:20, 53:4
spaced [1] - 36:25
speaks [1] - 17:23
special [1] - 29:24
specific [4] - 5:21, 8:14, 9:11, 47:6
specifically [1] - 3:3
spend [4] - 3:8, 5:14, 5:16, 21:24
spending [1] - 32:3
spot [1] - 48:15
square [1] - 27:3
squashed [1] - 38:13
stab [1] - 12:7
stage [1] - 39:13
stake [2] - 3:25, 4:1
standard [2] - 6:3, 8:20, 36:9
standards [2] - 36:6, 36:7
start [2] - 6:4, 14:13
started [1] - 44:1
starting [4] - 2:5, 12:6, 22:22, 29:7
STATE [2] - 1:8, 1:22
State [35] - 2:3, 3:15, 3:23, 4:2, 4:4, 4:14, 12:13, 19:23, 19:25, 20:6, 20:9, 20:12, 20:13, 20:20, 21:10, 23:4, 25:4, 25:10, 25:11, 25:13, 25:15, 29:2, 31:10, 31:11, 31:16, 31:17, 31:25, 34:1, 34:12, 40:22, 46:7, 46:20, 47:2
state [5] - 2:4, 3:23, 5:2, 13:2, 43:12
statement [3] - 9:23, 14:13, 40:16
statements [4] - 27:25, 28:9, 29:10, 32:25
STATES [2] - 1:1, 1:14
States [1] - 1:6
status [5] - 2:2, 35:21, 52:2, 53:13, 57:14
STATUS [1] - 1:13
stay [2] - 49:8, 52:24
staying [1] - 52:17
steps [3] - 27:10, 38:25, 51:10

steroids [1] - 51:17
still [11] - 6:12, 6:14, 10:8, 13:9, 13:12, 13:15, 28:12, 31:22, 46:1, 48:24, 50:23
stop [1] - 42:16
story [2] - 28:2, 50:7
Straface [5] - 32:19, 32:24, 33:2, 33:3, 33:6
strategies [1] - 53:11
strategy [1] - 7:1
streamline [1] - 43:14
Street [3] - 1:16, 1:20, 1:23
stretch [1] - 46:8
strike [1] - 52:7
strikes [2] - 46:8, 50:21
striking [1] - 55:14
strong [1] - 49:11
strongly [1] - 52:6
structures [1] - 47:4
stuff [2] - 5:13, 6:10
styled [1] - 5:6
subject [2] - 15:16, 24:15
submissions [1] - 34:9
submitted [2] - 3:11, 24:19
subpoena [20] - 3:12, 3:19, 5:9, 12:20, 13:1, 13:3, 22:14, 22:25, 26:25, 38:13, 39:12, 39:18, 40:12, 44:5, 44:10, 46:13, 48:19, 50:14, 52:18
subpoenaed [2] - 24:6, 37:18
subpoenaing [4] - 24:4, 24:10, 39:8, 43:18
subpoenas [18] - 19:21, 20:1, 21:4, 24:9, 24:14, 27:4, 30:10, 30:13, 30:20, 30:21, 30:25, 37:13, 37:20, 37:22, 48:9, 50:18, 50:21, 56:24
subsequent [2] - 4:21, 52:10
subset [2] - 32:17, 35:19
substantial [1] - 2:20
substantive [1] - 38:20
succeed [1] - 32:7
suddenly [2] - 41:4, 50:23
super [2] - 22:4, 50:11
superior [1] - 46:5
supplemental [1] - 11:6
support [3] - 2:24, 35:8, 50:19
supposed [1] - 12:17
survivors [1] - 17:16
suspect [1] - 43:16
sworn [1] - 45:16

**T**

tackle [1] - 40:6
tailoring [1] - 56:16
TAM [1] - 1:4
targeted [2] - 8:5, 56:24
TARYN [1] - 1:13
tasked [3] - 8:15, 9:5, 14:10
taxpayers [1] - 34:12

All Word // 09262023 Cuomo v NYSAG 22-mc-3044 (TAM)

team [1] - 38:3
temporarily [1] - 52:24
ten [3] - 3:22, 36:19, 46:16
terms [4] - 13:10, 22:19, 28:21, 29:6
test [1] - 5:1
testified [1] - 12:11
testify [1] - 55:21
testimony [10] - 19:8, 23:19, 32:12, 32:16, 33:18, 41:2, 41:17, 41:18, 45:16, 45:20
tethered [1] - 44:23
text [1] - 33:12
THAT [1] - 39:22
THE [96] - 1:8, 1:13, 1:22, 2:1, 2:12, 2:19, 6:16, 6:22, 7:11, 7:15, 7:23, 8:13, 9:2, 10:1, 10:4, 11:7, 11:9, 11:22, 12:15, 13:13, 13:19, 14:3, 15:4, 15:15, 15:24, 17:2, 17:13, 17:15, 19:1, 20:3, 20:8, 20:17, 20:22, 21:7, 21:11, 22:15, 23:8, 24:23, 25:6, 25:19, 25:23, 26:4, 27:9, 27:13, 28:11, 28:17, 28:22, 29:13, 29:20, 29:25, 30:6, 31:6, 31:14, 31:18, 31:20, 31:24, 32:2, 32:5, 34:16, 35:18, 36:1, 36:13, 36:21, 38:1, 40:3, 40:17, 41:9, 41:13, 41:20, 41:25, 42:19, 45:25, 46:22, 48:22, 49:5, 50:3, 50:17, 51:18, 52:1, 52:20, 52:24, 53:22, 54:8, 54:21, 55:11, 56:6, 56:13, 56:25, 57:5, 57:8, 57:16, 57:18, 57:20, 57:22, 57:24, 58:9
theoretically [1] - 2:13
theory [3] - 20:14, 56:13, 57:5
THERESA [1] - 1:21
Theresa [1] - 2:6
they've [2] - 22:4, 34:23
thinking [2] - 54:9, 54:11
thinks [1] - 19:18
third [4] - 11:19, 12:3, 21:17, 29:4
third-parties [3] - 11:19, 12:3, 21:17
third-party [1] - 29:4
thorough [3] - 8:17, 9:7, 49:24
threat [1] - 53:7
three [3] - 57:15, 57:17, 57:18
throughout [1] - 45:9
timing [1] - 47:18
today [5] - 7:3, 8:10, 38:7, 42:21, 45:13
together [1] - 26:2
ton [2] - 5:14, 47:9
tongue [1] - 14:4
tons [1] - 47:8
took [4] - 27:21, 34:22, 40:15, 45:9
top [1] - 36:15
topics [1] - 26:23
tortured [1] - 56:24
total [3] - 6:2, 9:10, 36:22
totally [3] - 16:9, 17:13, 43:21
touch [1] - 51:24
traditional [1] - 31:20
TRANSCRIPT [1] - 1:13

transcript [10] - 2:12, 14:15, 14:20, 14:24, 15:2, 17:10, 27:25, 33:14, 40:17, 42:23
transcripts [16] - 10:16, 11:20, 13:22, 13:25, 14:2, 15:17, 16:11, 16:16, 17:8, 17:23, 18:12, 18:20, 19:4, 19:22, 21:6, 34:22
traumatized [1] - 55:20
TREMONTE [1] - 1:19
Tremonte [1] - 2:7
trial [3] - 8:11, 49:13, 55:21
tribal [4] - 4:13, 4:14, 37:17, 37:18
tribe [1] - 37:17
tried [2] - 25:18, 40:11
triggers [1] - 18:6
Trooper [38] - 10:10, 11:16, 12:10, 21:15, 28:2, 28:3, 28:4, 28:6, 28:7, 28:15, 28:21, 29:10, 32:22, 33:11, 35:14, 37:3, 37:4, 37:6, 37:11, 40:13, 40:16, 40:19, 42:13, 44:4, 44:20, 45:10, 45:15, 45:16, 45:18, 49:18, 53:15, 54:13, 54:18, 55:17, 56:7, 56:8
trooper [2] - 27:20
Troopers [1] - 23:4
troopers [8] - 23:10, 23:19, 23:21, 23:24, 25:11, 40:19, 40:24
true [3] - 8:14, 28:5, 31:9
truly [1] - 57:6
trust [1] - 43:13
truthful [2] - 27:22, 28:8
try [10] - 9:17, 10:24, 22:2, 26:1, 39:14, 40:6, 43:17, 44:6, 45:17, 53:20
trying [13] - 8:3, 8:21, 9:11, 9:19, 16:18, 20:23, 22:19, 26:1, 26:25, 30:9, 41:22, 43:14
TRZASKOMA [52] - 1:21, 2:6, 6:17, 7:2, 7:13, 7:18, 7:24, 8:23, 9:18, 10:3, 11:5, 11:8, 11:10, 12:4, 19:3, 20:4, 20:11, 20:19, 20:25, 21:9, 22:12, 22:18, 24:24, 25:7, 25:21, 25:25, 27:4, 27:11, 27:15, 28:14, 28:19, 29:9, 29:17, 29:22, 30:2, 31:12, 31:15, 31:19, 31:21, 32:1, 32:4, 32:8, 39:11, 40:5, 41:11, 41:15, 41:22, 42:9, 51:14, 51:19, 53:12, 58:6
Trzaskoma [9] - 2:7, 6:16, 8:22, 19:1, 24:23, 38:2, 42:19, 50:25, 54:10
turn [3] - 5:21, 32:10, 34:8
turned [1] - 34:14
two [20] - 3:9, 8:8, 16:20, 16:22, 17:6, 17:11, 19:20, 30:10, 30:11, 33:11, 33:19, 36:18, 37:24, 40:18, 52:3, 52:18, 53:14, 54:24, 55:3, 57:25
tying [1] - 10:9
type [1] - 3:20
typical [1] - 33:16

## U

ultimately [2] - 10:8, 16:7

unclear [1] - 5:10
unconditional [1] - 15:14
under [10] - 3:12, 10:1, 20:9, 27:24, 36:6, 36:7, 44:14, 45:5, 45:7, 56:22
undergird [1] - 17:18
underlies [2] - 31:12, 31:15
underlying [1] - 38:20
understood [6] - 6:18, 10:3, 20:19, 21:22, 50:3, 53:12
union [7] - 25:17, 25:19, 25:21, 25:23, 41:12, 46:20, 46:25
unique [3] - 15:9, 51:18, 51:19
uniquely [1] - 3:15
unit [1] - 40:21
UNITED [2] - 1:1, 1:14
United [1] - 1:6
universe [1] - 13:8
unless [1] - 47:16
unprecedented [1] - 45:23
unredacted [9] - 11:20, 14:24, 15:6, 15:10, 16:16, 17:8, 18:12, 21:5, 34:22
untruthful [1] - 28:10
up [9] - 3:19, 15:20, 25:5, 25:11, 38:18, 38:23, 53:23, 56:4, 56:17
update [2] - 52:2, 57:14
ups [1] - 58:3
urge [1] - 49:14
urging [1] - 49:10
usual [1] - 57:9
utilized [1] - 50:6

## V

various [5] - 16:10, 18:18, 43:5, 49:12, 56:15
vast [2] - 13:12, 37:5
vehicle [5] - 6:1, 12:24, 12:25, 22:17, 52:11
version [1] - 13:9, 26:20
versus [3] - 2:2, 5:15, 37:15
vexing [1] - 51:15
viable [1] - 42:8
victims [2] - 55:18, 56:23
view [5] - 4:4, 7:17, 13:10, 43:7, 46:18
Vincent [1] - 32:19
virtually [1] - 43:7
vis-à-vis [1] - 55:18
Vladeck [3] - 19:22, 21:4, 37:13
voluminous [1] - 36:25
voluntarily [1] - 35:13

## W

wait [1] - 25:19
waive [1] - 35:10
waived [1] - 15:24
waiver [2] - 17:8, 18:15
waives [1] - 31:24
wants [2] - 35:16, 56:9

**warrant** [1] - 3:1
**waste** [2] - 6:3, 31:4
**ways** [3] - 16:18, 39:19, 49:15
**website** [6] - 15:5, 15:21, 15:25, 16:1, 16:12, 19:5
**weeks** [9] - 52:3, 53:14, 54:24, 55:3, 57:11, 57:15, 57:17, 57:18, 57:25
**weigh** [1] - 5:3
**weight** [1] - 26:10
**West** [1] - 1:16
**whatsoever** [1] - 26:22
**white** [1] - 50:10
**whole** [4] - 5:14, 16:13, 31:1, 37:25
**willing** [11] - 23:17, 27:18, 30:4, 42:22, 43:4, 44:10, 47:17, 47:24, 48:2, 51:20, 54:22
**willy** [1] - 44:22
**willy-nilly** [1] - 44:22
**withdraw** [2] - 30:25, 48:10
**withdrawn** [1] - 37:22
**withdraws** [1] - 48:8
**witness** [18] - 11:13, 11:15, 13:23, 14:14, 14:20, 14:23, 15:1, 17:19, 18:8, 19:6, 21:10, 21:12, 21:14, 23:9, 28:4, 28:14, 28:16, 29:10
**witnesses** [42] - 3:5, 4:17, 5:20, 6:10, 6:24, 7:3, 11:14, 11:20, 12:1, 12:5, 12:11, 12:13, 17:9, 17:24, 18:1, 18:12, 21:13, 22:3, 22:10, 22:21, 22:22, 23:6, 23:12, 23:14, 23:17, 29:11, 32:12, 32:14, 33:17, 36:22, 37:5, 42:15, 42:18, 43:4, 44:17, 44:20, 44:21, 45:18, 48:1, 56:1
**woman** [1] - 56:21
**word** [1] - 41:20
**works** [1] - 29:3
**world** [1] - 44:22
**writing** [2] - 3:9, 24:20
**wrongful** [2] - 16:4, 46:15

## Y

**year** [1] - 38:23
**years** [2] - 3:23, 46:16
**yesterday** [1] - 24:7
**YORK** [3] - 1:1, 1:8, 1:22
**York** [15] - 1:6, 1:17, 1:20, 1:24, 2:3, 12:13, 21:10, 34:12, 40:22, 46:7, 46:19, 47:2