SHER TREMONTE LLP

April 9, 2024

**BY ECF**

Hon. Taryn A. Merkl
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      **Re:**    ***Cuomo v. Office of the N.Y. State Attorney General*, 22-mc-3044 (LDH) (TAM)**

Dear Judge Merkl:

      We write on behalf of Governor Cuomo to update the Court in advance of the status conference concerning the narrowed subpoena to the OAG, scheduled for April 19, 2024. *See* OAG ECF No. 57. In light of the Court's direction that the parties be prepared to address the OAG's assertions of privilege at the conference, we reiterate our prior request that the OAG provide the Court with any as-redacted versions of those memos. OAG ECF No. 54.

      We originally made this request because the OAG specifically represented to the Court that interview memos had already been redacted for work product. T1 ECF No. 232-1 at 36:2-12 (transcript of September 26, 2023 court conference). As additional authority on this point, attached is a declaration that the OAG recently submitted in the Bennett Action. Ex. 1, Decl. of Ye Eun Charlotte Chun, Bennett ECF No. 224. The declaration, from the same Cleary attorney who provided a declaration in this matter, OAG ECF No. 20, confirms that Cleary has already reviewed and redacted 155 interview memos for attorney work product. Ex. 1 at 5. Based on this, we reasonably believe that most, if not all, of the interview memos the Court reviewed *in camera* have already been reviewed and redacted, and it will be useful for the Court to have those redacted versions in connection with any discussion around the OAG's claims of privilege.

      We appreciate the Court's consideration of this request.

                    Respectfully submitted,

                    */s/ Theresa Trzaskoma*

                    Theresa Trzaskoma

Attachment

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
                                                        X
CHARLOTTE BENNETT,                                      :
                                                        :
                        Plaintiff,                      :
                                                        :
        - against -                                     :    1:22-cv-07846 (VSB)(SLC)
                                                        :
ANDREW CUOMO,                                           :
MELISSA DEROSA,                                         :
JULL DESORISERS, and                                    :
JUDITH MOGUL,                                           :
                                                        :
                        Defendants.                     :
-------------------------------------------------------------X

**DECLARATION OF YE EUN CHARLOTTE CHUN**

I, Ye Eun Charlotte Chun, declare as follows pursuant to 28 U.S.C. § 1746:

1.  I am an attorney at the law firm Cleary Gottlieb Steen & Hamilton LLP ("Cleary").

2.  On March 26, 2021, pursuant to New York State Executive Law § 63(8), I was

    appointed a Special Assistant to the First Deputy Attorney General within the New York

    State Office of the Attorney General ("OAG") to conduct, with several of my colleagues,

    an independent investigation into, and report on allegations of, the circumstances

    surrounding sexual harassment by the former governor of New York, Andrew M.

    Cuomo ("Cuomo") (the "Investigation").

3.  On September 14, 2022, the above-captioned matter commenced in the United States

    District Court for the Southern District of New York.  On August 21, 2023, OAG was

    served with a nonparty subpoena by defendant Cuomo in the above-captioned matter

    (the "Subpoena").[1]

_____

[1] On November 13, 2023, Cleary and Vladeck, Raskin & Clark PC ("Vladeck") were served with identical nonparty subpoenas by defendant Cuomo.

4. I submit this declaration, based on my personal knowledge and my review of OAG records maintained by Cleary as well as publicly available records, in support of nonparty OAG's Cross-Motion to Quash the Subpoena and in Opposition to defendant Cuomo's Motion to Compel.

5. In my role as Special Assistant to the First Deputy Attorney General, I was a member of an investigative team comprised of attorneys from Cleary and Vladeck (collectively, the "Investigative Team"). Over the course of the Investigation, the Investigative Team interviewed 179 witnesses in connection with the allegations of, and the circumstances surrounding, sexual harassment by the former governor Cuomo, and took on-the-record testimony from 41 of these witnesses.[2] The Investigative Team additionally issued over 70 subpoenas for documents and collected over 74,000 documents. As required by New York State Executive Law § 63(8), the Investigative Team also periodically reported to OAG, consulting with attorneys in OAG's Office of General Counsel on issues relating to powers, practices, and procedures as they arose in the context of the Investigation.

6. From the outset and throughout the Investigation, former governor Cuomo, the Executive Chamber, and certain former and then-current members of the Executive Chamber indicated that they might assert legal challenges to aspects of the Investigation, including the selection and appointment of the § 63(8) appointees, the scope of issued subpoenas, privileges, and access to investigative materials produced by other witnesses. For example, in March 2021, the Investigative Team became aware of allegations that the former governor Cuomo and certain former and then-current members of the Executive Chamber staff were conducting what was referred to as "opposition research" on members of the Investigative Team and research on the personal history of women who had accused

---

[2] To the extent a witness provided both an interview and on-the-record testimony, we have counted each separately.

the former governor of misconduct.  Documents that were produced by witnesses to the Investigative Team confirmed this, including at least one such document that was published on the OAG website in redacted form (Ex. 104 to Report).  Additionally, as early as April 2021, the Executive Chamber and former members of the Executive Chamber made overly broad and unjustified assertions of privilege in order to limit the production of documents and information that would otherwise have been responsive to OAG subpoenas.  Counsel for the Executive Chamber and the former governor also requested access to testimony transcripts.  The Investigative Team responded as early as April 2021 that New York State Executive Law § 63(8) and New York State Civil Rights Law § 73(3) do not entitle witnesses access to their testimony transcripts, and that it is OAG's practice not to provide witnesses with copies of such transcripts to preserve and protect the confidentiality of the proceedings.  Even after the publication of the findings and conclusions of the Investigation (the "Report"), the former governor Cuomo continued to challenge the Report and the Investigative Team, including by filing ethics complaints against Investigative Team members in September 2022.

7. On August 3, 2021, the Investigative Team published the final Report.

8. Over the course of the Investigation, I was personally involved in the drafting and issuance of subpoenas, reviewing of responsive documents, interviewing witnesses, taking testimony, and drafting of the Report.  I was also involved in the exhibit redaction process for the Appendices to the Report.

9. Subsequent to the publication of the Report, I was personally involved in document productions to various government agencies, including district attorneys' offices, in response to requests for relevant portions of the investigative files in connection with those offices' criminal and civil investigations.  I was also personally involved in the

redaction process for transcripts, transcript exhibits, and (for a subset of the witnesses) testimony video footage for the 41 on-the-record witnesses, in advance of their publication on the OAG website. The review and redaction process for these transcripts, transcript exhibits, and video footage for publication took approximately five months. These materials were published on the OAG website between November 2021 and January 2022 as the redactions were completed.

10. The process for reviewing and redacting documents and other media files contained in the investigative files was extremely time-consuming in part due to the highly sensitive and confidential nature of information shared with the Investigative Team over the course of the Investigation. Examples of sensitive and confidential information include: identities (including identifying information) of witnesses who expressed credible fears of retaliation; identifying personal information, including home addresses, phone numbers, email addresses; health information about witnesses and others (including minor children) disclosed by witnesses; confidential employment personnel information; information implicating law enforcement and security plans; and various other types of personal information about the witnesses, including information about certain of their personal or romantic relationships.

11. There are over 100 witnesses who provided information for the Investigation whose identities were not provided in the Report, including a number of non-public on-the-record witnesses, many of whom expressed fears of retaliation and were hesitant to cooperate with the Investigation for this reason. Many witnesses who cooperated with the Investigation requested that their identity and the fact of their cooperation be kept confidential.

12. As part of the Appendices to the Report, the Investigative Team publicly made available

111 exhibits that were cited to or quoted from in the Report. Subsequent to the publication of the Report, additional documents and media files were published on OAG's website, either in whole or redacted form, including: transcripts for the 41 on-the-record witnesses, exhibits to each transcript, and video and/or audio files of 23 on-the-record witness testimonies. Combined, the Investigative Team reviewed and redacted approximately 1,000 documents for publication on the OAG website as either Appendices to the Report or as additional materials made available after the publication of the Report. The Investigative Team spent over 3,600 hours reviewing and redacting these documents.

13. Additionally, over the course of approximately three months, the Investigative Team reviewed and redacted 155 confidential interview memos solely for attorney work product, for the specific purpose of providing the memos to law enforcement partners and the New York State Assembly, pursuant to confidentiality agreements expressly preserving all applicable privileges. These interview memos contained the Investigative Team's mental impressions and were used by the Investigative Team as the basis to provide legal advice to OAG on next steps in the Investigation. These interview memos were always understood to be attorney work product, part of the investigative deliberative process, and never intended to be final work product to be produced or shared with the public. They were also created in anticipation of litigation, including potential challenges to the Investigative Team's work by the former governor Cuomo. They had been drafted by the Investigative Team with the intention to be kept confidential, notwithstanding that the Report would be made public.[3]

---

[3] Indeed, Cleary's engagement letter with OAG noted that "All communications, information or materials provided to FIRM or identified as part of the Matter shall be treated as confidential, and not disclosed to any other party." *See* page 2 of Exhibit 5 attached to the Declaration of Serena Longley dated March 22, 2024 (the "Longley Declaration").

14. Just as with the transcripts, transcript exhibits, testimony videos, and Appendices to the Report that were published on the OAG website, these interview memos contain highly sensitive and confidential information as described in paragraph 10. These memos have never been redacted for attorney-client, law enforcement, legislative, or any other applicable privileges for production in civil litigation, or for purposes of any other disclosure.

15. The Subpoena contains requests that are vague and, if interpreted literally, could potentially require review and production of almost the entire file of the Investigative Team. For example, the number of witnesses potentially covered by Document Request Nos. 1 and 2 totals over 100 individuals, some of whom were interviewed over the course of multiple days, generating multiple interview memos, transcripts, and/or video testimonies.

16. At minimum, the Subpoena seems to call for interview memos, transcripts, and video testimonies of Charlotte Bennett, Trooper 1, Lindsey Boylan, and any current or former employees of the Executive Chamber under former governor Cuomo. This volume alone totals approximately 85 interview memos, 35 transcripts, and 35 video testimonies.[4]

17. The volume of documents described in the paragraph 16, however, relates solely to the interview memos, transcripts, and video testimonies of Charlotte Bennett, Trooper 1, Lindsey Boylan, and any current or former employees of the Executive Chamber under former governor Cuomo. This volume does not include any additional interview memos, transcripts, and video testimonies of other witnesses that may be "concerning" or "referencing" Charlotte Bennett, Trooper 1, or Lindsey Boylan; which itself would be a

---

[4] To the extent a witness was interviewed multiple times and multiple interview memos, transcripts, or video testimonies were generated, each are counted separately.

significant volume.  Prior to and during the course of the Investigation, Charlotte Bennett and Lindsey Boylan had made public allegations against defendant Cuomo, and thus their names were known by those interviewed as a part of our Investigation.  As a result, their names frequently appear across the full set of investigative files.

18. OAG asserts privilege over the interview memos in their entirety.  However, even if the more limited set of materials described in paragraph 16 were to be reviewed and redacted, I anticipate this process would take Cleary thousands of attorney hours based on the experience of reviewing and redacting materials previously as discussed herein.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on March 22, 2024


_____

Ye Eun Charlotte Chun