UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

| | X |
|---|---|
| ANDREW M. CUOMO, | : |
| | :   1:22-mc-03044 (LDH)(TAM) |
| Movant, | : |
| | : |
| | :   **DECLARATION OF** |
| - against - | :   **SERENA LONGLEY** |
| | : |
| OFFICE OF THE NEW YORK STATE | : |
| ATTORNEY GENERAL, | : |
| | : |
| Defendant. | : |
| | : |

---------------------------------------------------------------:

  X

I, SERENA LONGLEY, an attorney admitted to practice before this Court, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. From September 2019 until May 31, 2024, I served as Deputy General Counsel to the New York State Office of the Attorney General ("OAG"), Defendant in the above-captioned miscellaneous action and respondent to the nonparty subpoena dated April 23, 2024 (the "Subpoena") served by Movant Cuomo in the case entitled *Trooper 1 v. New York State Police, et al.*, No. 22-cv-00893 (LDH) (TAM) (the "Trooper 1 Action").

2. I submit this declaration, based on my personal knowledge and my review of records in the possession of OAG as well as publicly available records, in support of Defendant OAG's Motion to Quash the Subpoena.

3. In March 2021, I actively participated in OAG's appointment and engagement of private attorneys as Special Deputies and Assistants of OAG to conduct an investigation into allegations of, and circumstances surrounding, sexual harassment claims made against then-

Governor Cuomo pursuant to New York Executive Law § 63(8) (the "Investigation"). I was also one of the attorneys at OAG to whom the appointees reported during the Investigation.

4.      After the Investigation concluded, I assisted in the review and redaction process of witness testimony and exhibits in connection with the public release of the Investigation report (the "Report"). I was also personally involved in OAG's cooperation with a number of other governmental investigations (at the request of the government entities to OAG) relating to former Governor Cuomo, including by providing to those entities certain materials from the Investigation. All other government entities receiving such material were advised by OAG as a condition precedent to OAG's disclosure of such material, that OAG was not waiving privilege or confidentiality by sharing these materials.

A.   **The Executive Law § 63(8) Referral to OAG**

5.      By letter dated March 1, 2021, the Office of then-Governor Andrew M. Cuomo, made a referral to OAG, pursuant to New York Executive Law § 63(8), for "OAG to select an independent law firm to conduct an inquiry into allegations of and circumstances surrounding sexual harassment claims made against the Governor." A true and correct copy of the March 1, 2021 letter (the "Referral Letter") is attached hereto as Exhibit 1.

6.      The Referral Letter acknowledged "that nothing in this letter is intended to constrain or limit the powers inherent in Executive Law § 63(8)." *Id.*

7.      In general, an Executive Law § 63(8) referral empowers OAG to conduct an inquiry, and at OAG's discretion, "appoint and employ" deputies, officers and other persons who are not employed by the government, to inquire into matters "concerning the public peace, public safety and public justice" and authorizes such appointees to issue and compel subpoenas for testimony and documents in furtherance of said inquiry. *See* N.Y. Exec. Law § 63(8). Executive Law § 63(8) appointees may be, but are not required to be, attorneys.

2

8.    Pursuant to Executive Law § 63(8), appointees are generally required to report on a weekly basis to OAG with a duplicate copy of the report provided to the Office of the Governor. *Id*. However, given the unique circumstances of this specific Executive Law § 63(8) referral (*i.e.*, OAG was tasked with conducting an investigation into allegations of sexual harassment by then-Governor Cuomo), the Referral Letter directed that the weekly reports would be submitted exclusively to OAG. *See* Ex. 1.

9.    It is a misdemeanor under Executive Law § 63(8) for anyone involved in a § 63(8) investigation to disclose information obtained during the investigation, including the names of witnesses, without prior authorization from the attorney general or the governor. *See* N.Y. Exec. Law § 63(8) ("Any officer participating in such inquiry and any person examined as a witness upon such inquiry who shall disclose to any person other than the governor or the attorney-general the name of any witness examined or any information obtained upon such inquiry, except as directed by the governor or the attorney-general, shall be guilty of a misdemeanor.")

10.    In a press conference on March 3, 2021, referring to the allegations of sexual harassment against him, then-Governor Cuomo stated:

> I ask the people of this State to wait for the facts from the Attorney General's report before forming an opinion. Get the facts please before forming an opinion and the Attorney General is doing that review. I will fully cooperate with it and then you will have the facts and make a decision when you know the facts.

A true and correct copy of the Governor's Office March 3, 2021 Email Press Release containing transcription of the relevant portion of the press conference is attached hereto as Exhibit 2.[1]

---

[1] Video footage of the entire press conference is *available at* https://www.c-span.org/video/?509520-1/york-governor-cuomo-apologizes-actions-resign (last accessed 6/6/2024).

11.     In that same press conference on March, 3, 2021, in response to questions about

whether he planned to "step aside" and/or resign, then-Governor Cuomo stated:

- "I am going to cooperate with the Attorney General's investigation." *Id.* at mark 29:52.

- "The facts will come out in the Attorney General's review." *Id.* at mark 35:05.

- "Let the Attorney General do a review and let's get the facts. That's what I said in my statement to New Yorkers…Wait for the facts before you form an opinion…Let the Attorney General's Office actually review the facts." *Id.* at mark 37:32.

12.     In a press conference on March 7, 2021, Cuomo stated:

- "So, we have the Attorney General who's doing an independent review. She has all the allegations, anybody can make an allegation to her, and let the Attorney General do her job. *She's very good, she's very competent, and that will be due process and then we'll have the facts.* That's why Senator Schumer said let the Attorney General do her investigation, Senator Gillibrand said let the Attorney General do her investigation, Congressman Jeffries said let the Attorney General do her investigation, the White House Spokesperson said let the Attorney General do the investigation, because that's democracy. So no, there is no way I resign. Let's do the Attorney General investigation, let's get the findings, and then we'll go from there."

A true and correct copy of the Governor's Office's March 7, 2021 Email Press Release

containing transcription of a portion of the press conference is attached hereto as Exhibit 3

(emphasis added).

13.     Beginning on March 8, 2021, pursuant to Executive Law § 63(8) and the Referral

Letter, OAG began appointing a team of private attorneys to investigate and report on allegations

of, and circumstances surrounding, sexual harassment by then-Governor Cuomo (the

"Investigative Team"). The Investigative Team consisted of four Special Deputies and eight

Special Assistants from Cleary Gottlieb Steen & Hamilton LLP (Joon Kim, Jennifer Kennedy

Park, Abena Mainoo, Rahul Mukhi, Andrew Weaver, Avion Tai, Soo Jee Lee, Lorena Michelen,

Ye Eun (Charlotte) Chun, Hyatt Mustefa, Lilianna Rembar, and Nikkisha Z. Scott) and two

Special Deputies and two Special Assistants from Vladeck, Raskin & Clark, P.C. (Anne Clark, Yannick Grant, Ezra Cukor, and Emily Miller).

14.     During the terms of their appointments, attorneys on the Investigative Team were part of OAG.  As set forth in their appointment letters, the Investigative Team was limited to using their authority under Executive Law § 63(8) "exclusively for the benefit of the OAG and the People of the State of New York" and were obligated to keep all information obtained in the course of the Investigation confidential notwithstanding their mandate to produce a public report at the close of the Investigation. True and correct copies of exemplars of the March 8, 2021 appointment letters, one from each law firm (the "Appointment Letters"), are collectively attached hereto as Exhibit 4.[2]

15.     Pursuant to and consistent with the Executive Law § 63(8) appointments, OAG retained the law firms associated with the Investigative Team: Cleary Gottlieb Steen & Hamilton LLP and Vladeck, Raskin & Clark, P.C. (collectively the "Firms").  The Firms were specifically engaged "to provide investigation and legal services by assisting the [OAG] in its review of allegations of, and circumstances surrounding, sexual harassment against Governor Andrew Cuomo" and "produce a public report with their findings and conclusions." *See* Appointment Letters (Exhibit 4) and OAG's engagement letters (the "Engagement Letters") with the Firms, attached as Exhibit 5.

16.     Under normal circumstances, the Office of the Governor *and* OAG would both have an attorney-client relationship with any Executive Law § 63(8) appointees (in addition to the attorney-client relationship between OAG and the Office of the Governor).  However, in this specific instance, since the Governor himself was the subject of the Investigation, OAG did not

---

[2] The appointment letters for each member of the Investigative Team contained the same substantive authority and direction.

act in an attorney-client capacity with respect to the Office of the Governor. In this instance the only attorney-client relationship that existed was between the Investigative Team, the law firms, and internal OAG attorneys working on the Investigation, all acting as attorneys, and OAG, the client.

17.     Moreover, the Executive Law § 63(8) engagements also authorized the Firms that employed the appointees to utilize any of their resources as they deemed appropriate to carry out the engaged services. The engagements also required the Firms and their employees to "communicate and provide services solely at the direction of First Deputy Attorney General, Jennifer Levy, or [her] designee, on behalf of the Attorney General of the State of New York. All communications, information or materials provided to [the Firms] or identified as part of the [Investigation] shall be treated as confidential, and not disclosed to any other party…" and required that the Firms agree "to maintain confidentiality of any and all records it does retain for the time contemplated by this engagement, if any." Exhibit 5.

18.     On March 8, 2021, the Investigative Team, led by the duly appointed Special Deputies to the First Deputy Attorney General, Joon Kim and Anne Clark, commenced the independent Investigation into allegations of, and circumstances surrounding, sexual harassment by then-governor Cuomo.

19.     On August 3, 2021, the Investigative Team concluded the Investigation by publicly issuing the Report and three appendices (containing 111 exhibits). A true and correct copy of the Report and accompanying appendices are available on OAG's website at: https://ag.ny.gov/press-release/2021/independent-investigators-find-governor-cuomo-sexually-harassed-multiple-women (last accessed 6/6/2024). During the course of the Investigation, the Investigative Team interviewed 179 individuals, took testimony under oath from 41 of those

witnesses, and received over 74,000 documents. *See* Declaration of Ye Eun Charlotte dated March 22, 2024 ("Chun Decl.") ¶ 5.

20.     As part of the mandated reporting to OAG as required by Executive Law § 63(8), the Investigative Team consulted with OAG on issues relating to OAG's powers, practices, and procedures as they arose in the context of the Investigation. Examples of such issues included OAG's investigative procedures, protocols, timing and techniques, as well as OAG's interpretation and potential application of various laws.  *See Id.*

21.     During the course of the Investigation, the Investigative Team reported to OAG that Cuomo and the Executive Chamber (part of the Office of the Governor) resisted and challenged various aspects of the Investigation, including making what the Investigative Team viewed as unjustified assertions of privilege, questioning the scope of certain requests, and claiming the legal right to access investigative material which the Investigative Team did not believe they had.[3] Moreover, evidence gathered during the Investigation indicated that Cuomo and members of the Executive Chamber—from the inception of the Investigation—attempted to undermine the Investigation (and any unfavorable findings) by singling out and attacking members of the Investigative Team and by criticizing the OAG and the Attorney General.  Based on this information, OAG anticipated that litigation or other judicial proceedings initiated by Cuomo or others aligned with him were likely to result if the Investigation yielded any negative results for Cuomo or the Executive Chamber. *See* Chun Decl. ¶ 6.

---

[3] Counsel for the Executive Chamber and Cuomo were notified during the Investigation that the legal provisions pursuant to which testimony was taken (N.Y. Executive Law § 63(8) and N.Y. Civil Rights Law § 73) do not entitle witnesses to access their testimony and that it is against OAG practice to provide witnesses access to their testimony apart from access granted to the public, if any. *See also* Chun Decl. ¶ 6.

**B. The Investigative Team Collected and Created Voluminous Materials Replete with Privileged, Confidential and Private Information**

22.     The material collected during the course of the Investigation by the Investigative Team is substantial, consisting of information from 179 witnesses and over 74,000 documents. As set forth in the Chun Declaration, this material contains highly sensitive privileged and confidential information. *See* Chun Decl. ¶¶ 5, 10-11, 13-14.

23.     On August 6, 2021, counsel to the Judiciary Committee of the New York State Assembly (the "AJC") requested investigative materials from OAG in connection with the Assembly's own open impeachment investigation[4] concerning then-Governor Cuomo. In response, on August 7, 2021, OAG commenced providing certain materials collected by the Investigative Team to the AJC subject to the following terms:

> The OAG, the Judiciary Committee of the New York State Assembly, the New York State Assembly, and Impeachment Counsel (the lawyers of the law firm Davis Polk & Wardell LLP that have been retained by the New York State Assembly to conduct an impeachment investigation into allegations against Governor Andrew Cuomo) (collectively the "New York State Assembly parties") agree that it is in the public interest that the OAG provide the New York State Assembly parties with materials collected by the Independent Investigators in connection with the August 3, 2021 *Report of Investigation Into Allegations of Sexual Harassment by Governor Andrew M. Cuomo . . .* The New York State Assembly parties agree that in maintaining or disclosing any of the provided materials, it will endeavor to do so in a manner that protects any privileges attaching to such materials, and which is in furtherance of our shared duty to protect the public interest.  Finally, OAG and the New York State Assembly parties confirm their understanding that by providing these materials or other information, OAG is not waiving confidentiality or privilege with respect to any other materials or information or aspects of OAG investigations.

---

[4] On August 13, 2021, Assembly Speaker Carl Heastie announced the suspension of the Assembly's impeachment investigation because then-Governor Cuomo's resignation had resolved the purpose of the investigation, which was to determine if the governor should stay in office, noting that the evidence adduced so far "we believe – could likely have resulted in articles of impeachment had [the governor] not resigned."  Statement from Speaker Carl Heastie on Impeachment Investigation, August 13, 2021, *available at* https://assembly.state.ny.us/Press/?sec=story&story=98632 (last accessed 6/6/2024).

**C.  OAG's Public Release of Transcripts and Exhibits from the Investigation**

24.    OAG decided, in furtherance of the public interest, to publish witness testimony and related exhibits from the Investigation in redacted form (all of which were materials collected – not created – by the Investigative Team). OAG limited public release to these materials in redacted form to protect the privacy interests of individual witnesses as well as, relatedly, the integrity and privilege of OAG's investigative protocols and techniques.

25.    In anticipation of publishing these materials, on or about August 4, 2021, the Investigative Team started to review for redaction witness testimony and exhibits shown to witnesses during their interviews, which contained confidential and sensitive information of the types described in paragraph 10 of the Chun Declaration. Due to the time and resource-intensive nature of this review, OAG anticipated publishing materials on a rolling basis; however, OAG temporarily refrained from publicly releasing additional materials in response to requests from several law enforcement entities as explained more fully below.

**D.  OAG Discloses Certain Materials Subject to Confidentiality Agreements in Response to Requests by Other Government Agencies**

26.    Following the release of the Report, between August 3, 2021 and August 9, 2021, District Attorneys from the Counties of Albany, New York, Westchester, Nassau, and Oswego (the "Five DAs") requested OAG's cooperation in providing certain investigative materials to their Offices in conjunction with their own independent investigations and possible criminal charges against former Governor Cuomo.

27.    On or about August 15, 2021, OAG began providing certain requested materials to the Five DAs subject to the following terms:

> The OAG and District Attorneys for Albany, Nassau, New York, Oswego, and Westchester Counties (collectively the "Five DAs") agree that it is in the public interest that the OAG provide the Five DAs with certain materials collected by the Independent Investigators in connection with the August 3, 2021 *Report of Investigation Into*

*Allegations of Sexual Harassment by Governor Andrew M. Cuomo* . . . The Five DAs agree that in maintaining or disclosing any of the provided materials, they will endeavor to do so in manner that protects any privileges attaching to such materials, and which is in furtherance of our shared duty to protect the public interest, including protecting the integrity of OAG's investigations. Finally, OAG and the Five DAs confirm their understanding that by providing these materials or other information, OAG is not waiving confidentiality or privilege with respect to any other materials or information or aspects of OAG investigations.

28.     On or about August 13, 2021, the United States Department of Justice and the United States Attorney's Office for the Eastern District of New York (collectively, the "United States") jointly requested certain OAG materials in connection with their own investigation into whether the Executive Chamber, led by former Governor Andrew Cuomo, engaged in a pattern or practice of sexual harassment and a pattern or practice of retaliation in violation of federal law. To the extent OAG provided materials in response, if any, those materials were subject to the same material terms as set forth above in paragraph 27.

29.     On or about August 24, 2021, OAG began providing certain requested materials to the Albany County Sherriff's Office subject to the same material terms set forth above in paragraph 27.

30.     Between August 18 and August 23, 2021, District Attorneys from the Counties of Nassau, Oswego, Westchester and Albany formally requested OAG refrain from publicly releasing underlying evidence from the Investigation since their Offices' investigations into former Governor Cuomo were in their preliminary stages.

31.     In response to this request, OAG agreed to temporarily refrain from publicly releasing testimony and exhibits in redacted form.

32.     After learning that the Albany County District Attorney was in the process of providing certain materials, including testimony and exhibits, from the Investigation to Cuomo in his role as a defendant in a criminal proceeding and as part of the criminal discovery process, on

10

or about November 10, 2021, OAG, in consultation with other law enforcement entities, including the Albany County District Attorney, determined it was appropriate to resume its public release of witness testimony and related exhibits in redacted form as previously commenced.

33.     The testimony and exhibits collected by the Investigative Team that are available on OAG's website include, in redacted form: testimony transcripts for 41 on-the-record witnesses and video or audio recordings of testimony from 23 of those witnesses as well as approximately 1,000 documents collected by the Investigative Team, which constitute exhibits to the Report or exhibits to on-the-record testimony. True and correct copies of these materials are *available at* https://ag.ny.gov/CuomoIndependentInvestigation (last accessed 6/6/2024).

34.     As set forth in the Chun Declaration, for purposes of providing public access to testimony and testimony exhibits from the Investigation, Cleary undertook the review and redaction of transcripts for the 41 on-the-record witnesses, exhibits to each transcript (approximately 1,000 documents of the 74,000 documents collected by the Investigative Team), and video or audio files of the recorded testimony for 23 of the on-the-record witnesses.  This process took the Investigative Team over 3,600 hours (at taxpayer expense) to complete. Chun Decl. ¶ 12.

35.     OAG began making testimony and related exhibits publicly available on its website on November 10, 2021 and continued publishing them on a rolling basis as the review and redaction of each item was completed. *See* Chun Decl. ¶ 9.

**E.  OAG Balances Public Interest in Transparency with Public Interest in Preserving Law Enforcement Privilege and Protection of Individual Privacy**

36.     Generally, a cornerstone of OAG's civil and criminal investigations is the ability to protect the private, personal, and confidential information of witnesses or other private

individuals collected in the course of an investigation. While OAG has broad subpoena power, voluntary cooperation from witnesses, complainants, victims, and whistleblowers is essential to any investigation conducted by OAG. This is because it is extremely common for witnesses to be reluctant to share information with OAG attorneys and investigators out of fear that private information about them will become public and result in negative consequences for them or their families as well as out of fear that the information will be shared with the subject of an investigation who will then retaliate against them. OAG has a policy of respecting and protecting witness privacy and confidentiality to the greatest extent possible, consistent with conducting a thorough investigation and complying with all applicable legal requirements. This means that OAG protocol does not permit sharing private, personal, or confidential information collected in an investigation beyond what is necessary for legitimate law enforcement business or is legally required (for example, certain materials must be disclosed to a defendant in criminal proceedings). OAG also takes witness requests for anonymity very seriously; when a witness's identity is not material to OAG's investigative findings, OAG will honor that witness's request to remain anonymous to the greatest extent permitted by law. OAG regularly assures reluctant witnesses that it will take steps to protect their privacy, confidentiality, and even identities to the greatest extent possible consistent with carrying out OAG's constitutional and statutory functions and to the extent permitted by law.

37.     As set forth in the Chun Declaration, the materials requested in the Subpoena are replete with highly sensitive and confidential information pertaining to witnesses as well as their family members and other individuals.  Chun Decl. ¶¶ 10-11.

38.     It is against OAG protocol, and would seriously undermine OAG's future investigative efforts, for OAG to make public, or provide to the subject of a prior investigation,

the types of sensitive information set forth in paragraphs 10-11 of the Chun Declaration. If OAG does not protect these types of materials from public release, or release to a subject of investigation (including one with a history of publicly releasing materials like Cuomo, as discussed more fully below in paragraphs 42-47), OAG jeopardizes its ability to collect complete and sensitive information in future investigations. Releasing this type of information, especially when not necessary for the public to understand the bases for the findings and conclusions of an investigation, would serve to undermine OAG's credibility with complainants, victims, and witnesses of illegal activity whom OAG relies on to voluntarily come forward and cooperate in OAG investigations.

39.     As set forth in paragraph 11 of the Chun Declaration, there are over 100 witnesses whose identities are not otherwise known to the public, including a number of non-public on-the-record witnesses, many of whom expressed credible fears of retaliation and were hesitant to cooperate with the Investigation for this reason. Many witnesses who cooperated with the Investigative Team requested that their identity and the fact of their cooperation be protected, and they likely might not have cooperated as fully had they believed their identities, the substance of the information provided, and/or the documents they produced would be made known to the former Governor, former members of the Executive Chamber, or their counsel.

40.     It is against OAG protocol and counter to OAG's future investigative efforts to release information from and about these individuals, including their identities, because: (1) to the extent not included in the Report or already published in investigative materials, this information is not material to the findings or conclusions of the Investigation; (2) exposing the identities of and information provided by these witnesses would contradict OAG's express assurances of confidentiality provided to them; (3) these witnesses (and others referenced by

them) are likely to suffer negative consequences, including embarrassment and, most significantly, retaliation, from having their participation made public and known to Cuomo; and (4) OAG reasonably anticipates it will discourage potential future complainants, victims, and witnesses from cooperating with future OAG investigations out of concern that their private, personal, and sensitive information will become public and they will be subject to retaliation by investigation targets.

41.     Consistent with New York Civil Rights Law § 73 and OAG's general policy to safeguard private, personal, and sensitive information, OAG has consistently maintained the position that witnesses cooperating in the Investigation and their counsel, including complainants and former-Governor Cuomo, are not entitled to copies of their testimony transcripts. Witnesses may obtain copies of their testimony transcripts in redacted form on OAG's website just like any other member of the public.

**F.  Movant's History of Retaliation, Attacks on the OAG Investigation, and Calls for Additional Access to OAG Investigatory Documents**

42.     Throughout the Investigation and continuing into the present, the Investigative Team has learned of multiple efforts by Cuomo's advisors to obtain negative information about Investigative Team members and the women who had accused then-governor Cuomo of sexual harassment. *See* Chun Decl. ¶ 6.

43.     By letter to the Chair of the AJC dated September 13, 2021, Cuomo's counsel attacked the Investigation, the Report, lead outside investigators Joon Kim and Anne Clark, as well as several of the women who accused Cuomo of sexual harassment. This letter included, among other things, a detailed personal attack on Charlotte Bennett's "credibility," based on an anonymous and unverified allegation that she "falsely" accused a fellow student of sexual assault

while she was a student at Hamilton College.  *Cuomo v. New York State Assembly Judiciary Committee*., No. 22-mc-3027 (E.D.N.Y.) at ECF No 16-11.

44.    During the approximately one-year period immediately following his resignation, Movant has repeatedly criticized the OAG Investigation and complained about his lack of access to non-public OAG investigative materials, speculating that the non-public materials will clear his name, including, for example, the following:

- Attached hereto as Exhibit 6 is a true and correct copy of a letter sent to OAG on August 4, 2021, one day after the issuance of the Report, from counsel to the Executive Chamber (part of the Office of the Governor).  In the letter, counsel to the Executive Chamber attacks the Report, largely based on purportedly negative information about and attacks on outside attorney investigators Kim and Clark, and also complains about their client's lack of access to underlying materials from the Investigation.

- On August 7, 2021, during an appearance on CNN, Cuomo's counsel called the report "shoddy" and "biased" and stated, "they haven't shared all of their evidence."  Video interview *available at* https://www.cnn.com/videos/politics/2021/08/07/rita-glavin-attorney-ny-governor-andrew-cuomo-accusers-bts-nr-vpx.cnn (last accessed 6/6/2024); *see* video at mark 4:10.

- On August 9, 2021, during an appearance on MSNBC, Cuomo's counsel disputed the Report and stated "the attorney general is not giving the governor or me access to [evidence].  I have asked the Attorney General for access to evidence such as the testimony…it is really important that I get access to it."  Video interview *available* at https://www.youtube.com/watch?v=hNgx0fKG3-Q (last accessed 6/6/2024); *see* video at mark 3:40-4:10.

- Also on August 9, 2021, during an appearance on CNN, Cuomo's counsel criticized the Report and stated "the governor should be allowed the opportunity to see that evidence and do a fulsome submission" to the Assembly in connection with the impeachment inquiry. Video interview available at https://www.facebook.com/cnn/videos/1277181886064430/?extid=SEO---- (last accessed 6/6/2024); *see* video at mark 1:58-2:04.

- On August 10, 2021, during a government press conference, Cuomo's counsel criticized Kim, Clark and the Report and stated "the investigators have not provided me, the lawyer for the governor, who is being asked to give a submission to the Assembly, a single transcript to allow him to respond.  They haven't even given him his own." Video of the press conference is *available at* https://www.youtube.com/watch?v=otxfPhSoBkc&t=1s (last accessed 6/6/2024); *see* video at mark 36:38-39:25.

- On September 29, 2021, Cuomo's campaign published a press release, publicly calling on the Attorney General to answer the following question, among others:

  "The Governor requested to record his own interview – why did you refuse that request? And why won't you release the video tape of his own testimony to him or publicly? Why haven't you given the evidence and transcripts that you allegedly used to reach your conclusions over to the Governor and those you named in the report so that they could properly defend themselves?" Cuomo Press Release (Sept. 29, 2021), *available at* https://www.andrewcuomo.com/news/new-yorkers-deserve-answers (last accessed 6/6/2024).

- On October 20, 2021, Cuomo tweeted a link to his counsel's submission to OAG, attacking Kim and Clark, and several of the women who accused him of sexual harassment, and claiming the Investigation and Report were biased because, among other reasons, he was not "provided the materials underlying the Report despite repeated written requests for them, and was therefore deprived of the opportunity to adequately respond defense prior to his resignation."  Tweet available at https://twitter.com/andrewcuomo/status/1450866007359332352?s=20&t=TmON1co9 ny8QH0aT_L0kaA (last accessed 6/6/2024); Cuomo submission to OAG, generally and at p. 150, available at https://www.andrewcuomo.com/sites/default/files/files/documents/2021.10.20Submis siontoAG.pdf (last accessed 6/6/2024)

- On December 16, 2021, Cuomo's counsel held a press conference calling for the evidence underlying the report and stating "The attorney general's office has not responded to my written requests for all the evidentiary materials underlying the report and the fact that we don't have access to the evidence, we don't have access to the evidence underlying that report, that completely handicaps our ability to respond or defend against it." Video recording of the press conference is available at https://vimeo.com/666520727 at mark 16:53-17:38 (last accessed 6/6/2024).

- On January 13, 2022, Cuomo's counsel held a two-hour-long live-streamed press conference attacking the Report, expressing frustration that her requests for evidence to OAG had been ignored, and stating "I wish we had all of [the AG's evidence].  I wish the attorney general would give me everything, she won't." Video recording if the press conference is https://www.youtube.com/watch?v=QrZVv_XuR18; *see at* mark 1:12:23-1:12:30 (last accessed 6/6/2024).

- On January 13, 2022, Cuomo's counsel was interviewed on live television by Dan Abrams, where she challenged the Investigation and Report and questioned why OAG had not shared additional documents and interview memos with her. https://www.youtube.com/watch?v=A_6-Wav5frc&t=195s at mark 8:12- 8:33 (last accessed 6/6/2024).

- On September 13, 2022, The New York Times published an article headlined, "Cuomo Files Ethics Complaint Against Letitia James," which included a link to a 48-page document at https://www.nytimes.com/2022/09/13/nyregion/andrew-cuomo-

letitia-james.html (last accessed 6/6/2024) with subject line "Complaint by Former Governor Andrew M. Cuomo Against Attorney General Letitia James, Joon Kim, Esq., and Anne Clark, Esq." ("Ethics Complaint"). The Ethics Complaint criticizes the Investigation, the Report, Kim, Clark, several of the women who accused Cuomo of sexual harassment, and complains that OAG has not provided him the opportunity to scrutinize all of the evidence underlying the report. *See* Ethics Complaint at pp. 17-38, 41-42. At the time of the New York Times' publication of the Ethics Complaint, OAG, Attorney General Letitia James, Joon Kim, and Anne Clark had not yet received or obtained a copy of the Ethics Complaint linked to in the article.[5]

45.     More recently, during approximately the last two years, Cuomo and his affiliates

have continued to retaliate against witnesses from OAG's investigation online, through

aggressive public relations tactics, and in court filings, including, for example:

- The New York Times reported that for two years, Cuomo's sister, Madeline Cuomo directed retaliatory online attacks on her brother's accusers. According to her own text messages she did this with Cuomo's knowledge and at his direction. She reportedly exchanged more than 4,000 text messages with leaders of an online Cuomo support group directing attacks, including against Charlotte Bennett (directing online group to publicize "bimbo" pictures of Bennett contrasted with "austere, professional" photos of loyal Cuomo aides); Karen Hinton and Lindsay Boylan (directing online group that Hinton and Boylan "need to be frightened into shutting up right now – Enough is enough"); Trooper 1 ("I think we should use current sentiment around police and authority in our favor and reply by saying something to the effect that her being a member of the force does not in any way mean she is infallible, and her motivations need to be considered as well. This is a woman with real financial insecurity. I believe her husband's out of work – and she had other expenses and needs the money. (easy enough to google articles)"). *See The Secret Hand Behind the Women Who Stood by Cuomo? His Sister, available at* https://www.nytimes.com/2023/08/07/nyregion/cuomo-women-sister-madeline.html (last accessed 6/6/2024).

- Despite Ana Liss-Jackson's *Trooper 1* deposition transcript being designated confidential and subject to an active protective order, aides to Cuomo distributed her *Trooper 1* transcript to the press. Subsequent to Cuomo's aides' public release of the confidential transcript, the Court denied his request to de-designate the entire transcript as confidential. *See* ECF No. 204 at fn.1 (December 26, 2023 denying Cuomo's request to de-designate material as confidential); ECF No. 209-3 (August 9, 2023 letter from attorney for Ms. Liss-Jackson stating that despite designating the transcript confidential pursuant to the protective order in place, it was released to a reporter and a pro-Cuomo social media group that has been trashing Ms. Liss-Jackson

---

[5] The Attorney Grievance Committee closed its investigation of the Ethics Complaint without seeking a response from the respondents.

online); *see also, Circulation of former Cuomo aide's deposition sets off firestorm*, available at https://www.timesunion.com/state/article/circulation-former-cuomo-aides-deposition-sets-18289822.php?IPID=Times-Union-HP-spotlight (last accessed 6/6/2024) (reporting that "Cuomo's team denied providing the deposition to anyone other than news reporters," *i.e.*, admitted providing the confidential transcript to reporters *before* the court ruled on Cuomo's ultimately unsuccessful application to remove the transcript's confidential designation); *Ex-Cuomo aide wants a transcript private. The governor's team already distributed it*., available at https://gothamist.com/news/ex-cuomo-aide-wants-a-transcript-private-the-former-ny-governors-team-already-distributed-it (last accessed 6/6/2024).

- In *Trooper 1*, seven former OAG witnesses, in addition to Ms. Liss-Jackson, have opposed third party discovery on the grounds that Cuomo is improperly using civil discovery to harass and retaliate against them for cooperating in OAG's Investigation and speaking out against Cuomo:

  o  *See, e.g., Trooper 1*, ECF No. 179 at p.1, November 16, 2023 Letter from 5 nonparties (Limmiatis, McGrath, Kaitlin, State Entity Employee # 2, Boylan) ("Each of the non-parties courageously came forward years ago to report their respective harassment experiences by Cuomo. They dutifully cooperated with the New York Attorney General's Office. At the time and since then Cuomo and his counsel have subjected them to vicious public attacks – including in numerous press conferences and cable news appearances as recently as last week – in which Cuomo and his counsel have called the non-parties liars and worse. Cuomo's litigation tactics have been no less invasive or aggressive and represent yet another mechanism by which Cuomo seeks to intimidate and harass his accusers with no particular end in sight. They are entirely disproportionate to the needs of this case.")

  o  *See, e.g*., *Trooper 1*, ECF No. 193 at p.1, November 29, 2023 Letter from nonparty Alessandra Biaggi ("Ms. Biaggi has in fact criticized Mr. Cuomo publicly, and believes she is regarded by him as a political adversary. As has now widely been alleged by others and in the press, she personally believes that Movant is using Rule 45 for purposes that go far beyond, and in her case have nothing to do with, the pursuit of admissible evidence for use in the instant matter. He appears to be subpoenaing individuals like Ms. Biaggi to chill their First Amendment protected speech about him, to settle scores, and to try to rebuild his damaged reputation in the eyes of the public.")

  o  *See, e.g., Trooper 1*, ECF No.187 at p.2, November 21, 2023 Letter from nonparty Karen Hinton ("[T]he underlying reason for the demand to take Ms. Hinton's deposition is Movant's animus toward Ms. Hinton and the desire to abuse the discovery process in this litigation to further his revenge on those individuals who he perceives as against him. Moreover, this litigation already has placed an undue burden on Ms. Hinton who, unlike Movant and even

certain other non-parties, has no ability to seek coverage from New York State for her incurred attorneys' fees.")

o *See e.g., Trooper 1,* ECF Nos. 128, 132, 133. Motion by nonparty Kaitlin filed on August 10, 2023 for the Court to issue an additional protective order to protect Kaitlin's identity after counsel for Cuomo threatened to violate existing protective order by revealing her non-public identity in future court filings. (ECF No. 128). That same day, the Court granted Kaitlin's application via a minute entry ordering "the defendant's not [to] violate the Court's Confidentiality Order by publicly revealing Kaitlin's identity in motion practice." and further ordering all documents containing Kaitlin's identity to be filed under seal. As detailed in an August 23, 2023 letter from Kaitlin's counsel to the Court (ECF No. 133), two days after the Court's Order reinforcing its Protective Order, Cuomo's aides and co-defendants filed as an exhibit on the public docket containing a picture of Kaitlin (Exhibit A to now stricken ECF No. 132), thus revealing her identity.

46.    On or about January 26, 2024, at the conclusion of their investigation, "the United States found that former Governor Cuomo subjected at least thirteen female employees of New York State, including Executive Chamber employees, to a sexually hostile work environment..." and that "**Cuomo's senior staff were aware of his conduct and retaliated against four of the women he harassed**." Agreement Between the United States and the State of New York Executive Chamber Regarding Workplace Reform dated January 26, 2024, *available at* https://www.justice.gov/crt/media/1335301/dl?inline (last accessed 6/6/2024) (emphasis added).

47.    On March 29, 2024, in *Trooper 1*, the Court issued a Memorandum and Order denying the request of defendants Cuomo, DeRosa, and Azzopardi to de-designate certain discovery materials marked confidential by non-party witness Ana Liss Jackson under the confidentiality order in place in that case. *Trooper 1* ECF No. 252. In this Order, the Court found the materials designated confidential were not relevant to the substantive allegations in the case, but that Cuomo and his co-defendants sought to de-designate the materials "to continue their attack on the OAG investigation and in furtherance of efforts to try this case in the court of public opinion." *Id*. at p. 23.  The Court also noted "the record strongly suggests that Defendants

19

have been repeatedly attaching these discovery materials to various motions and letters to make

them publicly available to advance their own interests" before denying Cuomo's motion to de-

designate discovery materials as confidential pursuant to the Court's "obligation to ensure that

court filings are not made for vexatious purposes." *Id*. at pp. 26-27.

**G.  Cuomo's Original Nonparty Subpoena to OAG in the *Trooper 1* Action**

48.    On July 11, 2022, Movant served on OAG a subpoena dated July 7, 2022

("Original Trooper 1 Subpoena") in connection with *Trooper 1*. A true and correct copy of the

Original Subpoena is attached hereto as Exhibit 7. The Trooper 1 Subpoena was initially

returnable in the Southern District of New York.

49.    The Original Trooper 1 Subpoena called for essentially all investigative materials

underlying the OAG Report, including all 73,000 documents collected by the Investigative Team

that had not already been made publicly available.

50.    OAG timely objected to the Original Trooper 1 Subpoena and served additional

responses and objections on August 12, 2022.  However, OAG agreed, in an effort to resolve the

Trooper 1 Subpoena, to voluntarily provide the limited documents that the Investigative Team

collected from outside sources that reference Trooper 1 by name, while explicitly stating that it

would not provide Trooper 1's, or any other witness's, interview memoranda or unredacted

transcripts.

51.    Cuomo moved to compel compliance with the Original Trooper 1 Subpoena via a

miscellaneous case filed in the Southern District of New York under the caption *Cuomo v. OAG*,

Index No. 22-mc-03044 which transferred on consent to this Court.

52.    OAG opposed the motion to compel and cross-moved to quash on November 8,

2022, including that OAG enjoys sovereign immunity from compelled compliance with a

nonparty subpoena, that the subpoena called for irrelevant materials that would impose an undue

burden on OAG disproportional to the needs of the case, and that the materials sought were shielded by privilege.

53.     The Court held oral argument on the motion to compel and motion to quash on February 7, 2023. Following that oral argument, Movant "narrowed" his subpoena requests via a letter to the Court on February 24, 2023 seeking: 1) interview memoranda of all eleven complainants in the OAG Report; 2) interview memoranda of any witness "related to" those complainants; 3) all records provided by the eleven complainants; 4) all records produced by third parties relating to allegations by the eleven complainants; and 5) unredacted transcripts, and exhibits, for all 41 witnesses whose testimony was taken under oath by the Investigation Team. *See Cuomo v. OAG,* at ECF No. 28.

54.     On July 21, 2023, the Court issued a Decision and Order, denying Movant Cuomo's motion to compel and deferring decision on OAG's cross-motion to quash. *Id* at ECF No. 37. The Decision held that Movant's "narrowed" subpoena requests sought irrelevant information and that producing the documents sought would impose an undue burden on OAG. *Id* at pgs. 28-32. The Court did not reach OAG's assertions of sovereign immunity or privilege, finding that its holdings on relevance and proportionality obviated the need to reach those issues. *Id* at pg. 36.

55.     Cuomo subsequently moved for reconsideration of the Court's Decision on July 31, 2023*, id* at ECF Nos. 40-42.

### H.  Cuomo's Second Subpoena to OAG in the *Trooper 1* Action

56.     While Cuomo's motion for reconsideration was *sub judice*, on October 4, 2023, Cuomo "narrowed" the scope of the Original Subpoena via email to OAG, primarily seeking interview memoranda prepared by the Investigation Team for New York State Police ("NYSP")

witnesses and those of any complainant to the Report, as well as unredacted transcripts of sworn testimony taken by the Investigators. ECF No. 51-1. ECF No. 51-1.

57.     As ordered by the Court, OAG submitted the interview memoranda *in camera* to the Court on December 19, 2023. *See* ECF Minute Entry and Order, December 12, 2023.

58.     Thereafter, on March 29, 2024, the Court denied Cuomo's pending motion for reconsideration "to the extent it is seeking to compel compliance" with the Original Subpoena, and scheduled a status conference "to address Cuomo's narrowed requests to the OAG." ECF. No. 57.

59.     At the status conference, Cuomo agreed to withdraw the Original Subpoena, rendering OAG's cross-motion to quash moot, and to serve on OAG the narrower Subpoena seeking only the interview memos and unredacted transcripts from the Investigation; and the parties agreed to submit a proposed briefing schedule to tee up cross-motions to compel and quash the Subpoena. *See* ECF Minute Entry and Order April 19, 2024.

60.     On April 23, 2024, Cuomo served OAG with the Subpoena conforming to the "narrowed" requests to the Original Subpoena described above. A true and correct copy of the Subpoena served on OAG on April 23, 2024 is attached hereto as Exhibit 8.


Executed on June 6, 2024

SERENA LONGLEY