```
 1                    UNITED STATES DISTRICT COURT

 2                EASTERN DISTRICT OF NEW YORK (BROOKLYN)

 3   ANDREW M. CUOMO,
                                        Case No. 1:22-mc-03044-LDH-TAM
 4              Movant,

 5   v.                                 Brooklyn, New York
                                        June 25, 2024
 6   OFFICE OF THE NEW YORK STATE       10:04 a.m.
     ATTORNEY GENERAL,
 7
                Defendant.
 8

 9        TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE HEARING
                 BEFORE THE HONORABLE TARYN A. MERKL
10                  UNITED STATES MAGISTRATE JUDGE

11   APPEARANCES:
     For the Movant:              Theresa Trzaskoma, Esq.
12                                Allegra Noonan, Esq.
                                  Sher Tremonte, LLP
13                                90 Broad Street
                                  New York, NY 10004
14
                                  Rita Glavin, Esq.
15                                Glavin, PLLC
                                  156 West 56th Street
16                                Ste #2004
                                  New York, NY 10019
17
     For the Defendant:           Andrew S. Amer, Esq.
18                                James Cooney, Esq.
                                  Michael Jaffe, Esq.
19                                Office of the NY Attorney General
                                  28 Liberty Street
20                                New York, NY 10005

21   Also Appearing:              Sara Sanchez, Cleary Gottlieb
                                  Steen & Hamilton
22
     Clerk:                       E.S.
23
     Court Recorder:              Electronic Sound Recording
24

25
```

1  Transcription Service:      Chris Hwang
                               Abba Reporting
2                              PO Box 223282
                               Chantilly, Virginia  20153
3                              (518) 302-6772

24  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.
25

1         (Call to order at 10:04 a.m.)

2         THE COURT:  Good morning, Ms. Sun (phonetic),

3  whenever you're ready, please feel free to call the case.

4         THE CLERK:  Good morning.  This is civil cause for

5  status conference, docket number 22-MC-3044, Cuomo v. the

6  Office of The New York State Attorney General.  Before asking

7  the parties to state their appearances, I would like to note

8  the following.

9         Persons granted remote access to proceedings are

10 reminded of the general prohibition against photographing,

11 recording, and rebroadcasting of court proceedings.

12        Violation of these prohibitions may result in

13 sanctions, including removal of court issued media credentials,

14 restricted entry to future hearings, denial of entry to future

15 hearings, or any other sanctions deemed necessary by the Court.

16        Will the parties please state their appearances for

17 the record starting with the Plaintiff?

18        MS. TRZASKOMA:  Good morning, Your Honor, Theresa

19 Trzaskoma from Sher Tremonte, LLP on behalf of former Governor

20 Cuomo.

21        MS. GLAVIN:  Good morning, Your Honor, Rita Glavin of

22 Glavin, PLLC on behalf of former Governor Cuomo.

23        THE COURT:  Anyone else here for Governor Cuomo?

24        MS. NOONAN:  Good morning, yes, Allegra Noonan from

25 Sher Tremonte, LLP for Governor Cuomo.  Thank you, Your Honor.

1          MR. AMER:  Good morning, Your Honor, Andrew Amer on
2    behalf the Attorney General's Office.  I'm here with my
3    colleagues James Cooney and Michael Jaffe.
4          THE COURT:  All right, so good morning to everybody.
5    We put the case on really just for a scheduling conference in
6    light of former Governor's motion to vacate the scheduling of
7    the, you know, final round -- hopefully final round of the
8    briefing on these motions.
9          Briefly, there's been an intervening development in
10   the Bennett case, which I do understand could impact timing.
11   It's not clear to me that there's really the basis to vacate
12   the schedule and leave it open.
13         So I wanted to get you on the phone and try to figure
14   out what the parties think makes sense in light of the interim
15   developments and kind of try to get this back on track to the
16   extent that the parties still want to pursue this route in
17   terms of the litigation in this matter.
18         So, Ms. Glavin, who's taking the lead today for
19   former Governor Cuomo?
20         MS. TRZASKOMA:  I am, Your Honor, Theresa Trzaskoma.
21         THE COURT:  Okay, Ms. Trzaskoma, what is your, you
22   know, sort of hope or plan here and have you had a conversation
23   with Mr. Amer about where this can all go realistically?
24         MS. TRZASKOMA:  So, Your Honor, we have not had a
25   conversation with Mr. Amer or anyone at the Attorney General's

1    Office.

2                I mean, our view as we indicated in our letter is

3    that, and really, we were reflecting on the Court -- on the

4    guidance from the Court in terms of the focus of this round of

5    supplemental briefing, which was to be on the privilege issues.

6                And as indicated in our letter, you know, in between

7    the Court ordering that supplemental briefing, and you know,

8    when the A.G.'s Office was supposed to put in their brief, we

9    learned that the Attorney General's Office had disclosed to two

10   third-parties the information that it had been asserting

11   privilege over.  In our view, that constitutes a waiver of any

12   privilege.

13               And so, the idea that we are going to go forward with

14   further briefing on privilege questions seemed to us

15   inefficient.

16               At this point, I suppose there's, you know, we should

17   just stick to the schedule and we will make our arguments in

18   our brief.

19               THE COURT:  Thank you, Ms. Trzaskoma.

20               Mr. Amer, what are your views?

21               MR. AMER:  Good morning, Your Honor.  Can I just

22   mention just for the record I believe that counsel for at least

23   one or both of the law firms Cleary and Vladik (phonetic) are

24   on the line.  So maybe they just make their appearance known.

25   And then, I can give you my thoughts.

1        THE COURT:  Anyone else on the line who'd like to
2   state their appearance?
3        MS. SANCHEZ:  Sure, this is Sara Sanchez from Cleary
4   Gottlieb Steen & Hamilton, LLP.
5        MR. AMER:  So, Your Honor, I had two alternate
6   proposals in light of Judge Cave's decision.  And I haven't
7   raised these with former Governor Cuomo's counsel.
8        The first is -- the first proposal is really quite
9   frankly --
10       THE COURT:  Mr. Amer, Mr. Amer?
11       MR. AMER:  Yes.
12       THE COURT:  Something about your microphone is just
13  kind of cutting up your words in a funny way.  So if you could
14  just slow -- maybe slow down and speak as clearly as possible,
15  that would be helpful.
16       MR. AMER:  Sure.  I apologize.  And if need be, I can
17  try and switch my -- let's see if this works.  So my first
18  proposal is prompted by the desire to achieve judicial
19  efficiency and avoiding unnecessary expense by the parties.
20       And it's in recognition of the fact that the
21  sovereign immunity issue, which I think we've all recognized,
22  is something that is appealable on an interlocutory basis.
23       I presume there's going to be a pursuit of initially
24  an objection to the District Court judge in the Southern
25  District Magistrate Judge Cave's decision.

1              And then, whoever is on the losing end will pursue an

2    appeal to the 2nd Circuit, which is actually obviously the same

3    Court that would hear an appeal from this Court.

4              So my first proposal is just one of pragmatism. And

5    that is that, you know, the parties here simply agree to be

6    bound by the final result in the Bennett case rather than have

7    to burden, you know, a second magistrate judge and a second

8    District Court judge with having to address, you know, these

9    issues. And obviously Magistrate Judge Cave's decision is a

10   very comprehensive review of the case law.

11             And so, we could all, if there's agreement, just say

12   we will be bound by whatever the final outcome is in Bennett,

13   knowing that from either Court it's going to end up in the 2nd

14   Circuit, which I think is, you know, what's clearly going to

15   happen here.

16             Alternatively, if there's no agreement to do that and

17   we have to complete the motion practice here and have Your

18   Honor decide the motions while the district judge in the

19   Southern District is reviewing the objection, and then we're

20   going to go to judge -- the district judge here in the Eastern

21   District. And then, everything ends up, you know, in the 2nd

22   Circuit.

23             If we're going to have to do that, I would suggest

24   that we pause the briefing until Magistrate Judge Cave's

25   decision is final for purposes of preclusive effect.

1               It's our understanding from our research that as of
2    this moment, until the district judge issues a decision from
3    any objection, there's no preclusive effect yet.
4               But once the district judge in the Southern District
5    does issue a final decision on any objection, that would be
6    entitled to preclusive effect.  And quite frankly, we don't see
7    how that would not be issue determinative of what's before Your
8    Honor.
9               They, you know, Cuomo's counsel should not have two
10   bites of the apple here.  You know, they fully litigated their
11   case before Magistrate Judge Cave and clearly lost on sovereign
12   immunity.
13              So I think what that would mean is pausing the
14   briefing schedule here, allowing us to supplement our briefing
15   with the narrow issue of the preclusive effect once that
16   decision, assuming it is upheld, becomes final.
17              And then, that can be folded into the issues and
18   quite honestly Your Honor may not have to reach any of the
19   issues if it turns out that, you know, this is now collateral
20   estoppel against former Governor Cuomo from raising the
21   arguments he's raised.
22              So those are my two alternative proposals.  And like
23   I said, I haven't raised these with Ms. Glavin or with Ms.
24   Trzaskoma.
25              So, you know, I don't know if they have a reaction.

1     I could guess what it might be, but at any rate, that's

2     my -- those are my proposals.

3                THE COURT:  All right, Ms. Trzaskoma?

4                MS. TRZASKOMA:  Yes, Your Honor.  I -- we -- I

5     disagree that there's nothing further for this Court to do.  We

6     do plan to file an objection to the decision.

7                But in terms of preclusive effect, one of, you know,

8     that Judge Cave's specifically acknowledged that there are

9     issues that are before Your Honor that are not before -- that

10    were not before her.

11               And so, you know, and frankly, you know, when either

12    court decision will ultimately, you know, which Court's

13    decision will ultimately reach the 2nd Circuit first is not at

14    all clear to me.

15               And I don't think there's any reason.  The Attorney

16    General has already filed its brief.  We're prepared to file

17    our supplemental brief.  And we do think that this Court has an

18    obligation independently.  There's no issue preclusion at this

19    point to reach the issues.  And you know, that's our view.

20               THE COURT:  So are -- you stated at the outset that

21    you thought we should perhaps just stick to the briefing

22    schedule.  Does that include filing your response on July 12th?

23               MS. TRZASKOMA:  Yes, Your Honor.

24               THE COURT:  So, Mr. Amer, you know, the timing

25    considerations here are obviously complicated.  And I fully

1   recognize as I think I stated on the record the first time we

2   had argument on the sovereign immunity issue, that it struck me

3   as highly unlikely that a new magistrate judge would be the

4   final say on the very significant issues presented in this

5   case.

6            I am concerned about the timing.  You know,

7   this -- the issues surrounding the Attorney General's lack of

8   production if you will, you know, are being raised consistently

9   as a source of concern in proceeding with depositions and other

10  matters.  But as I stated to Cuomo litigant a long time ago, I

11  don't think that these documents are going to be forthcoming

12  any time soon.

13           And I just am really -- I find it unpalatable to just

14  wait indefinitely for there to be a resolution in the Bennett

15  case.  I have no idea what Judge Broderick's schedule looks

16  like, when he would have an opportunity to take up any

17  objections in that case.

18           I certainly could never predict that for Judge DeArcy

19  Hall either.  So I just think we're dealing with a lot of

20  uncertainty in terms of the procedural path forward.  So it's

21  very tricky.

22           Mr. Amer, given that you've already filed your

23  motion, is there any supplementation you would want to do if we

24  were to proceed on the current -- sort of an approximation of

25  the current schedule?

1                MR. AMER:  Your Honor, let me suggest this.  You

2    know, obviously, look, my first proposal doesn't work if

3    everybody's not in agreement to do it.  And obviously, Ms.

4    Trzaskoma indicated her client won't agree.  So I think that

5    obviously, can't pursue that.

6                I think at this point, what we should do is stick to

7    the schedule, but I would like the opportunity if Judge Cave's

8    decision becomes a final decision for purposes of preclusive

9    effect, to submit a very short supplemental brief.  And

10   obviously we would need to, you know, come up with dates for

11   former Governor Cuomo to respond to it.

12               That would be sort of on a separate track that

13   addresses the narrow issue of whether the Southern District's

14   final determination has collateral estoppel effect.

15               Now it may be that there's a waiver --

16               THE COURT:  Mr. Amer, you keep saying that, but this

17   is a question of law.  And last time I checked, district judges

18   are not bound by one another.  So I'm just not sure what you

19   mean by collateral estoppel and preclusive effect in this

20   context.

21               MR. AMER:  So we would argue that once the Southern

22   District decision becomes final, not that it's binding on this

23   Court.  It's that it's binding on Cuomo.  It's preclusive and

24   it bars Cuomo from arguing certainly the threshold issue of

25   whether a subpoena is considered a judicial proceeding for

1    purposes of triggering sovereign immunity.

2             And we have certainly -- and, you know, we would
3    provide case law to the Court demonstrating that that type of
4    issue is one that courts recognize that when an issue is
5    litigated and decided against the party, they cannot raise the
6    same legal issue in a subsequent proceeding.

7             And so, I do think it would have preclusive effect
8    under the collateral estoppel doctrine.  And again, it's not
9    about binding the Court.  It's about binding a party.

10            THE COURT:  I would look forward to such briefing if
11   and when it is necessary, because that certainly is an
12   interesting argument.

13            That being said, you know, I -- at this juncture, you
14   know, obviously, we have no idea what the outcome would be here
15   of any these motions.

16            So I think it does make sense to stick to the current
17   plan to the extent possible.  Obviously if there's an
18   intervening change in the landscape and/or law that the parties
19   think is relevant and applicable, I would be interested in your
20   supplemental submissions, whether they be from the Bennett case
21   or from a different circuit that reaches the issue in the
22   interim, you know, much like a 28-day letter, you know, the
23   Court of Appeals if something happens, of course you're free to
24   re-submit additional authority if it's relevant to the issue
25   under consideration.

1        So are we on track to the old schedule, Ms.
2   Trzaskoma?
3        MS. TRZASKOMA: Your Honor, I believe we are on track
4   on our end. The one issue that remains and remains even after
5   the Attorney General's most recent round of briefing is the
6   issue that was raised in our letter.
7        And I still don't think we or the Court have a
8   straight answer in terms of what materials the Attorney
9   General's Office turned over to which third-parties, and in
10  particular, the various District Attorney's Offices, the
11  Eastern District of New York U.S. Attorney's Office and the
12  Department of Justice.
13       And I think, you know, I -- we're happy to continue
14  to brief based on the nonrepresentation representations that
15  have made and the statements that were made during argument
16  before Judge Cave, but it is a bit of a vexing issue that the
17  most recent round of briefing continued to meet -- you know,
18  the A.G.'s office continued to assert privileges, the
19  fundamental element of which is, you know, a representation
20  that the materials have been kept confidential.
21       And I don't think that, you know, I -- we're happy to
22  continue briefing with this on clear record, but I think at
23  some point, it would be very appropriate for the Attorney
24  General's Office to be required to state on the record once and
25  for all which documents were disclosed to which third-parties.

1       THE COURT: Mr. Amer?

2       MR. AMER: Well, we disagree. We are going to adhere
3  to the position we articulated before Magistrate Judge Cave and
4  quite frankly before Your Honor as well in prior arguments.

5       Anything that was produced to investigative agencies
6  was done pursuant to confidentiality agreements. We put those
7  in the record. And they're not going to state on a public
8  record what materials were provided pursuant to that
9  understanding of confidentiality.

10      This was exactly the record that Magistrate Judge
11 Cave had before her. She didn't rule obviously that whether
12 and to what extent materials were provided to the DOJ or the
13 Eastern District of New York somehow waive sovereign immunity.
14 We think that was the right call.

15      And, you know, to the extent this Court wants further
16 in-camera submissions, that's a separate matter, but that's not
17 what Ms. Trzaskoma is asking for. And so, again, our position
18 remains unchanged.

19      THE COURT: All right, so as we've discussed in prior
20 proceedings, I think that the nature of the inquiry that former
21 Governor's making here would of course implicate the sovereign
22 immunity arguments that the Attorney General has been asserting
23 from the get go.

24      And until and unless I determine that I need to reach
25 that issue and we get to that point, I don't think, you know,

1  requirement to answer on the record would be consistent with
2  the current posture of this case with all respect, Ms.
3  Trzaskoma.  So I certainly don't think that that's viable.
4          But I do want to ask, Mr. Amer, if you're willing to
5  tell me what you have given over pertaining to Trooper 1
6  herself?
7          MR. AMER:  Again, you know, Your Honor, I'm just not
8  comfortable stating on the record any information relating to
9  what was, if anything, handed over to investigative agencies if
10 that's --
11         THE COURT:  No, no, I was talking about -- I'm
12 talking about to Cuomo.  I still don't really know.  We've been
13 talking about your willingness to give them like three or four
14 documents for two years and I still don't fully know exactly
15 what they've been given?
16         MR. AMER:  There were I believe it's four documents.
17 And obviously, Ms. Trzaskoma has these documents, so she can
18 confirm my description of them, but I believe there are four
19 separate documents.
20         A lot of them -- they include multiple pages.  They
21 were documents that identified Trooper 1 by name using a text
22 search, you know, software.
23         And they include a type of phone record, I'm
24 forgetting what they call them, but a lot of pages are these
25 documents that relate to phone records.

1           Maybe, Ms. Trzaskoma, you have a better description
2   of what they are, but that's essentially what this material is.
3           THE COURT:  Ms. Trzaskoma?
4           MS. TRZASKOMA:  Yes, Your Honor, they are documents
5   of no consequence whatsoever.  They're like, you know, as Mr.
6   Amer described them, it's like four separate versions of a
7   phone book that happen to contain her name.  We have not gotten
8   for example her energy memo.
9           THE COURT:  Okay, that's what I wasn't clear because
10  we've been hearing about these four documents for a very long
11  time.
12          MS. TRZASKOMA:  Your Honor, just one point.  I mean,
13  our -- on the disclosure.  Our view is, you know, that it is as
14  Mr. Amer said it's relevant to sovereign immunity, but it's
15  even more relevant I think to a more clearly relevant and
16  dispositive on the privilege questions, because -- which I
17  think Your Honor is considering because disclosure to
18  third-parties even pursuant to a confidentiality agreement is a
19  waiver, for example, to the extent there are arguments that
20  these materials were protected by the attorney-client privilege
21  or the attorney work-product privilege turning them over.
22          And there's very clear case law in this circuit on
23  this issue that a confidentiality agreement does not prevent a
24  waiver.
25          So I do think it's relevant.  I think it's telling

1  that the AG's Office still won't represent to the Court and to
2  us one way or the other whether the materials that we are
3  seeking here, the limited materials pursuant to the narrowed
4  subpoena, have been disclosed or not.
5           THE COURT:  I understand it's relevant, but it's
6  putting the cart before the horse if there's a sovereign
7  immunity argument on the table.
8           MS. TRZASKOMA:  Well, it's -- yes.  I mean, Your
9  Honor, I think it's relevant to both, but I understand that
10 you're not going to -- that the AG's Office is continuing to
11 decline to answer the question and that they're not being
12 directed to provide that information.  I understand that.
13          THE COURT:  All right.
14          MR. AMER:  I would just like Your Honor to clarify
15 one thing.  I think Ms. Trzaskoma said that I had acknowledged
16 whether we produced things to investigative bodies was relevant
17 to sovereign immunity.
18          I certainly did not acknowledge that was our
19 position.  And clearly, that was not Magistrate Judge Cave's
20 conclusion.  So just to be clear.
21          THE COURT:  I understand. I understand the
22 arguments.  I have reviewed Judge Cave's decision.  I have a
23 feeling I will be reading it many more times in the coming
24 weeks.
25          So, with all of that, I guess we will just expect the

1    motions to proceed.  Is that right, Ms. Trzaskoma?
2             MS. TRZASKOMA:  Yes, Your Honor.
3             THE COURT:  Mr. Amer?
4             MR. AMER:  Correct, and to the extent we feel a need
5    to supplement briefing on the preclusive effect, should that
6    come to pass, we will see if we can come up with some sort of
7    supplemental briefing schedule with Ms. Trzaskoma and, you
8    know, let -- advise the Court.
9             THE COURT:  All right, I appreciate that.  So with
10   that, we are adjourned for today.  We will, you know, deny the
11   motion to vacate based on today's conversation and expect the
12   briefing.  So thank you all.  Have --
13        (Proceedings concluded at 10:28 a.m.)
14
15
16
17
18
19
20
21
22
23
24
25

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ *Chris Hwang*

_____  July 1, 2024

Chris Hwang                Date

Court Reporter