UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW M. CUOMO | : |
| | : |
| Movant, | : |
| | : |
| - against - | : |
| | : |
| OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL, | : |
| | : |
| Defendant. | : |

22-mc-03044 (LDH)(TAM)

**DEFENDANT'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO QUASH AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION TO COMPEL**

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

Attorney for Defendant
Office of the Attorney General

Andrew Amer
Michael Jaffe
James Cooney

of Counsel

# TABLE OF CONTENTS

PRELIMINARY STATEMENT...................................................................................................1

ARGUMENT ..........................................................................................................................2

I.    STATE SOVEREIGN IMMUNITY BARS CUOMO'S SUBPOENA.................................2

II.   OAG HAS NOT WAIVED ITS SOVEREIGN IMMUNITY DEFENSE...........................10

III.  THE REQUESTED MATERIALS ARE IRRELEVANT AND NOT
      PORPORTIONAL TO THE NEEDS OF THE CASE...........................................13

IV.   THE MATERIALS SOUGHT ARE PRIVILEGED .............................................15

      A.   The Attorney/Client Privilege Applies.................................................16

      B.   The Work-Product Doctrine Applies....................................................18

      C.   The Law Enforcement Privilege Applies..............................................19

CONCLUSION.......................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Texas Comm'n on Env't Quality*, No. A-06-CA-281-SS, 2007 WL 9701381 (W.D. Tex. May 29, 2007) ...............................................................12

*Alden v. Maine*, 527 U.S 706 (1999)..................................................................................4

*Alltel Comm'ns, LLC v. DeJordy*, 65 F.3d 1100 (8th Cir. 2012).........................................3

*Barnes v. Black*, 544. F.3d 807 (7th Cir. 2008)..................................................................5

*Bennett v. Cuomo*, No. 22-cv-7846, 2024 WL 2963714 (S.D.N.Y. June 12, 2024), *objection filed* (June 26, 2024) ...................................................3, 4, 5, 7, 8

*Bonnet v. Harvest (U.S.) Holdings, Inc.,* 741 F.3d 1155 (10th Cir. 2014) ....................... 3, 7

*Bowne of NYC, Inc. v. AmBase Corp.*, 150 F.R.D. 465 (S.D.N.Y. 1993) ..........................15

*Catskill Dev't, LLC v. Park Place Entertainment Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002) .............................................................................................................. 3, 5

*Close v. State of N.Y.*, 125 F.3d 31 (2d Cir. 1997) .............................................................13

*College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999) ...........................................................................................................11

*Dugan v. Rank*, 372 U.S. 609 (1963) ..................................................................................2

*Ebbert v. Nassau County*, No. 05-cv-5445, 2007 WL 674725 (E.D.N.Y. March 5, 2007) ...........................................................................................................14

*EPA v. General Elec. Co.*, 197 F.3d 592 (2d Cir. 1999), *amended on reh'g on other grounds*, 212 F.3d 689 (2d Cir. 2000) ............................................... 2, 3, 4, 6, 11, 12

*Estate of Gonzalez*, 466 F. Supp. 2d 1226 (E.D. Ca. 2006) ...............................................8

*Felix v. County of Nassau,* 344 F.R.D. 441 (E.D.N.Y. 2023) ........................................ 2, 5

*Fisher v. United States*, 425 U.S. 391 (1976).....................................................................16

*Flores v. Stanford*, No. 18-cv-02468, 2022 WL 354719 (S.D.N.Y. Feb. 7, 2022).............14

*Friedman v. Rice*, 30 N.Y.3d 461 (2017) ............................................................................9

*Garcia v. Akwesane Housing Auth.*, 268 F.3d 76 (2d Cir. 2001) .......................................6

*Garrett v. Metro Life Ins. Co.*, No. 95-cv-2406, 1996 WL 325725 (S.D.N.Y. June 12, 1996) ................................................................................................................18

*Gianna Enterprises v. Miss World (Jersey) Ltd.*, 551 F. Supp. 1348 (S.D.N.Y. 1982) ................................................................................................................6

*Grand Canyon Skywalk Dev., LLC v. Cieslak*, Nos. 15-cv-01189 and 13-cv-00596, 2015 WL 4773585 (D. Nev. Aug. 13, 2015) ................................................7

*Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, No. 06-cv-1260, 2009 WL 4981905 (E.D.N.Y. Dec. 10, 2009) ................................................13

*Gross v. Lunduski*, 304 F.R.D. 136 (W.D.N.Y. 2014) ................................................9

*Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, No. 96-cv-8414, 2016 WL 7320775 (S.D.N.Y. July 18, 2016), *report and recommendation adopted*, No. 96-cv-8414, 2016 WL 7243544 (S.D.N.Y. Dec. 14, 2016) ................8

*Henry v. New Jersey Transit Corp.*, 39 N.Y.3d 361 (2023) ................................................10

*In re Capital Newspapers Div. of Hearst Corp. v. Burns*, 67 N.Y.2d 562 (1986) ................................................9

*In re General Motors LLC Ignition Switch Litigation*, 80 F. Supp. 3d 521 (S.D.N.Y. 2015) ................................................17

*In re Missouri Dept. of Natural Res.*, 105 F.3d 434 (8th Cir. 1997) ................................................3

*Information Resources, Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591 (S.D.N.Y. 1998) ................................................11, 15

*Jackson v. AFSCME Local 196*, No. 07-cv-471, 2008 WL 1848900 (D. Conn. April 25, 2008) ................................................4

*Jett v. Penner*, No. S-02-2036, 2007 WL 127790 (E.D. Ca. Jan. 12, 2007) ................................................12

*Johnson v. Doty*, No. 15-cv-7823, 2020 WL 1244236 (S.D.N.Y. March 16, 2021) ................................................13

*Lazarou v. Mississippi State Univ.*, No. 07-cv-060, 2012 WL 1352890 (N.D. Miss. Apr. 17, 2012) ................................................12

*Lewis v. Clarke*, 581 U.S. 155 (2017) ................................................5

*McGehee v Nebraska Dep't of Corr. Servs*, reported at 968 F.3d 899 (8th Cir 2020) ; *vacated on reh'g*, 987 F.3d 785 (8th Cir. 2021) ................................................5

*Moroughan v. Cty. of Suffolk*, No. 12-cv-512, 2018 WL 11268801 (E.D.N.Y. Feb. 6, 2018) ................................................19

*New York Times Co. v. United States Dep't of Justice,* 939 F.3d 479 (2d Cir. 2019) .......................................18

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, Nos. C-04-3955, C-05-1605, 2009 WL 4258550 (N.D. Cal. Nov. 24, 2009) .................................................................................12

*Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022) .........................................................................................3, 5

*Seminole Tribe of Florida v. Florida,* 517 U.S. 44 (1996) ...........................................................................3

*Sibley v. Choice Hotels International,* No. 14-cv-634, 2015 WL 9413101 (E.D.N.Y. December 22, 2015) .......................................................................................................13

*Sky Medical Supply Inc. v. SCS Support Claim Services, Inc.*, No. 12-cv-6383, 2017 WL 1133349 (E.D.N.Y. March 24, 2017) ...................................................................................13

*Texas LDPC, Inc. v. Broadcom, Inc.*, No. 22-cv-01781, 2023 WL 3293291 (S.D. Tex. 2023) ..........................................................................................................................12

*United States Dep't of Justice v. Ricco Jonas*, 24 F.4th 718 (1st Cir. 2022) ...............................................5

*United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998)............................................................................18

*United States v. James,* 980 F.2d 1314 (9th Cir. 1992) ..............................................................................11

*United States v. Menominee Tribal Enter*s., No. 07-c-316, 2008 WL 2273285 (E.D. Wis. June 2, 2008) .......................................................................................................11

*United States v. Schwimmer*, 892 F.2d 237 (2d Cir. 1989) .......................................................................16

*United States v. Velarde*, 40 F. Supp. 2d 1314 (D.N.M. 1999) .................................................................11

*Vigliotti v. Selsky*, No. 08-cv-00875, 2013 WL 3354423 (W.D.N.Y. July 3, 2013) ...................................................................................................................................9

*Wopsock v. Dalton*, No. 2:12-cv-0570, 2018 WL 15780868 (D. Utah Mar. 29, 2018) ...................................................................................................................................7

*Yul Chu v. Mississippi State Univ.*, 901 F. Supp. 2d 761 (N.D. Miss. 2012) ..............................................12

## Other Authorities

Black's Law Dictionary (11th ed. 2019), Evidence ....................................................................................14

## Rules

Federal Rule of Civil Procedure 4.................................................................................................................6

Federal Rule of Civil Procedure 26.............................................................................................................13

Federal Rule of Civil Procedure 45................................................................................................8

## Treatises

Alexander Hamilton, *The Federalist No. 81* (Clinton Rossiter ed., 1961) (1788) ......................................5

Erwin Chemerinsky, *Federal Jurisdiction* § 7.6 (2d ed.1994)............................................................13

Gregory C. Sisk, *A Primer on the Doctrine of Federal Sovereign Immunity*, 58 Okla. L. Rev. 439 (2005)................................................................................................................4

## PRELIMINARY STATEMENT

Does a subpoena served on a state agency trigger state sovereign immunity? The two judges in this District and the Southern District of New York ("SDNY") to address this question have answered "yes," following precedent in analogous circumstances holding that subpoenas served on federal and tribal officials trigger their respective sovereign immunity because the subpoenas may give rise to orders compelling the sovereign to act. This Court should reach the same conclusion here—namely, that the Subpoena triggers OAG's state sovereign immunity.[1] The Court should also reject Cuomo's contention that OAG has waived its sovereign immunity because he has not and cannot show that OAG unequivocally invoked its intent to be subject to the Court's jurisdiction; indeed, at every turn OAG has asserted its sovereign immunity as a defense to the Subpoena and this action.

Even if the Court were to conclude (contrary to binding precedent) that the Subpoena does not trigger sovereign immunity, the Court should still quash the Subpoena because it seeks materials—unredacted transcripts and attorney interview memoranda—that are not relevant to Cuomo's defense and would impose an enormous burden on OAG that is not proportional to the needs of the case. Cuomo's candid admission that he needs the requested materials to show purported deficiencies in the Report is exactly the point—his objective in issuing the Subpoena is to attack and undermine OAG's Investigation, not to obtain evidence necessary to defend against Trooper 1's allegations.

Finally, the unredacted transcripts and attorney interview memoranda are protected from disclosure by multiple privileges. Indeed, precedent establishes that interview memoranda created during an investigation are routinely afforded protection under the asserted privileges, most notably the attorney/client privilege, work product doctrine, and law enforcement privilege.

---

[1] This opposition/reply brief uses the same defined terms as OAG's Memorandum of Law in Support of its Motion to Quash ("OAG MOL") (ECF No. 69). In addition, in accordance with the Court-ordered schedule, this brief responds to Cuomo's Memorandum of Law filed on July 17, 2024 (ECF No. 76) ("Cuomo MOL") even though it was stricken by the Court (July 19, 2024 Docket Text Order) on the expectation that Cuomo will refile the same brief once the Court resolves his motion to file under seal (ECF No. 79).

For all these reasons, the Subpoena should be quashed.

## ARGUMENT

## I.    STATE SOVEREIGN IMMUNITY BARS CUOMO'S SUBPOENA

Cuomo relies on decisions dating from the turn of the 18th Century to argue that "a federal discovery subpoena is not a 'suit' for purposes of state sovereign immunity." Cuomo MOL at 20-21. These ancient precedents have no relevance here. Relying on the Supreme Court's more recent decision in *Dugan v. Rank*, 372 U.S. 609 (1963), the Second Circuit has squarely held in the analogous context of a subpoena served on a federal agency that enforcement of a subpoena is a "judicial proceeding" that "would compel [the government] to act and therefore is barred by sovereign immunity in the absence of a waiver." *EPA v. General Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999), *amended on reh'g on other grounds*, 212 F.3d 689 (2d Cir. 2000). Relying on *EPA*, the only judge in this District to address whether a subpoena served on a state agency triggers state sovereign immunity recently applied the holding in *EPA* to bar enforcement of a subpoena served on OAG. *See Felix v. County of Nassau,* 344 F.R.D. 441, 445 (E.D.N.Y. 2023) The *Felix* court applied the language from *Dugan* quoted in *EPA* to conclude that "when the OAG is served with a third-party subpoena, this is exactly the type of coercive judicial process that the Supreme Court cases seem to envision being protected against by sovereign immunity . . . ." *Id.* at 445.

More recently, the only judge in SDNY to address whether a subpoena served on a state agency triggers state sovereign immunity (*involving the parties here)* reached the same conclusion as the *Felix* court—that a subpoena served on a state agency triggers sovereign immunity; in a thorough and comprehensive opinion, Magistrate Judge Sarah L. Cave of SDNY held that Cuomo's subpoenas were unenforceable against OAG, and by extension the outside firms retained by OAG to assist with the investigation, because the subpoenas "are each a 'suit' or 'judicial proceeding' that 'is barred by sovereign immunity in the absence of a waiver.'" *Bennett v. Cuomo*, No. 22-cv-7846, 2024 WL 2963714,

at *11 (S.D.N.Y. June 12, 2024) (citing *EPA*, 197 F.3d at 597), *objection filed* (June 26, 2024). Cuomo pretends the *Bennett* decision does not exist, affording the case only fleeting, non-substantive references in a handful of footnotes, *see* Cuomo MOL at fns. 2, 8, 11, 17, devoid of any substantive discussion. Cuomo's total failure to engage with the *Bennett* decision—a case that could not be more squarely on point—speaks volumes.

The Fifth Circuit reached the same conclusion as *Bennett* and *Felix* in *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022), yet another case directly on point involving state sovereign immunity. In *Russell*, the Fifth Circuit held that "[b]y compelling a state to produce its papers, a *subpoena duces tecum* subjects a sovereign to the 'coercive process of judicial tribunals at the instance of private parties,'" thereby triggering state sovereign immunity. *Id.* at 515 (internal citations omitted) (quoting *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 58 (1996)). Cuomo disparages *Russell* as "an outlier," Cuomo MOL at 28, but as demonstrated by *Felix* and *Bennett*, it reflects the growing trend.

Further supporting the conclusion that the Subpoena triggers OAG's sovereign immunity, the former Chief Judge of SDNY and the Eighth and Tenth Circuits, relying on the Second Circuit's rationale in *EPA*, held that subpoenas served on tribal officials trigger analogous tribal sovereign immunity. *See Catskill Dev't, LLC v. Park Place Entertainment Corp.*, 206 F.R.D. 78, 88-89 (S.D.N.Y. 2002) (holding the rule in *EPA* should apply to subpoenas served on tribal officials); *Alltel Comm'ns, LLC v. DeJordy*, 65 F.3d 1100, 1103 (8th Cir. 2012) (holding a subpoena triggers tribal sovereign immunity);[2] *Bonnet v. Harvest (U.S.) Holdings, Inc.,* 741 F.3d 1155, 1159-60 (10th Cir. 2014) (same).

Cuomo urges the Court to reject all of these cases as "wrongly decided" (Cuomo MOL at 23)

---

[2] Fifteen years earlier, the Eighth Circuit rejected a nonparty state agency's claim of immunity from discovery subpoenas based on the Eleventh Amendment. *See In re Missouri Dept. of Natural Res.*, 105 F.3d 434, 436 (8th Cir. 1997). But as the Fifth Circuit noted in *Russell*, the Eighth Circuit's more recent decision in *Alltel* "casts considerable doubt" on its earlier decision in *In re Missouri DNR*. *Russell*, 49 F.4th at 518 n.12. In any event, the decision in *In re Missouri DNR* involved an analysis of only the state agency's Eleventh Amendment immunity and not its broader form of sovereign immunity relied on here, so the case is distinguishable on that basis. 105 F.3d at 436.

and instead follow the district court opinion in *Jackson v. AFSCME Local 196*, No. 07-cv-471, 2008 WL 1848900 (D. Conn. April 25, 2008). Cuomo MOL at 21-22. But as Magistrate Judge Cave correctly concluded in *Bennett*, the court in *Jackson* erred by ignoring the impact that a subpoena has on the state's sovereign dignity, focusing myopically on whether enforcing the subpoena would have an impact on the state's treasury. *Bennett*, 2024 WL 2963714 at *12. In doing so, the *Jackson* court ran afoul of the holding in *EPA* which recognized that a subpoena is a judicial proceeding triggering sovereign immunity because it seeks to *compel the government to act* and thereby negatively impacts the sovereign's dignity. *Id.*

Cuomo argues that federal discovery subpoenas "do not substantially infringe state dignity." Cuomo MOL at 22. But the holding in *EPA* forecloses Cuomo's argument. The Second Circuit in *EPA* applied the standard in *Dugan*, which focuses on whether the judicial proceeding could result in an order "compel[ling] [the sovereign] to act," without regard to whether the sovereign is a state or federal entity. *EPA*, 197 F.3d at 597 (quoting *Dugan*); *see also Bennett*, 2024 WL 2963714 at *11-12. Cuomo's attempt to cabin the holding in *EPA* to subpoenas served on federal agencies based on a purported distinction between federal and state sovereign immunity, Cuomo MOL at 22, is without merit. There is no daylight between these two forms of immunity to suggest the Second Circuit would reach a different conclusion for a subpoenaed state agency than the one it reached in *EPA* for a subpoenaed federal agency. Both federal and state sovereign immunity trace back to the well-established English common-law rule, existing at the time the U.S. Constitution was ratified, that "the Crown could not be sued without consent in its courts." Gregory C. Sisk, *A Primer on the Doctrine of Federal Sovereign Immunity*, 58 Okla. L. Rev. 439, 443 (2005) (quoting *Alden v. Maine*, 527 U.S 706, 715 (1999)). The Framers relied on this rule to endorse the concepts of both federal and state sovereign immunity; "[i]f the states were exempt from unconsented suit on this historical account [of English law], then all the more so was the federal government." *Id.* at 443-44 (citing Alexander Hamilton,

*The Federalist No. 81*, at 487-88 (Clinton Rossiter ed., 1961) (1788)). As the Supreme Court has recognized, immunity for state and federal employees are both based on "common-law sovereign immunity principles." *Lewis v. Clarke*, 581 U.S. 155, 163-64 (2017). Simply put, if a judicial proceeding that would result in an order compelling a federal agency to act triggers sovereign immunity, then so too does a judicial proceeding that would result in an order compelling a state agency to act. *Russell*, 49 F.4th at 513-14; *Felix*, 344 F.R.D. at 442; *Bennett*, 2024 WL 2963714 at *12. Cuomo offers no reason why the dignity of a state agency would be any less offended by an order compelling compliance with a Rule 45 subpoena than the dignity of a federal agency. Indeed, Judge McMahon's application of *EPA's* holding to subpoenas served on tribal officials in *Catskill* persuasively demonstrates that *EPA* is not limited in its application to subpoenas served just on federal agencies. 206 F.R.D. at 88-89.

Cuomo also notes "[c]ourts in various jurisdictions have concluded that a federal discovery subpoena is not a 'suit' against a state entity." Cuomo MOL at 20, n.16. But these out-of-circuit cases provide no support for Cuomo's position in this Circuit; in holding that a subpoena is not a judicial proceeding for purposes of triggering state sovereign immunity, these courts adopt reasoning that conflicts with *EPA* and *Dugan*.[3] *See, e.g., United States Dep't of Justice v. Ricco Jonas*, 24 F.4th 718, 727 (1st Cir. 2022) (finding subpoena served on a state agency is not a "suit" because compliance will have no effect on the state's treasury); *Barnes v. Black*, 544. F.3d 807, 812 (7th Cir. 2008) (finding a subpoena served on a state official violates the Eleventh Amendment because it "do[es] not compromise state sovereignty to a significant degree").

Cuomo's other attempts to sidestep *EPA* despite persuasive precedent in this Circuit applying

---

[3] Cuomo's reliance on the original panel decision in *McGehee v Nebraska Dep't of Corr. Servs*, reported at 968 F.3d 899 (8th Cir 2020, Cuomo MOL at 23, is patently improper. On rehearing, the panel *vacated* that opinion and remanded to the district court with instructions to dismiss the case as moot. *Id.*, 987 F.3d 785, 789 (8th Cir. 2021). On rehearing, the appellate court expressly rejected the state agency's request to reach the merits of the sovereign immunity issue: "[W]e find [the state agency's] other proposed basis of relief untenable because it would require us to decide the sovereign immunity issue before deciding mootness, or it would require us to reach the sovereign immunity issue despite our finding that the case is moot. *We decline to do either.*" *Id.* at 788 (emphasis added).

*EPA* to subpoenas served on state agencies (indeed, on OAG) and tribal officials are without merit.

**First**, Cuomo argues that even if the OAG Subpoena is a "suit," it is not one that is subject to state sovereign immunity because it is effectively one brought by the United States, and—the logic goes—states are not immune from suits by the federal government. Cuomo MOL at 23-24. Cuomo cites no authority for his counterintuitive proposition that a Rule 45 subpoena issued by a *private attorney* on behalf of a *private individual* should be viewed as a judicial proceeding brought by the United States. Instead, he relies on the Advisory Committee's notes to a 1991 amendment to Rule 45 and a district court case describing a Rule 45 subpoena as being "on behalf of and pursuant to the authority of" a district court, *see id.* at 24, but neither authority suggests that the federal government is the entity *issuing* the subpoena. Indeed, the holding in *EPA* that the subpoena served on the EPA was a judicial proceeding barred by federal sovereign immunity unless waived included a finding that the subpoena was "*issued by General Electric* to the EPA." *EPA*, 197 F.3d at 597 (emphasis added).[4] Furthermore, if a federal subpoena is viewed as a judicial proceeding by the United States for purposes of sovereign immunity, as Cuomo posits, tribes would never have immunity from federal subpoenas either because, as with states, tribes have no sovereign immunity from suits by the federal government. *See Garcia v. Akwesane Housing Auth.*, 268 F.3d 76, 85 (2d Cir. 2001) ("tribes do not enjoy sovereign immunity from suit by the United States."). Yet numerous jurisdictions, including the court in *Catskill*, have held that tribes do enjoy sovereign immunity from Rule 45 subpoenas unless waived. *Supra,* at 3. Simply put, Cuomo's argument that if a federal subpoena is a "suit" it is one brought by the United States that is not subject to state sovereign immunity quickly reduces to an absurdity.

---

[4] Moreover, Cuomo's reasoning would apply equally to a federal summons as to a federal subpoena because both are based on the authority of the district court. *See* Fed. R. Civ. P. 4(a) ("[u]pon the filing of the complaint the clerk shall forthwith issue a summons and deliver the summons to the plaintiff"); *Gianna Enterprises v. Miss World (Jersey) Ltd.*, 551 F. Supp. 1348, 1358 (S.D.N.Y. 1982) (noting a Rule 4 summons is "issued by the clerk of a court and not by the plaintiff or his attorney"). But interpreting a federal summons served by a private party as a "suit" by the United States because it issues on the authority of the district court is to eviscerate Eleventh Amendment immunity entirely. Any action by a private individual would be deemed an action commenced by the United States based on the federal summons, and hence not subject to state sovereign immunity.

**Second**, Cuomo seeks to avoid application of *EPA* by relying on the *Ex parte Young* doctrine, citing to a footnote in the Tenth Circuit's decision in *Bonnet* and two out-of-circuit district court cases.[5] *See* Cuomo MOL at 24-25. Cuomo's reliance on these cases is seriously misplaced.

In *Bonnet*, the court quashed a subpoena served on a tribe based on its determination, *consistent with the Second Circuit's decision in EPA*, that the subpoena was a suit triggering tribal immunity—a holding that defeats, rather than supports, Cuomo's position. 741 F.3d at 1161-62. In the cited footnote dicta, the *Bonnet* court suggested the outcome *might* be different if the subpoena named a tribal official rather than the tribe itself because of the potential application of *Ex parte Young*, *but expressly declined to decide the issue*. 741 F.3d at 1162 n.1; *see also Bennett*, 2024 WL 2963714 at *13. The decision in *Wopsock v. Dalton*, No. 2:12-cv-0570, 2018 WL 15780868 (D. Utah Mar. 29, 2018), similarly supports OAG's position rather than Cuomo's position. In that case, the court recognized that under *Bonnet*, "[a] suit for the purposes of tribal immunity includes third party subpoenas served on the tribe" despite plaintiff's reliance on *Ex parte Young*. *Id.* at * 2. While the court ultimately held that tribal sovereign immunity did not apply, it did so because the subpoena sought testimony from people "in their individual capacities, not for testimony on behalf of the Tribe." *Id.* at *3. Finally, the court in *Grand Canyon Skywalk Dev., LLC v. Cieslak*, Nos. 15-cv-01189 and 13-cv-00596, 2015 WL 4773585 (D. Nev. Aug. 13, 2015), followed precedent holding that a subpoena is not a suit triggering sovereign immunity because it has no impact on the sovereign's treasury—precedent that directly conflicts with *EPA*—without addressing the *Ex parte Young* doctrine. *Id.* at *5-7.

In an effort to satisfy the "ongoing violation of federal law" requirement, Cuomo argues that OAG is violating Rule 45 by refusing to produce documents in response to the Subpoena. Cuomo

---

[5] Cuomo's argument that the subpoenas to the Firms can be enforced under the *Ex parte Young* doctrine, Cuomo MOL at 25, should not even be considered by the Court as those subpoenas are stayed by the Court's September 26, 2023 Minute Entry and Order until further order and Cuomo has not moved to lift the stay. In any event, the subpoenas to the Firms are also barred by OAG's sovereign immunity because the Firms, and the appointed Special Deputies and Assistants at the Firms, were "acting as agents of a state agency—the OAG—and are therefore entitled to the protections of sovereign immunity." *Bennett*, 2024 WL 2963714 at *21.

MOL at 25. But Rule 45(d) prescribes procedures to oppose a subpoena where appropriate and necessary to avoid undue burden or expense, interpose objections and privileges, and move to quash or modify the subpoena. OAG has followed these procedures in opposing the Subpoena, and Cuomo fails to identify any provision of the federal discovery rules that OAG is presently violating that could even arguably support application of *Ex parte Young. See Bennett*, 2024 WL 2963714 at *13. (finding no violation of federal right as a predicate to invoke *Ex parte Young*); *Estate of Gonzalez*, 466 F. Supp. 2d 1226, 1229 (E.D. Ca. 2006) (holding subpoena fails to raise an "ongoing violation that could support a finding that the present issue falls within the *Ex parte Young* exception to the Eleventh Amendment bar.").[6] Cuomo's suggestion that OAG's response to the Subpoena is in "procedural compliance" but does not "comply with the substantive component of" Rule 45, *see* Cuomo MOL at 25, is nonsensical, and a proposition for which Cuomo has no support. Contrary to Cuomo's assertion, OAG's response to the Subpoena "complies with Rule 45, and therefore, no violation" of law exists. *Bennett*, 2024 WL 2963714 at *13. In any event, Rule 45 cannot serve as the predicate for an "ongoing violation of federal law" for the additional reason that it provides no private right of action. *Id.* at *13 (collecting cases).

**Third**, Cuomo argues that upholding OAG's state sovereign immunity here "would foreclose relief for plaintiffs in federal courts." Cuomo MOL at 26. But this is a policy argument that is barred by *EPA*, which requires a finding that the Subpoena is a suit triggering OAG's sovereign immunity. *Bennett*, 2024 WL 2963714 at * 12; s*ee, supra*, at 2-3. Moreover, even if the Court does consider Cuomo's policy argument (which it should not do in light of *EPA*), his concern over the ability of plaintiffs to obtain relief is overblown for the reasons provided in OAG's moving brief. *See* OAG MOL at 15-16. Cuomo's various responses to the examples of ways parties can obtain documents from New York

---

[6] *See also Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, No. 96-cv-8414, 2016 WL 7320775, at *8 (S.D.N.Y. July 18, 2016), *report and recommendation adopted*, No. 96-cv-8414, 2016 WL 7243544 (S.D.N.Y. Dec. 14, 2016) ("Because there has been no allegation or determination that [state government] officials are violating federal law . . . , the proposed order amounts to interference with public administration and goes beyond the relief available under *Ex parte Young*.").

state agencies outlined in OAG's moving brief miss the mark:

- Cuomo argues that naming state officials as defendants in their individual capacities in § 1983 actions "does not work" if the defendant does not have "custody" of the records, Cuomo MOL at 27, but he fails to include possession or control in addition to custody as bases for requiring production of documents, which courts liberally construe to compel disclosure.[7]

- Cuomo's contention that FOIL, including its exemptions, "is no equivalent" to discovery under Rule 45 is without merit.[8] To the contrary, it is well-established that FOIL "imposes a broad standard of disclosure upon the State and its agencies," "provid[ing] that all records of a public agency are presumptively open to public inspection and copying unless otherwise specifically exempted," with "[e]xemptions [] to be narrowly construed [by state courts] to provide maximum access." *Capital Newspapers*, 67 N.Y.2d at 578.[9]

- Cuomo chides OAG for "direct[ing] litigants to file claims against state agencies in the New York Court of Claims," Cuomo MOL at 28, when OAG does no such thing. OAG's point, made cogently in its moving brief, *see* OAG MOL at 16, is that there exists a forum specifically designated by the Legislature to hear a vast array of claims against the state where sovereign immunity has been waived, undermining Cuomo's vastly exaggerated contention that upholding sovereign immunity here "would foreclose relief for plaintiffs in federal courts." Cuomo MOL at 26.

- Finally, Cuomo contends that even when there is abrogation of state sovereign immunity, a state may seek to assert "sovereign immunity against discovery from state agents," citing to a brief filed by a Texas district attorney, *see id.* at 28. But his contention is beside the point since courts do not apply state sovereign immunity where Congress has abrogated such immunity through the exercise of its valid legislative powers, notwithstanding what a local Texas DA may choose to argue.

This Court should follow *Bennett* and *Felix* and hold that, under the *Dugan* rule applied in *EPA*,

the Subpoena and this action are suits barred by OAG's state sovereign immunity absent waiver.

---

[7] *See, e.g., Gross v. Lunduski*, 304 F.R.D. 136, 144 (W.D.N.Y. 2014) ("The court therefore finds Defendant [corrections officer] has the practical ability to access or obtain Plaintiff's requested documents from DOCCS demonstrating a sufficient degree of control over such documents to support an enforceable document request pursuant to Rule 34(a)."); *Vigliotti v. Selsky*, No. 08-cv-00875, 2013 WL 3354423, at *4 (W.D.N.Y. July 3, 2013) (holding where defendant prison official represented by OAG was held to have "sufficient nexus" to DOCCS to arrange for inspection pursuant to plaintiff's Rule 34(a) request, defendant's objection that he lacked possession, custody or control of facility to arrange for plaintiff's requested inspection was without merit).

[8] To invoke a FOIL exemption, a state agency must articulate "particularized and specific justification," *In re Capital Newspapers Div. of Hearst Corp. v. Burns*, 67 N.Y.2d 562, 569 (1986), and in particular "the exemption for confidential sources and information [must] be narrowly circumscribed," *Friedman v. Rice*, 30 N.Y.3d 461, 481 (2017). Notably, Cuomo fails to explain how the narrow exemptions he cites for information raising privacy concerns or interfering with contract awards or union negotiations would have any material effect on a § 1983 plaintiff. There is no obvious reason why they would.

[9] Cuomo should not be heard to complain about the "lengthy proceeding in state court" to enforce his FOIL demand since he waited until July 25, 2023, to serve his FOIL demand—nearly *two years after* the Report was issued and *more than one year after* serving his initial subpoena on OAG in this matter. Any delay rests on him and not the FOIL procedures.

## II.    OAG HAS NOT WAIVED ITS SOVEREIGN IMMUNITY DEFENSE

As a threshold matter, under controlling New York law, OAG's sovereign immunity from suit in New York cannot be waived by litigation conduct. *See* OAG MOL at 18-19. Cuomo's contention that the recent decision in *Henry v. New Jersey Transit Corp.*, 39 N.Y.3d 361 (2023), abrogated this rule is wrong. The court in *Henry* recognized a distinction between New York's sovereign immunity from suit in the courts of another state—which it held was not jurisdictional and can be waived by litigation conduct—and New York's sovereign immunity from suit in New York courts (at issue here)—which it reaffirmed was jurisdictional and cannot be waived. 39 N.Y.3d at 372-73. Thus, *Henry* reaffirmed that OAG cannot waive its immunity to suit in this Court through litigation conduct.

But even if OAG's sovereign immunity was waivable (which is not the case), the record cannot support a finding of waiver under the applicable stringent standard requiring a state to unequivocally invoke its intent to be subject to the court's jurisdiction, *see* OAG MOL at 21 (citing cases). Here, OAG has affirmatively objected to the Subpoena at every possible juncture and has never consented to the jurisdiction of this Court to compel compliance. *See* Longley Decl. at ¶¶ 50, 52, 56-60. Nevertheless, Cuomo argues that OAG has waived its sovereign immunity by: 1) allegedly producing records to DOJ for use in an investigation regarding Cuomo's sexual harassment of numerous women; 2) making a limited voluntary production of materials to Cuomo in this action; and 3) producing documents to the Court for *in-camera* review per this Court's order.[10] Cuomo MOL at 16-19.

Cuomo's argument that OAG's *alleged* production of documents to DOJ constituted waiver because OAG purportedly provided the materials "to effectuate civil prosecution based on allegations against Governor Cuomo," *id.* at 16, is factually without support and legally wrong. First, there is no evidentiary support for Cuomo's assertion that OAG provided any material to DOJ, let alone that

---

[10] Cuomo does not contend that Congress has abrogated New York's sovereign immunity, so the only issue presented is whether OAG waived sovereign immunity by litigation conduct.

OAG affirmatively provided material to DOJ to initiate a civil prosecution against Cuomo. Second, the cases relied on by Cuomo for this proposition, primarily *United States v. James,* 980 F.2d 1314 (9th Cir. 1992), *see* Cuomo MOL at 16, do not support Cuomo's position. In *James,* the tribe had voluntarily provided documents from one of its agencies to prosecutors to aid the government's case against James, but then invoked sovereign immunity when subpoenaed for additional *related records* by James. *Id.* at 1319. The court found that the tribe waived sovereign immunity by placing the records at issue when it voluntarily provided the same type of records to one party, and could thus not shield *related* records from disclosure to another party in the same case.[11] *Id* at 1320. Here, OAG has not provided the requested materials to any party, and thus, has not selectively invoked sovereign immunity. Cuomo's accusation of OAG's supposed "duplicitous conduct" in failing to disclose OAG communications with DOJ, Cuomo MOL at 16-17, is without any relevance. DOJ is not a party to *Bennett* or this case, and its investigation of Cuomo is not at issue in either case. Thus, even assuming, *arguendo,* that OAG provided some of the requested materials to DOJ (part of the Executive branch), it cannot possibly support a finding that OAG has waived its sovereign immunity in this Court (part of the Judicial branch).

Similarly, OAG's limited voluntary production does not provide the clear, unambiguous consent required to waive sovereign immunity. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999). Notably, the facts of *EPA* establish that sovereign immunity cannot be "selectively waived" in this Circuit based on a partial production of materials sought by subpoena. *See EPA,* 197 F.3d at 594. As noted by the court in *EPA,* after receiving the subpoena, the EPA treated the subpoena "as a request under FOIA in accordance with EPA regulations" and

---

[11] The other cases cited by Cuomo for this proposition are equally distinguishable as they either involved the subpoenaed entity having selectively provided records to one of the *parties* to the action (*United States v. Menominee Tribal Enters.*, No. 07-c-316, 2008 WL 2273285 (E.D. Wis. June 2, 2008) and *United States v. Velarde*, 40 F. Supp. 2d 1314, 1317 (D.N.M. 1999)) or discovery requests *directed to a party* to the action (*Information Resources, Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591 (S.D.N.Y. 1998)).

decided to release several documents in response, which the court assumed were produced. *Id.* at 594. The court nevertheless concluded that federal sovereign immunity applied to the subpoena notwithstanding this partial production of documents absent some other form of waiver.[12] *Id.* at 597.

Moreover, neither of the cases cited by Cuomo support his argument because they involve a sovereign selectively producing and withholding the same type of document. *See NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, Nos. C-04-3955, C-05-1605, 2009 WL 4258550, at *6 (N.D. Cal. Nov. 24, 2009) (finding waiver as to "only those documents" that are similar to those produced and finding *no waiver* where the "documents sought by the subpoena are not sufficiently related to the information produced, and the [sovereign] may have different interests in these other documents."); *Jett v. Penner*, No. S-02-2036, 2007 WL 127790, at *2 (E.D. Ca. Jan. 12, 2007) (holding California Department of Corrections and Rehabilitation ("CDCR") waived sovereign immunity defense to a second subpoena served by the plaintiff prisoner seeking documents from his "central file" based on the CDCR's prior production of documents from the same "central file" in response to plaintiff's first subpoena). Here, the handful of documents voluntarily provided by OAG were phone records "of no consequence whatsoever," wholly unrelated to the requested materials and as to which OAG has different interests as reflected by the privileges it has asserted. June 25, 2024 Transcript at 16 (ECF No. 77-10) ("Ms. Trzaskoma: [The previously produced] documents are of no consequence whatsoever. They're . . . four separate versions of a phone book that happen to contain [Trooper 1's] name.").

Finally, Cuomo argues that OAG waived sovereign immunity by providing material to this Court for *in camera* review. Cuomo MOL at 18. But, as Cuomo acknowledges, this Court *ordered* OAG

---

[12] Courts in other circuits routinely hold that voluntary participation in discovery by a state entity does not waive sovereign immunity. *See Texas LDPC, Inc. v. Broadcom, Inc.*, No. 22-cv-01781, 2023 WL 3293291, at *2 (S.D. Tex. 2023) (applying the holding in *Russell*, the court determined that "[p]articipating in discovery does not provide the clear, unambiguous consent to suit that is required to waive sovereign immunity"); *Yul Chu v. Mississippi State Univ.*, 901 F. Supp. 2d 761, 774 (N.D. Miss. 2012) (holding no waiver despite "engaging in extensive discovery"); *Adams v. Texas Comm'n on Env't Quality*, No. A-06-CA-281-SS, 2007 WL 9701381, at *1 (W.D. Tex. May 29, 2007) (finding no waiver despite "participating in discovery, depositions, and other pretrial matters"); *Lazaron v. Mississippi State Univ.*, No. 07-cv-060, 2012 WL 1352890, at *5 (N.D. Miss. Apr. 17, 2012) (holding no waiver despite a state entity "engaging in extensive discovery").

to do so. *Id.* at 10 (noting OAG "complied and provided those documents to the Court" for *in camera* review). Complying with a court order cannot support a finding that OAG voluntarily abandoned its right to invoke sovereign immunity.[13] *See Close v. State of N.Y.*, 125 F.3d 31, 39 (2d Cir. 1997) (holding that the conduct at issue must be one in which the state realistically could choose not to participate); Erwin Chemerinsky, *Federal Jurisdiction* § 7.6, at 410 (2d ed.1994) (same).

## III. THE REQUESTED MATERIALS ARE IRRELEVANT AND NOT PORPORTIONAL TO THE NEEDS OF THE CASE

Cuomo's relevance argument is based on an outdated—and incredibly expansive—view of relevance. *See* Cuomo MOL at 12 ("Information is relevant if it has 'any tendency' to make a fact more or less probable and the fact is of consequence to a claim or defense."). Cuomo pays mere lip service to the requirement instituted in a 2015 amendment to Rule 26 that discovery sought must be "proportional to the needs of the case." *Sibley v. Choice Hotels Int'l,* No. 14-cv-634, 2015 WL 9413101 at *2 (E.D.N.Y. Dec. 22, 2015). Indeed, the case relied on by Cuomo for the definition of relevance makes clear that even "relevant" information should be starkly limited by the principles of proportionality. *See Johnson v. Doty*, No. 15-cv-7823, 2020 WL 1244236, at *1 (S.D.N.Y. March 16, 2021) ("[T]he amended Rule is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information.") (internal citation omitted). Cuomo also ignores the higher burden he has in seeking discovery against a nonparty, like OAG. *See Ebbert v. Nassau County*, No. 05-cv-5445, 2007 WL 674725, at *4 (E.D.N.Y. March 5, 2007) (Courts should "accord special weight to

---

[13] Cuomo's reliance on *Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, No. 06-cv-1260, 2009 WL 4981905 (E.D.N.Y. Dec. 10, 2009), *see* Cuomo MOL at 18, on this point is baseless as he misstates the court's holding. Cuomo conveniently ignores that the court found waiver only for the *counterclaims themselves* and found that the tribe otherwise preserved its immunity over the defenses to the claims originally filed by the plaintiff. 2009 WL 4981905, at *8. Cuomo attempts to flip reality on its head by claiming that OAG moving to quash his Subpoena is engaging in affirmative litigation rather than defensive litigation. *See id.* ("Recognizing that a sovereign should not be required to waive defenses, circuit courts determine whether a sovereign defendant has waived its immunity through its litigation conduct by determining if the defendant's conduct affirmatively invoked the jurisdiction of federal court, rather than being merely defensive.").

the burden on non-parties of producing documents for others involved in litigation.").

Cuomo seeks materials that are patently irrelevant to defending the claims at issue in the Complaint and is instead abusing the discovery process to seek to undermine OAG's Report for his own political gains. *See* OAG MOL at 21-23. Cuomo persists in saying the quiet part out loud in arguing that the materials sought constitute "evidence [] central to challenging [] the OAG Report itself…" *Id.* at 14; *see also id.* at n. 9 (conceding that "Governor Cuomo indeed must 'attack' the Report . . . ."). This is exactly the point—Cuomo wants the requested materials to attack the Report, not to defend against the allegations in Trooper 1's Complaint.

Moreover, Cuomo's articulation of the relevance of the materials sought in his Subpoena, which he labels as "circumstantial evidence," Cuomo MOL at 14, boils down to rank speculation that the materials will "likely undercut or fail to corroborate" the credibility of Trooper 1 or other witnesses and/or that they "may" establish that other employees of the New York State Police ("NYSP") did not experience the same harassment that Trooper 1 alleges. Cuomo MOL at 12-13. Such speculation is insufficient to establish relevance following the 2015 amendment to Rule 26, nor does it fit into Cuomo's own outdated definition of relevance; the materials Cuomo seeks are not "circumstantial evidence"[14] of whether Cuomo sexually harassed Trooper 1, but rather are internal OAG files related to an after-the-fact investigation of allegations of sexual harassment.[15] Cuomo undercuts his own theory of relevance by admitting that the requested materials would be duplicative of purportedly

---

[14] Cuomo seems to conflate "circumstantial evidence," "[e]vidence based on inference and not on personal knowledge or observation" (Black's Law Dictionary (11th ed. 2019), Evidence) with evidence of minimal or no relevance.

[15] Cuomo relies on *Flores v. Stanford*, No. 18-cv-02468, 2022 WL 354719 (S.D.N.Y. Feb. 7, 2022), for the proposition that witness statements "would "without a doubt" "bear on" a stated "claim or defense,"" Cuomo MOL at 14, but that case is plainly distinguishable from the circumstances here. In *Flores*, plaintiffs, a group of inmates who had been denied parole by defendant, the New York State Board of Parole, sought victim impact statements that plaintiffs explicitly claimed in their complaint were improperly relied on in making their parole decisions and that an agent of defendant admitted at deposition were used in assessing the plaintiffs' parole applications. 2022 WL 354719 at *4. Those victim impact statements had a clear nexus to the claims in the *Flores* case. In contrast, here there is no way the interview memoranda or unredacted transcripts could have influenced the events at issue because they were prepared after the fact and have not been disclosed to any of the parties. *See* OAG MOL at 22-23; Longley Decl. ¶ 41.

exculpatory and/or impeachment evidence already in his possession. *See* Cuomo MOL at 13 ("there is already ample reason to disbelieve Trooper 1 and her witnesses.").

In contrast to Cuomo's weak and speculative relevance arguments, OAG has clearly demonstrated that production of the requested materials would impose an immense burden on OAG, including the time and expense involved in reviewing the materials, and the harm such production would do to OAG's ability to conduct future investigations. OAG MOL at 23-25. Cuomo's argument that there would be no burden to OAG in producing the interview memoranda because "the firms already reviewed the materials at issue and applied redactions to address purported privilege and confidentiality concerns…," Cuomo MOL at 15, is entirely disingenuous. OAG has consistently maintained that the memoranda have only ever been reviewed and redacted for attorney work product and would need to be reviewed again in their entirety to assess and apply the other privileges asserted by OAG, a fact acknowledged by Cuomo's counsel at a conference held on April 19, 2024. *See* Tr. (ECF No. 63) at 81-83 and 82:8-12 (Ms. Glavin: "So if you look at those redacted memos, which were redacted for work product, then you're looking at what the other privileges would be, beyond – because they've been redacted for work product.").

The Subpoena should be quashed because Cuomo's claim of relevance based on an outdated standard fails to justify imposing the huge burden on OAG required to review the requested materials.

## IV.    THE MATERIALS SOUGHT ARE PRIVILEGED

As a threshold matter, Cuomo's argument that OAG waived all privileges by sharing materials with other law enforcement agencies (namely DOJ and various district attorney's offices), *see* Cuomo MOL at 29, is without merit. The cases he cites—*Bowne of NYC, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 479 (S.D.N.Y. 1993) and *Info. Res. Inc.*, 999 F. Supp. at 593—are distinguishable as those cases deal with a *non-government entity* disclosing information to a third party (whether government or private). These cases have no bearing on the exchange of information between two government agencies in

furtherance of their common interest in enforcing state and federal laws, which courts recognize does not waive privilege. *See, e.g.*, *United States v. Schwimmer*, 892 F.2d 237, 243-45 (2d Cir. 1989); *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 433-35 (S.D.N.Y. 2013).

### A. The Attorney/Client Privilege Applies

**First**, Cuomo contends that the attorney interview memoranda do not constitute attorney/client communications because the attorneys who created them did not enjoy a privileged relationship with the interview subjects. *Id.* at 30. This argument misses the point entirely. The interview memoranda were created by OAG's deputized attorney agents with the intent to share legal advice and planning within the Investigative Team (which for these purposes was part of OAG) and in furtherance of ultimately making legal recommendations to OAG as to whether Cuomo engaged in sexual harassment and retaliation. Chun Decl. ¶ 13. The fact that the investigators did not have a privileged relationship with the interview subjects does not defeat OAG's assertions of attorney/client privilege; it is the compilation and transmittal of information between attorney and client that protects documents or communications from disclosure; the interview subjects were not clients and the interview memoranda were never shared with them.[16] *See Fisher v. United States*, 425 U.S. 391, 396 (1976).

**Second**, Cuomo's contention that the Firms, and the attorneys of the Firms deputized as OAG's Special Deputies and Assistants, were not acting as counsel to OAG, *see* Cuomo MOL at 30, is fundamentally wrong. Both the Chun and Longley Declarations make clear that the Firms were retained to provide legal advice to OAG stemming from the Investigation, and the engagement agreements

---

[16] OAG acknowledges that the transcripts sought by Cuomo's Subpoena are not covered under the attorney/client, work-product, public interest, or deliberative process privileges. The transcripts are distinguishable from the interview memoranda because they were not created by the attorneys, but rather by an outside transcription service, and were created to make a sworn record of non-privileged conversations. OAG has already made all transcripts public with redactions under the law enforcement privilege. *See* Chun Decl. ¶¶ 10-11. By contrast, the interview memoranda created by the Special Deputies and Assistants were aggregations of information that the attorneys believed to be worthy of memorialization and consist of the attorneys' impressions and recollections of the interviews they conducted. *Id.* ¶ 13.

between OAG and the Firms make clear that a core function the Firms were retained to perform was to provide legal advice and analysis supporting the Investigation. Longley Decl. ¶ 14, Ex. 5, Firms Engagement Letters (noting the Firms were retained "to provide investigation and legal services by assisting the [OAG] in its review of allegations of, and circumstances surrounding, sexual harassment against Governor Andrew Cuomo"); Chun Decl. ¶ 5.

Cuomo is also wrong that the independent nature of the Investigation rendered the need for legal advice moot. Cuomo MOL at 30. Pursuant to Exec. Law § 63(8) and the Referral, independent firms were selected to lead the Investigation under the supervision and authority of OAG. Nothing about Exec. Law § 63(8) or the structure of the Investigation rendered legal advice and consultation between OAG and the investigators unnecessary; to the contrary, the record establishes that the Special Deputies and Assistants were appointed as agents of and counsel to OAG. *See* Longley Decl. Ex. 4, Appointment Letters.

**Third**, Cuomo's argument that the memoranda are not protected by the attorney/client privilege because "OAG cannot show that the Requested Materials were kept confidential" because OAG published a public report "detailing various witness statements," Cuomo MOL at 30-31, is factually and legally incorrect. OAG has never put the requested materials at issue in litigation. OAG has already published the redacted transcripts and exhibits underlying the Report, and the Report does not cite to or reference the interview memoranda. Rather, OAG has consistently denied access to the memoranda to members of the public, including the witnesses themselves. Longley Decl. ¶ 41; Chun Decl. ¶¶ 6, 14; *see In re General Motors LLC Ignition Switch Litigation*, 80 F. Supp. 3d 521, 528-529 (S.D.N.Y. 2015) (the "touchstone analysis is not whether [the holder of the privilege] intended to keep confidential the results of its investigation, but rather whether it intended to keep confidential the communications reflected in the interview materials" and [t]he fact that certain *information* in [otherwise protected] documents might ultimately be disclosed [] does not, by itself, create the factual inference that

the *communications* were not intended to be confidential at the time they were made.") (emphasis in original).

### B.  The Work-Product Doctrine Applies

Cuomo argues that the requested materials are not protected by the work product doctrine because they were not prepared in anticipation of litigation and OAG's release of the Report acted to waive work-production protections. *See* Cuomo MOL at 31-32. Both arguments are without merit.

**First**, Cuomo ignores the Second Circuit's interpretation of the "in anticipation of litigation" requirement, which asks whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1198-99 (2d Cir. 1998) (internal quotations and citation omitted). A party invoking the work product doctrine need not have anticipated the specific litigation for which the protection is actually invoked. *See Garrett v. Metro Life Ins. Co.*, No. 95-cv-2406, 1996 WL 325725, at *4 (S.D.N.Y. June 12, 1996). Here, Cuomo's argument fails because OAG and the Investigative Team reasonably anticipated "the prospect of litigation," *Adlman,* 134 F.3d at 1199, upon receiving the Exec. Law § 63(8) referral, including litigation from the victims (as came to pass), impeachment proceedings, and also litigation by Cuomo himself (which his counsel has acknowledged considering, and which also came to pass with Cuomo's filing of an Ethics Complaint). Chun Decl. ¶ 6.

**Second**, for the same reason the release of the Report did not waive the attorney/client privilege, it did not waive attorney work product. *See*, *supra*, Point IV.A at 17. Cuomo's reliance on *New York Times Co. v. United States Dep't of Justice,* 939 F.3d 479 (2d Cir. 2019), is misplaced. There, the court, in the context of resolving a Freedom of Information Act ("FOIA") request with no limited subject matter, largely *rejected* the claim that public statements about an attorney's internal memoranda regarding whether to initiate formal criminal investigations constituted a broad "at issue" waiver under FOIA exemptions. *Id.* at 497-498. Accordingly, the interview memoranda are clearly protected by the work

product doctrine and Cuomo's arguments to the contrary should be rejected.

### C. The Law Enforcement Privilege Applies

Cuomo makes four primary arguments against application of the law enforcement privilege: 1) "factual reports" cannot be protected under this privilege; 2) OAG has no basis to claim that invocation of the privilege is necessary to protect witness confidentiality; 3) OAG has failed to state with particularity how the requested materials implicate security protocols of the NYSP; and 4) even if the privilege is applicable it is overcome by Cuomo's compelling need for the materials. *See* Cuomo MOL at 33-36. The Court should reject each of these arguments.

**First**, Cuomo's argument that "[f]actual recitations of witness statements in civil investigations do not implicate the concerns motivating the law enforcement privilege," relying on *Moroughan v. Cty. of Suffolk*, No. 12-cv-512, 2018 WL 11268801 (E.D.N.Y. Feb. 6, 2018), Cuomo MOL at 33, is wrong. The *Moroughan* decision makes plain that the factual nature of the reports at issue were but one of many factors the court considered in determining whether the law enforcement privilege applied. 2018 WL 11268801 at *6 (noting the court also analyzed the five factors laid out in *In re The City of New York*, 607 F.3d 923 (2d Cir. 2010)). The idea that factual reports can never be covered by the law enforcement privilege is wrong, and OAG has already articulated sufficient grounds for invocation of this privilege under the applicable factors in *City of New York*. *See* OAG MOL at 28-31.

**Second**, Cuomo's confidentiality argument ignores (i) the ample evidence OAG has laid out that the confidentiality of the witnesses is of major ongoing concern in this case, Longley Decl. ¶¶ 42-47, and (ii) OAG's argument that the New York Legislature enshrined the confidentiality protections of witnesses within Exec. Law § 63(8), thus giving those common-law concerns the force of statutory weight. *See* OAG MOL at 30-31.

**Third**, Cuomo's argument that OAG has not provided specificity as to what information would be protected as revealing NYSP procedures or security details is wrong. OAG provided both

an overview of the type of information that falls within this category, *id.* at 25, and provided the Court with specific exemplars of this information through annotated interview memoranda submitted *in camera* in accordance with the Court's order, *id.* at 25, n. 12.

**Fourth**, OAG vigorously disputes Cuomo's characterizations of both OAG's law enforcement interest in keeping its interview memoranda confidential and the utility such memoranda would provide Cuomo in defense of the Trooper 1 action. Far from demonstrating a "compelling need" for the requested materials, Cuomo has, as explained above, failed to articulate a persuasive hypothetical application for these records. *See supra*, Point III at 13-15. To compel OAG to provide Cuomo with the identities of, and private information given by, confidential witnesses who are irrelevant to Trooper 1's claims would undoubtably hinder OAG's ability to gain witnesses' cooperation in future investigations for fear OAG could be compelled to disclose their information in remote and irrelevant litigation by private litigants with ulterior motives.

Finally, Cuomo's insistence that any confidentiality concerns can be cured by adherence to the Court's protective order is belied by the fact that one prominent reason OAG seeks to keep these memoranda confidential is the fear that Cuomo and the other defendants to this action will use them to further harass and intimidate the witnesses. *See* OAG MOL at 32.[17]

## CONCLUSION

For the reasons set forth above, nonparty OAG respectfully requests that the Court grant its motion to quash the Subpoena, deny Cuomo's cross-motion to compel, and grant such other and further relief as the Court deems just and proper.

---

[17] OAG reiterates its argument that the deliberative process and public interest privileges are applicable to the interview memoranda. *See* OAG MOL at 33-34. OAG disputes Cuomo's contention that OAG waived these privilege by "expressly adopt[ing] or incorporat[ing] the documents by reference in the Report. Cuomo MOL at 39. This argument is wrong for exactly the same reason that OAG's Report did not waive the attorney/client or work-product privileges *See, supra*, at 17.

Dated:  New York, New York
         August 5, 2024

LETITIA JAMES
Attorney General of the State of New York

By:   /s/ Andrew Amer
Andrew Amer
Michael Jaffe
James Cooney

28 Liberty Street
New York, NY 10005
Phone: (212) 416-6127
andrew.amer@ag.ny.gov

*Attorneys for Defendant*
*Office of the New York Attorney General*