**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOVERNOR ANDREW M. CUOMO, | **ORAL ARGUMENT REQUESTED** |
| Movant, | |
| v. | Case No. 22-mc-03044 (LDH) (TAM) |
| OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL, | |
| Respondent. | |
| TROOPER 1, | |
| Plaintiff, | Pending In: Civil Action No. 22-cv-00893 (LDH) (TAM), United States District Court for the Eastern District of New York |
| v. | |
| NEW YORK STATE POLICE, et al., | |
| Defendants. | |

### MEMORANDUM OF LAW IN SUPPORT OF GOVERNOR CUOMO'S CROSS-MOTION TO COMPEL AND IN OPPOSITION TO THE OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL'S MOTION TO QUASH GOVERNOR CUOMO'S SUBPOENA

GLAVIN PLLC
Rita M. Glavin
Katherine E. Petrino
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

SHER TREMONTE LLP
Theresa Trzaskoma
Allegra A. Noonan
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

*Counsel for former Governor*
*Andrew M. Cuomo*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND ................................................................................................................... 4

ARGUMENT ....................................................................................................................... 12

I.      THE REQUESTED MATERIALS ARE RELEVANT AND PROPORTIONAL .......... 12

        A.      The Requested Materials Are Relevant ..................................................... 12

        B.      Producing the Requested Materials Would Not Be Burdensome ......................... 15

II.     STATE SOVEREIGN IMMUNITY DOES NOT BAR ENFORCEMENT
        OF THE NARROWED SUBPOENA ................................................................... 15

        A.      The OAG Waived Any Claim to State Sovereign Immunity .............................. 16

        B.      State Sovereign Immunity Does Not Apply to Federal Discovery Subpoenas .... 20

III.    THE REQUESTED MATERIALS ARE NOT PROTECTED FROM
        DISCLOSURE BY ANY APPLICABLE PRIVILEGE ................................................ 29

        A.      The Attorney-Client Privilege Does Not Apply ..................................... 29

        B.      The Work Product Doctrine Does Not Apply ........................................ 31

        C.      The Law Enforcement Privilege Does Not Apply ................................. 32

        D.      The Deliberative Process Privilege Does Not Apply ........................... 37

CONCLUSION ................................................................................................................... 40

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelante Ala. Worker Ctr. v. U.S. Dep't of Homeland Sec.*,
  376 F. Supp. 3d 345 (S.D.N.Y. 2019) ................................................................... 39

*Agran v. City of New York*,
  No. 95 Civ. 2170 (JFK), 1997 WL 107452 (S.D.N.Y. Mar. 11, 1997) ................... 36

*Ali v. Carnegie Inst. of Washington*,
  306 F.R.D. 20 (D.D.C. 2014) ................................................................................ 20

*Allen v. W. Point-Pepperell Inc.*,
  848 F. Supp. 423 (S.D.N.Y. 1994) ....................................................................... 30

*Allen v. Woodford*,
  544 F. Supp. 2d 1074 (E.D. Cal. 2008) ............................................... 20, 23, 25, 26

*Allied Irish Banks v. Bank of Am., N.A.*,
  240 F.R.D. 96 (S.D.N.Y. 2007) ............................................................................ 31

*Allocco Recycling, Ltd. v. Doherty*,
  220 F.R.D. 407 (S.D.N.Y. 2004) ..................................................................... 37, 38

*Alltel Commc'ns, LLC v. DeJordy*,
  675 F.3d 1100 (8th Cir. 2012) ............................................................................. 23

*Am. Civ. Liberties Union v. Dep't of Def.*,
  No. 15 Civ. 9317 (AKH), 2017 WL 4326524 (S.D.N.Y. Sept. 27, 2017) .............. 37

*Am. Soc'y for Prevention of Cruelty to Animals v.
  Animal & Plant Health Inspection Serv.*,
  No. 19 Civ. 3122 (NRB), 2021 WL 1163627 (S.D.N.Y. Mar. 25, 2021) ............... 38

*Arbalaez v. City of New York*,
  No. 17-CV-6543 (JMF), 2019 WL 5634174 (S.D.N.Y. Oct. 31, 2019) ................. 34

*Au New Haven, LLC v. YKK Corp.*,
  No. 1:15-cv-3411-GHW, 2023 WL 2612204 (S.D.N.Y. Mar. 23, 2023) ................ 12

*Barnes v. Black*,
  544 F.3d 807 (7th Cir. 2008) ......................................................................... 20, 23

*Bd. of Trustees of Univ. of Ala. v. Garrett*,
  531 U.S. 356 (2001) ............................................................................................. 28

*Beaulieu v. Vermont*,
807 F.3d 478 (2d Cir. 2015) ............................................................................ 17, 19

*Bonnet v. Harvest (U.S.) Holdings, Inc.*,
741 F.3d 1155 (10th Cir. 2014) .............................................................................. 24

*Bowne of N.Y.C., Inc. v. AmBase Corp.*,
150 F.R.D. 465 (S.D.N.Y. 1993) ............................................................................ 29

*Burbar v. Inc. Vill. of Garden City*,
303 F.R.D. 9 (E.D.N.Y. 2014) ................................................................................ 40

*Burnette v. Carothers*,
192 F.3d 52 (2d Cir. 1999) ..................................................................................... 28

*Catskill Dev., LLC v. Park Place Ent. Corp.*,
206 F.R.D. 78 (S.D.N.Y. 2002) ................................................................... 21, 23, 24

*Charleston Waterkeeper v. Frontier Logistics, L.P.*,
488 F. Supp. 3d 240 (D.S.C. 2020) ................................................................ 20, 23

*Clair v. Schlachter*,
No. 2:13-cv-804-KJM-EFB P (TEMP), 2016 WL 2984107
(E.D. Cal. May 23, 2016) ......................................................................................... 26

*Close v. State of New York*,
125 F.3d 31 (2d Cir. 1997) ..................................................................................... 28

*Collins v. City of Harker Heights, Texas*,
503 U.S. 115 (1992) ................................................................................................. 26

*Commonwealth of P.R. v. United States*,
490 F.3d 50 (1st Cir. 2007) ..................................................................................... 23

*COMSAT Corp. v. Nat'l Sci. Found.*,
190 F.3d 269 (4th Cir. 1999) ................................................................................. 23

*D'Ippolito v. Cities Serv. Co.*,
39 F.R.D. 610 (S.D.N.Y. 1965) ............................................................................... 17

*Drs. Hosp. of Laredo v. Cigarroa*,
No. 5:21-cv-01068-XR, 2023 WL 3901443 (W.D. Tex. May 18, 2023) ................ 27

*Edelman v. Jordan*,
415 U.S. 651 (1974) ................................................................................................. 24

*Estate of Gonzalez v. Hickman*,
466 F. Supp. 2d 1226 (E.D. Cal. 2006) ................................................................ 26

*Ex parte Young*,
  209 U.S. 123 (1908)............................................................................................ 3, 24, 25, 26

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
  34 F.3d 774 (9th Cir. 1994) ........................................................................................ 23

*Favors v. Cuomo*,
  285 F.R.D. 187 (E.D.N.Y. 2012) ................................................................................ 31

*Fed. Mar. Comm'n v. S.C. State Ports Auth.*,
  535 U.S. 743 (2002)..................................................................................................... 22

*Felix v. Cnty. of Nassau*,
  344 F.R.D. 441 (E.D.N.Y. 2023) ....................................................................... 21, 23, 24

*Flores v. Stanford*,
  No. 18 Civ. 02468 (VB)(JCM), 2022 WL 354719 (S.D.N.Y. Feb. 7, 2022) .......................... 14

*Garner v. City of New York*,
  No. 17-CV-843 (JGK)(KNF), 2018 WL 5818109 (S.D.N.Y. Oct. 17, 2018) ......................... 35

*Grand Canyon Skywalk Dev., LLC v. Cieslak*,
  Nos. 2:15-cv-01189-JAD-GWF, 2:13-cv-00596-JAD-GWF,
  2015 WL 4773585 (D. Nev. Aug. 13, 2015) ................................................................... 24

*Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*,
  No. 06-cv-1260 (KAM), 2009 WL 4981905 (E.D.N.Y. Dec. 10, 2009).................................. 18

*Hale v. Mann*,
  219 F.3d 61 (2d Cir. 2000) ......................................................................................... 28

*Henry v. N.J. Transit Corp.*,
  39 N.Y.3d 361 (N.Y. 2023) ........................................................................................ 19

*Hous. Bus. J., Inc. v. Off. of Comptroller of Currency, U.S. Dep't of Treasury*,
  86 F.3d 1208 (D.C. Cir. 1988)..................................................................................... 22

*In re Air Crash at Belle Harbor, N.Y. on Nov. 12,*
  *2001*, 490 F.3d 99 (2d Cir. 2007) ............................................................................... 24

*In re Kidder Peabody Sec. Litig.*,
  168 F.R.D. 459 (S.D.N.Y. 1996) .............................................................................. 30, 31

*In re Mo. Dep't of Nat'l Res.*,
  105 F.3d 434 (8th Cir. 1997) ...................................................................................... 20

*In re The City of New York*,
  607 F.3d 923 (2d Cir. 2010) ............................................................................. 32, 34, 35

iv

*Info. Res., Inc. v. Dun & Bradstreet Corp.*,
   999 F. Supp. 591 (S.D.N.Y. 1998) ................................................................... 17, 29

*Jackson v. AFSCME Local 196*,
   Civ. No. 3:07CV0471 (JCH), 2008 WL 1848900 (D. Conn. Apr. 25, 2008).............. 21, 22, 25

*Jett v. Penner*,
   No. Civ S-02-2036 GEB JFM P, 2007 WL 127790 (E.D. Cal. Jan. 12, 2007) ....................... 18

*Johnson v. Doty*,
   No. 15 Civ. 7823(KMK)(JCM), 2020 WL 1244236 (S.D.N.Y. Mar. 16, 2020)..................... 12

*Johnson v. Dovey*,
   No. 1:08-CV-00640-LJO-DLB PC, 2011 WL 5374958 (E.D. Cal. Nov. 7, 2011) ................. 26

*Jones v. Tozzi*,
   No. CV-F-05-148 OWW/DLB, 2007 WL 1299795 (E.D. Cal. Apr. 30, 2007) ..................... 26

*Kimel v. Fla. Bd. of Regents*,
   528 U.S. 62 (2000)............................................................................................ 28

*Knick v. Township of Scott, Pennsylvania*,
   588 U.S. 180 (2019).......................................................................................... 27

*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*,
   295 F.R.D. 28 (E.D.N.Y. 2013)........................................................................... 29

*Kunstler v. City of New York*,
   No. 04CIV1145 (RWS)(MHD), 2005 WL 2656117 (S.D.N.Y. Oct. 18, 2005)................ 32, 35

*La Unión Del Pueblo Entero v. Abbott*,
   No. 5:21-cv-00844-XR, 2023 WL 3389679 (W.D. Tex. Jan. 6, 2023) .................................. 28

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*,
   535 U.S. 613 (2002)........................................................................................... 16

*Laxalt v. McClatchy*,
   109 F.R.D. 632 (D. Nev. 1986) ........................................................................... 20

*Lead Indus. Ass'n, Inc. v. Occupational Safety and Health Admin.*,
   610 F.2d 70 (2d Cir. 1979) ............................................................................. 37, 38

*MacNamara v. City of New York*,
   249 F.R.D. 70 (S.D.N.Y. 2008) ........................................................................... 34

*MacNamara v. City of New York*,
   No. 04 Civ. 9612 (KMK)(JCF), 2006 WL 3298911 (S.D.N.Y. Nov. 13, 2006)..................... 15

*Mancuso v. N.Y. State Thruway Auth.*,
   86 F.3d 289 (2d Cir. 1996) ................................................................................ 20

*McGehee v. Neb. Dep't of Corr. Servs.*,
   968 F.3d 899 (8th Cir. 2020) .............................................................................. 23

*Mick v. Gibbons*,
   No. 24-1610, 2024 WL 3093065 (8th Cir. June 14, 2024) ................................. 27

*Mick v. Gibbons*,
   No. 24-1610, 2024 WL 3227091 (8th Cir. June 21, 2024) ................................. 27

*Monterey Bay Confederation of Clubs v. City of Santa Cruz*,
   No. 13-CV-01231-LHK, 2013 WL 6698400 (N.D. Cal. Dec. 19, 2013) .............. 25

*Morle v. Hayes*,
   No. 20-CV-103 (DLI)(MMH), 2023 WL 3306931 (E.D.N.Y. May 8, 2023) ........ 34

*Moroughan v. Cnty. of Suffolk*,
   No. CV 12-512 (JFB) (AKT), 2018 WL 11268801 (E.D.N.Y. Feb. 6, 2018) ........ 33

*Morrison v. Budget Rent A Car Systems, Inc.*,
   230 A.D.2d 253 (N.Y. App. Div. 1997) ............................................................. 19

*Nat'l Council of La Raza v. Dep't of Just.*,
   411 F.3d 350 (2d Cir. 2005) .............................................................................. 40

*N.Y. Times Co. v. U.S. Dep't of Just.*,
   939 F.3d 479 (2d Cir. 2019) ......................................................................... 31, 32

*N.Y. Times Co. v. U.S. Dep't of Just.*,
   No. 22-2232-cv, 2024 WL 1109260 (2d Cir. Mar. 14, 2024) ........................ 37, 38

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*,
   Nos. C-04-3955 SC (JCS), C-05-1605 SC,
   2009 WL 4258550 (N.D. Cal. Nov. 24, 2009) .............................................. 17, 18

*Playboy Enters., Inc. v. Dep't of Just.*,
   677 F.2d 931 (D.C. Cir. 1982) ........................................................................... 39

*Polk's Lessee v. Windel*,
   19 F. Cas. 940 (C.C.D. Tenn. 1817) ................................................................... 21

*Russell v. Jones*,
   49 F.4th 507 (5th Cir. 2022) .............................................................................. 26

*Shannon v. Liberty Mut. Grp. Inc.*,
   No. 3:20-CV-1192 (RNC), 2021 WL 2644742 (D. Conn. June 28, 2021) ............ 14

*St. Vincent Med. Grp., Inc. v. U.S. Dep't of Just.*,
   71 F.4th 1073 (7th Cir. 2023) ........................................................................... 23

*Thomas v. Hickman*,
   No. CV F 06-0215 AWI SMS, 2008 WL 782476 (E.D. Cal. Mar. 20, 2008) ......................... 26

*Thompson v. Richter*,
   Civil Action No. 7:22-v-00014-O, 2023 WL 7986341 (N.D. Tex. Nov. 17, 2023) ............... 27

*Torres v. Tex. Dep't of Pub. Safety*,
   597 U.S. 580 (2022) ........................................................................................ 24

*U.S. Dep't of Just. v. Ricco Jonas*,
   24 F.4th 718 (1st Cir. 2022) ...................................................................... 20, 23, 25

*U.S. Env't Prot. Agency v. Gen. Elec. Co.*,
   197 F.3d 592 (2d Cir. 1999) ...................................................................... 21, 22

*United States v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998) ........................................................................... 31

*United States v. Caldwell*,
   2 U.S. 333 (C.C.D. Pa. 1795) ...................................................................... 20, 21

*United States v. Davis*,
   131 F.R.D. 391 (S.D.N.Y. 1990) .................................................................. 35, 36

*United States v. James*,
   980 F.2d 1314 (9th Cir. 1992) ........................................................................... 16

*United States v. Juv. Male 1*,
   431 F. Supp. 2d 1012 (D. Ariz. 2006) ............................................................ 25, 26

*United States v. Menominee Tribal Enters.*,
   Case No. 07-C-316, 2008 WL 2273285 (E.D. Wis. June 2, 2008) ........................... 16

*United States v. Planned Parenthood Fed'n of Am.*,
   No. 2:21-CV-022-Z, 2022 WL 21758612 (N.D. Tex. Dec. 6, 2022) ........................ 27

*United States v. Velarde*,
   40 F. Supp. 2d 1314 (D.N.M. 1999) ................................................................... 16

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ........................................................................................ 30

*Va. Dep't of Corr. v. Jordan*,
   921 F.3d 180 (4th Cir. 2019) ........................................................................... 25

*Va. Off. for Prot. & Advoc. v. Stewart*,
    563 U.S. 247 (2011) ........................................................................... 25

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) ............................................................................. 28

*Wilson v. Venture Fin. Grp.*,
    No. C09-5768BHS, 2010 WL 4512803 (W.D. Wash. Nov. 2, 2010) ...................................... 20

*Winn v. Patterson*,
    34 U.S. 663 (1835) ............................................................................. 21

*Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*,
    466 F.3d 232 (2d Cir. 2006) ................................................................... 22

*Wopsock v. Dalton*,
    No. 2:12-cv-0570-RJS-EJF, 2018 WL 1578086 (D. Utah Mar. 29, 2018) ............................ 24

**Statutes**

N.Y. Exec. Law § 63(8) ........................................................................ 4, 36

N.Y. Pub. Off. Law § 87 ........................................................................... 27

N.Y. Pub. Off. Law § 89 ........................................................................... 27

**Rules**

Fed. R. Civ. P. 26 ................................................................................ 12

Fed. R. Civ. P. 45 ........................................................................... passim

Governor Cuomo[1] respectfully submits this memorandum in support of his cross-motion to compel compliance with, and in opposition to the OAG's motion to quash, his subpoena.

## PRELIMINARY STATEMENT

On July 11, 2022, Governor Cuomo served a subpoena on the OAG for materials related to the OAG's Investigation and Report concerning allegations of sexual harassment made by Trooper 1 and ten other complainants. For the last two years, the OAG has pulled out all the stops to avoid turning over any investigative materials, including witness statements. Now, even with a much narrower subpoena targeting a small number of obviously relevant and easily producible materials, the OAG continues to resist.

The unredacted transcripts and interview memos recording statements of Trooper 1, the other complainants, and other NYSP members—the "Requested Materials"—directly concern Trooper 1's and the other complainants' core allegations and contain information about relevant events and Governor Cuomo's day-to-day conduct, all of which may undermine Trooper 1's claims and are critical to whether the OAG Report is, as Trooper 1 has maintained during this litigation, the sort of reliable public report that will be admissible at trial.

Production of the Requested Materials is also plainly proportional to the needs of this case. Obtaining statements made by Trooper 1 and other PSU members concerning Governor Cuomo, is key to Governor Cuomo's developing defenses—that Trooper 1 and other NYSP witnesses held deep personal and political enmity toward Governor Cuomo; that Trooper 1 and other Troopers used the OAG Investigation as an opportunity to harm Governor Cuomo; and that Trooper 1 and other Troopers improperly colluded during the Investigation in order to create the appearance that Trooper 1's allegations were corroborated.

---

[1] All terms defined previously in OAG ECF Nos. 2, 21, and 41 are used consistently herein.

1

Specifically, discovery has revealed that although Trooper 1 was tasked with protecting Governor Cuomo and his family, she and other current and former PSU members were virulently opposed to the Governor and his policies, so much so that they wished personal harm to him and his family. Trooper 1's own text messages reveal that █████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████

Phone records confirm the stunning scope of collaboration. Contrary to Trooper 1's sworn statement to Investigators that she did not discuss her testimony with anyone other than counsel, Trooper 1 and other key witnesses had lengthy and frequent calls on their personal cell phones during the Investigation, including immediately before and after some crucial witnesses spoke with Investigators. Phone records and other discovery also confirm that Trooper 1's "best friend" Diane Parrotta, also a PSU member charged with protecting Governor Cuomo, was often the go-between, speaking to witnesses and then immediately sharing that information with Trooper 1. Parrotta not only coordinated between and among witnesses and OAG Investigators, she made repeated phone calls to reporters to share negative and/or false information about Governor Cuomo in an effort to fuel negative press about him.

Moreover, any claim of undue burden is risible. Producing the Requested Materials, which have already been turned over to the Court for *in camera* review, would impose zero burden on the OAG. And there is no other reason the subpoenaed materials should not be produced forthwith.

First, the OAG's sovereign immunity objection is without merit. As the OAG recently acknowledged, it voluntarily disclosed investigative materials to the federal government—both to aid civil prosecutions against Governor Cuomo and in service of privilege arguments both here and in other related actions. Doing so waived any potential sovereign immunity and vitiates any

claim that requiring production in this proceeding will offend the OAG's dignity. And the OAG's voluntary disclosure to Governor Cuomo in response to the original subpoena, consisting of investigative materials concerning Trooper 1, also waived any purported sovereign immunity, as did the OAG's decision to share the information with the Court to obtain a favorable privilege ruling it could use in other fora. But even if there had been no waiver, sovereign immunity still does not apply: almost every federal court to consider the question has concluded that a federal discovery subpoena does not qualify as a "suit" brought by a private party for purposes of state sovereign immunity—or that federal courts can order compliance under *Ex parte Young*. As this Court has observed, to hold otherwise would upend our federalist constitutional structure and leave federal courts powerless to effectuate their Article III mandates and uphold federal law.[2]

Second, no privilege protects against disclosure of the Requested Materials. In asserting any privilege, the OAG must make the threshold showing that it kept the materials confidential— and, as explained above, the OAG does not and cannot do so. Rather, the OAG already disclosed some or all of the Requested Materials to several third parties, including to the U.S. Department of Justice ("DOJ") and the U.S. Attorney's Office for the Eastern District of New York ("EDNY") in aid of a civil investigation against Governor Cuomo, as well as several district attorneys' offices in aid of criminal prosecutions. The OAG's effort to prevent a waiver by disclosing materials pursuant to confidentiality agreements is totally unavailing. The law is clear: a confidentiality agreement does not protect against the waiver that results from such disclosure.

Moreover, even if there were no waiver, the materials at issue were never privileged in the first place. They do not satisfy any of the elements of the attorney-client privilege; they were not

---

[2] For this reason, Governor Cuomo has raised numerous objections to Judge Cave's recent decision in *Bennett*, in which she adopted the OAG's extreme sovereign immunity position.

prepared in anticipation of litigation but instead for the issuance of a public investigative report; they do not reflect any attorney mental impressions (particularly because the memos are already redacted for such privileges); they were effectively disclosed in the OAG's public Report; they jeopardize no active criminal investigations or witness anonymities; and they reveal nothing about any agency deliberation. Further, because most of these privileges are qualified rather than absolute, and because the Requested Materials here are both decisively relevant and unavailable from other sources, Governor Cuomo's need for the information would overcome each privilege.

### BACKGROUND[3]

The Court is by now well familiar with much of the relevant background but we summarize here the facts that are key to consideration of the issues.

#### *Factual Background*

##### *The OAG Investigation and Report*

Between December and February 2021, several women publicly alleged sexual harassment against Governor Cuomo. On March 1, 2021, under New York Executive Law § 63(8), Governor Cuomo directed the OAG to select independent counsel to investigate the allegations and make a public report of the findings. *See* Trzaskoma Decl.[4] ¶ 3. The OAG deputized attorneys from Cleary Gottlieb Steen & Hamilton LLP ("Cleary") and Vladeck, Raskin & Clark, PC ("Vladeck") (collectively, the "Firms") to conduct this Investigation. *Id.* ¶ 4. Over the next several months, investigators interviewed 179 individuals and took testimony from 41 of them. *Id.* ¶ 5 at 15.

On August 3, 2021, the OAG released the OAG Report, which broadly credited allegations

---

[3] Governor Cuomo refers the Court to prior briefing at OAG ECF No. 2 for a full recitation of the facts leading up to the motion to compel the prior subpoena on the OAG.

[4] Citations to any exhibits to the Declaration of Theresa Trzaskoma in Support of Former Governor Cuomo Andrew M. Cuomo's Cross-Motion to Compel and in Opposition to the Office of the New York State Attorney General's Motion to Quash Governor Cuomo's Subpoena ("Trzaskoma Decl.") will be referred to as "Trzaskoma Decl. Ex. __."

by eleven women, including Trooper 1, that "the Governor engaged in conduct constituting sexual harassment under federal and New York State law" *Id.* ¶ 5 at 1. As described in prior filings, and as confirmed repeatedly throughout discovery in this case, the OAG Investigation was shoddy and unreliable. OAG ECF Nos. 32, 41. In particular, as relevant to this cross-motion, the OAG failed to discover or disclose critical information concerning Trooper 1 and other complainants that would have informed any reasonable assessment of their credibility or the plausibility of their allegations, as detailed below.[5]

After the release of the Report in August 2021, DOJ and EDNY requested materials from the OAG to aid a federal civil investigation of Governor Cuomo and the Executive Chamber under Title VII. OAG ECF No. 70 ¶ 28. The OAG complied. *See id.* Around the same time, the OAG disclosed similar materials to five district attorney's offices across New York in aid of criminal investigations against Governor Cuomo based on the Report's allegations. *Id.* ¶¶ 26-32.

*Discovery of Trooper 1's and PSU Members' Animus Towards Governor Cuomo*

Throughout Trooper 1's tenure on the PSU, she—with fellow members of the PSU and critical witnesses in this case—frequently expressed strong personal and political animus towards Governor Cuomo and a desire to see him out of office. Trooper 1 and her colleagues' dislike of Governor Cuomo had nothing to do with any harassment allegations, and instead was fueled by personal animus and passionate opposition to his political policies, in particular those centered on criminal justice reform and COVID lockdowns. For example, in June 2020 Trooper 1 ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[5] OAG Investigators also failed to enforce their own subpoenas, accepting paltry self-selected productions and allowing key complainants such as Lindsey Boylan and Charlotte Bennett to conceal information that directly contradicts their allegations and wholly undermines their credibility. Boylan ECF No. 32; Trzaskoma Decl. ¶ 27.

Trzaskoma Decl. Ex. 1. Though she was trusted with protecting Governor Cuomo's life, Trooper

1 ███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████ *Id.* Ex. 2. Trooper 1

also accused Governor Cuomo of exploiting PSU personnel to inappropriately maneuver priority

COVID testing for members of his family—and suggested to a former PSU colleague that the FBI

should investigate the Governor. *Id.* Ex. 3.

Other members of the PSU who are witnesses for Trooper 1 held similarly virulent biases

against Governor Cuomo. Discovery shows, for example, that Diane Parrotta, Trooper 1's

purported "best friend," also despised Governor Cuomo's political positions, in particular with

respect to COVID policies. One email, sent in May 2020, shows that Parrotta forwarded Trooper

1 a New York Post story headlined: "Trump Praises Organizer of NY Rally Against Gov. Cuomo's

Lockdown Orders," along with a smiling emoji, communicating her approval of Trump's actions.

*Id.* Ex. 4 at 1. Parrotta went even farther than maligning the Governor in messages and emails:

notwithstanding her professional obligations to maintain strict confidentiality of PSU matters, she

served as an informant to several reporters. For example, in August 2021, Parrotta spoke with a

reporter for the Times Union about the relationship between Governor Cuomo and the NYSP, *id.*

Ex. 15 at 22-26—which the reporter published thereafter, *id.* Ex. 16 at 1-2. In the process, Parrotta

revealed sensitive security information about the Governor's movements, *id.* Ex. 16 at 1 (NYSP

member discussing that leak to Times Union may have "posed a security risk").

Parrotta's efforts did not stop there. Once the OAG investigation was announced, Trooper

1 and Parrotta coordinated a widespread PSU effort to convert their earlier complaints of improper

interference into sexual harassment allegations. To this end, █████████████████████

██████████████████████████████████████████████. *Id.* Ex. 6. Parrotta

sprang into action by contacting a then-retired former head of the PSU Steve Nevins, who also harbored deep ill will toward Governor Cuomo. Nevins, who did not know and had not worked with Trooper 1 but spoke with Trooper 1 and Parrotta after the OAG investigation was announced, was one of the first NYSP witnesses to speak to OAG investigators. *Id.* Ex. 14 at 1. Parrotta went in immediately thereafter. *Id.*

Parrotta's phone records show a clear pattern of collusion during the investigation: she and Trooper 1 frequently spoke with each other and other NYSP members right before and/or right after NYSP witnesses gave statements to OAG Investigators. *See id.* Ex. 15. For example, Parrotta spoke with Nevins both directly before and after his April 7, 2021 OAG interview, and then spoke with Trooper 1, Chris Long, Fabricio Plaskocinski, and OAG investigators in the days immediately following Nevins's interview and before her own interview. *Id.* Ex. 15 at 12-14. Parrotta likewise had at least six separate calls with Trooper 1 the day before Trooper 1's interview with the OAG. *Id.* Ex. 15 at 14. The timing and consistency of these calls indicate that Trooper 1, Parrotta, and these other witnesses were discussing the OAG's questioning, and working up coordinated stories designed to corroborate certain alleged events. Indeed, Trooper 1 covered up their coordination when she falsely told the OAG, while she was under oath, that she had not spoken with others about her allegations. *Id.* ¶ 7 at 12:15-18. Trooper 1 lied because she understood full well, as a trained law enforcement officer would, that admitting to their collusion would undermine her and others' credibility and could indeed be viewed as obstruction.

Parrotta also sought to cover up her communications. During her deposition, before we obtained her phone records, Parrotta testified—falsely—that (i) she had not spoken with anyone else about Trooper 1's allegations, and (ii) she had not been a source for the Times Union reporter. *Id.* Ex. 5 at 309:20-316:4, 395:13-396:6. The phone records prove her lies. In March and April

2021, during the peak of the OAG Investigation, Parrotta had at least 60 phone calls with Trooper 1 and other key witnesses. *See id.* Ex. 15. Moreover, contrary to her testimony, not only was she a source for the Times Union reporter, she also contacted and spoke with Jesse McKinley at the New York Times, Ronan Farrow at The New Yorker, and Sara Nathan at the New York Post. *Id.* Ex. 15 at 10-12, 15, 19, 21. Indeed, on April 2, 2021, Parrotta spoke with Nathan <u>five times</u>, *id.* Ex. 15 at 11; the next day, Nathan published a hit job on Governor Cuomo, repeating untrue rumors that Governor Cuomo cheated on his girlfriend Sandra Lee, *id.* ¶ 9. That story relies on anonymous sources, in particular concerning what unnamed Troopers allegedly observed. *Id.*

The OAG never even attempted to explore Trooper 1's and other witnesses' possible biases. Rather, the OAG simply took Trooper 1 and other NYSP witnesses at their word. At the outset of the OAG Investigation, Trooper 1 and other PSU members were specifically directed to preserve all potentially relevant information, but Trooper 1 and many others did not retain relevant communications; in fact, they deleted them. *See id.* ¶ 28. Nor did the OAG consider that any corroboration might reflect that Trooper 1 and other crucial PSU witnesses coordinated during the Investigation, engaging in long discussions by phone immediately prior to and after their interviews. Upon learning that Trooper 1 had never reported her harassment to a single supervisor, *id.* ¶ 5 at 40-41—as has been confirmed by discovery in this case, *see id.* ¶ 16—the OAG did not do what any reasonable investigator would do and seek further documentary information from her or from corroborating witnesses. Instead, the OAG credited Trooper 1's conclusory excuse that she was "fearful of speaking out," instead of conducting any due diligence to discover Trooper 1's and others' long history of vocal complaints about Governor Cuomo and their rancor and professional and personal criticisms toward him unrelated to any harassment allegations.

***Procedural Background***

*Litigation Over Subpoenas to the OAG*

On July 11, 2022, over two years ago, Governor Cuomo served a FRCP 45 subpoena on the OAG ("Original Subpoena"),[6] and the OAG broadly objected on relevance and privilege grounds. OAG ECF Nos. 3-3–3-10. On October 6, 2022, Governor Cuomo filed a motion to compel compliance with the Original Subpoena. In its opposition to Governor Cuomo's motion to compel and in support of a cross-motion to quash, the OAG raised for the first time in this action— and, as far as we are aware—for the first time *ever*, its threshold objection that the effort to enforce the discovery subpoena was barred by state sovereign immunity. OAG ECF No. 18 at 10-14. Notwithstanding its immunity argument, the OAG voluntarily produced *some* investigative materials to Governor Cuomo in response to the Original Subpoena, including materials that specifically reference Trooper 1. OAG ECF No. 70 ¶ 50.

On July 21, 2023, the Court denied Governor Cuomo's motion to compel with respect to the Original Subpoena, but reserved ruling on the OAG's cross-motion to quash. OAG ECF No. 37 at 9. Rather than narrow the Original Subpoena, the Court denied compulsion altogether on the basis that the Original Subpoena was overly broad. *Id.* at 27. The Court expressed doubt about the relevance of materials sought to test "the independent and exhaustive nature of the OAG Report." *Id.* at 30. Governor Cuomo moved the Court for reconsideration of its Order, arguing for production of a narrow set of unredacted transcripts and interview memos. OAG ECF No. 40.[7]

At the status conference following the Court's initial Order, Trooper 1's counsel confirmed

---

[6] Governor Cuomo also served subpoenas on Cleary and Vladeck on November 13, 2023, but held off on enforcing those subpoenas pursuant to an agreement reached at a Court conference on September 26, 2023. Trzaskoma Decl. Ex. 7 at 52:17-53:1. Moreover, Governor Cuomo subpoenaed a set of materials similar to the Requested Materials in the Bennett Action. *Id.* Ex. 8.

[7] The Court denied the motion for reconsideration on March 29, 2024. OAG ECF No. 57.

what was evident from her Amended Complaint—that Trooper 1 fully intends to introduce and rely on the OAG Report itself at trial. OAG ECF No. 42-1. In light of this, and in connection with the OAG's still-pending cross-motion to quash, the Court directed the OAG to prepare a privilege log of the narrower set of witness interview memos and transcripts. The OAG did not appeal the Court's order or take any other step to protect against any intrusion on its claimed dignity; rather, on November 17, 2023, in support of its motion to quash, the OAG submitted a privilege log listing memos and transcripts for 35 witnesses, many of whom were anonymized, asserting general privileges over each document. *See* OAG ECF No. 53. After receiving the log, the Court ordered the OAG to submit the underlying interview memos for *in camera* review so the Court could assess the OAG's privilege arguments in its motion to quash. Again, the OAG did not appeal this order or take any steps to protect its asserted sovereign immunity, but instead, on December 13, 2023, the OAG complied and provided those documents to the Court. *See* OAG ECF No. 54.

On April 19, 2024, the Court held another conference and directed Governor Cuomo to issue a narrowed subpoena. OAG ECF No. 62-1 at 91:2-17. In response to the OAG's continued assertion of sovereign immunity, the Court noted that the idea that states enjoy sovereign immunity against federal discovery subpoenas "doesn't sit correctly" because the United States is a "federal system where the federal government is supreme and the federal government has to resolve issues involving state agencies on a regular basis." *Id.* at 39:18-40:17. Because federal courts must "adjudicate issues involving the state" in areas of "incredible federal importance," the Court was "not prepared" to rule in favor of the OAG's sovereign immunity objection. *Id.* at 40:9-17.[8] The Court ordered further briefing regarding the narrowed subpoena. *Id.* at 91:18-23.

---

[8] On June 12, 2024—after the April 19, 2024 conference and before the filing of this cross-motion—Judge Cave denied a motion to compel and granted a cross-motion to quash Governor Cuomo's subpoena on the OAG in the Bennett Action on sovereign immunity grounds. OAG ECF No. 72-2 at 41. Governor Cuomo has objected to Judge

The narrowed subpoena to the OAG (the "Narrowed Subpoena"), issued pursuant to Rule 45 by counsel as an authorized proxy for the Clerk of Court, "commands" production of materials related to Trooper 1's allegations, including as to the Investigation and Report: (1) witness interview memos and (2) unredacted transcripts of witnesses who provided sworn testimony. OAG ECF No. 70-8 at 5. The request for witness interview memos encompasses only statements made by Trooper 1, the other ten complainants referenced in the Amended Complaint, and any current or former NYSP member listed in the OAG's privilege log. Id. The request for unredacted transcripts encompasses only transcripts of Trooper 1's testimony and the testimony of the ten other complainants. *Id.*

*The FOIL Process*

Various parties, including Governor Cuomo, have also attempted to use New York's Freedom of Information Law ("FOIL") process to obtain the Requested Materials, but to no avail. Specifically, on February 7, 2022, the New York Daily News submitted a request under FOIL for the 179 witness interview memos. Trzaskoma Decl. ¶ 6. The OAG denied this request and subsequent appeal on the basis that the memos were produced by attorney-client privilege and work-product. *Id.* Next, at the OAG's specific suggestion and in light of the Court's refusal to enforce the Original Subpoena, Governor Cuomo filed his own FOIL request for these materials (alongside unredacted transcripts) in July 2023. *Id.* Ex. 11 at 2. Although the OAG has purportedly begun producing records responsive to that request, in reality, the OAG has not produced a single witness interview memo (consistent with its privilege positions in this litigation) and has produced only twelve transcripts, none of which is actually responsive to the FOIL request because all of

Cave's order on the basis that its sovereign immunity analysis is contrary to law. Trzaskoma Decl. Ex. 9. Regardless, Judge Cave acknowledged that this case is different, including because the OAG's voluntary production of materials in response to the Original Subpoena could well have constituted a waiver. At a Court conference held on June 25, 2024, the Court acknowledged that Judge Cave's order does not bind this Court. *See id.* Ex. 10 at 10:2-5, 11:16-20.

them are redacted. *Id.* Ex. 12 at 13-14. Although Governor Cuomo has argued to the reviewing state court that the OAG's FOIL response coupled with statements in this litigation that it will not ever voluntarily produce the Requested Materials is effectively a denial, the OAG has argued that its "rolling" production moots any analysis of privilege arguments on the merits. *Id.* Ex. 12 at 10. The FOIL process clearly will not yield production of these materials: as the OAG has stated repeatedly here and elsewhere, it will never produce interview memos. *Id.* Ex. 12 at 7-8.

## ARGUMENT

### I.    THE REQUESTED MATERIALS ARE RELEVANT AND PROPORTIONAL

#### A.    The Requested Materials Are Relevant

As an initial matter, the complainants' own statements about their sexual harassment allegations, including *Trooper 1's own statements*, are undeniably relevant. Rule 26, which is to be interpreted broadly, dictates that a party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *See Au New Haven, LLC v. YKK Corp.*, No. 1:15-cv-3411-GHW, 2023 WL 2612204, at *7 (S.D.N.Y. Mar. 23, 2023). Information is relevant if it has "any tendency" to make a fact more or less probable and the fact is of consequence to a claim or defense. *Johnson v. Doty*, No. 15 Civ. 7823(KMK)(JCM), 2020 WL 1244236, at *1 (S.D.N.Y. Mar. 16, 2020).

As the Court has acknowledged, the bulk of Trooper 1's Amended Complaint is a reiteration of the complainants' allegations lifted from the OAG Report. *See* OAG ECF No. 42-1 The prior statements of those same complainants in an investigation concerning the same allegations are relevant. *See* T1 ECF No. 218 at 5-15; T1 ECF No. 219 at 3-5; T1 ECF No. 220 at 10-12. Likewise, statements by NYSP witnesses who worked with Trooper 1 during the pertinent period are relevant because they likely undercut or fail to corroborate Trooper 1's allegations, including by contradicting facts concerning specific allegations, providing context to alleged

events, providing information about Governor Cuomo's regular conduct and thus demonstrating that Governor Cuomo's conduct towards Trooper 1 did not differ from his conduct toward male Troopers, and confirming the true story around Trooper 1's recruitment and promotions within the PSU. Moreover, the statements may reveal the crucial backdrop to Trooper 1's allegations: That Trooper 1 and other current and former PSU members were deeply biased against Governor Cuomo and that these witnesses improperly colluded during the OAG Investigation to abet and encourage Trooper 1 in concocting and embellishing her allegations about Governor Cuomo.

Indeed, as discussed above, there is already ample reason to disbelieve Trooper 1 and her witnesses. We know from discovery so far that Trooper 1 never reported to any supervisor that Governor Cuomo sexually harassed her and never complained to any supervisor that she was uncomfortable working around Governor Cuomo. *See* Trzaskoma Decl. ¶ 16. We also know that Trooper 1's explanation for this failure—that she was afraid of Governor Cuomo—is implausible. Discovery confirms that Trooper 1 and other current and former PSU members constantly complained to each other about even the slightest grievance against Governor Cuomo. Whether about job duties they thought were beneath them or about the Governor's purported meddling in assignments and promotions, Trooper 1 and her current and former colleagues griped about Governor Cuomo and the detail in general, complaints that circulated in the PSU rumor mill. Despite this, there were no rumors about sexual harassment against Trooper 1.

It is critical to Governor Cuomo's defense that he obtain the original statements Trooper 1 and her witnesses made to investigators. Such statements may well provide further evidence of Trooper 1's calculated and coordinated effort to leverage the OAG investigation to undermine and harm Governor Cuomo. The memos may reflect, for example, that witnesses were prepared to corroborate certain aspects of Trooper 1's story, and that they did in fact provide that coordinated

information to investigators at the time. These memos would then allow Governor Cuomo to impeach witnesses who, like Parrotta, are unable to remember the "story" they were coached to provide to the OAG and now provide conflicting information about what they supposedly knew or heard. The original statements likely will also confirm that, among other serious investigative flaws, the OAG never explored, much less considered, the Troopers' profound biases against Governor Cuomo when evaluating these witnesses' credibility or the plausibility of Trooper 1's allegations. Such evidence is central to challenging not only the OAG Report itself but also Trooper 1's underlying allegations and the credibility of her witnesses.

Moreover, there is no merit to the OAG's argument that interview memos and unredacted transcripts are irrelevant because Trooper 1's claims can be proved only by firsthand knowledge. *See* OAG MTQ at 22. Relevance certainly encompasses circumstantial evidence that does not directly prove or disprove the allegations at issue, particularly evidence that goes to the heart of witnesses' credibility. *See Shannon v. Liberty Mut. Grp. Inc.*, No. 3:20-CV-1192 (RNC), 2021 WL 2644742, at *18 (D. Conn. June 28, 2021) (observing that courts in this Circuit have held that circumstantial evidence concerning discrimination claims is "relevant and appropriate" for discovery). The statements Governor Cuomo seeks would without a doubt "bear on" a stated "claim or defense." *See Flores v. Stanford*, No. 18 Civ. 02468 (VB)(JCM), 2022 WL 354719, at *4 (S.D.N.Y. Feb. 7, 2022) (citing cases).[9] Indeed, to credit the OAG's argument would foreclose nearly any nonparty discovery in any discrimination case. As discussed above, contemporaneous witness statements are relevant because they may corroborate or undercut Trooper 1's allegations

---

[9] The OAG's continued contention that Governor Cuomo's "real purpose" is to attack the Report is misguided. OAG MTQ at 23. Putting aside that the Requested Materials go toward the core allegations in Trooper 1's Amended Complaint, the fact is that Governor Cuomo indeed must "attack" the Report because Trooper 1 wants to rely on it.

in multiple different ways.[10]

**B.    Producing the Requested Materials Would Not Be Burdensome**

The OAG's burden objection is frivolous, as there is no burden to the OAG in producing the Requested Materials. OAG MTQ at 24-25. The OAG does not and cannot bear its burden to show that the Narrowed Subpoena is unduly burdensome. *See MacNamara v. City of New York*, No. 04 Civ. 9612 (KMK)(JCF), 2006 WL 3298911, at *15 (S.D.N.Y. Nov. 13, 2006). Governor Cuomo requests a discrete set of documents that the OAG already promised to release in full to the public. Indeed, the OAG confirmed that the Firms already reviewed the materials at issue and applied redactions to address purported privilege and confidentiality concerns (at significant public expense). *See* OAG ECF No. 71 ¶ 15.

That the Requested Materials are ready to go was confirmed by the fact that the OAG prepared and submitted these materials to this Court within the course of a week. *See* OAG ECF No. 54. If ordered to re-produce the Requested Materials, the OAG would suffer no further burden.

**II.    STATE SOVEREIGN IMMUNITY DOES NOT BAR ENFORCEMENT OF THE NARROWED SUBPOENA**

Because the Requested Materials are plainly relevant and proportional, the OAG maintains a general objection to the Narrowed Subpoena on grounds of sovereign immunity. The OAG's recent admissions clearly demonstrate a waiver of any sovereign immunity—but even if they did not, as the Court has noted, case law and the federalist structure of the United States make clear that state sovereign immunity cannot block application of federal discovery subpoenas.[11]

---

[10] The Requested Materials will also help identify witnesses who have exculpatory information. For example, the OAG Report refers to an anonymous Trooper with whom Trooper 1 allegedly spoke after an alleged incident in an elevator where Governor Cuomo purportedly touched her back. The OAG interviewed that Trooper but he did not corroborate Trooper 1's story. *See* Trzaskoma Decl. ¶ 5 at 39 n.287. Governor Cuomo needs the interview memos to identify and depose that witness and other like witnesses.

[11] For the reasons described below, Judge Cave's order in the Bennett Action quashing federal discovery subpoenas on grounds of state sovereign immunity is contrary to law.

### A.     The OAG Waived Any Claim to State Sovereign Immunity

To avoid "seriously unfair results," a state's engagement in voluntary conduct that is "anomalous or inconsistent" with the application of sovereign immunity, waives the state's sovereign immunity. *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 619 (2002). The OAG has waived sovereign immunity in at least three separate ways.

***First***, the OAG produced some, if not all, of the Requested Materials to the DOJ/EDNY to bring about federal claims against Governor Cuomo. The OAG provided these materials to the DOJ/EDNY as part of a Title VII investigation into the alleged harassment at the Executive Chamber under the Governor. OAG ECF No. 70 ¶ 28. In *United States v. James*, 980 F.2d 1314 (9th Cir. 1992), the Ninth Circuit held that a tribe[12] waived its sovereign immunity by "voluntarily providing the Government with documents relevant to the case" because it would be unfair to "selectively provide documents and then hide behind a claim of sovereign immunity" with respect to other documents "from the same agency." *Id.* at 1320; *accord United States v. Velarde*, 40 F. Supp. 2d 1314, 1317 (D.N.M. 1999); *United States v. Menominee Tribal Enters.*, Case No. 07-C-316, 2008 WL 2273285, at *11-12 (E.D. Wis. June 2, 2008). The OAG itself has argued that sovereign immunity is waived where a sovereign has "voluntarily provided" documents from one of its agencies "to the United States" to "aid in the government's prosecution of [the defendant]." Trzaskoma Decl. Ex. 13 at 14.

That is precisely what happened in this case. The OAG provided some or all of the Requested Materials to the federal government to effectuate civil prosecution based on allegations against Governor Cuomo, OAG ECF No. 70 ¶ 28, and the DOJ/EDNY explicitly acknowledged

---

[12] There is no case law regarding conduct waivers in the context of state sovereign immunity to federal discovery subpoenas—courts across jurisdictions do not reach waiver because they near-unanimously find that state sovereign immunity against federal discovery subpoenas is not applicable. As a result, case law concerning tribal sovereign immunity to federal discovery subpoenas is the most appropriate comparison.

that they approved (but ultimately did not undertake[13]) such prosecution, Trzaskoma Decl. ¶ 8 at 2. The OAG failed to disclose any of this conduct to Governor Cuomo or to the Court until <u>years</u> after service of the Original Subpoena. The OAG's position that it has not engaged in any "duplicitous conduct" that would result in "serious unfairness" to Governor Cuomo, OAG MTQ at 20-21, is completely disingenuous.[14] Based on the OAG's own position in parallel litigation, the OAG has waived sovereign immunity as to the Requested Materials by providing them to the DOJ and EDNY for purposes of civil prosecution.

Courts in this Circuit have applied the same principle to privileges other than sovereign immunity. In *Information Resources, Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591 (S.D.N.Y. 1998), the court held that waiver of the work-product privilege "result[ed] from the voluntary submission of material to a government agency to incite it to attack the informant's adversary" in part because such waiver is necessary to "prevent[] the unfairness of selective revelations." *Id.* at 593. A disclosing party cannot assert the work-product privilege for materials "submitted voluntarily to stimulate beneficial official action." *Id.* The court went on to acknowledge that there is "no indication that difference [in privilege]" would prevent application of the same principle to another privilege. *Id.* (citing *D'Ippolito v. Cities Serv. Co.*, 39 F.R.D. 610 (S.D.N.Y. 1965)).

**Second**, in response to the Original Subpoena, the OAG made a production of investigative materials referencing Trooper 1 by name. When a party produces some materials concerning an investigatory report, that party waives sovereign immunity over other such materials because those materials are "sufficiently similar" to those that have already been produced. *See NGV Gaming,*

---

[13] That the federal government elected to enter into a settlement rather than file suit does not affect the waiver analysis.

[14] Accordingly, the OAG's citation to *Beaulieu v. Vermont*, 807 F.3d 478 (2d Cir. 2015), on this point is misplaced. Unlike the renunciation and delayed re-invocation of sovereign immunity in *Beaulieu*, *id.* at 490, the OAG here sought to use production of the Requested Materials to the federal government as a prosecutorial sword against Governor Cuomo, and now seeks to use sovereign immunity as a shield. That conduct is patently unfair under the law.

*Ltd. v. Upstream Point Molate, LLC*, Nos. C-04-3955 SC (JCS), C-05-1605 SC, 2009 WL 4258550 at *5-6 (N.D. Cal. Nov. 24, 2009); *see also Jett v. Penner*, No. Civ S-02-2036 GEB JFM P, 2007 WL 127790, at *2 (E.D. Cal. Jan. 12, 2007) (party cannot selectively produce certain documents but withhold other related documents). The documents already produced by the OAG in the Trooper 1 Action came from the very same investigative files that led to the public OAG Report. Thus, the OAG has waived sovereign immunity over other documents concerning that report.

*Third*, the OAG submitted the Requested Materials for *in camera* review in support of its privilege and confidentiality arguments in its cross-motion to quash. Though the Court expressed skepticism about this argument, OAG ECF No. 62-1 at 33:10-16, case law bears it out. In *Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, No. 06-cv-1260 (KAM), 2009 WL 4981905 (E.D.N.Y. Dec. 10, 2009), the court found that certain defendants waived sovereign immunity by asserting counterclaims in their answer without simultaneously asserting sovereign immunity—even though they had asserted sovereign immunity earlier in the litigation and indicated an intent to re-assert it again later in the litigation. *Id.* at *9. The defendants waived sovereign immunity when they invoked the court's jurisdiction for pure offense. *Id.*

The OAG's submission to the Court in this case was also unconnected to sovereign immunity and purely made for purposes of offensive preclusion. When the OAG made its submission, both the New York Daily News and Governor Cuomo himself had sought OAG investigative materials through FOIL. Trzaskoma Decl. ¶ 6; *id.* Ex. 11. Governor Cuomo had subpoenaed a similar set of materials in the Bennett Action. *Id.* Ex. 8. Accordingly, a favorable ruling on privilege grounds could be used to assert preclusion to stymie the requests in the other proceedings. That is why, even though the Court had already denied Governor Cuomo's motion to compel, *see* OAG ECF Nos. 37, 57, the OAG did not withdraw its cross-motion to quash or

18

appeal the Court's order. The documents did not bear on the OAG's sovereign immunity arguments; the submission was *solely* in service of the OAG's affirmative privilege arguments. Indeed, the OAG has been slow-rolling its FOIL response to Governor Cuomo in an attempt to delay a ruling on the merits, Trzaskoma Decl. Ex. 12, with the goal of using a potential privilege ruling from this Court in the FOIL context. Because the OAG submitted the Requested Materials to support just its privilege arguments in an effort to obtain a ruling for offensive preclusion purposes, the OAG waived sovereign immunity as to the Requested Materials.

The OAG resorts to the argument that, under New York law, sovereign immunity cannot be waived. The Second Circuit has presumed that a state may waive sovereign immunity by litigation conduct "notwithstanding state law that precludes waiver otherwise." *See Beaulieu v. Vermont,* 807 F.3d 478, 491 (2d Cir. 2015). But notwithstanding whether federal or state law controls the question, New York law permits waiver of sovereign immunity by litigation conduct. The OAG's citations to the contrary—*Morrison v. Budget Rent A Car Systems, Inc.*, 230 A.D.2d 253 (N.Y. App. Div. 1997) and a federal case relying on the same—were abrogated by *Henry v. New Jersey Transit Corp.*, 39 N.Y.3d 361 (N.Y. 2023). *Henry* recognized that state sovereign immunity "is waivable based on litigation conduct." *Id.* at 371-372. That both *Morrison* and *Henry* are interstate sovereign immunity cases, as argued at OAG MTQ at 18-19, is irrelevant: *Morrison* is the only state-law source that the OAG can proffer for its argument that New York sovereign immunity is unwaivable, and *Morrison* was abrogated by *Henry*.[15]

---

[15] The OAG also represents that the *Henry* court held that, while interstate sovereign immunity is waivable in New York, ordinary state sovereign immunity is unwaivable because it is a matter of subject-matter jurisdiction in the New York Court of Claims. OAG MTQ at 19. Not so. *Henry* explicitly held that litigation conduct may not effectuate a waiver of sovereign immunity in the Court of Claims because New York has bestowed limited statutory jurisdiction on the Court of Claims, and "[i]t is thus the scope of the Court of Claims Act, rather than sovereign immunity, that limits the Court of Claims' subject matter jurisdiction." *Henry*, 39 N.Y.3d at 372-373.

### B.    State Sovereign Immunity Does Not Apply to Federal Discovery Subpoenas

From the time immediately following the passage of the Eleventh Amendment to the present day, state sovereign immunity has had no bearing on the issuance of or compliance with federal discovery subpoenas. Such an application of sovereign immunity is contrary to longstanding precedent across many jurisdictions for four reasons.

*First*, a federal discovery subpoena is not a "suit" for purposes of state sovereign immunity. State sovereign immunity has two main rationales: to protect a state's treasury and to protect its dignity as a joint sovereign. *See Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289, 293 (2d Cir. 1996). Courts in various jurisdictions have concluded that a federal discovery subpoena is not a "suit" against a state entity because it does not seek payment from the state's treasury and/or because it is not sufficiently similar to a lawsuit or other adjudicatory proceeding and thus does not trespass on the state's dignity.[16] Owing to the longtime common view that federal discovery subpoenas are not "suits" under state sovereign immunity doctrine, courts within the Second Circuit have regularly enforced federal discovery subpoenas against state agencies and officials.

This understanding has been widespread in the judiciary since the years immediately following ratification of the Eleventh Amendment. In *United States v. Caldwell*, 2 U.S. 333 (C.C.D. Pa. 1795)—a case decided less than two months after ratification—the court stayed a trial so the defendant could serve nonparty subpoenas on two state judges. *Id.* at 334. One justice even remarked in concurrence that "[i]f we issue a subpoena to a Justice or a Judge, and it is not obeyed, we should be more strict in our proceedings against such characters . . . ." *Caldwell*, 2 U.S. at 334

---

[16] *See U.S. Dep't of Just. v. Ricco Jonas*, 24 F.4th 718, 727 (1st Cir. 2022); *Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008); *In re Mo. Dep't of Nat'l Res.*, 105 F.3d 434, 436 (8th Cir. 1997); *Allen v. Woodford*, 544 F. Supp. 2d 1074, 1078-1079 (E.D. Cal. 2008); *Charleston Waterkeeper v. Frontier Logistics, L.P.*, 488 F. Supp. 3d 240, 250-251 (D.S.C. 2020); *Ali v. Carnegie Inst. of Washington*, 306 F.R.D. 20, 30 n.8 (D.D.C. 2014) (collecting cases); *Wilson v. Venture Fin. Grp.*, No. C09-5768BHS, 2010 WL 4512803, at *1-2 (W.D. Wash. Nov. 2, 2010); *Laxalt v. McClatchy*, 109 F.R.D. 632, 634-635 (D. Nev. 1986).

n.*. Subpoenas on state offices remained commonplace thereafter. *See Winn v. Patterson*, 34 U.S. 663, 676-677 (1835) (outlining the "common practice" of subpoenas to state offices for records); *Polk's Lessee v. Windel*, 19 F. Cas. 940, 941 (C.C.D. Tenn. 1817) (reasoning that records should be produced on a subpoena to the secretary of North Carolina), *rev'd on other grounds sub nom. Polk's Lessee v. Wendell*, 18 U.S. 293 (1820).

In the face of this mountain of precedent, the OAG argues that the Second Circuit's decision in *United States Environmental Protection Agency v. General Electric Co.*, 197 F.3d 592 (2d Cir. 1999) ("*EPA*") binds this Court to rule that a federal discovery subpoena is a "suit" for purposes of state sovereign immunity. OAG MTQ at 9-13. The OAG contends that, under *EPA*, a subpoena (alongside a requested order to enforce the subpoena) invokes the federal judicial power to "compel" the OAG to act, and thus substantially impinges upon its dignity. OAG MTQ at 12-13. The OAG also cites two other cases: First, *Felix v. County of Nassau*, 344 F.R.D. 441 (E.D.N.Y. 2023), which reasoned that a subpoena is "exactly the type of coercive judicial process" that transgresses a state's dignity. *Id.* at 445. And second, *Catskill Development, LLC v. Park Place Entertainment Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002), which applied *EPA* to block a federal discovery subpoena on grounds of tribal sovereign immunity. *Id.* at 87-89.[17]

But this result is not required by *EPA*. *Jackson v. AFSCME Local 196*, Civ. No. 3:07CV0471 (JCH), 2008 WL 1848900 (D. Conn. Apr. 25, 2008), held that *EPA* was "not controlling" in the state sovereign immunity context because federal discovery subpoenas against state agencies do not implicate the state's treasury, and "courts focus on the Eleventh Amendment's purpose to prevent federal court judgments that would have to be paid out of a

---

[17] Because Judge Cave's order in the Bennett Action quashing federal discovery subpoenas on grounds of state sovereign immunity also relies on these three cases, it is contrary to law as described both above and below.

state's treasury." *See id.* at *2. Moreover, because federal discovery subpoenas are not akin to lawsuits, they do not substantially infringe state dignity. The dignity rationale for state sovereign immunity (as opposed to federal sovereign immunity) is not tied to all involuntary judicial processes, but just to the "summon[ing]" of states as "defendants to answer the complaints of private persons." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 241 (2d Cir. 2006); *see also Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002) (applying state sovereign immunity to agency adjudications given "the strong similarities between [agency] proceedings and civil litigation").

Indeed, as the Court has acknowledged, permitting federal discovery subpoenas against state entities upholds our federalist judicial system. As opposed to state sovereign immunity, federal sovereign immunity is motivated by separation of powers. In fact, separation of powers was at the heart of the Second Circuit's decision in *EPA*: by permitting motions to compel subpoenas against federal agencies under the APA, the Second Circuit "maintain[ed] the appropriate balance" between executive interests in "preventing interference with government functions" and judicial interests in "discovering important information relevant to the prosecution or defense of private litigation." *See EPA*, 197 F.3d at 599. The predominant concern with respect to subpoenas on state entities is not separation of powers, it is federal supremacy. To discharge their constitutional mandate to hear cases within their jurisdiction, federal courts must be able to issue subpoenas and gather information. *See Hous. Bus. J., Inc. v. Off. of Comptroller of Currency, U.S. Dep't of Treasury*, 86 F.3d 1208, 1213 (D.C. Cir. 1988). Should state sovereign immunity operate to bar federal discovery subpoenas, federal courts will no longer be in a position to carry out their Article III mandate, and citizens will be barred in some circumstances from obtaining relief—including for constitutional or federal statutory violations—in federal courts.

Given these unique characteristics of state sovereign immunity (as opposed to federal sovereign immunity), courts in other circuits routinely hold that federal discovery subpoenas are not subject to state sovereign immunity, even when subpoenas are subject to federal and/or tribal sovereign immunity.[18] Nothing in the Second Circuit requires a different result here.

For these reasons, *Felix* and *Catskill* are wrongly decided. *Felix*'s holding rested on a flawed conclusion that an Eighth Circuit case concerning tribal sovereign immunity had cast doubt on prior precedent rejecting state sovereign immunity against federal discovery subpoenas. 344 F.R.D. at 446. On the contrary, a recent Eighth Circuit panel affirmed a district court decision not to quash a subpoena on a Nebraska state agency. *McGehee v. Neb. Dep't of Corr. Servs.*, 968 F.3d 899, 901 (8th Cir. 2020), *vacated on reh'g on other grounds at* 987 F.3d 785 (2021). *Felix* also failed entirely to consider any of the other cases—some cited above—that have rejected its holding. *Catskill* concerned tribal sovereign immunity rather than state sovereign immunity. Yet further, a close reading of *Catskill* reveals that its holding turned on attorney-client privilege: it focused on threats to a tribe's "ability to receive candid advice" and adverse effects on "counsel's representation." 206 F.R.D. at 91. Rather than quashing in full as sovereign immunity would have required, the *Catskill* court permitted a deposition against one of the subpoenaed attorneys to the extent that it covered non-privileged information. *See id.* at 92.

**Second**, even if Second Circuit precedent requires the conclusion that a federal discovery subpoena is a "suit," it is not a private one but instead is a "suit" by the United States. Courts have

---

[18] *Compare, e.g.*, *Commonwealth of P.R. v. United States*, 490 F.3d 50, 57 (1st Cir. 2007) (treating subpoena against federal agency as "suit[]" against the federal government); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999) (same); *St. Vincent Med. Grp., Inc. v. U.S. Dep't of Just.*, 71 F.4th 1073, 1075 (7th Cir. 2023) (same); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 n.9 (9th Cir. 1994) (same); *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1105 (8th Cir. 2012) (treating subpoena against Indian tribe as "suit" subject to tribal sovereign immunity); *with, e.g.*, *Ricco Jonas*, 24 F.4th at 727 (1st Cir.); *Charleston Waterkeeper*, 488 F. Supp. 3d at 251; *Barnes*, 544 F.3d at 812; *Allen*, 544 F. Supp. 2d at 1079; *McGehee v. Neb. Dep't of Corr. Servs.*, 968 F.3d 899, 901 (8th Cir. 2020) (same), *vacated on reh'g on other grounds* at 987 F.3d 785 (2021).

long acknowledged that there is a "structural waiver" of state sovereign immunity for "suits by the United States against a State." *Torres v. Tex. Dep't of Pub. Safety*, 597 U.S. 580, 588 (2022). A FRCP 45 subpoena cannot be a private suit barred by state sovereignty because, while it is signed by a private attorney, it is issued on behalf of and pursuant to the authority of the originating federal district court. Commentary confirms that FRCP 45 "put[s] the attorney in a position similar to that of the administrative agency, as a public officer entitled to use the court's contempt power to investigate facts in dispute." Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment. This Circuit has adopted that characterization. *See In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001*, 490 F.3d 99, 102 & n.3 (2d Cir. 2007) (describing FRCP 45 subpoena as signed by counsel "on behalf of the District Court" even when the demands in the subpoena are not endorsed by that court). Thus, if a federal discovery subpoena is a "suit" for purposes of state sovereign immunity, it is a "suit" brought on behalf of the United States to which states are not immune.

*Third*, even if federal discovery subpoenas are private "suits," ordering compliance does not run afoul of state sovereign immunity because such an order is permitted under *Ex parte Young*. States are not immune to suits that seek prospective injunctive relief correcting ongoing violations of federal law. *See* 209 U.S. 123, 158-159 (1908); *see also Edelman v. Jordan*, 415 U.S. 651, 664-665 (1974). Considering this rule, courts have concluded that enforcing compliance with federal discovery subpoenas amounts to "prospective injunctive relief" and is "not subject to the doctrine of sovereign immunity." *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1162 & n.1 (10th Cir. 2014); *see also Wopsock v. Dalton*, No. 2:12-cv-0570-RJS-EJF, 2018 WL 1578086, at *2-3 (D. Utah Mar. 29, 2018); *Grand Canyon Skywalk Dev., LLC v. Cieslak*, Nos. 2:15-cv-01189-JAD-GWF, 2:13-cv-00596-JAD-GWF, 2015 WL 4773585, at *5-7 (D. Nev. Aug. 13, 2015).[19]

---

[19] Notably, neither *Felix* nor *Catskill* considered *Ex parte Young* in their analyses.

Neither of the OAG's arguments against the application of *Ex parte Young* has any merit. The OAG contends that *Ex parte Young* applies only to individuals and not to state agencies. OAG MTQ at 13-14. Even if that were true, Governor Cuomo's subpoenas on the Firms (and potential subpoenas on individuals at the OAG who have custody of the Requested Materials) could move forward under *Ex parte Young*. Indeed, many courts have held that state sovereign immunity does not bar federal discovery subpoenas for state records served on state agents.[20] Such a result is coherent with the twin rationales for state sovereign immunity. It is uncontroversial that subpoenas on the Firms or on individual custodians would not implicate New York's treasury. And it is also clear that such subpoenas would not infringe New York's dignity because failure to comply would not subject any state agency to coercive judicial process—only the Firms or the individual would be held to account. Such subpoenas do not implicate the "specific indignity against which sovereign immunity protects" because neither "reach[es] funds in the state treasury" or "hale[s]" the state "into court." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 258-259 (2011).

The OAG also argues that noncompliance with a federal discovery subpoena issued under FRCP 45 is not an ongoing violation of federal law. OAG MTQ at 14-15. Specifically, the OAG argues that FRCP 45 does not "mandate abject compliance with a subpoena" but instead "lay[s] out procedures for opposing a subpoena where appropriate and necessary." *Id.* at 14. That conception subverts the structure and purpose of FRCP 45 because it ignores the Rule's substantive mandate. While a federal rule may have both substantive and procedural components, a sovereign's procedural compliance with a federal rule does not obviate its duty to comply with the substantive component of that rule and thus does not shield the sovereign from *Ex parte Young*.

---

[20] *U.S. Dep't of Just. v. Ricco Jonas*, 24 F.4th at 727; *Monterey Bay Confederation of Clubs v. City of Santa Cruz*, No. 13-CV-01231-LHK, 2013 WL 6698400, at *2 (N.D. Cal. Dec. 19, 2013); *Allen*, 544 F. Supp. 2d at 1079; *Jackson*, 2008 WL 1848900, at *2; *United States v. Juv. Male 1*, 431 F. Supp. 2d 1012, 1016 (D. Ariz. 2006); *see also Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019).

For example, though a state complies with procedural due process requirements, it still may violate substantive due process requirements. *See Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 125 (1992). In the same way, though a state agency complies with the procedural requirements of FRCP 45 by serving objections, the state agency fails to comply with the substantive requirements of FRCP 45—namely, to produce materials relevant and proportional to the needs of the case.[21]

**Fourth**, applying state sovereign immunity to bar enforcement of federal discovery subpoenas would foreclose relief for plaintiffs in federal courts. If state entities could claim sovereign immunity from federal discovery subpoenas, a plaintiff who sues a state official in his individual capacity for a constitutional or federal statutory violation, for example, will "never be able to prove his or her case," because it is almost certain that the required proof will be in the hands of the state. *Allen*, 544 F. Supp. 2d at 1079. Such a result is "ludicrous," *id.*—"it would not have occurred to anyone" that a state's immunity from civil actions "had anything at all to do with the obligation of a witness to produce documents and to testify." *See United States v. Juv. Male 1*, 431 F. Supp. 2d 1012, 1017 (D. Ariz. 2006) (tribal immunity). This absurd result shows exactly why OAG's reliance on *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022)—the only circuit case applying state sovereign immunity to federal discovery subpoenas—is off-base.

To obscure these untenable results, the OAG contends that applying state sovereign immunity to federal discovery subpoenas would actually have little effect. First, the OAG claims that a plaintiff in a § 1983 case can simply add a state official as a defendant and so may obtain

---

[21] The OAG also cites *Estate of Gonzalez v. Hickman*, 466 F. Supp. 2d 1226 (E.D. Cal. 2006), for the proposition that subpoenas seek retrospective relief and thus movants cannot invoke *Ex parte Young*. OAG MTQ at 15. That argument makes no sense given the nature of a subpoena, which commands future performance. In any event, *Estate of Gonzalez* has been contradicted and noted as an outlier among other courts in the Ninth Circuit. *See Allen*, 544 F. Supp. 2d at 1079-1080; *Clair v. Schlachter*, No. 2:13-cv-804-KJM-EFB P (TEMP), 2016 WL 2984107, at *4 n.5 (E.D. Cal. May 23, 2016); *Johnson v. Dovey*, No. 1:08-CV-00640-LJO-DLB PC, 2011 WL 5374958, at *2 (E.D. Cal. Nov. 7, 2011); *Thomas v. Hickman*, No. CV F 06-0215 AWI SMS, 2008 WL 782476, at *4 (E.D. Cal. Mar. 20, 2008); *Jones v. Tozzi*, No. CV-F-05-148 OWW/DLB, 2007 WL 1299795, at *1-4 (E.D. Cal. Apr. 30, 2007).

necessary discovery from that official. OAG MTQ at 15. But that strategy does not work if the proper state-official defendant does not have custody over the necessary records[22]—which is frequently the case. Accordingly, under *Russell*, the problem threatens to crop up both inside and outside the Fifth Circuit.[23] This Circuit has recently seen cases where necessary documents were in the hands of the state agency rather than the defendant official and would have been inaccessible under the OAG's rule. *See* Trzaskoma Decl. Ex. 9 at 16-17.

Second, the OAG proffers that litigants can seek relevant documents through New York's Freedom of Information Law. OAG MTQ at 15-16. But the FOIL process is no equivalent. To start, FOIL is far more limited than federal civil discovery. For example, FOIL does not permit disclosure of any documents that would implicate personal privacy or interfere with contract awards or union negotiations. N.Y. Pub. Off. Law §§ 87(2)(b)-(c), 89(2). Moreover, review of FOIL determinations occurs in state court—and the purpose of statues like § 1983 is to ensure that federal rights may be vindicated in a federal forum. *See Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019). The OAG's FOIL argument is particularly disingenuous considering that Governor Cuomo did seek the Requested Materials through FOIL one year ago, but now finds himself in a lengthy proceeding in state court trying to enforce FOIL to obtain the documents. The still has not turned over a single Requested Material and has so far managed to delay indefinitely

---

[22] Defendants may also be foreclosed from evidence material to their defenses. *See United States v. Planned Parenthood Fed'n of Am.*, No. 2:21-CV-022-Z, 2022 WL 21758612, at *4 (N.D. Tex. Dec. 6, 2022). Defendants have little recourse to add parties to a case from whom they need critical discovery.

[23] *See Thompson v. Richter*, Civil Action No. 7:22-v-00014-O, 2023 WL 7986341, at *1-2 (N.D. Tex. Nov. 17, 2023) (case under § 1983); Non-Party the Univ. of Tex. Health Sci. Ctr. San Antonio's Mot. for Reconsideration of The Order Compelling Depositions of Dr. Allen Anderson and Dr. William Henrich, *Drs. Hosp. of Laredo v. Cigarroa*, No. 5:21-cv-01068-XR, 2023 WL 3901443 (W.D. Tex. May 18, 2023) (citing *Russell* in opposition to federal discovery subpoena issued by plaintiffs in federal antitrust case); Opening Br. of Third-Party Appellant Neb. State Patrol, *Mick v. Gibbons*, No. 24-1610, 2024 WL 3093065, at *16-17 (8th Cir. June 14, 2024) (citing *Russell* in opposition to federal discovery subpoena issued by plaintiff's estate in § 1983 excessive force case); Br. for the States of Tex., Ala., Alaska, Ark., Conn., Fla., Ga., Ind., Iowa, Kan., La., Miss., Mo., Mont., N.H., N.D., Ohio, Or., S.C., S.D., Tenn., Utah, Va., & W.V. as Amici Curiae in Supp. of Neb. State Patrol, *Mick v. Gibbons*, No. 24-1610, 2024 WL 3227091, at *10 (8th Cir. June 21, 2024) (same).

any substantive adjudication of its privilege arguments. Trzaskoma Decl. Ex. 12 at 10, 13-14.

Third, the OAG directs litigants to file claims against state agencies in the New York Court of Claims to obtain necessary discovery. OAG MTQ at 16. This suggestion is ridiculous: the New York Court of Claims entertains only limited types of claims and does not have jurisdiction over motions to compel. *See* N.Y. Ct. Cl. Act § 9. And, in any event, suit in the Court of Claims does not solve the issue that federal litigants must be able to obtain evidence to support claims and defenses in lawsuits pending in federal courts.

And finally, the OAG assures the Court that parties may still sue states under federal statutes that abrogate state sovereign immunity. OAG MTQ at 16. But, of course, § 1983, along with a plethora of other bedrock federal statutes does not abrogate sovereign immunity.[24] Moreover, litigants may still run into issues concerning cases brought under statutes that <u>do</u> abrogate sovereign immunity. For example, in the wake of *Russell*, Texas has raised state sovereign immunity against discovery from state agents in cases brought under the Voting Rights Act, which abrogates state sovereign immunity. *See* Def. District Att. Kim Ogg's Resp. to Mot. to Compel, *La Unión Del Pueblo Entero v. Abbott*, No. 5:21-cv-00844-XR, 2023 WL 3389679 (W.D. Tex. Jan. 6, 2023). There is no reason to believe states would not invoke state sovereign immunity in response to FRCP 45 subpoenas in cases brought under abrogating statutes.

There is a reason why *Russell* is an outlier. To uphold federalism and to provide an avenue for relief from violations of federal law, federal courts must be permitted to enforce discovery subpoenas that have been served on states.

---

[24] *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989) (Section 1983); *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360, 374 (2001) (Title I of Americans with Disabilities Act); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000) (Age Discrimination Employment Act); *Hale v. Mann*, 219 F.3d 61, 69 (2d Cir. 2000) (Family and Medical Leave Act); *Burnette v. Carothers*, 192 F.3d 52, 55 (2d Cir. 1999) (citizen suit provisions of the Clean Water Act, the Resource Conservation and Recovery Act, and the Comprehensive Environmental Response, Compensation and Liability Act); *Close v. State of New York*, 125 F.3d 31, 38-39 (2d Cir. 1997) (Fair Labor Standards Act).

III.    **THE REQUESTED MATERIALS ARE NOT PROTECTED FROM DISCLOSURE BY ANY APPLICABLE PRIVILEGE**

The OAG raises four federal privileges: attorney-client privilege, work product doctrine, law enforcement privilege, and deliberative process privilege. As a threshold issue, even if any of these privileges could apply, they have been waived. When a party discloses materials to any third party, including a government agency, for purposes other than receiving legal advice, that party waives attorney-client privilege over those materials. *See Bowne of N.Y.C., Inc. v. AmBase Corp.*, 150 F.R.D. 465, 479 (S.D.N.Y. 1993). "[E]ven if the disclosing party requires, as a condition of disclosure, that the recipient maintain the materials in confidence," disclosure still is a waiver of attorney-client privilege. *Id.* at 480 (collecting cases). The OAG all but admits that it shared the Requested Materials with other law-enforcement entities, including the DOJ/EDNY and several district attorney's offices, for purposes other than receiving legal advice. Indeed, as discussed above, disclosure of documents to "incite" an agency to "attack the informant's adversary" waives work-product protection over those documents. *Info. Res. Inc.*, 999 F. Supp. at 593. Such third-party disclosure—for the purpose of aiding a prosecution against the movant—has also been applied to waive the government investigative privilege, *id.*, and the reasoning behind such waiver applies in principle to all qualified privileges, *see id.* Consequently, all asserted privileges have been waived.

A.    **The Attorney-Client Privilege Does Not Apply**

The OAG also has not met its burden to establish the attorney-client privilege because the Requested Materials do not comprise communications (1) made between a client and counsel, (2) that were intended to be, and in fact have been, kept confidential, and (3) that were made for the purpose of obtaining or providing legal assistance. *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 36–37 (E.D.N.Y. 2013). The OAG fails to establish any of these elements.

*First*, the OAG fails to explain how the Requested Materials constitute attorney-client communications. The OAG does not argue that third-party witnesses had an attorney-client relationship with the OAG deputies. *Cf. Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981). An attorney cannot convert third-party witness statements to attorney-client communications simply by putting them in a memo or hiring a court reporter to transcribe them. *See Allen v. W. Point-Pepperell Inc.*, 848 F. Supp. 423, 427-428 (S.D.N.Y. 1994) ("[T]he privilege does not protect facts which an attorney obtains from independent sources and then conveys to his client.").

*Second*, the OAG fails to show how the Requested Materials were made <u>for the purpose of obtaining legal advice</u>. The investigators were not hired to serve as counsel to the OAG. Rather, in public statements concerning the Investigation, the OAG highlighted the independence of the special deputies. For instance, the OAG Report provided that, while the deputies "periodically report[ed]" to the OAG regarding "the Office's practice and procedures," the deputies made "all substantive decisions" concerning the Investigation as well as "all decisions regarding the analysis and conclusions reached in this Report, independently." Trzaskoma Decl. ¶ 5 at 15. And given that the investigators' only mandate was to conduct the investigation and prepare a public report, it is difficult to conceive how the Firms could have been providing confidential legal advice to the OAG in interview memos that principally recorded third-party witness statements.

*Third*, the OAG cannot show that the Requested Materials were kept confidential. Beyond the disclosures to government agencies described above, the OAG has disclosed the subject matter of the Requested Materials in its public Report detailing various witness statements. *See In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 469-470 (S.D.N.Y. 1996). The court in *Kidder* required "disclosure of those portions of interview documents" that were "specifically alluded to" in a public report. *Id*. at 469-470. Without a doubt, the OAG Report alludes to the Requested

Materials in asserting that "Trooper #1's allegations concerning her interactions with the Governor were also corroborated by numerous other witnesses." Trzaskoma Decl. ¶ 5 at 44. The report also references the statements of unidentified witnesses with respect to Trooper 1's recruitment and several of the specific instances of harassment that she alleges. *Id.* at 34-35, 39-41, 43-44. Under *Kidder*, therefore, the Requested Materials do not enjoy attorney-client privilege.

**B.    The Work Product Doctrine Does Not Apply**

The OAG asserts that Requested Materials constitute work product because they were prepared in anticipation of potential impeachment proceedings, litigation brought by the complainants, and/or litigation by Governor Cuomo against the OAG. OAG MTQ at 27-28. But the OAG fails to meet its "heavy burden" to establish the privilege. *Favors v. Cuomo*, 285 F.R.D. 187, 199 (E.D.N.Y. 2012). A document can be deemed prepared in anticipation of litigation only if it "can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (collecting cases). Even if the OAG investigators anticipated the possibility of some form of litigation while preparing the Requested Materials, they did not prepare the documents *because of* that prospect. There is nothing about litigation in the OAG's engagement letters with the Firms, OAG ECF No. 70-5, and nothing in the OAG Report suggests that it was "engendered by any concern about litigation," *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 107–108 (S.D.N.Y. 2007). The Requested Materials were prepared for the singular purpose of conducting a public investigation and issuing a public report, which would have proceeded without regard to any potential litigation. *See* Trzaskoma Decl. ¶ 3.

In any event, even if work product protection applied, and even if it had not been waived by disclosure to government agencies for purposes of prosecution, it would have been waived through the release of the Report. *See N.Y. Times Co. v. U.S. Dep't of Just.*, 939 F.3d 479, 496 (2d Cir. 2019). In *N.Y. Times Co.*, the work product at issue were memoranda of United States Attorney

31

John Durham to then-Attorney General Eric Holder, which included recommendations regarding government detainees. *Id*. at 485. Attorney General Holder eventually issued press releases concerning those recommendations summarizing what Durham had analyzed and reporting the finding that a number of the detainees had never been in CIA custody. *Id*. at 486-487. The Second Circuit found those statements "sufficiently specific that they are tantamount to public disclosure of the parts of the relevant memoranda that relate to this finding" and held that the government waived the privilege over the sections of the memoranda and exhibits relating to the finding. *Id*. at 496. Here, the OAG went even farther: it released a 165-page report that described in detail the investigators' findings and directly relayed the contents of informal witness interviews. *See generally* Trzaskoma Decl. ¶ 5. Under the analysis in *N.Y. Times Co.*, the OAG Report is "sufficiently specific" to waive attorney work product protection over the Requested Materials.

### C.    The Law Enforcement Privilege Does Not Apply

Law enforcement privilege may apply to documents that contain (1) information pertaining to law enforcement techniques and procedures, (2) information that would undermine the confidentiality of sources, (3) information that would endanger witness and law enforcement personnel, (4) information that would undermine the privacy of individuals involved in an investigation, and (5) information that would seriously impair the ability of a law enforcement agency to conduct future investigations. *In re The City of New York*, 607 F.3d 923, 948 (2d Cir. 2010). The movant "must make a clear and specific evidentiary showing of the nature and extent of the harm" caused by disclosure. *Kunstler v. City of New York*, No. 04CIV1145 (RWS)(MHD), 2005 WL 2656117, at *1 (S.D.N.Y. Oct. 18, 2005). It may not, as the OAG has done here, "rely simply on generalized iterations of the policies underlying the privilege." *Id.*

The OAG asserts that the law enforcement privilege applies to the unredacted transcripts and witness interview memos because disclosure would "reveal the identities" of confidential

witnesses and "invade the privacy" of public witnesses. OAG MTQ at 30. The OAG further alleges that such disclosure would harm future investigations because witnesses "might not have cooperated as fully" had they believed the substance of their information would be provided to Governor Cuomo. *Id.* But case law in this Circuit could not be clearer that these justifications are insufficient to support the application of the law enforcement privilege here.

Factual recitations of witness statements in civil investigations do not implicate the concerns motivating the law enforcement privilege. In *Moroughan v. County of Suffolk*, No. CV 12-512 (JFB) (AKT), 2018 WL 11268801 (E.D.N.Y. Feb. 6, 2018), the court considered whether law enforcement privilege applied to a police sergeant's investigative notes concerning the incident at issue in the case. *Id.* at *5. These notes contained facts disclosed by witnesses and did not include the sergeant's impressions or evaluations. *Id.* Because the notes simply comprised "fact-based witness statements" without any "mental impressions," the court concluded that they were not covered by the privilege. *Id.* at *6. The court further reasoned that the information would not endanger the witnesses and that the privacy of any individual involved in the investigation would not be materially undermined because the sources were "likely known" to the movant based on prior discovery and because the "bulk of witnesses [we]re police personnel." *Id.*

This case is indistinguishable. Here, the Requested Materials simply comprise fact-based witness statements with few (if any) mental impressions that have already been redacted. The requested documents do not undermine confidentiality because either (1) the OAG has already revealed the identity of the witness in question by <u>itself</u> disclosing their identity or (2) prior discovery has revealed the likely identity of the witness because the parties now know the universe of PSU and other NYSP officers who worked with Trooper 1 during the course of the events underlying the allegations. And—in any event—witness privacy is not a concern here where the

remaining confidential witnesses are police officers, who are aware by nature of their professional experience that their participation in an investigation may become public and are not dissuaded by that fact. Any minor potential harm flowing from disclosure of these materials is further mitigated by the operative protective order at T1 ECF No. 68. *See MacNamara v. City of New York*, 249 F.R.D. 70, 88-89, 92 (S.D.N.Y. 2008). Governor Cuomo cannot disclose, much less retaliate on the basis of,[25] any of the Requested Materials as long as they are designated confidential.

To the extent that the OAG seeks to protect the witness interview memos of confidential witnesses on the basis of their current anonymity, the OAG also has no support in law. The informer's privilege, which the OAG invokes here,[26] "only protects the [informer's] identity, not the content of the [informer's] communications." *Morle v. Hayes*, No. 20-CV-103 (DLI)(MMH), 2023 WL 3306931, at *4 (E.D.N.Y. May 8, 2023). Moreover, even if the witness interview memos might contain some information that tends to reveal the identity of any confidential witness, the court can take "appropriate precautions" through a "protective order" to prevent the informer from revealing his or her identity to the subject of the investigation. *Arbalaez v. City of New York*, No. 17-CV-6543 (JMF), 2019 WL 5634174, at *4 (S.D.N.Y. Oct. 31, 2019). For example, the OAG could designate materials "Attorneys' Eyes Only" to ensure that Governor Cuomo does not learn the identities of the currently confidential witnesses. *See id.* (reasoning that limiting the deposition of a confidential informant to let only counsel attend would protect the informant's identity).

To the extent the Court raises the concern that certain of the Requested Materials are subject to law enforcement privilege because they contain information concerning NYSP duties or

---

[25] Governor Cuomo has not been in office for nearly three years. The Parties have deposed at least seven Troopers who gave statements to the OAG, and none has suggested that Governor Cuomo has retaliated against them.

[26] The Second Circuit has long recognized the informant's privilege and has acknowledged that it is a subset of the law enforcement privilege. *City of New York*, 607 F.3d at 941 n.18.

other security details, OAG ECF No. 62-2 at 16:4-13, the OAG does not "provide competent evidence, via affidavit or otherwise, from personnel employed" by the OAG to support application of the privilege for those purposes. *Garner v. City of New York*, No. 17-CV-843 (JGK)(KNF), 2018 WL 5818109, at *4 (S.D.N.Y. Oct. 17, 2018). The OAG thus fails to make a "clear and specific" evidentiary showing of the harm that would result from disclosing this information.[27] *See Kunstler*, 2005 WL 2656117, at *1. Nor could it—productions made by the NYSP contain countless examples of similar such information. T1 ECF No. 259. Documents produced by the NYSP include PSU schedules, assignment lists, security warnings, and PINs providing the whereabouts of officers and Executive Chamber staff members on various days during the relevant time period. Because the parties already have access to this information, and because the NYSP— the only party with a protectable interest in the information—has not asserted the privilege but has instead consented to production of the information pursuant to the Protective Order, *see id.*, there is no reason to allow the OAG to rely on law enforcement privilege to avoid disclosure.

Even if the law enforcement privilege did apply to any of the Requested Materials, it would be a qualified privilege. To overcome the law enforcement privilege, the movant must show that (1) the suit is non-frivolous and brought in good faith; (2) the information sought is not available from other sources or through other discovery; and (3) there is a substantial need for the information. *See City of New York*, 607 F.3d at 948. Governor Cuomo meets these requirements.

In *United States v. Davis*, 131 F.R.D. 391 (S.D.N.Y. 1990), the court considered law enforcement privilege with respect to witness interview memos under similar circumstances to those here. During a criminal investigation of the defendant, the government transcribed interviews

---

[27] The declaration filed at OAG ECF No. 20 is similarly deficient. Ye Eun Charlotte Chun is not a member of OAG personnel and provides no assertions concerning the harm that might result from disclosure of information implicating security plans, footage, or floorplans.

with one of the defendant's former employees. *Id.* at 394-395. The court concluded that the defendant showed a substantial need for these transcripts because they concerned the allegations at issue—indeed, the government had "concede[d] to utilizing" the allegations in its affirmative case. *Id.* The court also concluded that the defendant could not obtain the materials elsewhere in light of the "hostile" relationship between the witness and the defendant—and the likelihood that the witness would resist individualized discovery. *Id.* at 396. Our case is no different. The Requested Materials are notes and transcripts of interviews concerning the very allegations at issue in this case—the allegations that have been incorporated at length into the Amended Complaint. As described above, these materials are not just relevant but central to contesting those allegations and preventing the admission of the Report from which they have been lifted. And obtaining the information from the witnesses themselves would be similarly difficult because most if not all of them are hostile to Governor Cuomo. Already the Court has observed the extent to which witnesses have resisted discovery in this case, and there is certainly reason to believe witnesses will continue to resist when it comes time for their depositions. Moreover, there are other barriers to alternative routes—namely, that discovery in this case has already borne out that witnesses cannot remember what they stated or testified to the OAG. *See* OAG ECF No. 46. Thus, here, as in *Davis*, Governor Cuomo should overcome any potential application of the law enforcement privilege.[28]

---

[28] To the extent the OAG raises New York's public interest privilege, OAG MTQ at 35—if that privilege even applies in federal court, *see Agran v. City of New York,* No. 95 Civ. 2170 (JFK), 1997 WL 107452, at *2-3 (S.D.N.Y. Mar. 11, 1997)—it is inapplicable for the same reasons that the law enforcement privilege is inapplicable, *see id.*. New York Executive Law § 63(8) does not change the analysis. Even if it applies a limited rule of confidentiality to appointed officers, it does not apply a rule of confidentiality to the OAG itself. Indeed, the rule contemplates that the Attorney General (or Governor) can authorize disclosure of information gathered in the investigation, as the OAG did in this case. If anything, the public interest weighs very much in favor of disclosing evidence relevant to Trooper 1's claims.

### D.    The Deliberative Process Privilege Does Not Apply

Documents are protected by deliberative process privilege when they are predecisional and deliberative. *Am. Civ. Liberties Union v. Dep't of Def.*, No. 15 Civ. 9317 (AKH), 2017 WL 4326524, at *5 (S.D.N.Y. Sept. 27, 2017). The Requested Materials are neither. They are not predecisional because the OAG cannot "pinpoint the specific agency decision to which the [Requested Materials] correlate[]." *Id.* No such policy decision exists when the document author's mission is simply "to investigate the facts." *Allocco Recycling, Ltd. v. Doherty*, 220 F.R.D. 407, 412-413 (S.D.N.Y. 2004). The OAG investigators prepared the Requested Materials in service of a fact-finding investigation they were conducting independently of the OAG. Moreover, the OAG could not decide to take legal action against Governor Cuomo regardless of the eventual factual and legal conclusions, so there was no decision to be made by the OAG. Consequently, the Requested Materials are not predecisional.

 But even if the Requested Materials were predecisional, they are not deliberative because they do not reflect any "decision-making process." *Id.* at 413. In order to be deliberative, the documents "in and of themselves" must actually reflect deliberation. *Id.* Documents that "have been or will be relied upon" as part of an eventual decision-making process are not deliberative. *Id.* The OAG does not assert that the Requested Materials contain any agency deliberations—it can only argue that the information contained in the Requested Materials was "directly used by the Investigative Team to form legal conclusions that were employed in OAG's Report." OAG MTQ at 34. Case law is thus clear that the Requested Materials are not deliberative.

The Court raised two cases to consider with respect to this privilege. Neither is applicable. In *Lead Industries Association, Inc. v. Occupational Safety and Health Administration*, 610 F.2d 70 (2d Cir. 1979), the Second Circuit considered a FOIA request for two reports submitted by outside consultants as evidence at hearings for a proposed OSHA rule. *Id.* at 80. And in *New York*

*Times Company v. United States Department of Justice*, No. 22-2232-cv, 2024 WL 1109260 (2d Cir. Mar. 14, 2024), the Second Circuit considered a FOIA request for the report of an independent monitor setting forth findings and recommendations concerning Volkswagen AG's compliance with a plea agreement arising out of an emissions evasion scheme. *Id.* at *1. In both cases, independent third parties submitted reports designed to highlight the most important facts in the entire record and provide recommendations to the agency decisionmaker based on those facts. *See id.* at *3; *Lead Indus. Ass'n*, 610 F.2d at 80, 83. Accordingly, the reports were "more than mere summaries"—they required the authors to "draw inferences and weigh the evidence." *Lead Indus. Ass'n*, 610 F.2d at 83; *accord N.Y. Times*, 2024 WL 1109260, at *3. In both cases, the Second Circuit concluded that deliberative process privilege applied but only because factual material was "inextricably intertwined" with subjective analysis and policy recommendations. *Lead Indus. Ass'n*, 610 F.2d at 85; *accord N.Y. Times*, 2024 WL 1109260, at *3 (factual information "could not be reasonably segregated" from analysis).

In contrast, courts in the Second Circuit do not apply deliberative process privilege where the documents in question do not contain any analysis or espouse any positions but instead comprise a "factual timeline of events" that "does not appear to be a selectively curated presentation of the facts." *Am. Soc'y for Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*, No. 19 Civ. 3122 (NRB), 2021 WL 1163627, *11 (S.D.N.Y. Mar. 25, 2021). Commentary on these facts is similarly subject to disclosure—thoughts "devoted to clarifying the facts" underlying the investigation, as opposed to "opinions" or "recommendations" on the "ultimate policy or decision to be made," are not entitled to the privilege. *Allocco Recycling, Ltd.*, 220 F.R.D. at 414. And even if the document in question "contains some portions which reflect the advice, conclusions, and recommendations" of the author, if the factual material is "severable

from those parts," then the factual material must be disclosed. *Playboy Enters., Inc. v. Dep't of Just.*, 677 F.2d 931, 935 (D.C. Cir. 1982). If the document in question discusses specific facts which are then "<u>followed</u> by findings, analysis, and recommendations," the factual recitations cannot be withheld under the deliberative process privilege. *Adelante Ala. Worker Ctr. v. U.S. Dep't of Homeland Sec.*, 376 F. Supp. 3d 345, 363 (S.D.N.Y. 2019) (emphasis added).

The Requested Materials fall in the second camp. The requested unredacted transcripts contain no analysis—they are pure factual recitation. The transcribing court reporter made no policy recommendations concerning the facts. The witness interview memos also comprise mostly factual recitation, and whatever analysis they include is cabined to the end of each memo.[29] It is not enough to argue, as the OAG does, that disclosure of the factual recitations would "reveal the information the Investigators culled from their conversations" with witnesses as "relevant and worthy of passing on." OAG MTQ at 34. Courts recognize that "[a]nyone" writing such a document "must of necessity select the facts to be mentioned in it," but that document "does not become a part of the deliberative process merely because it contains only those facts which the person making the [document] thinks material." *Playboy Enters.*, 677 F.2d at 935; *see also Adelante Ala. Worker Ctr.*, 376 F. Supp. 3d at 363 ("[T]he Court cannot find that any redactions of purely factual material in the Expert's Reports, on the basis that the selection of such material by the author would reveal the deliberative process of the agency, was proper.").

Even if any of the Requested Materials are in theory protected by the deliberative process privilege, they should be produced for two reasons. ***First***, the OAG expressly adopted or incorporated the documents by reference in the OAG Report. An agency can be required to disclose

---

[29] Moreover, these purported "analysis" portions of the witness interview memos have already been redacted as attorney work product, so, should the Court determine that these portions are protected by the deliberative process privilege, the OAG would shoulder no extra burden in producing the factual recitations. *See* OAG ECF No. 71 ¶ 15.

a document otherwise entitled to protection under the deliberative process privilege if the agency has chosen to expressly adopt or incorporate the documents in its final opinion. *See Nat'l Council of La Raza v. Dep't of Just.*, 411 F.3d 350, 356-360 (2d Cir. 2005). The OAG explicitly credited and cited many of the Requested Materials in its Report. Trzaskoma Decl. ¶ 5 at 34-35, 39-44.

*Second*, the deliberative process privilege is a qualified privilege. As acknowledged by the OAG, OAG MTQ at 34, once deliberative process privilege applies, courts apply five factors to determine whether it should prevent disclosure: (1) the relevance of the materials sought, (2) the availability of other evidence, (3) the seriousness of the litigation and the relevant issues, (4) the role of the government in the litigation, and (5) the possibility of future timidity by government employees who recognize that their work may be disclosed. *Burbar v. Inc. Vill. of Garden City*, 303 F.R.D. 9, 13 (E.D.N.Y. 2014). Each factor favors disclosure. The Requested Materials are relevant because Trooper 1 has put the OAG Report at issue in this case. OAG ECF No. 42-1. The Requested Materials are not available from other sources because, as discovery has already shown, witnesses interviewed by the OAG cannot recall their prior testimony. *See* OAG ECF No. 41 at 4-5; OAG ECF No. 46. The litigation is plainly serious. Although the OAG is not a party to the litigation, the OAG Report is at the heart of Trooper 1's theory of the case, *see* OAG ECF No. 42-1, so the role of the Requested Materials in the litigation is large. And any concerns about the possibility of witness timidity are mitigated by the fact that the OAG Report already incorporates and even cites many of the Requested Materials—the cat is already out of the bag. Trzaskoma Decl. ¶ 5 at 34-35, 39-44. Consequently, the pertinent factors counsel in favor of disclosure.

## CONCLUSION

For the foregoing reasons, Governor Cuomo respectfully requests that the Court compel the production of the Requested Materials and deny the OAG's motion to quash.

Dated: New York, New York
        July 17, 2024

Respectfully submitted,

*/s Theresa Trzaskoma*

Theresa Trzaskoma
Allegra A. Noonan
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

Rita M. Glavin
Glavin PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

*Counsel for former Governor
Andrew M. Cuomo*