UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW M. CUOMO, | 22-mc-03044 (LDH)(TAM) |
| Movant, | |
| - against - | **ORAL ARGUMENT** |
| | **REQUESTED** |
| OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL, | |
| Defendant. | |

**DEFENDANT'S OBJECTIONS TO THAT PORTION OF MAGISTRATE
JUDGE MERKL'S OCTOBER 28, 2024, MEMORANDUM AND ORDER
DECLINING TO QUASH MOVANT'S SUBPOENA BASED ON STATE
SOVEREIGN IMMUNITY**

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

*Attorney for Defendant*

Andrew Amer
Michael Jaffe
James Cooney

   *of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    A.     OAG's Investigation Report .............................................................. 3

    B.     Cuomo's Relentless Campaign To Attack OAG's Investigation ............................ 5

    C.     Trooper 1's Complaint ..................................................................... 5

    D.     Procedural History .......................................................................... 6

ARGUMENT ..................................................................................................................... 8

    I.     OAG'S BROAD STATE SOVEREIGN IMMUNITY BARS ENFORCEMENT OF CUOMO'S SUBPOENA ......................................................... 8

        A.     Enforcement Of The Subpoena Is A "Judicial Proceeding" Barred By OAG's Broad Sovereign Immunity ....................................... 9

        B.     Magistrate Judge Merkl's Failure To Uphold OAG's Sovereign Immunity Should Be Overruled As Contrary To Law ..................... 12

        C.     The Court's Analysis Of "Additional Considerations" Is Misguided ................. 15

        D.     OAG Did Not Waive Its Sovereign Immunity .................................... 19

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Abdou v. Gurrieri*, No. 05-cv-3946, 2006 WL 2729247 (E.D.N.Y. Sept. 25, 2006)...................................9

*Adkins v. Fields*, No. 22-cv-00007, 2024 WL 4003332 (E.D. Ky. Aug. 28, 2024)...................................11

*Alden v. Maine*, 527 U.S. 706 (1999)..................................................................................8, 9, 13, 16, 20

*Alltel Comm'ns, LLC v. DeJordy*, 65 F.3d 1100 (8th Cir. 2012) ................................................................12

*Barnes v. Black*, 544. F.3d 807 (7th Cir. 2008) ........................................................................................14

*Beaulieu v. Vermont*, 807 F.3d 478 (2d Cir. 2015).....................................................................8, 9, 20, 22

*Bennett v. Cuomo*, No. 22-cv-7846, 2024 WL 2963714 (S.D.N.Y. June 12, 2024), *objection filed* (June 26, 2024)..........................................................................................10, 11, 13, 17, 25

*Board of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) ..........................................................16

*Bonnet v. Harvest (U.S.) Holdings, Inc.,* 741 F.3d 1155 (10th Cir. 2014)................................................12

*Boron Oil Co. v. Downie*, 837 F.2d 67 (4th Cir. 1989).............................................................................19

*Brown v. State*, 89 N.Y.2d 172 (1996).....................................................................................................18

*Cartica Management, LLC v. Corpbanca, S.A.*, 50 F. Supp. 3d 477 (S.D.N.Y.  2014) ............................12

*Catskill Dev't, LLC v. Park Place Entertainment Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002) .................11, 14

*Colt v. New Jersey Transit Corp.,* No. 72, 2024 WL 4874365 (N.Y. Nov. 25, 2024)...............................17

*Close v. State of N.Y.*, 125 F.3d 31 (2d Cir. 1997).....................................................................................25

*Coleman v. Court of Appeals of Md.*, 566 U.S. 30 (2012) ........................................................................16

*College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999)..21, 22, 23

*Cullen & Dykman, LLP. v. Wertheimer*, No. HHD-CV23-6169165-S, 2024 WL 1270252 (Conn. Super. Ct. Mar. 18, 2024)....................................................................................................11

*Dekom v. New York*, No. 12-cv-1318, 2013 WL 3095010 (E.D.N.Y. June 18, 2013)...............................18

*Dellmuth v. Muth*, 491 U.S. 223 (1989).................................................................................................15

*Dugan v. Rank*, 372 U.S. 609 (1963) ......................................................................................................10

*EPA v. General Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999), *amended on reh'g on other grounds*, 212 F.3d 689 (2d Cir. 2000)...................................................2, 9, 12, 13, 14, 17, 19, 23, 24

*Felix v. County of Nassau*, 344 F.R.D. 441 (E.D.N.Y. 2023) .............................................. 9, 10, 12, 13, 17

*Financial Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339 (2023) ................................................................................................................... 15

*Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) ...................................................................................... 15, 18

*Green v. Mansour*, 474 U.S. 64 (1985) ................................................................................................... 15

*Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, No. 06-cv-1260, 2009 WL 4981905 (E.D.N.Y. Dec. 10, 2009) ............................................................................................................... 25

*Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, No. 96 CIV. 8414, 2016 WL 7320775 (S.D.N.Y. July 18, 2016), *report and recommendation adopted*, No. 96 CIV. 8414 (KMW), 2016 WL 7243544 (S.D.N.Y. Dec. 14, 2016) .......................................................... 22

*Gunter v. Atlantic Coast Line R. Co.*, 200 U.S. 273 (1906) ....................................................... 22

*Haber v. United States*, 823 F.3d 746 (2d Cir. 2016) .................................................................. 21

*Hans v. Louisiana*, 134 U.S. 1 (1890) ................................................................................................. 8

*Henry v. New Jersey Transit Corp.*, 39 N.Y.3d 361 (2023) ......................................................... 20, 21

*In re Missouri Dept. of Natural Res.*, 105 F.3d 434 (8th Cir. 1997) ......................................... 12

*In re S.E.C. ex rel. Glotzer*, 374 F.3d 184 (2d Cir. 2004) ............................................................ 9

*Information Resources, Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591 (S.D.N.Y. 1998) ................. 23

*Jackson v. AFSCME Local 196*, No. 07-cv-471, 2008 WL 1848900 (D. Conn. April 25, 2008) ............... 11

*Jett v. Penner*, No. S-02-2036, 2007 WL 127790 (E.D. Ca. Jan. 12, 2007) ............................... 24

*Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000) ................................................................. 15

*Land v. Dollar*, 330 U.S. 731 (1947) .................................................................................................... 10

*Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682 (1949) ............................................. 10

*Lewis v. Clarke*, 581 U.S. 155 (2017) ................................................................................................... 13

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ........................................................... 21

*Matter of Cuomo v. Office of the New York Attorney General*, Index No. 150515/2024 (Sup. Ct. N.Y. Cnty.) .............................................................................................................................. 18

*McGinty v. New York*, 251 F.3d 84 (2d Cir. 2001) ...................................................................... 21

*Milord-Francois v. New York State Off. of Medicaid Inspector Gen.*, No. 19-cv-00179, 2022 WL 10653757 (S.D.N.Y. Oct. 18, 2022) .......................................................................................... 20

iii

*Mixon v. State of Ohio*, 193 F.3d 389 (6th Cir.1999)), *aff'd*, 583 F. App'x 15 (2d Cir. 2014)...................18

*Morrison v. Budget Rent A Car Sys.*, 657 N.Y.S.2d 721 (2d Dep't 1997)....................................20

*NGV Gaming, Ltd. v. Upstream Point Molate*, LLC, Nos. C-04-3955, C-05-1605, 2009 WL 4258550 (N.D. Cal. Nov. 24, 2009)...........................................................................24

*Papasan v. Allain*, 478 U.S. 265 (1986) .................................................................8

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) .......................................8, 22

*Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425 (1997) ..............................................9

*Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426 (2d Cir. 1999) ......................8

*Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022) ............................................10, 12, 13

*Santa Clara Pueblo v. Martinez*, 436, U.S. 49 (1978) ..................................................12

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996) ..............................8, 11, 15, 16

*Sossamon v. Texas*, 563 U.S. 277 (2011)................................................................15

*State of Georgia v. Jessup*, 106 U.S. 458 (1882) .......................................................25

*State of South Carolina v. Wesley*, 155 U.S. 542 (1895) ................................................25

*Torres v. Texas Dep't of Pub. Safety*, 597 U.S. 580 (2022)............................................19

*United States Dep't of Justice v. Ricco Jonas*, 24 F.4th 718 (1st Cir. 2022) ............................14

*United States v. Georgia*, 546 U.S. 151 (2006) ........................................................18

*United States v. James*, 980 F.2d 1314 (9th Cir. 1992) ...............................................23

*United States v. Menominee Tribal Enter*s., No. 07-c-316, 2008 WL 2273285 (E.D. Wis. June 2, 2008) ....................................................................................23

*United States v. Velarde*, 40 F. Supp. 2d 1314 (D.N.M. 1999) .........................................23

*Unkechaug Indian Nation v. New York State Dep't of Env't Conservation*, 677 F. Supp. 3d 137 (E.D.N.Y. 2023)................................................................................20

*Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247 (2011)......................................20

## Statutes

28 U.S.C. § 2072..............................................................................................16

42 U.S.C. § 2000e(b) .........................................................................................16

Public Officers Law § 87 .....................................................................................18

**Treatises**

Alexander Hamilton, The Federalist No. 81 (Clinton Rossiter ed., 1961) (1788) ...................................... 13

Erwin Chemerinsky, *Federal Jurisdiction § 7.6* (2d ed.1994) .................................................................. 25

Gregory C. Sisk, A Primer on the Doctrine of Federal Sovereign Immunity, 58 Okla. L. Rev. 439 (2005) ............................................................................................................................................................ 13

The Office of the New York State Attorney General ("OAG"), pursuant to Federal Rule of Civil Procedure 72, objects to that portion of Magistrate Judge Taryn Merkl's October 28, 2024 Memorandum and Order (ECF No. 85) ("Order") declining to find that OAG is immune from suit in this judicial proceeding to enforce a third-party subpoena served on OAG by Movant, former Governor Andrew Cuomo ("Cuomo").

## PRELIMINARY STATEMENT

In April 2024, Cuomo served a subpoena on OAG pursuant to Federal Rule of Civil Procedure 45 ("Rule 45") regarding an underlying action entitled *Trooper 1 v. New York State Police, at al.*, No. 22-cv-893 (E.D.N.Y.) ("Trooper 1 Action"). The subpoena ("Subpoena") sought attorney interview memoranda and unredacted portions of witness transcripts generated as part of OAG's investigation into allegations that Cuomo sexually harassed several women. OAG objected to the Subpoena on numerous grounds, including various privileges and OAG's broad state sovereign immunity from judicial enforcement of third-party subpoenas in federal cases served by private individuals. On the parties' cross-motions to compel compliance with and quash the Subpoena, Magistrate Judge Merkl issued the Order granting in part and denying in part both motions. In the Order, Magistrate Judge Merkl held: (i) as a threshold matter, OAG is not entitled to assert state sovereign immunity in a judicial proceeding seeking to enforce the Subpoena (Order at 8-25); (ii) the interview memoranda are protected from disclosure under the attorney-client privilege (*id*. at 26-45); and (iii) the record is insufficient to adjudicate OAG's assertion of the law enforcement and public interest privileges as to the unredacted transcripts, necessitating further *in camera* submissions (*id*. at 46-53). OAG objects solely to that portion of the Order declining to quash the Subpoena based on OAG's state sovereign immunity.

Magistrate Judge Merkl's ruling on sovereign immunity is contrary to law. Second Circuit precedent holds that a judicial proceeding to enforce a subpoena served on a federal government

agency is barred by sovereign immunity unless the defense is waived because if enforced, the subpoena would compel the government to act. *See EPA v. General Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999), *amended on reh'g on other grounds*, 212 F.3d 689 (2d Cir. 2000). Two other recent decisions from courts within the Second Circuit and a recent decision by the Fifth Circuit relied on *EPA* in holding that judicial enforcement of subpoenas served on *state* entities is barred by *state* sovereign immunity. And decisions from the Southern District of New York and the Eighth and Tenth Circuits similarly applied the decision in *EPA* in holding that enforcement of subpoenas against *tribal* entities was barred by *tribal* sovereign immunity. Declining to follow these cases, Magistrate Judge Merkl incorrectly held the *EPA* decision does not control here.

First, Magistrate Judge Merkl erroneously held that *EPA* is materially distinguishable because it involved *federal* sovereign immunity rather than *state* sovereign immunity. This is a distinction without a difference under the Second Circuit's reasoning in *EPA*. The court held in *EPA* that a third-party motion to enforce compliance with a subpoena was a "judicial proceeding" that triggered sovereign immunity because if enforced it would compel the government agency to act—reasoning that applies with equal force whether the agency is part of the federal or state government.

Second, Magistrate Judge Merkl was wrong to find that because the underlying Trooper 1 Action was brought under Title VII of the Civil Rights Act, a statute that abrogates sovereign immunity of a state from being sued as a party defendant, there is abrogation by implication of the separate "judicial proceeding" commenced by Cuomo against OAG (a non-party to the Trooper 1 Action) through his Rule 45 subpoena and associated motion to compel. But the law is settled that congressional intent to abrogate state sovereign immunity cannot be implied; rather, it must be unmistakably clear from the express statutory language, and it must be accomplished through the

exercise of valid congressional powers. Nothing in the language of the Rules Enabling Act, 28 U.S.C. § 2072, pursuant to which Rule 45 was promulgated, remotely hints at an intent by Congress to abrogate state sovereign immunity from judicial proceedings commenced by subpoena, nor would any effort by Congress to do so be a valid exercise of legislative power. And nothing in Title VII provides that Congress abrogated state sovereign immunity from suits to enforce third-party subpoenas when it abrogated state sovereign immunity from suits for liability as employers under the substantive provisions of the law.

Moreover, although not reached by Magistrate Judge Merkl given her ruling that sovereign immunity does not apply, the Court should hold that OAG's sovereign immunity defense cannot be waived by litigation conduct as a matter of New York law, or in the alternative, that it was not waived by OAG's litigation conduct here. Neither the prior confidential disclosure by OAG of some investigative materials to other law enforcement agencies, OAG's submission of some materials to Magistrate Judge Merkl for *in camera* review pursuant to court order, nor the voluntary production of a handful of documents unrelated to the type of documents sought in the Subpoena satisfy the stringent standard in this Circuit to find waiver of sovereign immunity.

Accordingly, the Court should sustain OAG's objections to that portion of the Order rejecting OAG's sovereign immunity defense as contrary to law and, on that basis, grant OAG's motion to quash the Subpoena in its entirety.

## BACKGROUND

### A. OAG's Investigation Report

By letter dated March 1, 2021, then-Governor Cuomo referred allegations of sexual harassment against him to OAG for investigation pursuant to New York Executive Law § 63(8) ("§ 63(8)") (the "Referral Letter"). Declaration of Serena Longley, dated June 6, 2024 (ECF No. 70) ("Longley Decl."), Ex. 1. In the Referral Letter, Cuomo directed OAG to select an independent

law firm to conduct the § 63(8) investigation ("Investigation"), while acknowledging "that nothing in this letter is intended to constrain or limit the powers inherent in § 63(8)," which grants OAG discretion to appoint, employ and determine the duties of non-governmental "deputies" for the purpose of inquiring into referred matters. *Id*.

Starting on March 8, 2021, OAG began appointing a team of investigators, led by private attorneys Joon Kim of Cleary Gottlieb Steen & Hamilton, LLP and Anne Clark of Vladeck, Raskin & Clark, P.C., (the "Investigative Team") and empowered them to issue subpoenas to investigate and report on allegations of sexual harassment by Cuomo and surrounding circumstances. *Id*. ¶ 13, Ex. 4. The Investigation closed on August 3, 2021, with the release on that date of a report ("Report") and 111 exhibits, concluding that Cuomo sexually harassed several women. *Id*. ¶ 19. The Investigative Team interviewed 179 individuals, taking testimony under oath from 41, and collected over 74,000 documents. *Id*. ¶¶ 19, 22; Declaration of Ye Eun Charlotte Chun, dated June 7, 2024 (ECF No. 71 ) ("Chun Decl.") ¶ 5.

Given the public significance and interest in the Report, OAG decided to make available to the public certain materials from the Investigation, specifically on-the-record testimony and approximately 1,000 exhibits to that testimony, but to do so in redacted form to protect witness confidentiality and privacy. Longley Decl. ¶ 24. The review and redaction process for public release of transcripts and just over 1,000 of the 74,000 collected documents took the Investigative Team approximately 3,600 hours to complete due to the highly sensitive and confidential nature of the information contained in the materials. Chun Decl. ¶¶ 10-12. Without waiving any privileges, OAG cooperated with several other governmental agencies conducting their own investigations into overlapping allegations against Cuomo. Longley Decl. ¶¶ 26-30. As part of those cooperative efforts, OAG provided to government agencies certain investigative materials subject to

agreements preserving confidentiality and privilege to the greatest extent possible. *Id.*

**B. Cuomo's Relentless Campaign To Attack OAG's Investigation**

Facing multiple allegations of sexual harassment in March 2021, Cuomo announced he would not resign and asked the public to reserve judgment until OAG concluded its Investigation. *Id.* ¶¶ 10-12, Exs. 2, 3. Yet within days of the § 63(8) appointments of Kim and Clark, OAG learned that members of Cuomo's inner circle were privately seeking out negative information about Kim and Clark to prepare a counteroffensive attack on the Investigation in the event the outcome was not favorable. *Id.* ¶ 21; Chun Decl. ¶ 6. Throughout the Investigation, the Investigative Team learned of multiple efforts by Cuomo's advisors to obtain negative information about the Investigative Team and women who had accused Cuomo of misconduct. Chun Decl. ¶ 6. The day after the Report was issued, counsel to the Executive Chamber (part of the Office of the Governor) wrote to OAG attacking the findings in the Report, largely based on purportedly negative information about, and attacks on, Kim and Clark, as well as complaints about Cuomo's lack of access to underlying materials from the Investigation. Longley Decl. ¶¶ 42-44, Ex. 6. As part of this continuing campaign, Cuomo has sought the *non-public* materials underlying the Report repeatedly, thus far without success. *Id.* ¶¶ 44, 48-60.

**C. Trooper 1's Complaint**

In her Second Amended Complaint (ECF No. 71) ("SAC"), Trooper 1 asserts four causes of action for discrimination against Cuomo based on her own personal account that during the period 2018 through 2021, Cuomo sexually harassed her by making sexually suggestive comments and jokes and initiating inappropriate physical contact, including running his fingers down her back and across her stomach. SAC ¶¶ 39, 54. Trooper 1 further asserts three causes of action for retaliation against Cuomo based on a press statement he made asserting that he would seek criminal

charges against victims, including Trooper 1. *Id.* ¶¶ 151-53, 155-59. These causes of action, and the underlying allegations that support them, are based on Trooper 1's personal knowledge of what Cuomo said and did to her, not any subsequent investigation of her allegations or the Report. *Id.* ¶¶ 31-61, 68-74, 151- 53, 155-59. Indeed, the SAC refers to the Report only in a single background paragraph contained in the "Preliminary Statement"; the Report is not incorporated into the "Factual Allegations" upon which Trooper 1 bases her legal claims. *Id.* ¶ 4.

The SAC contains extensive, unsourced quotations, which appear to be based on Trooper 1's personal knowledge or largely taken from testimony and exhibits from the Investigation that are publicly available on OAG's website. *See Id.* ¶¶ 75-143; *compare* Report.[1] All parties to the Trooper 1 Action have equal access to these materials and can use them to develop their claims and defenses in the case. In addition, virtually all of Trooper 1's allegations of sexual harassment against Cuomo concern conduct that occurred well before Cuomo referred the matter to OAG for investigation. *See* SAC. Cuomo's defense in the Trooper 1 Action depends on what Cuomo did or did not do to Trooper 1, not on what happened during the Investigation or the findings of the Report. As much as Cuomo would like it to be, the OAG Investigation is not on trial in the Trooper 1 Action. That suit is solely about what Cuomo did or did not do to Trooper 1.

### D. Procedural History

On July 11, 2022, Cuomo served a subpoena on OAG ("2022 Subpoena"). Longley Decl. ¶ 48, Ex. 7. The 2022 Subpoena sought expansive discovery into virtually every record created or collected in connection with the Investigation. *Id.* at ¶ 49, Ex. 7. After briefing and oral argument on the parties' cross-motions to compel and quash, the Court issued a Decision and Order on July 21, 2023, denying Cuomo's motion to compel on the grounds that Cuomo failed to establish the

---

[1] Available at https://ag.ny.gov/press-release/2021/independent-investigators-find-governor-cuomo-sexually-harassed-multiple-women (last accessed 11/25/2024)

relevance of the materials sought such that his requests were disproportionate to the needs of the case; the Court did not rule on OAG's cross-motion to quash. ECF No. 37 at 1, 33-34 ("2023 Order"). On July 31, 2023, Cuomo moved for reconsideration of the 2023 Order (ECF No. 40) and requested that his time to file Rule 72 objections be stayed pending a decision on reconsideration (ECF No. 38), which this Court granted (ECF Minute Entry Order 8/3/2023).

While Cuomo's motion for reconsideration was *sub judice*, on October 4, 2023, Cuomo "narrowed" the scope of the 2022 Subpoena via email to OAG, limiting the scope to interview memoranda prepared by the Investigative Team for New York State Police ("NYSP") witnesses and those of any complainant to the Report, as well as unredacted transcripts of sworn testimony taken by the Investigators. ECF No. 51-1. As ordered by the Court, OAG submitted the interview memoranda *in camera* to the Court on December 19, 2023. *See* ECF Minute Entry and Order, December 12, 2023. Thereafter, on March 29, 2024, the Court denied Cuomo's pending motion for reconsideration of the 2023 Order "to the extent it is seeking to compel compliance" with the 2022 Subpoena and scheduled a status conference "to address Cuomo's narrowed requests to the OAG." ECF. No. 57.[2] At the conference, Cuomo agreed to withdraw the 2022 Subpoena, rendering OAG's cross-motion to quash moot, and to serve on OAG the narrower Subpoena seeking only the above-referenced interview memoranda and unredacted transcripts from the Investigation, which Cuomo did on April 23, 2024. *See* Longley Decl. ¶ 60. The parties then filed cross-motions to compel and quash the Subpoena. *See* ECF Nos. 68-71 (OAG Motion); 75-77 (Cuomo Motion).

On October 28, 2024, Magistrate Judge Merkl issued the Order denying in part and granting in part each party's motion. Magistrate Judge Merkl first addressed and rejected OAG's threshold defense of sovereign immunity. Order at 25. The Court went on to hold that the interview

---

[2] Cuomo did not file any objections to the 2023 Order following the denial of his motion for reconsideration.

memoranda were protected from disclosure under the attorney-client privilege,[3] *id*. at 45, and that the record was insufficient to adjudicate OAG's assertions of law enforcement and public interest privileges with respect to the unredacted transcripts, *id*. at 52.

## ARGUMENT

### I.    OAG'S BROAD STATE SOVEREIGN IMMUNITY BARS ENFORCEMENT OF CUOMO'S SUBPOENA

The Court should sustain OAG's objections to the Order because Magistrate Judge Merkl's rejection of OAG's sovereign immunity defense is contrary to law. Under settled Second Circuit precedent, state sovereign immunity bars enforcement of the Subpoena under the Eleventh Amendment and at common law.

The Eleventh Amendment "bars suits against a State by citizens of that same State" in addition to citizens of other states. *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). The Eleventh Amendment is but one "species" of sovereign immunity. *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)). States also enjoy a broader species of common law sovereign immunity, independent of the Eleventh Amendment, that applies against all private suits, whether in state or federal court. *Alden v. Maine*, 527 U.S. 706, 713, 721 (1999) (noting state immunity from suit is a fundamental aspect of sovereignty that existed at common

---

[3] Having held that the interview memoranda were not subject to disclosure based on the attorney-client privilege, the Court did not determine whether the other privileges OAG asserted applied, although Magistrate Judge Merkl did note that "OAG's assertion of the deliberative process privilege has substantial force." Order at fn.19.

law before ratification of the Constitution that "neither derives from, nor is limited by, the terms of the Eleventh Amendment"); *Beaulieu*, 807 F.3d at 483 (citing *Alden*).

Both forms of sovereign immunity—under the Eleventh Amendment and at common law pre-ratification—apply not only to a state but also to a state agency such as OAG, *see Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429 (1997), and accordingly apply here to bar enforcement of the Subpoena.

## A. Enforcement Of The Subpoena Is A "Judicial Proceeding" Barred By OAG's Broad Sovereign Immunity

In the analogous context of a subpoena served on a federal agency, the Second Circuit has held that enforcement of a subpoena is a "judicial proceeding" that "would compel [the government] to act and therefore is barred by sovereign immunity in the absence of a waiver." *EPA,* 197 F.3d at 597  (cited by *In re S.E.C. ex rel. Glotzer*, 374 F.3d 184, 190 (2d Cir. 2004)); *see also Abdou v. Gurrieri*, No. 05-cv-3946, 2006 WL 2729247, at *3 (E.D.N.Y. Sept. 25, 2006) (relying on *EPA* and *Glotzer* in holding that absent waiver, federal sovereign immunity divests the court of jurisdiction to compel a federal agency to comply with a subpoena).

In a case directly on point, another magistrate judge of this Court recently applied the holding in *EPA* to bar enforcement of a subpoena served on OAG based on state sovereign immunity. *See Felix v. County of Nassau*, 344 F.R.D. 441, 444-45 (E.D.N.Y. 2023). In *Felix*, the plaintiff served a subpoena on nonparty OAG in a wrongful death action seeking OAG's investigative materials beyond what was already published on OAG's website. *Id*. at 442. Noting that states enjoy a broader sovereign immunity "beyond that addressed in the Eleventh Amendment" that extends to "all proceedings where the result could be an order restraining the . . . government entity or requiring it to act," *id*. at 444, the *Felix* court held that the subpoena served on OAG triggered OAG's broad state sovereign immunity, *id*. at 445. The court applied the

reasoning in *EPA* to conclude that "when the OAG is served with a third-party subpoena, this is exactly the type of coercive judicial process that the Supreme Court cases seem to envision being protected against by sovereign immunity with its recognition that the doctrine covers more than lawsuits in which the State is named as a defendant." *Id.* at 445.

More recently, the only judge in the Southern District of New York to address whether a subpoena served on a state agency triggers state sovereign immunity (in a case involving the same parties here) reached the same conclusion as the *Felix* court; in a comprehensive opinion, Magistrate Judge Sarah L. Cave applied *EPA* to hold that Cuomo's subpoena could not be enforced against OAG because an effort to judicially enforce a subpoena is "a 'suit' or 'judicial proceeding' that 'is barred by sovereign immunity in the absence of a waiver.'" *Bennett v. Cuomo*, No. 22-cv-7846, 2024 WL 2963714, at *11 (S.D.N.Y. June 12, 2024) (citing *EPA*, 197 F.3d at 597).[4]

The Fifth Circuit reached the same conclusion for the same reason in *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022), another case directly on point. In *Russell*, the plaintiffs issued subpoenas to nonparty state court judges seeking information about their role in creating and enforcing a bail schedule being challenged by the plaintiffs. *Id.* at 510. After concluding that the judges were acting in their official capacities "such that the subpoenas were really served against the state," the Fifth Circuit adopted the Second Circuit's rationale in *EPA* to hold that state sovereign immunity applied to the state judges as recipients of subpoenas based on the general rule that a suit is against the sovereign if "the judgment sought . . . would be to . . . compel [the Government] to act." *Id.* at 513-14 (cleaned up) (citing *EPA,* 197 F.3d at 597), *Dugan v. Rank*, 372 U.S. 609, 620 (1963), *Land v. Dollar*, 330 U.S. 731, 738 (1947), and *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 704 (1949)). Rejecting any distinction between officials sued as defendants and officials served

---

[4] Cuomo filed Rule 72 objections to the *Bennett* decision on June 26, 2024, which remain *sub judice*.

with a nonparty subpoena, the Fifth Circuit held that "[b]y compelling a state to produce its papers, a *subpoena duces tecum* subjects a sovereign to the 'coercive process of judicial tribunals at the instance of private parties,'" thereby triggering the state's sovereign immunity. *Id*. at 515 (emphasis in original, internal citations omitted) (quoting *Seminole Tribe,* 517 U.S. at 58); *see also Adkins v. Fields*, No. 22-cv-00007, 2024 WL 4003332, at *4 (E.D. Ky. Aug. 28, 2024) (quashing subpoena served on the state attorney general's office because enforcement "would infringe on its [sovereign] immunity from suit" and "would appear to interfere with the public administration of the Attorney General's office given the fact that the subpoena would require the Attorney General to review approximately 25,000 pages of documents"); *Cullen & Dykman, LLP. v. Wertheimer*, No. HHD-CV23-6169165-S, 2024 WL 1270252, at *4 (Conn. Super. Ct. Mar. 18, 2024) ("[A]bsent a waiver, state sovereign immunity bars enforcement of a subpoena that seeks to compel the State of Connecticut, as sovereign, to act or refrain from acting.").[5]

Further supporting the conclusion that OAG is entitled to assert sovereign immunity as a defense to any effort to judicially enforce Cuomo's Subpoena, the Southern District of New York and the Eighth and Tenth Circuits have held, relying on the Second Circuit's rationale in *EPA*, that subpoenas served on tribal officials trigger tribal sovereign immunity. In *Catskill Dev't, LLC v. Park Place Entertainment Corp*., 206 F.R.D. 78 (S.D.N.Y. 2002), the plaintiffs sought to enforce subpoenas served on members of the St. Regis Mohawk Tribe and their attorneys. *Id*. at 82. Applying the reasoning in *EPA,* Judge McMahon held that enforcement of the subpoenas was barred by tribal sovereign immunity absent waiver. *Id*. at 88-89 ("The same rule [applied in *EPA*]

---

[5] *But see Jackson v. AFSCME Local 196*, No. 07-cv-471, 2008 WL 1848900 (D. Conn. April 25, 2008) (holding judicial enforcement of a subpoena served on a state agency is not a "suit" because it does not result in a judgment paid out of the State's treasury). As Magistrate Judge Cave correctly concluded in *Bennett*, the court in *Jackson* erred by ignoring the impact that a subpoena has on the state's sovereign dignity and on general principles of sovereign immunity, which apply equally to claims for pecuniary and injunctive relief. *Bennett*, 2024 WL 2963714 at *12. In doing so, the *Jackson* court ran afoul of the holding in *EPA,* which recognized that enforcement of a subpoena triggers sovereign immunity because it *compels the government to act* and thereby offends the sovereign's dignity. *Id*.

should apply here, since 'Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers,' such as the United States.") (quoting *Santa Clara Pueblo v. Martinez*, 436, U.S. 49, 58 (1978)). Similarly, the Eighth and Tenth Circuits have applied the reasoning of *EPA* to hold that subpoenas served on tribal officials trigger tribal sovereign immunity. *Alltel Comm'ns, LLC v. DeJordy*, 675 F.3d 1100, 1103 (8th Cir. 2012) (holding effort to compel compliance with a subpoena triggers tribal sovereign immunity);[6] *Bonnet v. Harvest (U.S.) Holdings, Inc.,* 741 F.3d 1155, 1159-60 (10th Cir. 2014) (same).

The Second Circuit's holding in *EPA* is binding authority[7] compelling a determination here that enforcement of Cuomo's Subpoena is a "judicial proceeding" barred by OAG's sovereign immunity. *EPA*, 197 F.3d at 597; *Felix*, 344 F.R.D. at 442; *Bennett*, 2024 WL 2963714, at *11; *see also Russell*, 49 F.4th at 513-14.

### B.    Magistrate Judge Merkl's Failure To Uphold OAG's Sovereign Immunity Should Be Overruled As Contrary To Law

Magistrate Judge Merkl held that "the Subpoena in this case is not barred by sovereign immunity." Order at 15. This holding is contrary to law for two reasons.

**First**, Magistrate Judge Merkl erred in concluding that *EPA* is meaningfully distinguishable—and therefore not controlling here—because this case involves *state* sovereign immunity rather than *federal* sovereign immunity. Order at 16. This is a distinction that is irrelevant to the Second Circuit's rationale in *EPA*.

In *EPA,* the Second Circuit focused on whether the judicial proceeding to enforce the

---

[6] Fifteen years earlier, the Eighth Circuit rejected a nonparty state agency's claim of immunity from discovery subpoenas based on the Eleventh Amendment. *See In re Missouri Dept. of Natural Res.*, 105 F.3d 434, 436 (8th Cir. 1997). But as the Fifth Circuit noted in *Russell*, the Eighth Circuit's more recent decision in *Alltel* "casts considerable doubt" on its earlier decision in *In re Missouri DNR*. *Russell*, 49 F.4th at 518, n.12.

[7] *See Cartica Management, LLC v. Corpbanca, S.A.*, 50 F. Supp. 3d 477, 486 (S.D.N.Y. 2014) ("[D]istrict courts and other inferior courts are bound by decisions of the Court of Appeals in the appropriate circuit unless overruled by an intervening Supreme Court decision or other change in law.").

subpoena could result in an order "compel[ling] [the sovereign] to act," without regard to whether the sovereign was a state or federal entity. *EPA*, 197 F.3d at 597 (quoting *Dugan*); *see also Bennett*, 2024 WL 2963714 at *11-12. Moreover, there is no daylight between federal and state sovereign immunity to support concluding, as Magistrate Judge Merkl does, that the Second Circuit would have reached a different conclusion for a subpoenaed *state* agency than the one it reached in *EPA* for a subpoenaed *federal* agency. Both federal and state sovereign immunity trace back to the well-established English common-law rule, existing at the time the U.S. Constitution was ratified, that "the Crown could not be sued without consent in its courts." Gregory C. Sisk, A Primer on the Doctrine of Federal Sovereign Immunity, 58 Okla. L. Rev. 439, 443 (2005) (quoting *Alden*, 527 U.S at 715). The Framers relied on this rule to endorse the concepts of both federal and state sovereign immunity; "[i]f the states were exempt from unconsented suit on this historical account [of English law], then all the more so was the federal government." *Id*. at 443-44 (citing Alexander Hamilton, The Federalist No. 81, at 487-88 (Clinton Rossiter ed., 1961) (1788)); *see also Lewis v. Clarke*, 581 U.S. 155, 163-64 (2017) (recognizing immunity for state and federal employees are both based on "common-law sovereign immunity principles.").

Simply put, if a judicial proceeding that could result in an order compelling a federal agency to act is barred by sovereign immunity, then so too is a judicial proceeding that could result in an order compelling a state agency to act. *Russell*, 49 F.4th at 513-14; *Felix*, 344 F.R.D. at 442; *Bennett*, 2024 WL 2963714 at *12. There is no reason why the dignity of a state would be any less offended by an order compelling compliance with a Rule 45 subpoena than the dignity of the federal government. Magistrate Judge Merkl's determination "that responding to a subpoena" would not result in "an affront to state dignity" sufficient to trigger state sovereign immunity, Order at 24, directly conflicts with the holding in *EPA* that a subpoena triggers sovereign immunity

because it "would compel [the government] to act," *EPA*, 197 F.3d at 597. Indeed, Judge McMahon's application of the holding in *EPA* to subpoenas served on tribal officials in *Catskill* persuasively establishes that a subpoena served on *any* sovereign, not just the federal government, triggers sovereign immunity under the rationale of *EPA*. *Catskill*, 206 F.R.D. at 88-89.

Further, Magistrate Judge Merkl's citation to decisions from other circuits holding "that sovereign immunity does not shield state officials from document production in federal discovery," Order at 16, is of no moment. These out-of-circuit cases are irrelevant to the analysis here because they conflict with the Second Circuit's rationale in *EPA* that the judicial enforcement of a subpoena is barred by sovereign immunity because it could result in an order compelling the government to act. *See, e.g., United States Dep't of Justice v. Ricco Jonas*, 24 F.4th 718, 727 (1st Cir. 2022) (finding subpoena served on a state agency is not a "suit" because compliance will have no effect on the state's treasury); *Barnes v. Black*, 544. F.3d 807, 812 (7th Cir. 2008) (finding a subpoena "do[es] not compromise state sovereignty to a significant degree").

**Second**, Magistrate Judge Merkl incorrectly reasoned that enforcement of the Subpoena does not trigger OAG's sovereign immunity because the Subpoena was issued in connection with an underlying case (the Trooper 1 Action) brought under Title VII of the Civil Rights Act—a statute that abrogates state sovereign immunity for purposes of liability. Order at 15. In effect, Magistrate Judge Merkl concluded that congressional abrogation of state sovereign immunity under Title VII *implicitly* abrogates state sovereign immunity in a separate "judicial proceeding" initiated by a Rule 45 subpoena merely because it relates to a Title VII case. This conclusion is contrary to law; there is no such thing as abrogation of sovereign immunity by implication.

To determine whether Congress has abrogated a state's sovereign immunity, a court must ask two questions: (1) whether Congress has "unequivocally expresse[d] its intent to abrogate the

14

immunity;" and (2) whether Congress has acted "pursuant to a valid exercise of power." *Seminole Tribe of Fla.,* 517 U.S. at 55 (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985). "The standard for finding a congressional abrogation is stringent." *Financial Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 346 (2023). "Congress . . . must make its intent to abrogate sovereign immunity 'unmistakably clear in the language of the statute.'" *Id.* (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62,73) (2000) (cleaned up); *see also Sossamon v. Texas*, 563 U.S. 277, 287 (2011) ("[W]here a statute is susceptible of multiple plausible interpretations," we will not read it to strip immunity). "If a defendant enjoys sovereign immunity . . ., abrogation requires an 'unequivocal declaration' from Congress." *Dellmuth v. Muth*, 491 U.S. 223, 232 (1989).

The Court's determination that state sovereign immunity does not apply to subpoenas issued "in cases brought under Title VII," Order at 15, cannot be squared with this stringent standard. While it is true that Congress abrogated state sovereign immunity for actions brought under Title VII, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976), that just means that Trooper 1 was free to name a state entity *as a party defendant* in the Trooper 1 Action based on claims asserted under Title VII; and, indeed, Trooper 1 did so by asserting claims under Title VII against the New York State Police as a party defendant (*see* Trooper 1 Action SAC, ECF No. 71). But that does not mean that OAG's sovereign immunity from a separate "judicial proceeding" commenced by Cuomo's service of *the Subpoena* was somehow *implicitly* abrogated merely because the Subpoena seeks discovery from a non-party purportedly in aid of a Title VII action. This is because Congress in Title VII abrogated state sovereign immunity only to the extent the state is an "employer," *see* 42 U.S.C. § 2000e(b), and sued for substantive violations of the statute. Title VII's abrogation provision says nothing about abrogation of state sovereign immunity in Title VII cases when the

15

state is a nonparty recipient of a Rule 45 subpoena. This is not surprising, because Congress's narrow authority to abrogate state sovereign immunity stems from its power to enforce constitutional rights as provided in Section 5 of the Fourteenth Amendment. *Board of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 364-65 (2001). Any abrogation must therefore target state "conduct transgressing the Fourteenth Amendment's substantive provisions," *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 36 (2012) (quotation marks omitted), a matter that is not implicated when the state is merely a custodian of documents sought in a litigation between private parties.

Moreover, Congress did not, and could not, abrogate state sovereign immunity when enacting the Rules Enabling Act, 28 U.S.C. § 2072, pursuant to which the Judiciary adopted Rule 45; Congress neither purported to do so in the language of the act,[8] nor was it exercising powers when passing the act that would have permitted it do so.[9] Indeed, the court in *EPA* so held:

> The rules governing discovery and the issuance of subpoenas duces tecum . . . *include no express waivers* of the type necessary to subject the government to compulsion in judicial proceedings to which it is not a party.

197 F.3d at 598 (emphasis added).

Because Congress did not, and could not, abrogate state sovereign immunity when enacting the Rules Enabling Act, pursuant to which Rule 45 was promulgated and the Subpoena was issued, the fact that the Subpoena relates to an action brought under a statute that does abrogate state sovereign immunity is of no consequence; this action to judicially enforce the Subpoena is the "judicial proceeding" that compels OAG to act and thereby triggers OAG's sovereign immunity,

---

[8] The Rules Enabling Act provides: (a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals. (b) *Such rules shall not abridge, enlarge or modify any substantive right.* All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.(c) Such rules may define when a ruling of a district court is final for the purposes of appeal under section 1291 of this title. 28 U.S.C. § 2072 (emphasis added).

[9] Congress may abrogate a state's sovereign immunity only "pursuant to a valid exercise of power," *Seminole Tribe of Fla.*, 517 U.S. at 55, such as pursuant to § 5 of the Fourteenth Amendment, *Alden*, 527 U.S. at 756.

*EPA*, 197 F.3d at 597, not the underlying Trooper 1 Action to which OAG is not a party.

### C.    The Court's Analysis Of "Additional Considerations" Is Misguided

Magistrate Judge Merkl also expressed "grave concerns" that upholding OAG's state sovereign immunity here would lead "to truly absurd results." Order at 22. As a threshold matter, the Court's analysis in this regard amounts to an improper policy determination that is foreclosed by the Second Circuit's decision in *EPA*. As correctly held by the courts in *Felix* and *Bennett*, binding precedent from the Second Circuit bars enforcement of the Subpoena based on OAG's sovereign immunity. *Felix*, 344 F.R.D. at 442; *Bennett*, 2024 WL 2963714, at *11. Where, as here, a "suit" triggers state sovereign immunity, the court may not seek to undercut that immunity through application of a balancing test that would take into consideration purported hardship on the private litigant seeking to maintain a judicial proceeding against the sovereign.[10]

Moreover, the Court's dire prediction of "truly absurd" results in numerous other contexts in which state entities may possess or control records relevant to a pending federal action, Order at 22-23, is overblown for the following reasons: (i) a civil litigant in a Section 1983 action will typically name one or more state officials as defendants in their individual capacities, and in that procedural posture may obtain party discovery by serving discovery notices on those officials, who can then be compelled to produce material within their custody, possession, or control; (ii) civil litigants can seek relevant documents from state agencies under New York's Freedom of Information Laws (*e.g.* New York Public Officers Law § 87 (Access to Agency Records)); (iii) New York has waived its sovereign immunity under the New York Court of Claims Act, so any

---

[10] *Cf. Colt v. New Jersey Transit Corp.,* No. 72, 2024 WL 4874365, at *7 (N.Y. Nov. 25, 2024) ("Inherent in the nature of sovereign immunity is the possibility that a State may avoid liability for a wrong it has done. Our courts may not disregard a sister State's sovereignty simply because an individual might otherwise not be able to recover a judgment against it.").

17

litigant with a claim pending in the New York Court of Claims may obtain discovery from state agencies in that forum;[11] and (iv) parties may sue state agencies and obtain discovery of files in their possession, custody, or control under federal statutes that abrogate state sovereign immunity, such as Title VII of the Civil Rights Act, Title II of the Americans with Disabilities Act, or the Voting Rights Act. *See Fitzpatrick*, 427 U.S. at 456 (holding Title VII abrogates state sovereign immunity); *United States v. Georgia*, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II [of the Americans with Disabilities Act of 1990] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.") (emphasis in original); *Dekom v. New York*, No. 12-cv-1318, 2013 WL 3095010, at *10 (E.D.N.Y. June 18, 2013) (noting "Congress has abrogated the States' sovereign immunity on claims arising under the Voting Rights Act") (citing *Mixon v. State of Ohio*, 193 F.3d 389, 398-99 (6th Cir.1999)), *aff'd*, 583 F. App'x 15 (2d Cir. 2014).

In addition, Magistrate Judge Merkl's "grave concerns" extended to cases far beyond those "brought under Title VII of the Civil Rights Act" or other statutes that abrogate state sovereign immunity to which the Court's holding is limited. Order at 15. Such concerns must give way to binding Second Circuit precedent. *See, supra*, n.7 and 17.

Finally, far from producing "truly absurd" results, upholding OAG's sovereign immunity in the specific circumstances of this case—where the target of an OAG investigation seeks portions of OAG's nonpublic investigative file to serve his own interests in rehabilitating his political career—avoids an unwarranted burden on OAG at taxpayer expense. The Fourth Circuit's

---

[11] *Brown v. State*, 89 N.Y.2d 172, 179-80 (1996) (noting Court of Claims Act "confers jurisdiction on the court to hear and determine 'almost every conceivable kind of action against the State' . . . [including] 'a claim of any person, corporation or municipality against the state for the appropriation of any real or personal property or any interest therein, for the breach of contract, express or implied, or for the torts of its officers or employees while acting as such officers or employees.'").

observations in *Boron Oil Co. v. Downie*, 837 F.2d 67 (4th Cir. 1989), about the impact of a nonparty subpoena on the federal agency involved in that case ring true here with respect to OAG:

> Because of the nature of the duties it exercises and programs it administers, the [agency] is *particularly vulnerable* to the demands of private parties seeking information acquired *as a result of official investigations* concerning incidents such as that in the case *sub judice*. If [agency employees] were routinely . . . compelled to [comply with subpoenas] in private civil actions, significant loss of manpower hours would predictably result and agency employees would be drawn from other important agency assignments.

873 F.2d at 70 (emphasis added).

Based on the Second Circuit's controlling decision in *EPA*, enforcement of the Subpoena is a "judicial proceeding" that is "barred by [OAG's] sovereign immunity in the absence of a waiver." *EPA*, 197 F.3d at 597.

### D.    OAG Did Not Waive Its Sovereign Immunity

Having incorrectly held that the Subpoena is not barred by OAG's sovereign immunity, Magistrate Judge Merkl had no occasion to address Cuomo's further contention that OAG had nevertheless waived sovereign immunity through its litigation conduct. Order at n.5. In ruling on OAG's objections, the Court should conclude not only that OAG's sovereign immunity applies under *EPA*, but also that there was no waiver.[12]

States remain subject to suit despite their sovereign immunity where the State "consent[s] to suit." *Torres v. Texas Dep't of Pub. Safety*, 597 U.S. 580, 587 (2022); *see also Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253-254 (2011) ("A State may waive its sovereign immunity at its pleasure . . . .") (cleaned up); *Beaulieu*, 807 F.3d at 484 (2d Cir. 2015) (noting states "may elect to waive" their sovereign immunity); *Unkechaug Indian Nation v. New York State Dep't of Env't Conservation*, 677 F. Supp. 3d 137, 147 (E.D.N.Y. 2023) (noting exception

---

[12] In the alternative, the Court should rule that the Subpoena triggers OAG's sovereign immunity and remand to Magistrate Judge Merkl for consideration of Cuomo's waiver arguments in the first instance.

where "a state waives its immunity").

As a threshold matter, unlike waiver of Eleventh Amendment immunity, waiver of a state's broader common law sovereign immunity is governed by state law. *See Alden*, 527 U.S. at 757-58 (referring to state law to determine waiver of common law sovereign immunity); *Beaulieu*, 807 F3d at 484 ("The question of whether a state has waived its immunity . . . is answered, in the first instance, by reference to state law."). Under New York law, the State's sovereign immunity to suits in New York "is considered to be an issue of subject matter jurisdiction that *may not be waived*" by litigation conduct. *Milord-Francois v. New York State Off. of Medicaid Inspector Gen.*, No. 19-cv-00179, 2022 WL 10653757, at *6 (S.D.N.Y. Oct. 18, 2022) (emphasis added) (citing *Morrison v. Budget Rent A Car Sys.*, 657 N.Y.S.2d 721, 726–27 (2d Dep't 1997)).

The recent decision of the New York Court of Appeals in *Henry v. New Jersey Transit Corp.*, 39 N.Y.3d 361 (2023), did not change New York law on this point. In *Henry*, the plaintiff was injured while riding on a bus owned by defendant New Jersey Transit Corporation ("NJT") and sued NJT in New York state court. *Id.* at 365. After a jury returned a verdict in plaintiff's favor, NJT raised for the first time on appeal the defense of sovereign immunity, contending that as an arm of the State of New Jersey, it was not subject to suit in New York's courts. *Id.* The court first noted that "[s]overeign immunity encompasses three distinct concepts: the immunity that states enjoy from suits in federal courts, the immunity they enjoy from suits in other states' courts (or 'interstate sovereign immunity'), and the immunity they enjoy in their own courts." *Id.* at 368. After remarking that the case "implicated" only *interstate* sovereign immunity, the court held that such immunity "closely aligns" with personal jurisdiction and thus can be waived by litigation conduct if not preserved at trial. *Id.* at 372.

Relevant here, however, the *Henry* court distinguished cases like this one involving the

immunity states enjoy *in their own courts* as opposed to interstate sovereign immunity. *Id*. at 373. The court reasoned that because New York's waiver of immunity in its own courts is based on the limited subject matter jurisdiction of the Court of Claims as set forth in the Court of Claims Act, such immunity was unlike interstate sovereign immunity, where "there is no similar statutory limitation on the ability of New York courts to hear disputes involving another state." *Id*. at 373. Accordingly, *Henry* confirms that while interstate sovereign immunity is aligned with personal jurisdiction that may be waived by litigation conduct, New York's immunity to suit in New York courts is a function of subject matter jurisdiction vested in the Court of Claims pursuant to the Court of Claims Act and therefore cannot be waived by litigation conduct.

But even if OAG's sovereign immunity from suit in New York courts could be waived by litigation conduct (which is not the case), the facts here are easily distinguishable from *Henry* and cannot possibly support a finding of waiver. As the party seeking to enforce the Subpoena, Cuomo bears the burden of establishing waiver. *Haber v. United States*, 823 F.3d 746, 751 (2d Cir. 2016) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). An effective waiver of sovereign immunity requires an "intentional relinquishment or abandonment of a known right or privilege." *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999). The standard for finding waiver of a state's sovereign immunity is "stringent." *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001). A state must unequivocally invoke its intention to be subject to the court's jurisdiction. *See College Savings Bank*, 527 U.S. at 676 (citing *Gunter v. Atlantic Coast Line R. Co*., 200 U.S. 273, 284 (1906), and *Pennhurst State School and Hosp.,* 465 U.S. 89). And in assessing whether a state has made a knowing and intentional waiver, the Supreme Court has instructed that "every reasonable presumption against waiver" is to be indulged. *College Savings Bank*, 527 U.S. at 682 (internal quotation marks omitted).

The Second Circuit's decision in *Beaulieu* is instructive. In that case, Vermont expressly renounced in the early phases of the litigation a defense invoking the state's sovereign immunity, but then changed its position and raised the defense "more than two years after the beginning of the lawsuit" and after filing interrogatory responses. *Id*. at 482. The court nevertheless held there was *no waiver of sovereign immunity* based on Vermont's litigation conduct:

> It is true that [the state] Defendants changed their strategy and that earlier invocation of Vermont's immunity might have resulted in earlier dismissal, sparing Plaintiffs some burden and expense. But there is no record of *duplicitous conduct* by Defendants or of *serious unfairness* to Plaintiffs resulting from the tardy invocation of immunity. . . . Accordingly, we reject [the] argument that Defendants waived Vermont's general sovereign immunity by their litigation conduct.

*Id*. at 491 (emphasis added); *see also Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, No. 96 CIV. 8414, 2016 WL 7320775, at *7 (S.D.N.Y. July 18, 2016), *report and recommendation adopted*, No. 96 CIV. 8414 (KMW), 2016 WL 7243544 (S.D.N.Y. Dec. 14, 2016) ("[T]he cases involving waiver-by-litigation premise the waiver on a State actually appearing as a party and submitting its rights for judicial determination.") (collecting cases).

Here, OAG has affirmatively objected to the Subpoena at every possible juncture and has never consented to the jurisdiction of this Court to compel compliance. *See* Longley Decl. at ¶¶ 50, 52, 56-60. Nevertheless, Cuomo argues OAG has waived its sovereign immunity by: 1) producing records to other law enforcement agencies for use in their investigations regarding Cuomo's sexual harassment of numerous women; 2) making a small voluntary production to Cuomo in this action; and 3) producing documents to Magistrate Judge Merkl for *in-camera* review per court order. Cuomo's Memorandum of Law in Support of his Motion to Compel and Opposing OAG's Motion to Quash, filed July 17, 2024 (ECF No. 76) ("Cuomo MOL") at 16-19.

Cuomo's argument that OAG's alleged production of documents to other law enforcement agencies constituted waiver because OAG purportedly provided the materials "to effectuate civil

prosecution based on allegations against Governor Cuomo," *id*. at 16, is without merit. The cases Cuomo relies on for this proposition, primarily *United States v. James*, 980 F.2d 1314 (9th Cir. 1992), *see* Cuomo MOL at 16, do not support Cuomo's position. In *James*, the tribe had voluntarily provided documents from one of its agencies to prosecutors to aid the government's case against James, but then invoked sovereign immunity when subpoenaed for additional related records by James. *Id*. at 1319. The court found that the tribe waived sovereign immunity by placing the records at issue when it voluntarily provided the same type of records to one party (the government), and could thus not shield related records from disclosure to another party (the defendant) in the same case.[13] *Id* at 1320. Here, OAG has not provided the requested materials to any party in the Trooper 1 Action, and thus, has not selectively invoked sovereign immunity.

Similarly, OAG's limited voluntary production to Cuomo at the outset does not provide the clear, unambiguous consent required to waive sovereign immunity. *College Savings Bank*, 527 U.S. at 675-76. Notably, the facts of *EPA* establish that sovereign immunity cannot be "selectively waived" in this Circuit based on a partial production of materials sought by subpoena. *See EPA*, 197 F.3d at 594. As noted by the court in *EPA*, after receiving the subpoena, the EPA treated the subpoena "as a request under FOIA in accordance with EPA regulations" and decided to release several documents in response, which the court assumed were produced. *Id*. at 594. The court nevertheless concluded that federal sovereign immunity applied to the subpoena notwithstanding this partial production of documents absent waiver. *Id*. at 597.

Moreover, neither of the cases cited by Cuomo support his argument because they involve

---

[13] The other cases cited by Cuomo for this proposition are equally distinguishable as they either involved the subpoenaed entity having selectively provided records to one of the *parties* to the action (*United States v. Menominee Tribal Enter*s., No. 07-cv-316, 2008 WL 2273285 (E.D. Wis. June 2, 2008) and *United States v. Velarde*, 40 F. Supp. 2d 1314, 1317 (D.N.M. 1999)) or discovery requests *directed to a party* to the action (*Information Resources, Inc. v. Dun & Bradstreet Corp*., 999 F. Supp. 591 (S.D.N.Y. 1998)).

a sovereign simultaneously and selectively producing and withholding the same type of document. *See NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, Nos. C-04-3955, C-05-1605, 2009 WL 4258550, at *6 (N.D. Cal. Nov. 24, 2009) (finding waiver as to "only those documents" that are similar to those produced and finding no waiver where the "documents sought by the subpoena are not sufficiently related to the information produced, and the [sovereign] may have different interests in these other documents."); *Jett v. Penner*, No. S-02-2036, 2007 WL 127790, at *2 (E.D. Ca. Jan. 12, 2007) (holding California Department of Corrections and Rehabilitation ("CDCR") waived sovereign immunity defense to a second subpoena served by the plaintiff prisoner seeking documents from his "central file" based on the CDCR's prior production of documents from the same "central file" in response to plaintiff's first subpoena). Here, the handful of documents voluntarily provided by OAG were phone records "of no consequence whatsoever," wholly unrelated to the requested materials and as to which OAG has different interests as reflected by the privileges it has asserted. June 25, 2024 Transcript at 16 (ECF No. 77-10) ("Ms. Trzaskoma: [The previously produced] documents are of no consequence whatsoever. They're . . . four separate versions of a phone book that happen to contain [Trooper 1's] name.").

Finally, Cuomo argues that OAG waived sovereign immunity by providing material to Magistrate Judge Merkl for *in camera* review. Cuomo MOL at 18. But, as Cuomo acknowledges, Magistrate Judge Merkl *ordered* OAG to do so. *Id.* at 10. Complying with a court order cannot support a finding that OAG voluntarily abandoned its right to invoke sovereign immunity.[14] *See Close v. State of N.Y.*, 125 F.3d 31, 39 (2d Cir. 1997) (holding that the conduct at issue must be

---

[14] Cuomo's reliance on *Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, No. 06-cv-1260, 2009 WL 4981905 (E.D.N.Y. Dec. 10, 2009), *see* Cuomo MOL at 18, is misplaced. Cuomo conveniently ignores that the court found waiver only for the *counterclaims themselves* and found that the tribe otherwise *preserved* its immunity over the defenses to the claims originally filed by the plaintiff. 2009 WL 4981905, at *8. Cuomo attempts to flip reality on its head by claiming that OAG moving to quash his Subpoena is engaging in affirmative litigation rather than defensive litigation. *See id.*

24

one in which the state realistically could choose not to participate); Erwin Chemerinsky, Federal Jurisdiction § 7.6, at 410 (2d ed.1994) (same).

Moreover, in submitting material to the Court for *in camera* review, OAG did not voluntarily invoke federal court jurisdiction and did not assert any affirmative claim for relief. *See Bennett*, 2024 WL 2963714, at *16 (finding Cuomo's contention that OAG failed to protect its right to sovereign immunity "incorrect" and "declin[ing] to find that OAG's submission of the In Camera Materials to Judge Merkl in the Trooper 1 Action waived sovereign immunity") (citing *State of South Carolina v. Wesley*, 155 U.S. 542, 545 (1895) (finding no waiver of sovereign immunity where state expressly declined to become party and appeared only to protest federal court jurisdiction over adjudication of its rights to funds at issue), and *State of Georgia v. Jessup*, 106 U.S. 458, 462–63 (1882) (Harlan, J.) (same)).

\*   \*   \*

Here, OAG's litigation conduct has been clear and consistent; at every turn OAG has objected to the enforcement of Cuomo's Subpoena seeking OAG's investigative materials based on the state's sovereign immunity, as well as other grounds. If Vermont's litigation conduct in *Beaulieu* did not result in waiver of Vermont's sovereign immunity, then *a fortiori* OAG's litigation conduct here cannot possibly result in a finding of waiver.

## CONCLUSION

For the reasons set forth above, OAG respectfully requests that the Court issue an order: (i) sustaining OAG's objections to that portion of Magistrate Judge Merkl's Order rejecting OAG's sovereign immunity defense as contrary to law; (ii) holding that OAG's sovereign immunity has not been abrogated or waived and applies to bar enforcement of the Subpoena; (iii) granting OAG's motion to quash the Subpoena; (iv) denying Cuomo's motion to compel compliance with the Subpoena; and (v) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
      November 26, 2024

                              Respectfully submitted,

                              LETITIA JAMES
                              Attorney General
                              State of New York

                              By:  / s / Andrew Amer
                              Andrew Amer
                              Michael Jaffe
                              James Cooney

                              28 Liberty Street
                              New York, NY 10005
                              Phone: (212) 416-6127
                              andrew.amer@ag.ny.gov

                              Attorney for Defendant

26